UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bobby Bruce White, Plaintiff

v.

Spillman, Parks, Meredith
and Chapman, Defendants

Case No: 24-3023-JWL

Civil Rights Complaint
Pursuant to 42 U.S.C.
§ 1983

PLAINTIFF-SHOWING OF CAUSE

Bobby White #76983, Now gives his showing of cause; why White's §1983 civil rights claim should be allowed to proceed; before a jury and with the courts judicial findings for prospective injunctive relief and because of actual physical and mental injury from strangulation, caused by LCF employees, failure to protect, acting under color of law, in violation of State and Federal laws and U.S. Constitutional Amendment rights.

The time period for this §1983 civil rights complaint is between 10-5-2022 through 10-23-2023. White submitted grievance #AA2023056 (Count I issue) on 10-5-2022, which ultimately, "but for" caused White to be placed in restrictive "Atypical" condition of confinement at LCF on 3-28-2023. This then resulted in the attempted murder of White, by strangulation on 7-12-2023, and then the transfer of White from LCF to LSCF on 10-23-2023. (It is White's understanding the transfer was for Whites' protection.)

− Relevant Personal Information −
Whistle blower Act − 18 U.S.C. § 1513

White alleges he has made numerous complaints and grievances and appeals to the S.O.C. Jeff Zmuda/LCF Warden regarding the blatant, unchecked, illegal drug, tobacco, alcohol and (ETS) smoky environment at LCF, caused by gangs, drug user, dealers at LCF. When White complained, he got no help, but received threats, reprisal, harassment, and retaliation by the issuing of phoney unwarranted (DRS) disciplinary reports, and even actually physically assaulted. White previously brought these issues up in: K.S.A. 60-1501, Habeas Corpus, in the Leavenworth Co. Dist. Court, Case No: 2020CV243, filed on 11-6-2020. That case was summarily dismissed without an evidentiary hearing, and the

1a

drug problem and the assault were never addressed by the Kansas State Courts. So, nothing got changed.

Now, in yet another Habeas Corpus; LVCO 2022 cv 323, Filed 12-12-2022, is now pending, because of the change of venues to the Pawnee Co. Dist. Court. The court has even failed to serve the granted Writs on the defendant S.O.C. Jeff Zmuda. This is causing a denial to justice without delay (R 818); to procedural due process and an unfair and inordinate delay by the State Courts.

So, White has been forced to become a whistle blower and seek help outside the KDOC administrative process. The KDOC has never admitted to the problem and until recently never did anything to correct the problem.

Whistle blowers and elder persons are, both protected classes and under served populations applicable to: 34 U.S.C. §12291(14), (24)(e)(i i); (46); 18 U.S.C. §1513 and 18 U.S.C. §242 extortion, deprivation of rights under color of law, was enacted to enforce the 14th Amendment. (Screws v. United States 325 U.S. 91; 655 S. Ct. 1031, 89 L. Ed. 1495 U.S. (1945), also; United States v Perkins 470 F.3d 150, 2006 U.S. App. (4th Cir 2006)

## —ELDER PERSON—

Bobby White #76983, is a 71 year old elder person and an indigent dependent adult, State of Kansas prisoner, in the custody of the KDOC, S.O.C. Jeff Zmuda. White is serving a Hard 25 sentence. On 3-27-2024 White will have served 22 years and be eligible for parole on 3-27-2027. On White's most recent Program Classification Review, done at LSCF, on 11-3-2023. It is recorded that: (a) White is "NOT managed as a sex offender (meets no criteria); and (b) "No" programs were assessed by RDU for "need", nor programs were recommended.

White is physically disabled, applicable to the ADA, and by medical diagnosis on 1-6-2015; with: Diffuse Lumbar Spondylosis Multilevel Degenerative Disc Disease with Arthritis and a Diabetic. On the KDOC PULHEX, it is recorded that White Is a "Non Smoker" with the Living Unit Assignment need of "Bottom Bunk Only" with "No" stair climbings and with medical restrictions of "No" prolonged crawling, stooping, running, walking, or standing, and with the need to use a cane for ambulation.

Because of White's age and disability, he cannot as quickly, or

2.

even do (follow all direct orders given) physically, what other younger, healthy prisoners do. Some KDOC officers do not take this into consideration when they issue (DR's) disciplinary reports; where some even take advantage of the situation and use DR's as a tool for retaliation.

With the increasing population of ageing KDOC prisoners and the longer sentencing being imposed; this is going to become an even greater problem in the future. Unless, the Federal government requires the States to provide treatment policies for elder persons, or for the KDOC to provide separate prison facilities to all elder person, as they now do for juvenile prisoners.

But, White is not challenging the fact or length of his custody or sentencing, in this §1983 civil rights action in the U.S. District Court. White is asserting his legal and Constitutional and liberty interest rights of a whistle blower, elder person, prisoner, over his conditions of confine-ment, to be free from retaliation, harassment, reprisal, and cruel and unusual punishment and with protection from physical and mental harm. To not be retaliated and discrimination against because of my right to freedom of speech and religion and right to invoke the grievance process and White's protected right to access the courts. To be housed in a facility, with an environment free of (ETS) smoke, drugs, alcohol, and tobacco for my health and safety.

Further, White has a Constitutional 14th Amendment and liberty interest and equal right, to be informed of the standard, requirement, criteria, used for penological interest, to know, what White needs to do to satisfy the Kansas Parole Board; to assure Whites parole on his earned "avail-ability" of parole on 3-27-27, per Whites sentencing. So, White can do his part to lessen the crowding and population of prisoners in the State of Kansas prisons, and not be passed over for parole.

## Legal Arguements

Prisoners: (a) retain the Constitutional right compatible with the objective of incarceration. (Hudson v Palmer 468 U.S. 517, 524 (1984); (b) retain limited 1st Amendment right to free exercise of religion. (Cruz v Beto 405 U.S. 319, 322 n.2 (1972)

3.

(c.) retain their 1st Amendment right to petition the government for the redress of grievances. (Toolasprahad v Bureau of Prisons 286 F. 3d 576, 584 (D.C. 2002)

(d.) retain the right to equal protection of the laws. (Lee v Washington 390 U.S. 333, 33-34 (1968); and

(e.) The Constitution guarantees prisoners the right of meaningful access to the courts and prison officials may not retaliate against prisoners, who exercise that right. (Bounds v Smith 430 U.S. 817, 824, 828 (1977) and; (Johnson v Avery 393 U.S. 483, 485 (1969)

## — COUNT I — Mr. Spillman

An inmate may state a claim for denial of right of access to court by alleging misconduct by prison officials. (Crawford-El v Britton 523 U.S. 574, 584 (1998)   Also, the court in (West v Atkins, 487 U.S. 42, 54-55 (1988) has held that private persons who are authorized to exercise state authority are deemed to be acting "under color of state law."

White alleges Mr. Spillman committed misconduct by violating White's 1st Amendment - Religious freedom and speech rights by retaliating against White, by wrongfully removing White from the (B1BR) Brothers in Blue Reentry, Group 65, on 10.5.2022. Thus denying White his earned program credits; White needed, for parole board support, in White's parole release; when the availability for parole is reached on 3-27-2027. This retaliation was caused, because White, for religious taught reasons; was that. White could not condone or go along with the other members of Group 65 - consensus about the legalizing of the manufacturing, use and selling, or giving drugs even to our children; and because White complained about the drug problem at LCF, Mr. Spillman warned me that if I kept complaining about the drug problem, I would be putting my life in my own hands, because most of the prisoners at LCF, were drug users or dealers.

Then Mr. Spillman continued the misconduct and further retaliated against White, when on 3-28-2023; Mr. Spillman took White completely out of the B1BR program and had White moved out of Pod B5, solely for the reason, because White invoked the grievance process and accessed the court, by filing legal action, of a Habeas Corpus, in the Leavenworth Co. Dist. Court Case No: 2022CY323.

White had not received any due process, nor had White violated any rule or regulation, nor had White received any disciplinary report. Further, Mr. Spillman had no right or authority to disregard the KDOC, S.O.C., LCF Warden and Unit Team grievance #AA2023056 resolution response, that White was not/nor had not been removed from the BIBR program and would be included in the next BIBR group; which should have been Group 67.

The S.O.C., Warden and Unit Team are obviously the experts and prison authorities of the KDOC prison at LCF. Not Mr. Spillman. In; (Block v Rutherford 468 U.S. 576, 587, 588 (1984); (Bell v Wolfish 441 U.S. 520, 545 (1979); and (U.S. v Felipe 148 F. 3d 101, 108 (2nd Cir, 1998)) found the court must uphold prisoners due process rights, while according deference to legislative and executive branch policies ... involved in administering modern day prisons and courts should defer to expert judgement of prison authorities. (quoting Wolfish 441 U.S. at 540-41)

Therefore the experts decision was that White could not be removed from the program, so, then, that also would make the LCF officials and S.O.C. complicit, for not supporting and implimenting their own grievance resolution response. This clearly shows there is no real administrative grievance procedure or relief available to prisoners, which can be trusted.

Because, also found in; (Rouse v Benson 193 F 3d 936, 940 (8th Cir. 1999) the court found that a retaliation transfer charge supported by evidence that "but for" inmates protected speech and religious activity, the transfer would not have occurred. Prison officials may not transfer an inmate in retaliation for exercising of a Constitutional protective right, which would be Whites' protected right to access the courts. White's "but for", was the same retaliation as in (Rouse), and caused White's atypical condition of confinement under cruel and unusual punishment, which then almost caused White's murder by strangulation, because of the denial to protection, while in restrictive housing.

— Religious Standing —

White should never have been allowed to be penalized for disagreeing with the Group 65 consensus, in a drug abuse group discussion; when White believed it to be against his honest Protestant Christian belief, to do so. Even the BIBR's own reference material

5.

in the MacArther Study Bible. Where in: "Matthew 18:7 Woe to the world because of it's stumbling blocks! For it is inevitable that stumbling blocks come, but woe to that man through whom the stumbling blocks come!"

For which the MacArther reference footnotes explains for: "18:7 Woe to the world. It is expected that those in the world will cause Christians to be offended, stumble and sin, and they will be judged for it. But, it should not be that fellow believers lead others into sin, directly or indirectly. One would be better off dead."

White firmly believes, drugs, alcohol, and perhaps even tobacco (because it's unhealthy) are the very stumbling blocks warned of in the Bible; which causes our children, men and women to sin, break the law, and which are killing our children.

There is no reasonable penological interest, in it to ever be supported and approved by the KDOC officials and Mr. Spillman, for the discussion of the approval for the use, manufacturing and selling of drugs, in a christian based, drug abuse, prison group discussion. It is hypocritical and shocking to the conscience that anyone, should be penolized and expelled from the group, and then physically assaulted; because White did not approve of the legalization and found it inappropriate, to go along with the group consensus.

White has a protected liberty interest created by the due process clause religious freedom and access to the courts: (a) by it's own force (Sandin v Connor 515 u.s. 472, 484 (1995) and, (b) in remaining free from the revocation of parole (Morrissey v Brewer 408 u.s. 471, 482 (1972) and/or (c) White has a liberty interest in a parole, when he has earned the reasonable expectation of a parole release., through his court sentencing; of parole eligibility on 3-27-2027, (Berna v Travis 239 F.3d, 169 171-72 (2nd Cir. 2001) and (d) by states through statutes or regulations (Sandin v Connor 515 u.s. at 483-84) Because all Kansas prisons are suppose. to be free of drugs, alcohol, and tobacco and environmentally free of drug and tobacco smoke.

Further, Mr. Gary Spillman has no constitutional or legal right that is "reasonably related to any legitimate penological interests, sufficient to be an impediment to White's right to freely exercise his religious

6.

freedom and beliefs, (which do not hurt or take away any rights from anyone else.) (O'Lone v Estate of Shabazz 482 U.S. 342, 351-53 (1987).

## — Deliberate Indifference

Under, (Williams v Benjamin 77 F. 3d 756, 761 (4th Cir 1996) the 8th Amendment analysis requires: "as whether prison officials acted with sufficiently culpable state of mind, the subjective component"; and "whether deprivation or injury was sufficiently serious, the objective component."

I) Objective Components: Constitutional violation of denial to access the court; denial to earn program credits; denial to grievance resolution response; denial to religious freedom and speech; denial to due process. (notice and right to be heard); denial to prison rehabilitation program; denial to protection from drug, alcohol, tobacco, smokey environment and from tobacco, drug, users and dealers. (imminent danger - failure to protect.)

II) Subjective components: (1) Mr. Spillman told White and H/O Leichliter he was taking White out of the BIBR program, because White filed legal action against him and BIBR in the court; (2) Mr. Spillman told White, if I didn't stop complaining about drug users, I'd be taking my life in my own hands, because the majority of people at LCF are drug users and dealers; (3) Mr. Spillman refused to support, and acting against the grievance resolution response. of #AA 2023056; (4) White had done nothing wrong, to violate any rule or regulation, given no notice or due process, before being penalized.

## — Relief Sought — COUNT I — Mr. Gary Spillman.

(A) White is asking for a $1.00 Nominal award; and
    In; (Searles v Van Bebber 250 F. 3d 869, 879 (10th Cir. 2001) the court found the PLRA does not bar award of nominal damages, which are mandatory upon the finding of a Constitutional violation.
(B) White requests prospective injunction relief; that
"The Kansas Parole Board will not deny White parole on or after 3-27-2027; because of lack of program credits and any other negative factor, found on the record, between 10-5-2022 through to 1-25-2024, view by the board; that is found by the court to have

7.

been a time of a violation of White's legal and Constitutional rights."

In, (Williams v Lane 851 F. 2d 867, 883-84 (7th Cir 1988) Injunctive relief and appointment of Special Master to implement a remedy was proper, when inmate has successfully claimed a denial of free exercise of religion, denial of access to courts, and cruel and unusual punishment.

Under 18 U.S.C. §3626 Prospective injunctive relief must be based on judicial findings that the relief is narrowly tailored to extend no further than the particular plaintiff. §3626 (a)

However, the injunctive relief will not terminate if the court makes written findings that prospective relief remains necessary to correct a current and ongoing violation of a Federal right. §3626 (b)

-Note - A standard or criteria must be in place, for White to know what he needs to do to satisfy the parole board and for White to qualify for parole, when it becomes available on 3-27-2027. If it's to be decided on a wim, arbitrarily and capriciously, then it can be viewed as a violation of White's sentencing (making it illegal) and liberty interest, equal rights and an Unconstitutional treatment of law, because it could easily invalidate White's availability for parole date. This may be something that may be considered and worked for implementation by a special Master.

## —COUNT II - Mr. Parks a TM

A) The court found in; (Williams v Benjamin 77 F. 3d 756, 765 (4th Cir 1996) the deference to prison officials does not give them the Constitutional license to torture inmates, but, is limited to what is necessary for internal prison security. When the state takes a person into it's custody and holds him there against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being... The affirmative duty to protect arises ... from the limitation which it has imposed on his freedom to act on his own behalf. (Deshaney v Winnebago county Dep't of Soc. Serv's 489 U.S. 189, 199-200 (1989) Confinement in a prison or an isolation cell is a form of punishment subject to scrutiny

8.

under the 8th Amendment standard. (Hutto. v Finney 437 U.S. 678, 685 (1978)

    White was ultimately held by Mr. Parks UTM, in an 8th Amendment alleged violation of an atypical condition of confinement, because White was acting in a capacity of a whistleblower, complaining about the smoke and drug problem at LCF. (See; COUNT I)

    The health risk posed by involuntary exposure to environmental tobacco smoke (ETS) can form the basis of an 8th Amendment violation. (Helling v McKinney 509 U.S. 25, 34-36 (1993) "The determination of deliberate indifference should be made; "in light of the prison authorities current attitude and conduct." The court noted the prison's adoption of a formal "NO" smoking policy," will bear heavily on the inquiry into deliberate indifference. Allegations of specific and relevant prison regulations creating a liberty interest is necessary element of procedural due process claims. (Cochran v Morris 73 F.3d 1310, 1318 (4th Cir. 1996)

    All Kansas prisons have a "NO" drug, alcohol, tobacco and smoking policy, as well as legislative inacted (KAR) Kansas Annotated Rules; KAR 44-12-903 (tobacco), KAR 44-12-311 (drunkeness); KAR 44-13-312 (drugs) as well as; KAR 44-12-302 (Noise), which should have been enforced by Mr. Park UTM, when White was being tortured by the loud bombardment of radio noise, in White's cell day and night; as well as; S.O.C. policy's IMPP 20-108D (Protect Custody) which Mr. Parks denied White. That all State prisons must operate a protective custody program, in the restrictive housing unit. Giving those prisoners all the same amenities and treatment of the prisoners in general population, in the same custody level.

— Liberty Interest —

B)    White's sworn declaration of an atypical hardship can form the basis for a protected liberty interest. (Taylor v Rodriguez 238 F.2d 188, 195 (2nd Cir 2001) Time wise similar to Whites hardship in; (Colon v Howard 215 F.3d 227, 231-32 (2nd Cir 2000) the court found confinement for 305 days in standard administrative segregation conditions is an atypical and a significant hardship. Also, the court ruled in (Brown v Plaut 131 F.3d 163, 167 (D.C. Cir 1997) the decision to place an inmate in administrative segregation; who has a liberty interest in avoiding such placement, and subject

9.

to limited procedural safeguards; an inmate must merely receive notice of charges against him, must have opportunity to present views, and decision maker must review the evidence.

But, none of this was done for White. White never received any notice of charges, nor were any charges ever made, nor was White ever given any reviews during the 209 days of seg. hold at LCF by Mr. Parks UTM. The ultimate issue of whether a hardship is atypical is one of law. However, where factual circumstances creating the alleged denial of due process are reasonably in dispute, the jury must resolve those facts before the law can be applied. (Sealey v Giltner 197 F. 3d 578, 585 (2nd Cir 1999)

Also, White was not being held in standard administrative seg. conditions. White was being deprived of property and terrorized by Mr. Parks, who kept putting White in danger, by putting the very people, White was requesting protection from in the same cell with White. Mr. Parks, denied White his indigent state pay, TV, purchased food items and U.S. mail stamps, legal papers and legal reference material, while White was self-represented in LYCO 2022 CV 323, denied clothing - made to wear the same jumpsuit for the full 209 days, denied repeatedly the use of the handi-cap shower, denied yard and day room for exercise; denied my shower shoes, tooth brush, and was repeatedly harassed, by the demand for me to be cuffed-up with hands behind my back, for which then, I could not stand or walk or use my cane. Then, if that wasn't bad enough White was almost murdered by strangulation, because Mr. Parks refused me protection and protective custody status and conditions of safety and humane treatment.

C) White alleges Mr. Parks UTM violated White's 8th Amendment right to be free from cruel and unusual punishment: (1) In, atypical conditions of confinement for 209 days at LCF, causing (yet, another 95 days of administrative seg. time at LSCF, for a total of 304 days), without any form of due process or personal seg. reviews, with White present at LCF; (2) after denying White protective custody status, pursuant to IMPP 20-108 D; (3) putting White's health and safety in danger, by putting prisoners in the cell with White, that White was requesting protection from. (4) Then, one such prisoner Jeremey Garza on 7-12-2023, attempted to murder White by strangulation, causing neck and throat injury, sufficiently serious for the need for X-Rays, and the need for White to be transported by ambulance

10.

to KU Hospital on 7-12-2023. (5) Then, directly after the strangulation, while White was seeking help and separation from Mr. Garza, OIC Chapman and Mr. Meredith CC, responded, but refused to help me, until I signed a PC waiver (even though I was "not being held in PC,), and both refused to let me go, or get me medical help. (6) White was then taken to see Mr. Park MTM, who also made sure I signed the PC waiver (under duress) and Mr. Parks also refused to let me go to medical or get me medical help, for the throat and neck injuries.

White alleges this is not only a violation of Constitutional rights, but, also a violation of Whites' Federal statutory rights regarding: (1) mistreatment of an elder person (elder abuse) 34 USC §12291 (14)(A)(B); and (2) whistle blower/victim/witness 18 USC §1513 (b) and; (3) extortion of signature, 18 U.S.C. § 242 - deprivation of rights, under color of law; was enacted to enforce the 14th Amendment; (Screws v United States 325 U.S. 91, 65 S. Ct. 1031, 89 L. Ed. 1495 U.S. (1945) and United States v Perkins 470 F. 3d 150, 2006 U.S. App. (4th Cir. 2006)

## —Deliberate Indifference—

Mr. Parks objective and subjective components of deliberate indifference are: (Williams v Benjamin)

I) Objective Components: (1) atypical conditions of confinement and without due process; (2) mistreatment of an elder person and failure to provide protective custody - IMPP 20-108D; (3) actual physical and mental injury from throat and neck injury from strangulation - failure to protect - imminent danger, (4) denial to immediate medical care after strangulation injury, imminent danger; (5) extortion of signature. (under color of law)

II) Subjective Components: (1) Mr. Parks told White LCF has no Protective custody housing program; (2) Kept putting disciplinary charged, drug users and dealers, in the same cell with White. Even, after I confronted Mr. Parks, that he was putting me in imminent danger. (3) Personally refused White medical care after strangulation; (4) Told White he had to sign a PC waiver to get out of seg. Mr. Parks also made sure I had signed the PC waiver after the strangulation. (5) Intentionally denied White his amenities, reviews, and treatment given to other prisoners, causing an atypical hardship. Tortured by loud radio noise being bombarded into

11.

Whites cell, which should have been stopped pursuant to KAR 44-12-302 (noise) and denied White the legal papers and legal reference material White needed for his self representation of LYCO2022CV323. This has the possibility of causing a dismissal of the Habeas Corpus action and has caused inordinate delay of the legal service of the Writ on the defendant S.O.C. Jeff Zmuda. (6) Intentionally denied White his indigent state pay, yard and day room for exercise. (7) Refused to help White from the unnecessary pain caused from being repeatedly forced to be cuffed up, with hands behind back. This made it impossible for White to stand up or walk, or use cane. (8) Intentionally tortured White, to coerce White into signing a P.C. waiver. (9) Mr. Parks denied White day room and yard, locked down 24 hours a day, 7 days a week, (except at most 10 minutes, 3 days a week to shower)

## — Relief Sought - COUNT II - Mr. Andrew Parks —

(A) White is asking for a $1.00 Nominal award, (Searles v Von Bebber) and

(B) White requests $50,000 Compensatory award, (for pain and suffering; lose of property, damages and costs,)(mental and physical)

(C) White requests $25,000 Punitive damages award, (for Federal and constitutional violations and illegal acts regarding prisoner rights, whistleblower, elder abuse - mistreatment of an elder person, and extortion, or whatever, the court makes findings and that are legal, fair and equitable.)

## — COUNT III - Mr. Meredith CC and Officer Chapman —

Prison officials have a duty to protect inmates from violent treatment by other guards and to restore "control over a tumultuous cell block". (Smith v Mensinger 293 F.3d 641, 650-51 (3rd Cir 2002). This is an 8th Amendment claim for White against Mr. Meredith CC and O1C Chapman, each individually; because they both refused to help White in his torture, from his atypical seg, hold, for which White alleges they both participated and were a part of it. This then could indicate "deliberate indifference because of their state of mind of prison officials indicated recklessness in "criminal law sences" (they both had and)" requiring actual knowledge of impending harm, easily preventable." (Des Rosiers v Moran 949 F.2d 15, 19 (1st Cir 1991). Both Mr. Meredith CC and O1C Chapman had actual knowledge that White had been assaulted

by Mr. Garza on 7-23-2023 (not impending), but refused to help me, or separate us, until after I signed a PC waiver. This issue states an 8th Amendment claim because factual dispute existed about the scope of prison officials duties after inmate alleged awareness of impending attack by fellow prisoner. (Giroux v Somerset County 178 F.3d 28,34 (1st Cir 1999)

But again, Both individually and separately, commonly knew, White, was requesting protection from other prisoners, and knew that White, had individually requested help from both, even after the attack, when it was no longer impending. Further, the court found in; (Ashley v Dilworth 147 F. 3d 715, 717 (8th Cir. 1998) imminent danger exception was satisfied when prisoner seeking injunction was confined with others on enemy list.

A) All these elements clearly satisfy the subjective component of deliberate indifference, and upon the courts findings may lead to "criminal intent" of abuse of an elder person and whistleblower and extortion of signature.

B) Where the objective component is satisfied by the actual injuries itself and the fact that both never made a trouble call to other officers, or contacted medical.

In fact, both individuals denied White medical help, and insisted, that I needed to see Mr. Parks UTM. In; (Hunt v Uphoff, 199 F. 3d 1220, 1222 (10th Cir, 1999) imminent danger exception was satisfied when alleged failures to provide adequate medical care for serious condition.

White retains his 8th Amendment right to be free from cruel and unusual punishment as a prisoner of the State of Kansas (Lawrence v Bowersox 297 F. 3d 727, 731 (8th Cir 2002) and; deliberate indifference by prison officials to a prisoners serious injury or illness may constitute cruel and unusual punishment in violation of the 8th Amendment. (Estelle v Gamble, 429 U.S. 97, 104-05 (1976)

— Relief Sought — COUNT III — Mr. Evan Merediths and · Officer In Charge – Officer Bruce Chapman

(A) White is asking for a $1,00 Nominal award (Searles v Von Bebber) and
(B) White requests $15,000 compensatory award (for pain and suffering; lose of property, damages, and costs) (mental and physical) from each party, individually.
(C) White requests $10,000 Punitive damages award; (for federal and Constitutional violations and illegal acts regarding prisoner rights, whistle —

blower, elder abuse - mistreatment of an elder person, and extortion, or whatever the court makes findings And that are legal, fair and equitable) from each party, individually.

White prays this showing of cause is sufficiently prepared and presented, to satisfy the court, that all the counts and issues presented, be allowed to proceed to a jury trial, if the courts finds that it is needed for discovery, regarding any disputed facts.

Respectfully Submitted; by s/ Bobby White #76983
                                                    Pro Se.

Date: March 18, 2024

                              Bobby White #76983
                              Larned State Correctional Facility
                              1318 KS., Highway 264
                              Larned, Kansas 67550

14.