## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BOBBY BRUCE WHITE,**

      **Plaintiff,**

      **v.**                           **CASE NO.  24-3023-JWL**

**ANDREW PARKS, et al.,**

      **Defendants.**

## MEMORANDUM AND ORDER TO SHOW CAUSE

Plaintiff Bobby Bruce White is hereby required to show good cause, in writing to the undersigned, why his First Amendment, Eighth Amendment, due process and elder abuse/whistleblower claims should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein. Plaintiff is also given the opportunity to file a second amended complaint to cure the deficiencies.

### I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983. Although Plaintiff is currently in custody at the Larned State Correctional Facility in Larned, Kansas ("LSCF"), his claims arose during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF"). The Court granted Plaintiff leave to proceed in forma pauperis. On February 22, 2024, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC") directing Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC or to file an amended complaint to cure the deficiencies. This matter is before the Court on Plaintiff's response (Doc. 5) and Amended Complaint (Doc. 6). The Court's screening standards are set forth in the MOSC.

Plaintiff alleges as Count I of his Amended Complaint that his right to freely practice his religion and his equal protection rights were violated by Defendant Spillman.  Plaintiff alleges that Spillman took Plaintiff out of the KDOC/BIBR Group 65 program after Plaintiff had successfully completed one-third of the program.  (Doc. 6, at 4.)  Plaintiff alleges that he was removed from the program without due process because he could not condone, nor agree for religious purposes, with the consensus of the other members of the group regarding a discussion over the legalization of drugs.  *Id*.  Plaintiff alleges that this was his "Whistle Blower" attempt "to get the blatant, unchecked, illegal drug, alcohol, tobacco, and environmental smoke (ETC) and threats [sic] problems caused by drug users/dealers at (LCF) Lansing Correctional Facility stopped."  *Id*. at 5.

As Count II, Plaintiff alleges that Defendant Parks violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when Parks denied Plaintiff immediate medical care on July 12, 2023, and violated Plaintiff's "federal statutory rights as an elder person/victim/whistle blower through failure to protect and retaliation between 3-28 and 10-23-2023."  *Id*. at 4.  Plaintiff alleges that Parks placed Plaintiff in restrictive housing for 209 days at LCF without any due process or personal reviews.  *Id*.  Plaintiff alleges that he was denied yard, day room, personal property, shower shoes, toothbrush, legal papers, and legal reference materials.  *Id*.  Plaintiff alleges that he was denied clothing and was made to wear the same jumpsuit for 209 days, denied use of the handicap shower, and was repeatedly cuffed up with his hands behind his back even though he could not walk or use his cane.  *Id*. at 5.  Plaintiff alleges that he was tortured by being placed with violent prisoners, and by loud noise being blasted at all times of the day and night.  *Id*.

Plaintiff alleges that Parks continued to put drug users/dealers in the same cell with Plaintiff, and Parks told Plaintiff if he wanted out of segregation, he had to sign a PC waiver.  *Id.* at 6.  Plaintiff alleges that on July 12, 2023, Plaintiff was assaulted by another inmate who was placed in the cell with Plaintiff.  The inmate told Plaintiff he was a convicted drug dealer/user, BIBR member, who was in segregation for "checking out his last cell mate."  *Id.*  Plaintiff alleges that after the assault, Parks decided to move Plaintiff back to general population. Plaintiff alleges that when he requested medical help, Parks refused.  Plaintiff alleges that he was able to get medical help two hours later at the LCF clinic.  The clinic then transported Plaintiff by ambulance to the KU Hospital.  *Id.*  Plaintiff alleges that when he returned from the hospital, he was not placed back in general population and was instead placed back in a segregation cell under Parks' supervision.  Plaintiff was transferred to LSCF on October 23, 2023.  *Id.*

As Count III, Plaintiff alleges that Defendants Meredith and Chapman subjected Plaintiff to cruel and unusual punishment when they denied him immediate medical care for his throat and neck injuries sustained when he was assaulted by his cell mate.  *Id.* at 7.  Plaintiff alleges that he received neck and throat injuries when his cell mate strangled him, and Defendants refused to help Plaintiff until he signed a PC waiver, even though Plaintiff was not held under PC.  Plaintiff alleges that he did sign the waiver, but placed "under duress" and "being attacked by cell mate" on the form.  *Id.* at 6.  Plaintiff told Meredith and Chapman that he needed to see medical, but they told him he needed to see Parks first.  *Id.*  Plaintiff claims that after he signed the PC waiver, Chapman took both Plaintiff and his cell mate to separate holding cells.  About an hour later, Chapman took Plaintiff to see Parks.  *Id.*

Plaintiff names as defendants:   Andrew Parks, Unit Team Manager at LCF; Evan Meredith, Unit Team Supervisor at LCF; Bruce Chapman, Corrections Supervisor at LCF; and

Gary Spillman, BIBR Staff Counselor at LCF.  Plaintiff's request for relief seeks: nominal damages; punitive damages; compensatory damages for pain and suffering; and prospective injunctive relief ordering that "[t]he Kansas Parole Board will not deny White parole on or after 3-27-2027 because of lack of program credits and during the time, found by court, of a violation by the KDOC/State of Kansas/Mr. Spillman of White's constitutional rights."  *Id*. at 8.

## II.  DISCUSSION

### 1.  Medical Care

Plaintiff alleges that he was denied medical care for two hours after his cell mate assaulted him.  The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment.  "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component.  *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted).  In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted).  A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

 "The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209).  In measuring

a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

A mere difference of opinion between the inmate and prison medical personnel regarding diagnosis or reasonable treatment does not constitute cruel and unusual punishment. *See Estelle*, 429 U.S. at 106–07; *see also Coppinger v. Townsend*, 398 F.2d 392, 394 (10th Cir. 1968) (prisoner's right is to medical care—not to type or scope of medical care he desires and difference of opinion between a physician and a patient does not give rise to a constitutional right or sustain a claim under § 1983).

Plaintiff does not dispute that he received medical care, but he alleges that there was a two-hour delay. Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

Plaintiff has failed to allege that the delay caused substantial harm. Plaintiff has failed to show that a named defendant disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference. Plaintiff should show good cause why his Eighth Amendment claim based on the delay in receiving medical care should not be denied.

## 2.  Freedom of Religion

Plaintiff alleges that his right to freely practice his religion and equal protections rights were violated by Defendant Spillman when he removed Plaintiff from the KDOC/BIBR Group 65 after Plaintiff had successfully completed one-third of the program.  Plaintiff acknowledges that he became involved in an argument with the other members of the group regarding a discussion over the legalization of drugs.  Plaintiff alleges that he could not condone, nor agree for religious purposes, with the consensus of the other members of the group.

Plaintiff has failed to allege how his dismissal from the program denied him the right to freely practice his religion.  "Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs."  *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir. 2012); *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205 (10th Cir. 1999).  In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs."  *Gallagher*, 587 F.3d at 1069.  In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."  *Id.* at 1070.  "If the prisoner satisfies this initial step, 'defendants may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'"  *McKinley*, 493 F. App'x at 932 (citation omitted).  The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.*  The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held

religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010, unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316) (10th Cir. 2010)).   In *Strope*, the Tenth Circuit reasoned as follows:

Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id*. at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim).   We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321).   In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

Plaintiff was not required to participate in the program, nor was he prevented from participating in conduct motivated by a sincerely held religious belief.   He was merely dropped from a program in which he disagreed with other members in a discussion regarding the legalization of drugs.   Plaintiff has failed to show how this imposed a substantial burden on his religious exercise.   Plaintiff should show good cause why this claim should not be dismissed.

### 3. Due Process

#### A. Removal from the KDOC/BIBR Group 65 Program

The Due Process Clause protects against "deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the

Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Id*. (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

The option to participate in a rehabilitative program is a privilege, not a right. *See Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 748 (10th Cir. 2013) (unpublished) (citations omitted). These programs, "in themselves, do not implicate constitutional concerns." *Ruppert v. New Mexico Dep't of Corr.*, 625 F. App'x 820, 823 (10th Cir. 2015) (unpublished). Although constitutionally protected interests may sometimes arise from state law[,] . . . state law can create a protected interest only by imposing 'substantive limitations on official discretion.'" *Id*. (citing *Olim v. Wakinekona*, 461 U.S. 238, 249 (1983)). Plaintiff has pointed to no interest created by state law that imposes substantive limitations on KDOC officials' discretion in determining participation in the program at issue—the KDOC/BIBR Group 65 Program. As noted in the Court's MOSC, BIBR appears to stand for Brothers in Blue Reentry and Plaintiff referred to it as a rehabilitation program. (Doc. 4, at n.1.) Plaintiff should show good cause why any due process claim regarding his termination from the program should not be dismissed for failure to state a claim.

**B. Restrictive Housing**

Plaintiff also claims that his time in restrictive housing constituted "atypical conditions of incarceration." (Doc. 6, at 2.) Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . .

. nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).  Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard. *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose").  "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)).  Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life.  *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Plaintiff alleges that Defendants failed to protect him. "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'" *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)). This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted). To prevail on a failure to protect claim, a plaintiff must show: "(1) 'that the conditions of [her] incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'" *Requena*, 893 F.3d at 1214 (citation omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id.*

(citing *Marbury*, 936 F.3d at 1238).  Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

Plaintiff was placed in restrictive housing and was only allowed back in general population after he signed a Protective Custody waiver.  It is unclear whether or not Plaintiff was in restrictive housing for his protection or for some other reason.  Plaintiff alleges that Parks continued to put drug users/dealers in the same cell with Plaintiff, and Parks told Plaintiff if he wanted out of segregation, he had to sign a PC waiver.  Plaintiff alleges that on July 12, 2023, Plaintiff was assaulted by another inmate who was placed in the cell with Plaintiff.  Plaintiff fails to allege that he relayed any specific threats to Defendants or that Defendants were aware of a strong likelihood that Plaintiff's cell mate would attack him.  *See Gray v. Sorrels*, 744 F. App'x 563, 571 (10th Cir. 2018) (unpublished) (finding allegations of failure to protect too conclusory to establish personal participation and failure to allege specific content of emails); *see also Leonard v. Lincoln Cty. Bd. of Comm'rs*, 790 F. App'x 891, 894 (10th Cir. 2019) (unpublished) (finding plaintiff's general request and grievance did not put jail officials on notice that he was at risk of being assaulted).  Plaintiff alleges that when he returned from the hospital, he was not placed back in general population and was instead placed back in a segregation cell under Parks and was transferred to LSCF on October 23, 2023.  *See* Doc. 5, at 1 ("It is White's understanding the transfer was for White's protection.")

Plaintiff should clarify in his second amended complaint whether or not he was aware of a threat from his cell mate and if so, whether he relayed that information to staff.  He should also clarify whether or not he was in restricted housing for his protection or for some other reason. He should clarify if he is alleging that his placement in in restricted housing was retaliatory.

### 4. Retaliation

Plaintiff alleges that his expulsion from the KDOC/BIBR Group 65 Program was done in retaliation for filing grievances. Plaintiff alleges that Spillman and others were angry because Plaintiff submitted a grievance and was preparing to file a K.S.A. 60-1501 Habeas Corpus in Leavenworth County District Court.  (Doc. 6, at 5.)  Plaintiff alleges that he filed his state habeas on December 12, 2023, and Spillman removed Plaintiff from the program on March 28, 2023. Plaintiff alleges that Spillman removed him from the program despite assurances from others that Plaintiff would be placed in the next group session.  *Id*.  Plaintiff alleges that Hearing Officer Leichliter told Plaintiff that Spillman told Leichliter that Spillman kicked Plaintiff out of the program because Plaintiff submitted a grievance and filed a legal action in court.  *Id*.

"[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper."  *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted).  The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements:  (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights."  *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted).  Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory.   Mere allegations of

constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)). Plaintiff's retaliation claim is not subject to dismissal at the screening stage.

### 5. Elder Abuse/Whistleblower

Plaintiff alleges that he has been subjected to elder abuse, citing 34 U.S.C. § 12291(14)(A) and (B). This statute is a criminal statute and does not provide for a private cause of action. *See Gibbs v. N.H. Dep't of Corr. Comm'r Helen Hanks*, 561 F. Supp. 3d 139, 150 (D. N.H. 2021) (finding that cited provisions of the statute regarding the definition of elder abuse appear in a federal statute that authorizes grants and embodies provisions relating to the prevention of violence against women, "that statute does not provide plaintiffs with a cause of action pertinent to the issues here") (citing *cf. Malouf v. Benson*, No. 17-10941-LTS, 2018 U.S. Dist. LEXIS 232207 at *6, 2018 WL 10155427, at *3 (D. Mass. Aug. 23, 2018) (neither definition of "child maltreatment" in 34 U.S.C. § 12291, nor Violence Against Women Act, creates private right of action)).

Plaintiff also cites 18 U.S.C. § 1513(b), (d), (e) and (f), alleging he is a whistleblower. Again, this is a criminal statute dealing with obstruction of justice and retaliation against a witness, victim, or an informant. "A private right of action is not recognized under this criminal statute." *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009) (citation omitted); *see also Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (finding that various federal criminal statutes "do not provide for a private right of action and are thus not enforceable through a civil

action") (citing *see United States v. Claflin,* 97 U.S. 546, 547, 24 L.Ed. 1082 (1878) ("That act contemplated a criminal proceeding, and not a civil action. . . . It is obvious, therefore, that its provisions cannot be enforced by any civil action. . . ."); *Schmeling v. NORDAM,* 97 F.3d 1336, 1344 (10th Cir. 1996) ("[W]e find no evidence that Congress intended to create the right of action asserted by Schmeling, and we conclude that such a right does not exist.")).  Plaintiff should show good cause why any claim he asserts under the cited statutes should not be dismissed.

### 6.  Request for Injunctive Relief

Plaintiff seeks to have the Court prohibit the Parole Board from denying Plaintiff parole due to the lack of program credits and to consider any credits Plaintiff was denied due to his expulsion of the program as earned credits.  "Prisoners only have a constitutionally protected liberty interest in good time credits (i) that they have already earned or (ii) that are mandatory; they are not entitled to unearned good time credits that are discretionally awarded."  *Green v. Martinez*, 2024 WL 1134091, at *5 (D. N.M. March 15, 2024) (citing *see Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) ("denying a prisoner mandatory earned time credits—*i.e.*, those to which he has some entitlement—would deprive him of a liberty interest if those credits advance his mandatory date of release on parole. However, where . . .  the credits are discretionally awarded, the defendants have not deprived [the prisoner] of any earned time to which he was entitled and thus no liberty interest was involved."); *see also Stine v. Fox*, 731 F. App'x 767, 770 (10th Cir. 2018) (unpublished) (explaining that where good-time credits are discretionally awarded, "the defendants have not deprived the prisoner of any earned time to which he was entitled" and thus no liberty interest is involved) (quoting *Fogle*, 435 F.3d at 1262); *cf. Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994) (recognizing that a statute

which states "the department . . . *shall* grant . . . an earned time deduction" might implicate the mandatory rule) (emphasis added)).

"Because there is 'no constitutional or inherent right to receive parole,' federal law does not create a liberty interest in parole." *Love v. Schnurr*, 2024 WL 748990, at *3 (10th Cir. Feb. 23, 2024) (unpublished) (citing *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994)). "[T]he Kansas parole statute does not create a liberty interest as would be required to maintain a due-process claim." *Id*. (citing *Heath v. Norwood*, 772 F. App'x 706, 708 (10th Cir. 2019) (unpublished) (citing *Gilmore v. Kansas Parole Bd.*, 756 P.3d 410, 415 (Kan. 1988)).

Plaintiff provides no legal support for his request that the Court order injunctive relief prohibiting the Parole Board from denying parole or requiring the Parole Board to consider unearned credits.  Other courts have held that an injunctive order directed at the parole board would not be binding. In *Zavertnik v. Misel*, the court held that "[a] preliminary injunction is binding only upon the parties to the action," and "an order for [a] preliminary injunction would not be binding, and therefore would be unenforceable, on the parole board." *Zavertnik v. Misel*, 2008 WL 2783489, at *8 (D. Colo. 2008).

## IV.  Response and/or Amended Complaint Required

Plaintiff is required to show good cause why his First Amendment, Eighth Amendment, due process, and elder abuse/whistleblower claims should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.  Plaintiff is also given the opportunity to file a complete and proper second amended complaint upon court-approved forms that cures all the deficiencies discussed herein.

To add claims, significant factual allegations, or change defendants, a plaintiff must submit a complete amended complaint.  *See* Fed. R. Civ. P. 15.  An amended complaint is not

simply an addendum to the original complaint, and instead completely supersedes it.  Therefore, any claims or allegations not included in the amended complaint are no longer before the court. It follows that a plaintiff may not simply refer to an earlier pleading, and the amended complaint must contain all allegations and claims that a plaintiff intends to pursue in the action, including those to be retained from the original complaint.

Plaintiff must write the number of this case (24-3023-JWL) at the top of the first page of the second amended complaint and must name every defendant in the caption of the second amended complaint.  *See* Fed. R. Civ. P. 10(a).  Plaintiff should also refer to each defendant again in the body of the second amended complaint, where Plaintiff must allege facts describing the unconstitutional acts taken by each defendant including dates, locations, and circumstances. Plaintiff must allege sufficient additional facts to show a federal constitutional violation. Plaintiff is given time to file a complete and proper second amended complaint in which Plaintiff (1) raises only properly joined claims and defendants; (2) alleges sufficient facts to state a claim for a federal constitutional violation and show a cause of action in federal court; and (3) alleges sufficient facts to show personal participation by each named defendant.

If Plaintiff does not file a second amended complaint within the prescribed time that cures all the deficiencies discussed herein, Plaintiff's First Amendment, Eighth Amendment, due process, and elder abuse/whistleblower claims may be dismissed without further notice for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff is granted until **May 30, 2024,** in which to show good cause, in writing to the undersigned, why Plaintiff's First Amendment, Eighth Amendment, due process, and elder abuse/whistleblower claims should not be dismissed due to the deficiencies in Plaintiff's Amended Complaint that are discussed herein.

**IT IS FURTHER ORDERED** that Plaintiff is also granted until **May 30, 2024**, in which to file a complete and proper second amended complaint to cure all the deficiencies discussed herein.

The Clerk is directed to send § 1983 forms and instructions to Plaintiff.

**IT IS SO ORDERED**.

**Dated April 30, 2024, in Kansas City, Kansas.**

<u>**S/  John W. Lungstrum**</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**

17