UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bobby Bruce White, Plaintiff

CASE No: 24-3023-JWL

vs.

Second-Amended
Civil Rights Complaint
Pursuant to: 42 U.S.C.S 1983

Spillman, Parks, Meredith
and Chapman        Defendants

Plaintiff's-Showing of Cause and Response to MOSC (4-30-2024)
— Prologue —

Bobby White #76983 Now, gives his showing of cause, of why White's §1983 civil rights claim should be allowed to proceed; before a jury, and for the courts judicial findings, because of the substantial injury, harm and pain. White has suffered substantial harm both physically and mentally, because of conspiracy, discrimination, retaliation and actual substantial injury to White's throat, neck and back from being assaulted and strangled on 7-12-2023. This was caused by the (LCF) Lansing Correctional Facility employees, acting under color of law, violating White's, elder person, state dependent prisoner, Constitutional civil rights through cruel and unusual punishment, inhumane and terroristic treatment from the excessive, blantant, and unchecked, drug, tobacco, smoke and alcohol problem by LCF staff, gang/drug users and dealers at LCF.

The time period for this §1983/§1985 civil complaint is between 10-5-2022 through 10-23-2023, while White was at LCF. White sub-mitted grievance #AA2023056 (Count 1) on 10-5-2022, which ultimately "but for" caused further violations of Constitutional rights and Federal law, which includes but not limited too: (1) placement, under less than disciplinary like conditions of restrictive "Atypical" segregation "under investigation ??", without due process or reviews. White asserts in retaliation for White's insistence of my health and safety being put in danger of future harm, because of the excessive drugs, tobacco, smoke problem and from LCF staff, gang, drug user, dealers, at LCF.

1.

(2) which led up to White's alleged assault and attempted murder by strangulation on 7-12-2023 and then; (3) the transfer of White from LCF to (LSCF) Larned State Correctional Facility on 10-23-2023 for White's protection.

White respectfully does "NOT" abandon any and all the issues at question by the reviewing court for dismissal regarding the: First Amendment, Eigth Amendment, due process and elder abuse / whistle-blower claims, and preserve them for appeal, if they are summarily dismissed without investigation and discovery evidentiary hearing.

These are all relevant factors for White's equal treatment, due process and protection rights, because of White's age, disability and dependent circumstances of care for the protected class and under served population, recognized by Congress; state and Federal statutes for the need of protection, the (whistle-blower) and elder person protection Acts.

White is not formally seeking any specific monetary award or legal enforcement of any criminal statutes of these protected classes in this civil action for punitive damages. [Any charges for any found / discovered criminal acts found through discovery and judical findings, is to be left to the discretion of the court (and jury), as a mandated reporter and as Judicial Cannons dictate.] White is merely asserting his valid equal treatment and protection of the law, Constitutional and Federal rights to be free from cruel and unusual punishment, to humane treatment, as an elder person and state prisoner (whistle-blower) to class protection from excessive and substantial physical and mental abuse, discrimination, and retaliation; regarding the KDOC/LCF failure to keep drug; tobacco, smoke and alcohol out of LCF, as required by law.

White asserts these protected classes have relevant association to: justice, and civil statutes issues, relevant to show the objective and subjected components of deliberate indifference and substantial harm and to rectify pre-existing moral and physical inhumanities, relevant to the Constitution, life, liberty and property and to civil rights statutes: 18 U.S.C § 241 § 242 (Heyn v Board of Supervisors, 41 T F. Supp. 603 1976 U.S. DIST. § 1985)

(a) 42 U.S.C § 1985 was not intended to apply to all tortious interference with rights of others, but only those which were found upon some racial, or perhaps other class-based invidiously discriminatory animus. Briley v California, 564 F. 2d 849, 1977 U.S. App. (9th Cir. 1977)

2.

It is discrimination to exclude the protected class of elder persons to rights that are allowed by juveniles and persons of race or color, who do not lose their class protection, upon becoming a prisoner.

(b) 42 U.S.C. § 1985 was not designed to furnish relief for every injury, original intent of section was to provide black persons equal protection of law of the U.S. and to rectify pre-existing moral and physical inhumanities. Heyn v Board of Supervisors, 417 F. Supp. 603, 1976 U.S. Dist.

(c) Under 18 USCS App x § 2A2.2 strangling have the meaning given those terms in 5 (i) 18 USC § 113 (b)(4) the term "strangling" means intentionally, knowingly, or recklessly impeding the normal breathing or circulation of the blood of a person by applying pressure to the threat or neck, regardless of whether that conduct results in any visible injury or whether there is any intent to kill or protractedly injure the victim. (2) 18 USC § 113 (b)(i)(B) the term "substantial bodily injury" means bodily injury which involves- (B) a temporary but substantial loss or impairment of the function of any bodily member, organ or mental faculty.

(d) (i) 18 USCS § 241 Conspiracy against rights is a Federal law relevant to civil rights of any person in the free exercise or enjoyment of any right or privilege secured [to White] by the Constitution or laws of the U.S., or because of his having exercised the same. [This is relevant to mens rea and deliberate indifference showing to, "or an attempt to kill" needing to be discovered by investigation and discovery, before a jury, for Whites proving of the subjective and objective components of deliberate indifference and conspiracy. (2) 18 USCS § 242 Deprivation of rights under color of law, is a Federal law, relevant to civil rights of any person, to prevent the deprivation of any rights, privileges, or immunities secured or protected by the Constitution or laws of the U.S., and if bodily injury results from the acts committed, or an "attempt to kill", which needing to be discovered by investigation and discovery before a jury. 18 U.S.C.S. § 242 "extortion [of White's signature, to sign a PC Waiver (under duress) White alleges, was enacted to enforce the Fourteenth Amendment. Screws v United States, 325 U.S. 91, 65 S. Ct. 1031, 89 L. Ed 1495 U.S. (1945), also sees United States v Perkins 470 F. 3d 150, 2006 U.S. App. (4th Cir. 2006)

I. Plaintiff's corrections of mistakes of allegations in "MOSC" record.

3.

under: I. Nature of Matter before the Court.

1. Page(2), para(1) "Plaintiff alleges that this was his "whistle-blower" attempt." should read; "Plaintiff alleges that this was [ part of Whites] "whistle-blower attempt ..." (as was submitted)

2. Page(3), para(1), 5th sent: "Checking out his last cell mate ..."; should be as submitted; "Chocking out his last cell mate ..."; that's chocking as in strangle; same as he did to White.

3. Page(3); para(1), 8th sent: "help two hours latter ...", should be as submitted, "help [over] two hours later ..."

4. Page(12); para(1) 5th sent: "... state habeas on december 12,2023" should be (December 12, 2022), (case was filed before Spillman removed Plaintiff)

## II. Plaintiff's response to "MOSC"

The courts must hold a pro se complaints to a less stringent standards than formal pleadings when determining whether they state a cause of action. A pro se complaint should not be dismissed for failure to state a claim, unless it appears beyond a doubt that plaintiff can prove no facts in support of claim that would entitle the plaintiff to relief. Haines v Kerner 404 U.S. 519, 520-21 (1972); see e.g. Weixel v Board of Educ. of New York, 287, F. 3d 138; 145-46 (2nd Cir, 2002) When considering motion to dismiss a pro-se complaint ... court must construe [the complaint] broadly and interpret [it] to raise the strongest arguement that [it] suggests.

The courts has held that a municipality may be liable for damages under §1983 for violations of federal law that occur pursuant to an official government policy or custom. Under; Lopez v. Le Master, 172 F. 3d 756, 761 (10th Cir 1999) The inmate must show that deficiency caused jailer to act with deliberate indifference. White alleges the City of Leavenworth, Kansas, thru Leavenworth County Dist. Court should be held liabal for not providing White protection in case LV CO 2020 CV 243 and not providing Justice without delay at Kansas Bill of Right for not promptly granting White's filed "Motion for Protection", which has not been addressed, in violation of 30 day rule.

An inmates §1983 claim against one correctional facility does not become moot because he or she is later transferred to another facility. see e.g. Boag v Mac Dougal, 454 U.S. 364, 364-65 (1982) This is relevant to Whites transfer from LSH to LSCF and White's

4.

Protective Custody status given to White by EAI at LCF, should have been transferred with White to LSCF, or else White should have immediately been placed in general population. White should not have again been held another 95 days in seg. at LSCF, without due process, or reason given for White's hold in seg.

## 1. Medical Care

1) (A) Medical Care: "Plaintiff has failed to allege that the delay caused substantial harm." 2.) (B) Plaintiff has failed to show that a named defendant disregarded an excessive risk to his health or safety or that they were both aware of facts from which the inference could be drawn that a substantial risk of serious harm existed, and also drew the inference."

Plaintiff's response: 1.) Medical Care

\# 1) (A) White alleges he was denied any and all medical help (care), when White specificly requested medical help to; Mr. Parks UTM, Mr. Meredith UTS, and Co Chapman personally; for serious and substantial bodily injury (18 U.S.C. § 113), to throat, neck and back, and considerable harm, physical and mental pain and suffering, caused by their denial and failure to protect an elder person/state prisoner, because of and from the aggravated assault (18 U.S.C. Apx. § 2A2.2) and strangling (18 U.S.C. § 113) of White by Jeremey Garza on 7-12-2023.

\# 2) (B) White alleges he had to personally initiate his own medical care through a different unit officer, more than (2) two hours after the assault. White alleges the denial to medical care by Mr. Parks UTM, Mr. Meredith UTS and Co Chapman was done because of deliberate indifference to White's 'imminent danger', health and safety and through the acts of "evil motive" from conspiracy to extort (18 U.S.C.S. § 242) White's signature on a Protective Custody Waiver an 8th Amendment cruel and unusual punishment and denial to medical care violation), and for because of a lack of adequate training and/or KDOC policy or custom. (Lopez v Le Master)

(3) White alleges he suffered from scraps, scratches, nail gouges, bruises, could barely speak with great pain, throat swelling and considerable/substantial throat, neck and back pain. White was X-ray at the LCF clinic, then rushed by ambulance to KU Hospital.

At the KU Hospital, White was treated and monitored for additional swelling in throat, that had the potential to cut off breathing. Pictures were taken of the throat and neck injuries by the hospital staff for the record of the injuries and needs to be acquired and admitted as evidence of the substantial harm, pain and suffering, White suffered.

White has "NO" difference of opinion, at this time, between me and medical regarding diagnosis or reasonable treatments. White has not included anyone from medical as a defendant. White still has considerable pain in his neck and upper back and chocks easily now, at times when eating.

(4) White alleges this swelling around throat and the delay in medical care was an unacceptable, excessive risk to White's health and safety, as it could have easily led to suffocation and death. White has repeatedly claimed [alleged] in his accounts, complaints, appeals and responses that he personally asked (begged) Mr. Parks, Mr. Meredith, and Co Chapman, upon arriving before each person, repeatedly, I needed medical help. But, was denied by each. Each individual could easily see the scraps and bruising developing on and around my throat, and I could barely speak, because of the swelling and pain.

(5) White alleges that the KDOC/LCF segregation unit authorities of Mr. Parks, Mr. Meredith, and Co Chapman conspired together with reckless and callous disregard for White's safety and health, Constitutional rights, as well as State and Federal law for dependent adult prisoners and elder abuse in violation of the 8th and 14th Amendment and State created liberty interest K.S.A. 21-5909 and K.S.A. 42-5416 mistreatment of a confined person and 18 USC §§1514 civil action to restrain harassment of a victim or witness, 42 USC§1985, 18 USC's §241, 242.

Public officials are presumed to be aware of the law governing their conduct. The court should apply the objective standard in assessing that prison personnel should know [that medical should be called, the instant a prisoner has been injured from strangulation and with throat and neck injury], Crawford v El Britton, 523 U.S., 574, 590-91 (1998). Public officials can not rely on ignorance of even the most

6.

esoteric aspect of law to avoid liability. The reasonableness standard is determined "under settled law in the circumstances." Long v Norris, 929 F.2d 1111, 1115 (6th Cir 1991)

The Police as well as Correctional Officers are not allowed to use strangle/chock holds; so why would it ever be reasonable to allow or be acceptable and not dangerous for a militarily trained prisoner, to use it on another prisoner? Has the authorities not learned anything by the death of George Floyd?

The extreme seriousness of this can be easily seen through the relevant state created liberty interest of statutes:

(a) K.S.A. 21-5402 "Murder in the first degree", (c) As used, in this section, an "inherently dangerous Felony", means; (1)(y) mistreatment of a dependent adult or mistreatment of an elder person, as defined in [K.S.A. 2017 Supp. 21-5417]

(b.) K.S.A. Supp. 21-5417 (a) mistreatment of a dependent adult or an elder person ... is, 1) Infliction of physical injury, unreasonable confinement or unreasonable punishment upon a dependent adult or an elder person. (A) Undue influence, coercion, harassment, duress, deception, false representation, false pretense or without adequate consideration to such dependent adult or elder person. 3) Omission or deprivation of treatment, goods, services, that are necessary to maintain physical or mental health of such dependent adult or elder person.

(e)(3) "Elder person" means a person 60 years of age or older

(c) also see: K.S.A. 42-5416 mistreatment of a confined person; (a) mistreatment of a confined person is knowingly abusing, neglecting or ill-treating any person, who is confined or confined by any law enforcement officer or by any person in charge of, or employed by the owner or operator of any correctional institution. and;

(d) K.S.A. 21-5907 Intimidation of a witness or victim; aggravated intimidation of a witness or victim. (c) causing a civil action to be filed and prosecuted and assisting in its prosecution.

These state laws create a state supported liberty interest, and they are comparable to 34 U.S.C.S § 12291 (14) Elder abuse (Definition) and applies to "a person" (not just women) and is applicable to: 42 U.S.C.S § 1983, § 1985; 18 U.S.C.S § 241, 242; 8th and 14th Amendment.

White's physical disabilities condition, age and need for elder protection rights from cruel and unusual punishment from the

7.

deliberate indifference of KDOC-officials and staff, do not just
disappear because White is a state prisoner. The same as it does
not for juveniles and people of race or color, do not lose their
protected class distinction and protection rights. This is the very
issue applicable to 42 U.S.C.J. § 1985" to rectify pre-existing moral
and physical inhumanities (Heyn v Board of Supervisors) and other
class-based invidiously discriminatory animus (Briley v California),
and gives White State sponsored and created liberty interest.
Wilkinson v Austin, 545 U.S. 209, 22) (2005)

## 2. Freedom of Religion.

A)(1) Freedom of Religion: "Plaintiff has failed to allege how his dismissal
from the program denied him the right to freely practice his religion.

Plaintiff's response: (BIBR) Brothers in Blue Re-entry
A) White alleges his dismissal from the KDOC/BIBR Groups 65 denied
him the right to freely practice his religion because: "but for" It
ultimately (Braughman v Saffle-"MDSC" page 13) caused White to have to
protect himself from "imminent danger" from drug/user, dealers and
some BIBR members, thus, causing White's placement in "atypical"
conditions of confinement in restrictive housing; and causing the
denial of White his liberty interest right to freedom of attending
worship, Bible study group and fellowship with his Protestant
Christian brother at the Sunday and Wednesday church services in
the LCF prison chapel; and have regular access to the Chaplain and
volunteer clergy, which is practiced and enjoyed by other general
population prisoners in relation to the ordinary incidents of prison
life. This issue has been addressed by the KDOC/S.a.C. Secretary of
Corrections policy under IMPP 20-101 A (IV) Access to Programs and
Services and staff visits to Restrictive Housing Units (1) and (2),
which was denied to White.

B)(2) Freedom of Religion: "A prisoner must allege that defendants
"substantially burdened his sincerely held religious beliefs."

B) Plaintiff's response: (see: A) above and;) White alleges that Mr.
Shipman substantially burdened his sincerely held religious belief that

8.

true Christian believers in our Lord and Savior Jesus Christ should never condone, lead astray, or even look the other way, causing directly or indirectly others to stumble and sin, often which may even causing deaths, by the abuse and misuse of drugs. (Referencing the MacArther Study Bible, under Matthew 18:7, MARK 9:42 and LUKE 17:2.

   White was asked for his opinion, about drug use, even by our children, in a KDOC/BIBR drug/alcohol abuse program group discussion, "Enough Already". I did not agree, with the group consensus, that drugs should be legalized. I have a Constitutional right to my own personal opinion and right to my own religious beliefs, in a christian sponsored group discussion. White should never have been preselyzed to abandon my opinion and sincerely held religious belief to remain in a KDOC rehabilitation – Re-entry program. That is the very reason for the 1st Amendment-Freedom of Religion.

   There is no logical penological interest involved in penalizing White by denying White his earned program credits and right to complete the program, after White had already earned his membership, and had done nothing wrong. White had a Constitutional due process and Freedom of Religion right to obtain the full program credits for parole consideration, which was taken from White without due process. White BIW. asserts it was done merely for retal- iation, reprisal and was ridiculously arbitrary and capricious and done with evil intent.

C)(3) Freedom of Religion: "In addition he must assert conscious or intentional interference with his free exercise rights to state a valid claim under §1983."

C)(3) Plaintiff's response: (See: A), B), & BIW above and); White alleges and asserts it was Mr. Spillman who personally removed White from the BIBR program, Group 65, and Pod B5, which also included my Bible (Study) Survey Group. This was done arbitrarily and capriciously with- out any due process, published in the BIBR Members Policy and Procedure Handbook, and with no First hand Knowledge by Mr. Spillman, of the group discussion, because no KDOC, BIBR staff or outside volunteer were monitoring the group discussion.

   White BIW. asserts Mr. Spillman and the other BIBR staff

9.

members of Mr. Dave Johnson and Mr. C.J. Hughes on 11-2-2022 conspired (18 USC § 241 and 42 U.S.C § 1985) and retaliated against White, to have White completely removed from the BIBR program and Pod B5, solely because White submitted a KDOC grievance and appeal # AA 2023056 and was preparing to file a K.S.A. 60-1501 Habeas Corpus in the Leavenworth Co. Dist. Court Case, No. 2022 CV 323 on 12-12-2022. (see: Exhibit "C" page 1 and 2). This was done with conscious and intentional interference with White's 1st Amendment free exercise right, to access to courts without retaliation and grievance resolution response from Administrative process.

D)(4) Freedom of Religion: "Plaintiff has failed to show how this imposed "a substantial burden" on his religious exercise."

D) Plaintiff's response: (see: A), B), C) above and); White alleges and asserts he had his 1st Amendment rights violated when he was denied his $1200 monthly earnings (wages cut-eliminated), transferred to restrictive "Atypical" conditions of confinement, denied fellowship and worship with others; (Matthew 18:20 "For where two or three are gathered together in my name there am I in the midst of them.), then transferred for my protection to a different prison, in a different county, still locked down in segregation, causing unnecessary and inordinate delay, denying White justice without delay in his habeas corpus civil action, which now needs to be transferred from the Leavenworth Co. Dist Court to the Pawnee Co. Dist. Court, and even potentially, causing a denial to parole, very similiar to the issues in: Rauser v Horn 241 F3d. 330, 334 (3rd Cir 2001). This all caused a substantial burden on my freedom of religion exercise.

White asserts and alleges that Mr. Spillman and the BIBR staff have violated the establishment clause of the 1st Amendment, by proselyzing their own false christian beliefs on White, (or be kicked out of the program), and they have excessively interferred with the management and security of the prison (LSF) by their having Officer Goedman, put off the Unit, for doing his job, and by their having White transferred out of the BIBR program and Pod B5 in retaliation and in opposition to grievance response of # AA 2023056. Therault v Religious Office in the Structure of the Gov't Requiring a Religious Test as

10.

Qualification 895 F. 2d 104, 107 (2nd Cir 1990); and under, Brown v Plant 131 F. 3d, 163, 169 (D.C. 1997) inmates placement in administrative segregation would violate due process clause, if inmate had a liberty interest in avoiding segregation and inmate did not receive due process. [ White received no due process and due process was violated, and White received no personal reviews during the 209 days of "atypical" confinement.] Sandin v Connor 515 U.S. 472, 484 (1995) Such liberty interest are characterized as inherent in the Constitution, Harper v Young 64 F 3d 563, 566 (10th Cir 1996) inherent constitutional liberty interests arise when prisoner has acquired substantial freedom, such that deprivation requires due process protections, aff'd 520 U.S. 143 (1997)

White was not only seeking due process right to religious belief, White's earned substantial freedom enjoyed by other prisoners in the ordinary incidents of prison life. But, also freedom from abuse and cruel and unusual punishment, health and safety protection from the excessive drug, tobacco smoke and from the threats and actual physical injuries from LCF staff, gang, drug user/dealers. White was seeking protection from "imminent danger" but was denied.

### 3. Due Process

(A)(1) Due process: "Plaintiff has pointed to no interest created by state law that imposes substantive limitations on KDOC officials discretion in determining participation in the program at issue; the KDOC/BIBR Group 65 Program."

Plaintiff's response: (A)(i) (see: above 2) Freedom of Religion, C)(3), c) and D)(4), b))
A. White alleges and asserts he has a protected liberty interest in due process, guaranteed by the Constitution, relevant to parole eligibility date, by State law, regulation, policy and procedure and sentencing, as well as Kansas Constitutional Bill of Rights.
1) White as a disabled elder person and dependent adult under the care and custody of the KDOC, has the statutory right of protection, that lends, itself by age, to necessity of due process, under K.S.A. 21-5402 (c)(1)(v) "inherently dangerous felony" defined in K.S.A. 2017 Supp. 21-5417 (o); 1) "infliction of unreasonable punishment..."; (A) "... or without adequate consideration ..." 3) "Omission or deprivation of treatment, goods, services..." which White alleges put him in "imminent danger"

2.) KDOC/BIBR programs are for prisoner rehabilitation and re-entry, for those prisoners who wish to participate; are services that the Secretary of Corrections, K.DOC and State of Kansas, must provide to all prisoners, who have the potential and availability for parole, and release per K.S.A. 75-5211, (for equal treatment of and protection of the law right), to prepare them for return back into society. The federal government provide funds and aid, to States, for just such programs, therefore bound by law, 14th Amendment and the U.S. Constitution.

The second circuit has held that prisoners removed from a work release program are also, entitled to due process protection. Kim v Hurston 182 F.3d 113, 117-19. Likewise White being pulled from a Re-entry program, which he had already earn the substantial freedom and right to participate in, as a participating member, and which could substantially and potentially revoke my up coming availability and chance of a parole requires due process.

White asserts and alleges he has a liberty interest as a disabled elder person and dependent state prisoner, to due process through the 14th Amendment, and Kansas Constitutional Bill of Rights: BoFR §1 Equal rights; BoFR §7 Religious Liberty; BoFR § 9 Free of cruel and unusual punishment; BoFR §11 Liberty of Speech; BoFR §18 Justice without delay, K.S.A. 75-5211, K.S.A. 11-5909(c) and K.S.A. 21-5417 and 21-5416 mistreatment of a confined person.

These are also relevant to White's K.S.A. 60-1507/60-1501 Habeas Corpus (Conditions of Confinement/due process) in White's attempt to seek justice in the Kansas State Court of the Leavenworth County District Court Case No. 2022 CV 323 which White filed back on 12-12-2022. Beginning with the denial to procedural due process in this denial to program participation, their failure to yet, rule on my "Motion for Order of Protection". The KDOC/BIBR and State of Kansas Courts continues to deny White due process and Justice without Delay, by the Courts because, K.S.A. 60-1507/1501 (b) Hearing and Judgement "...grant a prompt hearing thereon, determine the issues and make finding of fact and conclusions of law ..." Yet, nothing has been done per that due process requirement, and even though, I am self-represented, I am unaware that the court has even served the Writ on the defendant S.O.C. Jeff Znader. I'm now waiting for the Court to transfer that case to the Pawnee County Court.

3.) Under Cochran v Morris 73 F.3d, 1310, 1318 (4th Cir. 1996) Allegations of specific and relevant prison regulation creating a liberty interest is necessary element of procedural due process claims.

12.

White alleges and asserts KAR 44-12-1001, 1002, 1101, 1201, 1202, KAR 44-13-101 and KAR 44-15-104 Reprisals prohibited as well as; BIBR Member Policy and Procedure Handbook. 3) Policy and Procedure, 2) Program Commitments; 2.1) "BIBR Falls under the direct authority of the KDOC and readily acknowledges all of KDOC's rules, regulations, and procedures as Fully authoritative." 2.3) Non-Harassment / Non Discrimination; "BIBR civil rights policy prohibits discrimination in all of it's programs and activities based on ... age, religion ..., disability, reprisal ... that, there will be zero tolerance for any form of discrimination. This standard is applicable to every BIBR employee and program participant." Also, which White was denied the due process rights under; 3.2) Disciplinary Procedures for Offenses Not Resulting in Immediate Termination; and 3.3) Removal from Program. and 3.5) Appeal Process.

White alleges and asserts that the denial to programs and services to someone who has already earned membership and the right to participate in such programs, without due process protection is arbitrary and capricious and nothing other than discrimination, reprisal, retaliation, denial to equal treatment and without adequate consideration (KRS.A. 21-5417) and a violation of due process.

Prison programs were developed to rehabilitate and prepare prisoners to re-enter society as good productive law abiding citizens, who can care for themselves and advance the positive growth of a society and to stop recidivism. (R.S.A. 75-5211). It is contrary to penological interest to arbitrarily and capriciously deny prisoners, who have the availability for parole, access to programs and services, needed to show the parole board, a prisoner earnest, good faith, earned right to a parole, when it becomes available to a prisoner [White] to see the parole board.

## B) Restrictive Housing

(A)(1) Restrictive Housing: "Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life." (2) "To prevail on a failure to protect claim, a plaintiff must show; 'risk of serious harm', in other words, an official must both be aware of the facts from which the interference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."

B)(A)(1) Plaintiff Response; see 1) Medical Care; 2) Freedom of Religion, 3) Due Process and; White alleges and asserts that the defendant,

13.

mr. Parkss, has imposed an atypical and significant hardship, on White, in relation to the general population and prisoners in Protective Custody; ordinary incidents of prison life in violation of, and pursuant to: IMPP 20-108N, and the 8th Amendment, freedom from cruel and unusual punishment.

White apologizes to the court for not using the specific word "allege" and the specific terminology "ordinary incidents of prison life"; but, I am a lay person untrained in the law and this case has difficult Constitutional and legally technical issues, which is why; White has also submitted, a "motion" for "appointment of legal counsel" to help me with the technical and esoteric aspects of this case, that requires skill in evidence discovery, investigation, representation and cross examination. This request is pursuant to: 28 USC § 1915 (e)(1).

The court in Taylor vs Rodridriguez 238 F.3d, 188, 197 (2nd Cir 2001) ruled the District Court should consider the appointing counsel for Pro-se plaintiff to ensure a full representation of the difference between close custody and other forms of confinement.

Further, I feel I did, sufficiently, for it to be construed liberally (through my facts, my allegations) and to a less stringent standard. (Haines v Kernen) indicate, they were not within the ordinary incidents of prison life. In, Whitney v New Mexico 113 F.3d 1170, 1173-75 (10th Cir. 1997) The court erred by failing to construe liberally and consequently dismissing a plaintiff's § 1983 claim.

In my 1st Amended complaint under (B)(1) Count II. White stated as facts: (1) denial of protective custody... pursuant to IMPP 20-108D [which grants prisoners with the ordinary treatment and incidents of prison life.]; (2) Placed in restrictive housing... [under atypical conditions.] [for 209 days ... without any due process or personal reviews; [This constant lockdown with deprivation of property, etc. imposed an atypical and significant hardship to the relation of the ordinary incident of prison life, through ] (3) denial of clothings made to wear the same jumpsuit for the 209 days at LCF; denied the use of handi-cap shower [needed because of physical disability] and repeatedly cuffed-up, with hands behind my back, (thus) making it impossible to walk or use my canes; denied yard (needed for exercise and fresh air); dayroom, (use of telephone); personal (purchased) property (such as food, paper, hygiene etc.); denied shower shoes, tooth brush, legal paper work and legal reference material; I needed for self-representation / Pro-se for Case No: LYCD 2022 CV 323, Habeas Corpus, pursuant to K.S.A. 60-1501; repeatedly tortured by a rotation of many violent prisoners, put in with White, and by loud radio noise being blasted into the cell by putting disciplinary charged drug user/dealers in the same cell with me, even individuals White

14.

was requesting protection from; then being physically assaulted / battered / attempted murder by strangulation by Tommy Garza; then denied immediate medical care, nor any medical help for the injuries and pain from the strangulation from MoParks UTM, Mr. Meredith UTS and CO Chapman .; (4) Also, a cause of relevant hardship and atypical conditions, not specificly itemized in the previous complaint, because of the courts official §1983 complaint form space restrictions, was the constant lockdown which caused the denial to personal access to the library and law library, to do research; White submitted numerous form 9 request to staff (Unit Team), grievances, Emergency grievances, appeals, property claims, personal injury claims; as well as legal mail to the Leavenworth Court, given to Mr. Meredith UTS and Mr. Parks UTM, (which the court claims they never received); and either had to be re-submitted, and resubmitted numerous times, but still gone unanswered. (5) White was issued three (3) false, wrong, unwarranted disciplinary reports, that White alleges, the first two (2), were found guilty, because of failure to allow witnesses and the denial to be present at the hearing; both done in violation of due process, because of harassment, reprisal and retaliation, because of White being wrongfully kicked out / denied participation in the BIBR program and Pod B5; and which was in opposition to grievance resolution of AA 2023056, and because of my complaints because of the excessive drug and tobacco smoke, that threatened White's health and safety. Then the third disciplinary report, which was found "NOT Guilty", was issued; because of Mr. Parks, in retaliation and because Mr. Parks continued to put other prisoners in the same cell with me. After White was returned to LCF from the KU Hospital; EAI placed White (instead of general population) into, restrictive housing, under protective custody in a cell to be alone, by myself, for my protection. White alleges and asserts Mr. Parks retaliated against White by continuing to instigation of these harassing, unwarranted write ups (disciplinary), putting White in continuing danger. See (Exhibit "L") 4 pages, #14-#17) Which caused the need for White to be transfered from LCF to LSCF for protection, under Protective Custody.

None of this, is in any way, in a normal relation to the ordinary incident of prison life and usual treatment of general population prisoners, and did seriously create a significant hardship and actual physical injury, with substantial pain and suffering, both physically and mentally.

B) (A) (2) Restrictive Housing : "Plaintiff fails to allege, that he relayed any specific threats to Defendants or that Defendants were aware of a strong likelyhood that Plaintiff's cell mate would attack him."

15.

(3 B)(A) 2) Response: 1)(a) As clearly stated in White's 1st submitted "Showing of Cause," pag(1) "Relevant Personal Information"; White previously and consistantly brought this issue up in a; K.S.A. 60-1501, Habeas Corpus, Leavenworth Co. Dist. Court Case. No. 2020 CV 243, filed on 11-6-2020. That case was summarily dismissed without an evidentiary hearing. That case included a physical assault by Officer Gardner, because of my complaints about all the drug and tobacco smoke on the Unit, and him allowing other prisoner into my cell who didn't live there'[Previous to this attack, White was assaulted in the rest-room, surrounded by gang members, who struck me in the face, and breaking my eye glasses. Officer Goodman sent me to LCF Clinic for medical care, so there should be a medical record of that assault']; (b) Then on page (4), Count I, 2nd para., Mr. Spillman told White, "[I] would be putting my life in my own hands, because most of the prisoners at LCF, were drug users and dealers, if I Kept complaining about the drug and tobacco smoke problems." This denial to protection, and not correcting the problem was putting my health and safety in danger. (imminent danger); (c) On page 13, Count III, 2nd para, I stated [alleged] "... Both individually [Mr. Meredith and Co Chapman] and seperately, commonly knew, White was requesting protection from other prisoners, and Knew that White had individually requested help from both, even after the attack ...")

2)(a) On 3-28-2023, the same day White was put in restrictive housing, White was given an Administrative Restrictive Housing Report, Number 01-23-1875, which states: "Inmate White #76983 is being placed in restrictive housing for refusing to move to B8. Inmate previously tried going P.C. from staff. Inmate was seen by medical prior to placement. Inmate was not present when property was packed." (see: EXHIBIT "DD" page 1)

3)(a) In White's amended complaint under C.i), B(2), Count 4 (B) White clearly stated under facts,: "Mr. Parks&UTM kept putting White in danger by putting disciplinary drug user/dealers in the same cell with me, even individuals White was requesting protection from. White personally confronted Mr. Parks about this on 6-12-2023 ..." (This was well before the strangulation by Jeremey Garza) This is also, a matter of Court record because the Unit Team, Warden and S.O.C. wasn't answering my complaints, grievances and appeals; so I, started sending my grievances, appeals to the S.O.C. and the Court as Exhibits for showing/proof of attempts of exhaustion of Administrative process.

3 (b) Under C.) I), A)(i) Court I: "(b) Mr. Hughes [with Mr. Johnson and Mr. Spillman met with White on 11-2-2023] ... threatened to kick, White out of the program and Pod B5, because White submitted a grievance and filed

16.

legal action in Court. [White asserts this is conspiracy to denial of services and programs through retaliation for access to the courts.] with state created liberty interest pursuant to: K.S.A. 75-5211, K.S.A. 21-5416, 5809. (Also, see included form 9 documentation of Exhibit "C" (page 1-2) dated 11-2, 11-3-2022

4)(a) White submitted numerous Form 9 requests to the Warden, Captain, Unit Team, Mr. Parks, Mr. Meredith, Classification etc. regarding why I couldn't be released from the less than disciplinary conditions of confinement, and/or why wasn't I being held under Protective Custody conditions pursuant to: IMPP 20-108(), but merely received excuses, the run-around, with no real answers or justifications Except I was told repeatedly; I had to sign a PC waiver to get out of seg.. I am including for your information (to be liberally construed) re-sending copies of (7) seven Form 9's, dated 5-4-2023 thru 7-20-2023 from Exhibit "C", and re-sending (3) three pages of assorted mostly unanswered grievance, appeal receipts from Exhibit "E", dated 10-5-2022 thru 10-1-2023, also see [unanswered grievances #AA 2023056 (Exhibit "A") submitted 10-5-2022 and #N/A (Exhibit "B") submitted 4-25-2023 previously sent but not resent this time.] and #AA 2024081 submitted 10-1-2023, Exhibit "P", White just recently received from the S.O.C.

5)(a) On 1-19-2024 White submitted a "Motion for Order of Protection" in the Leavenworth County Dist. Court Case No: 2022CV323 pursuant to K.S.A. 60-1501, White v Zmudu.

The KDOC and LCF officials, including personally Mr. Parks, Mr. Meredith and Co Chapman, from even the filing on 11-6-2022 of LVCO 2022CV243 are or should be very aware that White relayed specific threats to defendants and they were very aware, there was a strong likelihood that the cell mate put in with White, while in restrictive housing (Protective Custody after assault/strangulation by Jeremey Garza) would attack White. That afore mentioned cell mate Jeremey Garza had just also chocked his previous cell mate and was a dangerous drug dealer/user, B1BR member, gang member on the Native American call out, who also: (use smoke in there call outs as well as in the cells. The Native American call out is not a religion that is an exception to use smoke in a Non-drug smoking State prison facility.)

6)(a) Plaintiff should clarify in his second amended complaint whether or not he was aware of a threat from his cell mate and if so, whether he relayed that information to staff. (b) He should also clarify whether or not he was in restricted housing for his protection or for some other reason.

17.

(c) He should clarify if he is alleging that his placement in restricted housing was retaliatory.

### Plaintiff Response

6) (a) Plaintiff Response: Every time I saw Mr. Parks, Mr. Meredith and Co chapman (usually only when I was taken to shower, when the OIC would allow it, or when they came to my cell to have me sign something), I told them they were putting my life in danger, White alleges and asserts. Also see: 3)(a) on page 16 above; Where I personally confronted Mr. Parks in the presence of Ms. Hall UTS and Mr. Meredith UTS, and has been filed as an exhibit in LV Co 2022 CV 323.

6) (b) See: Exhibit "DD" and 2)(a) on page 16 above; I was being moved in retaliation and reprisal (see: 2. Freedom of Religion) and in opposion to grievance resolution response, from S.O.C. I was issued two (2) DR's for disobeying orders, but both only added up to 60 days of seg. time. White alleges both were not valid, unwarranted and I was denied due process in both disciplinary case, and that they were written solely for the purpose of an excuse to hold White in seg. Otherwise, it's a mystery to me why I was held in seg. for 304 days, when I only had disciplinary time of 60 days. Every time White asked, I was told: I was under investigation (for what I have no idea), or "I had put myself in seg." I repeatedly asked EAI, Captain, Unit Team, Mr. Parks, Mr. Meredith, Ms. Hall, Classification, but just given the run-around. Whites only written evidence from the LCF is Exhibit "DD".

6) (c) White alleges and asserts that his atypical confinement in LCF restricted housing was done in retaliation, in opposition to the KDOC/S.O.C grievance/appeal#AA2023056 resolution response and because of that submission of grievance and legal court action LY Co 2022 CV 323 Habeas Corpus (Conditions of Confinement) [and because I complained about the excessive blantant, unchecked drug and tobacco smoke problem at LCF, from gangs, drug user dealers, acting as a dependant disabled elder state prisoner whistler-blower, because I could get no help from the KDOC/LCF officials and Grievance Administrator Process or LCF Warden or S.O.C. Jeff Zmuda and therefore saught help outside the prison admin-istration, to the Kake (ABC) News, Kansas Governor, Shawnee County Sheriff, Leavenworth District Attorney, Leavenworth County District Court to name a few. White further alleges

18

and asserts he sought Protective Custody Status and conditions of confinement in restrictive housing – protective custody pursuant to IMPP 20-105D from the LCF authorities, for Whites health and safety from the smoke hazard as well as from threats and actual physical harm and injury, by LCF officers and gang member, drug dealer users and some BIBR members, but was denied. I (imminent danger) Although when I was returned to LCF from the KU Hospital. I was told by the EAI officers on 7-12-2023, that I was being put back in restrictive housing in a cell by myself – under protective custody. But, Mr. Parks, Mr. Meredith and CO Chapman refused to recognize what I had been told and continued to treat me under atypical conditions of confinement.

## 4. Retaliation

4. Retaliation – Plaintiff Response: (A) White asserts as fact that: On [1] 10-5-2022, Mr. Spillman notified White he was taking White out of the BIBR Program Group 5, because White was unteachable. (2) White submitted grievance #AA2023056 (White's Exhibit "A" on 10-5-2022. (3) On 10-10-2022 White received the Unit Team response: "You were not removed from BIBR, however you were taken out of the current group and will be placed into the next group pending one on one with Gary Spillman. Per the program provider your participation did not meet expectations of BIBR at this time." UTM Potter 10/6/22. (4) On 10-21-2022 White received Deputy Warden James Skidmore response on appeal: "Your grievance was received and an investigation into your allegations has been completed. After a thorough review of all applicable documentation, it was determined that the response provided by UTM Potter was appropriate." (5) On 11-2-2022, White had a meeting with BIBR officials regarding my grievance and the legal action I was preparing to file in the Leavenworth Co. Dist. Court which became LVCO 2022cv323 on 12-12-2022. (6) At this meeting "On 11-2-2022, I was threatened with reprisal in violation of KAR 44-15-104 by Mr. C. J. Hughes, Mr. Dave Johnson, and Mr. Gary Spillman. ... pursuant to the BIBR Appeal Process, because I had also invoked the KAR grievance process and submitted grievance #AA2023056 on 10-5-2022. These KDOC/BIBR officials threatened to kick me permanently out of Unit Pod B5." (This as was recorded in grievance N/A, Exhibit "B", S.O.C. response dated 6-22-2023, received by White on 7-28-2023 with the response: "It appears you are or have addressed this matter with the

courts; if you have you will need to address this with our legal office.") This grievance also cites the allegation that: "DR Hearing Officer [Leichliter] told me during the DR hearing on 4-24-2023, that he spoke to Mr. Spillman, and Mr. Spillman told him that Mr. Spillman kicked me out (took me out) of the BIBR program and Pod B5, because I threatened to take legal action against him and the BIBR. I asked Officer [Leichliter] to make sure to remember that:" For which White swore to under penalty of perjury. (7) On 12-13-2022, White received grievance #AA2023056, Exhibit "A" response back from the S.o.C. with: "The response rendered to the inmate by staff at the facility is appropriate. Take the time to discuss your con-cerns with the program leads when you attend the new sessions; discuss what you are hoping to get out of the program and how you view what they say they are there to accomplish. You may find in the conversation that it truly is, or isn't, a fit."

(B) (1) White asserts as fact that he was removed from the BIBR program on 3-28-2023 by Mr. Spillman, in direct opposition to S.o.C. Administrative Process grievances response cited above, in (A); (2) White was no longer allowed to participate in any new session, or able to discuss what White was expected to accomplish, after White's removal from participate in the program sessions member of Group 65 on 10-5-2022 (refer: 4)(A)(1) above); (3) No where in any grievance, White has submitted does the KDoC/Unit Team/Warden/S.o.C. respond or answer to the drug/tobacco smoke problem at WCF, or the BIBR being a Security Threat Group as was currently being operated. (see: Exhibit "A" grievance #AA 2023056 and Exhibit "B" grievance N/A.

(C) White alleges and asserts as fact, White was kicked out of the BIBR program because of retaliation and reprisal (KAR 44-15-104) for submitting an Administrative Process grievance and electing to invoke White's prisoner liberty interest Constitutionally protected right to access the Courts. "But For" this retaliation, White would not have been removed out of Pod B5; lose his BIBR membership and earned program credits (White needed to show for approval of parole); been issued unwarranted disciplinary report (which has the potential to substantial effect chance of parole.), White would not have been put out as a target for further threats, intimidation and actual physical violence from gangs/drug dealers/users; White would not have been locked-down for 304 days in restrictive housing under inhumane "atypical conditions of confinement, where he was almost murdered, receiving substantial injury, pain and suffering from, throat/neck, back injury from strangulation. Further, White would not have been transferred for his protection, denying White Kan Const. BoSR §18 Justice without Delay in court case No: 2022CV323, Leavenworth Co.

20

Dist. Court. White further asserts and alleges because of all these issues, and the allowing of the BIBR and Mn Spillman to proselyzing of religious beliefs, retaliation toward prisoners rights, denial to protection to prisoners health and safety from (ETS) drug and tobacco smoke; the BIBR and Mn Spillman are interfering excessively with the security, safety and management of the prison. (Therault v. A. Religious Office...)

### 6) Whistle blower

6)(A) Whistle blower - Plaintiff's response: White humbly concedes to the Court that 18 U.S.C.S § 1513 does not unto itself grant a private cause of action, because it specificly deals with employee rights issues. But, the assertion of rights and liberty interest for the protection of "a person," "prisoner" against retaliation, threats and intimidation toward a witness, victim, or an informant can be created and provided for civil rights by states, laws and policy such as:

(a) K.S.A. 21-5909 Intimidation of a witness or victim, aggravated intimidation of a victim or witness (c) ... causing a civil action to be filed and prosecuted and assisting in it's prosecution. (White's' LVCO 2022 CV 323) & (2020 CV 243)

(b) K.S.A. 21-5416 Mistreatment of a confined person.

(c) As well as Federal Statutes: 18 U.S.C § 1514 civil action to restrain harassment of a victim or witness, and:

(d) 42 USCS § 7418 Air Pollution Prevention and Control; 42 USC § 7622, (Berkman v U.S. Coast Guard Academy (2000) ARB, 2000 Dol. Ad. Rev. 13d. The intent by Congress for the Whistle blower Act was to give employee's protection and civil rights, from employers who retaliate, intimidate and/or harass employee's who may invoke their human and civil right, that may be harming them, and witness against an employer for illegal acts. White should also be given this same equal right and protection and civil rights regarding substantial harm from (ETS) drug and tobacco smoke. This is well settled law that it is harmful and White should not have to complain and seek help for this illegal act for over (4) four years, as a victim, witness and dependent, disabled, elder person, state prisoner.

### Continued: 6) ELDER ABUSE

6)(B) ELDER ABUSE - Plaintiff's response: White respectfully disagree with the Courts for the following reasons that:

A) "34 USCS § 12291 (14)(A) and (B). This statute is a criminal statute and does not provide for a private cause of action." (a)³ "Prevention of violence against women," — "that statute does not provide plaintiff with a cause of action pertinent to the issues here."

A) Plaintiff's Response: White alleges and asserts the following:

1) 34 USCS § 12291 (14)(A) and (B) is not solely a statute pertinent to violence against women only. Nor is it a statute of merely criminal prosecution issues. It is in fact, as clearly written, a federal statute of: Definitions and grant provisions, as provided by (51) Victim services or services ... civil or criminal justice ...; (b) Grant conditions.; (13) civil rights; (A) Non-discrimination: "No person in the United States shall, on the bases of ..., religion, sex, ... or disability, be excluded from participation ... and any other program or activity funded in whole or in part with funds appropriated for grants, ..."

2) It's title is clearly applicable to Title 34 Crime Control and Law Enforcement (§§ 10161 - 60912) > Subtitle I. Comprehensive Acts (chs 901-121) > Chapter 121 Violent crime control and law enforcement (§§ 12101-12643)

   Applicable to White's case, where in (14) Elder abuse. "The term "elder abuse" means any action against a person who is 50 years of age or older that constitutes the willfull - (A) infliction of injury, unreasonable confinement, intimidation, or cruel punishment with resulting physical harm or pain, or mental anguish, or (B) deprivation by a person, including a caregiver of, and services with intent to cause physical harm, mental anguish, or mental illness.

   Which covers grant provisions and rights defined by statute of classes of people of (46) Underserved populations ... who face barriers in accessing and using victim services and includes populations underserved because of ... religion ... underserved racial and ethnic populations, populations underserved because of special needs (such as language barriers, disabilities, alienage status, or age ...)"

   This is all comparable to the state created liberty interest of statutes:
   (a) K.S.A. 21-5417 mistreatment of a dependent adult or an elder person.
                   K.S.A. 21-5402
   (b) K.S.A. 21-5416 mistreatment of a confined person, and with relief
                   K.S.A-60-2606
   covered under 42 USCS § 1985, § 1983 and 18 USCS § 241, 242.

3) Thus; § 12291 clearly covers not only violence against women, domestic

22

violence and rape victims, but also Alaska Native rights, Indian tribes and (Tribal coalition), but also Elder Abuse. 34 U.S.C.S §12291(14)(A) and (B).

White is clearly a disabled, confined elder person of 71 years of age, and does not lose his protected class distinction (when he is abused), just because he is incarcerated. This no more than the disabled, juveniles, and people of race or color does not lose their protected class rights. This statute clearly applies to all people as "a person" regardless of sex, as it clearly also states "any person". Thus equal rights by class distinction.

Further see: 42 U.S.C. § 1985 (Denney v City of Albany, Briley v California, and Heyn v Board of Supervisors) also 18 U.S.C § 241, 242

White asserts the above as well as his 1st, 8th and 14th Amendment rights Pursuant to Kansas State created Liberty interest right K.S.A. 60-2606. If a case arises in which an action or proceeding for the enforcement or protection of a substantive right or for the redress of a wrong, can not be had under any specific provisions of this chapter or other statutes, then the court shall proceed as nearly in conformity with the provisions of this chapter as the circumstances permit to do whatever law and equity and justice requires for the protection of the parties. See: (Levier v State 209 K. 443, 450, 497 P.2d 265, and K.S.A. 21-3425 and K.S.A. 76.2423.)

## 7. Request for Injunctive Relief

7) Injunctive Relief - Plaintiffs Response: White humbly concedes to the courts determination regarding White's request for Injunctive Relief. Even though my thinking was that BIBR (Re-Entry) was part of the parole process, with access to the parole board, I can understand how Mr. Spillman can not make concessions for the parole board. I merely wished to extend christian, charity, forgiveness and understanding to my christian brothers, while asserting in a positive manner my Constitutional, human and civil rights.

I swear under oath my intentions are for the good; but, I don't always know how to get there.

White prays this showing of cause is sufficiently prepared and presented, to satisfy the court, that all the Counts and Issues, allegations and assertions presented, be allowed to proceed to a jury trial, if the court finds that it is needed for discovery, regarding any disputed facts

Respectfully Submitted; by s/ Bobby White #76983
                                    Pro-se
Dated: May 26, 2024
                              Bobby White #76983
                              Larned State Correctional Facility
                              1318 Ks., Highway 264
                              Larned, Kansas 67550

24.