## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

**BOBBY BRUCE WHITE,**

  **Plaintiff,**

  v.                                            CASE NO.  24-3023-JWL

**ANDREW PARKS, et al.,**

  **Defendants.**

## MEMORANDUM AND ORDER

This matter is before the Court for screening Plaintiff's Second Amended Complaint (Doc. 8).  The Court finds that Plaintiff's claims alleging the denial of his right to freely practice his religion at LCF, retaliation, failure to provide medical care, and failure to protect, survive the Court's screening.  Plaintiff's remaining claims based on due process violations and violations of 42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, and 18 U.S.C. § 1514, are dismissed.

### I.  Nature of the Matter before the Court

Plaintiff brings this pro se civil rights action under 42 U.S.C. § 1983.  Although Plaintiff is currently in custody at the Larned State Correctional Facility in Larned, Kansas ("LSCF"), his claims arose during his incarceration at the Lansing Correctional Facility in Lansing, Kansas ("LCF").  The Court granted Plaintiff leave to proceed in forma pauperis.

On February 22, 2024, the Court entered a Memorandum and Order to Show Cause (Doc. 4) ("MOSC") directing Plaintiff to show good cause why his Complaint should not be dismissed for the reasons set forth in the MOSC or to file an amended complaint to cure the deficiencies.  The Court screened Plaintiff's Amended Complaint (Doc. 6) and entered a second Memorandum and Order to Show Cause (Doc. 7) (MOSC II) granting Plaintiff an opportunity to

file a second amended complaint to cure the deficiencies noted in the MOSC II.  This matter is before the Court for screening Plaintiff's Second Amended Complaint (Doc. 8) ("SAC").  The Court's screening standards are set forth in the MOSC.  Plaintiff has also filed a response (Doc. 10) to the Court's MOSC II.

Plaintiff alleges that he was assaulted by gangs when he complained about the drug/tobacco smoke problem at LCF.  (Doc. 8, at 2.)  Plaintiff alleges that he also had his BIBR[1] program membership revoked for the same reason, and he needed the program for parole consideration.  *Id*.  Plaintiff alleges that he was moved to a cell with smokers/drug addicts in retaliation for submitting a grievance and bringing a state court action on the issue.  *Id*.  Plaintiff alleges that he was written up for an unwarranted disciplinary report and held in atypical conditions for 209 days at LCF.  *Id*.  Plaintiff claims he was forced to sign a PC waiver and was then attacked in his cell and strangled by another inmate.  *Id*.  Plaintiff alleges that segregation officers denied him medical help and he had to receive medical help from other officers and was transported to the hospital by ambulance.  *Id*.  Plaintiff alleges that when he returned from the hospital, he was given a cell by himself, but Defendant Parks continued "atypical" conditions, harassment, and torture, until Plaintiff was transferred to LSCF.  *Id*.

Plaintiff alleges as Count I of his SAC that his right to freely practice his religion and his equal protection rights[2] were violated by Defendant Spillman and that Spillman retaliated against Plaintiff's "right to access the courts" on March 27, 2023.  *Id*. at 4.  Plaintiff alleges that Spillman denied Plaintiff the right to freely practice his religion when Spillman dismissed Plaintiff from the BIBR program.  *Id*.  Plaintiff claims that his placement in segregation based on his disciplinary proceedings prevented him from attending worship, Bible study, and fellowship

---

[1]  The Court noted in the MOSC that BIBR appears to stand for Brothers in Blue Reentry.  *See* Doc. 1–4, at 4.

[2]  Although Plaintiff mentions "equal treatment of the law" in Count I, he does not set forth allegations or arguments supporting an equal protection claim.

with "his Protestant Christion brothers at Sunday/Wednesday Church," and denied him regular access to the chaplain and volunteer clergy. *Id*. Plaintiff alleges that Spillman told Plaintiff that he was "unteachable," and that if Plaintiff continued to complain about drugs, he would be taking his life in his own hands. *Id*. at 5. Plaintiff claims that this imposed a substantial burden on the exercise of his religion. *Id*.

Plaintiff also claims in Count I that Spillman denied Plaintiff due process and retaliated against Plaintiff by removing Plaintiff from the BIBR program after Plaintiff invoked the grievance process and brought a state court action in Leavenworth County on December 12, 2022.[3] *Id*. Plaintiff alleges that at a meeting on November 2, 2022, BIBR officials Dave Johnson, C.J. Hughes, and Gary Spillman, conspired and threatened Plaintiff that they were going to remove him from the BIBR program and Pod 85 for filing a grievance and "going to file legal action." *Id*. Plaintiff claims that H.O. Leichliter confirmed that this same reason was given to Leichliter by Spillman. *Id*. Plaintiff alleges that he was denied due process when he was removed from the BIBR program. *Id*.

Plaintiff alleges as Count II that Defendant Parks violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment when he denied Plaintiff "immediate medical care" when Plaintiff was strangled by another inmate on July 12, 2023. *Id*. at 4. Plaintiff alleges that the LCF medical clinic recognized the serious need and sent Plaintiff to KU Hospital by ambulance. *Id*. at 6.

Plaintiff also alleges that he was denied due process during his disciplinary proceedings when he was not present at the first hearing and was denied witnesses at both hearings. *Id*. at 4. Plaintiff also alleges that he was denied protective custody and that he was held in segregation

---

[3] Plaintiff clarifies in his response that the date for filing his state habeas action should be December 12, 2022. (Doc. 10, at 4.)

for 209 days which he claims constituted atypical conditions. *Id.* Plaintiff alleges that Defendants Parks, Meredith, and Chapman, told Plaintiff he was not getting out of segregation until Plaintiff signed a PC waiver. *Id.* at 6. Plaintiff claims he "had been denied PC, until EA1, put [Plaintiff] back in restrictive housing, after [Plaintiff] was returned from the hospital, after being strangled, to be in a cell by [himself,] [b]ut Mr. Parks refused to accept it, and had [Plaintiff] written up on another D.R. in which [Plaintiff] was found 'Not Guilty' this time." *Id.* Plaintiff alleges that this constituted harassment and retaliation. *Id.*

Plaintiff alleges that his placement in segregation for 209 days imposed atypical and significant hardships in relation to the ordinary incidents of prison life. *Id.* He alleges that he was denied yard and dayroom, was given approximately 15 minutes of out-of-cell time three days a week for showering, and was denied shower shoes, the use of a handicap shower, clothes, toothbrush, access to church services, access to the library, reference material, stamps, and property. *Id.* Plaintiff also states that he was cuffed from behind and "tortured by loud radio noise blasted into [his] cell night and day, tortured by a constant rotation of prisoners, [and] put in the cell that [he] requested protection from." *Id.*

As Count III, Plaintiff alleges that Defendants Meredith and Chapman violated Plaintiff's Eighth Amendment rights when they failed to protect Plaintiff from serious injury when Plaintiff was strangled by another inmate at LCF on July 12, 2023. *Id.* at 7. Plaintiff also alleges that they "conspired with Mr. Parks UTM, to extort [Plaintiff's] signature on a PC waiver." *Id.* Plaintiff alleges that Defendant Chapman—the first person to respond when Plaintiff was strangled—refused to give Plaintiff medical care and refused to separate Plaintiff from the other inmate until Plaintiff signed a PC waiver. *Id.* Plaintiff claims that "OIC Chapman returned with

Mr. Meredith and [the] waiver, again when asked Mr. Meredith refused [Plaintiff] medical care." *Id*.

Plaintiff names as defendants:   Andrew Parks, Unit Team Manager at LCF; Evan Meredith, Unit Team Supervisor at LCF; Bruce Chapman, Corrections Supervisor at LCF; and Gary Spillman, BIBR Staff Counselor at LCF.   Plaintiff's request for relief seeks nominal, punitive, and compensatory damages.   *Id*. at 8.

## II.   DISCUSSION

### 1.   Count I

#### A.   Freedom of Religion

Plaintiff alleges that his right to freely practice his religion and equal protections rights were violated by Defendant Spillman when he removed Plaintiff from the BIBR program.   In his Amended Complaint, Plaintiff acknowledged that he became involved in an argument with the other members of the group regarding a discussion over the legalization of drugs.   Plaintiff alleges that he could not condone, nor agree for religious purposes, with the consensus of the other members of the group.

"Under the First and Fourteenth Amendments, inmates are entitled to the reasonable opportunity to pursue their sincerely-held religious beliefs."   *Gallagher v. Shelton*, 587 F.3d 1063, 1069 (10th Cir. 2009) (citation omitted); *McKinley v. Maddox*, 493 F. App'x 928 (10th Cir. 2012); *Makin v. Colorado Dept. of Corrections*, 183 F.3d 1205 (10th Cir. 1999).   In order to state a constitutional denial of free exercise of religion claim, a prisoner must allege that defendants "substantially burdened his sincerely-held religious beliefs."   *Gallagher*, 587 F.3d at 1069.   In addition, he "must assert conscious or intentional interference with his free exercise rights to state a valid claim under § 1983."   *Id.* at 1070.

"If the prisoner satisfies this initial step, 'defendants may identify the legitimate penological interests that justified the impinging conduct,' and '[t]he burden then returns to the prisoner to show that these articulated concerns were irrational.'" *McKinley*, 493 F. App'x at 932 (citation omitted). The court then balances factors set forth by the Supreme Court "to determine the reasonableness" of the conduct. *Id.* The Tenth Circuit has identified "three broad ways government action may impose a substantial burden on religious exercise:"

> requir[ing] participation in an activity prohibited by a sincerely held religious belief, or (2) prevent[ing] participation in conduct motivated by a sincerely held religious belief, or (3) plac[ing] substantial pressure on an adherent either not to engage in conduct motivated by a sincerely held religious belief or to engage in conduct contrary to a sincerely held religious belief, such as where the government presents the plaintiff with a Hobson's choice-an illusory choice where the only realistically possible course of action trenches on an adherent's sincerely held religious belief.

*Strope v. Cummings*, 381 F. App'x 878, 881 (10th Cir. 2010, unpublished) (citing *Abdulhaseeb v. Calbone*, 600 F.3d 1301, 1316) (10th Cir. 2010)). In *Strope*, the Tenth Circuit reasoned as follows:

> Illustrating the distinction between substantial burden and inconvenience, we held (1) the flat denial of a halal diet with approved meats was actionable, *id.* at 1316–20, but (2) an incident (the panel concurrence notes "sporadic incidents") in which a prisoner's meal was rendered inedible by service of prohibited items contaminating his tray was not actionable, *id.* at 1320–21; *id.* at 1325; see also *Gallagher*, 587 F.3d at 1070 (holding isolated violation of kosher restrictions did not support Free Exercise claim). We "assume[d] that as the frequency of presenting unacceptable foods increases, at some point the situation would rise to the level of a substantial burden," but that level had clearly not been reached.

*Id.* (citing *Abdulhaseeb*, 600 F.3d at 1321). In sum, mere inconvenience, negligence, and isolated or sporadic incidents are not sufficient to show a substantial burden.

Plaintiff also alleges in his SAC that his placement in segregation denied him the right to attend worship and Bible study, denied him fellowship with his Christian Brothers, and denied him access to the chaplain and volunteer clergy. (Doc. 8, at 4.) Plaintiff alleges in his response

that his removal from the program denied him the right to practice his religion because it:

> caused [Plaintiff] to have to protect himself from "imminent
> danger" from drug/user, dealers and some BIBR members, thus
> causing [Plaintiff's] placement in "atypical" conditions of
> confinement in restrictive housing; and causing the denial of [him]
> his  liberty interest right to freedom of attending worship, Bible
> study group and fellowship with his Protestant Christian brother at
> the Sunday and Wednesday Church Services in the LCF prison
> chapel; and have regular access to the Chaplain and volunteer
> clergy, which is practical and enjoyed by other general population
> prisoners in relation to the ordinary incidents of prison life.

(Doc. 10, at 8.)  Plaintiff alleges that although KDOC policies address this situation to allow

access to programs and services and staff visits to the RHU, this was denied to Plaintiff.  *Id*.

The Court finds that Plaintiff's claims that he was denied the right to freely practice his

religion at LCF survive screening.  *See Waterman v. Cherokee Cty. Jail*, 2019 WL 2613302, at

*4–5 (D. Kan. 2019) (finding on the current record that the Court could not properly consider the

factors used to determine the reasonableness of restraints on plaintiff's religious practice while in

segregation).

However, the Court denies Plaintiff's claim that his transfer to LSCF caused a violation

of his First Amendment rights because his wages were eliminated, he was transferred to

restrictive/atypical conditions of confinement, and he was denied fellowship and worship with

others.  *See* Doc. 10, at 10.  Plaintiff acknowledges that he was transferred to LSCF "for [his]

protection."  *Id*.  Plaintiff's conditions at LSCF are not at issue in this case.  Furthermore,

Prisoners do not have a protected interest in prison employment.  *Anderson v. Cunningham*, 319

F. App'x 706, 710 (10th Cir. 2009) (citing *Penrod v. Zavaras*, 94 F.3d 1399, 1407 (10th Cir.

1996) (holding that a prisoner does not have a protected liberty interest in his prison job)); *see*

*also Jenner v. McDaniel*, 123 F. App'x 900, 905 (10th Cir. 2005) (finding plaintiff "does not

have a constitutional right to a particular prison job").

### B. Retaliation

Plaintiff alleges that his expulsion from the BIBR Program was done in retaliation for filing grievances. "[I]t is well established that an act in retaliation for the exercise of a constitutionally protected right is actionable under [42 U.S.C.] Section 1983 even if the act, when taken for a different reason, would have been proper." *Smith v. Maschner*, 899 F.2d 940, 947 (10th Cir. 1990) (citations omitted). The Tenth Circuit has held that:

> Government retaliation against a plaintiff for exercising his or her First Amendment rights may be shown by proving the following elements: (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007).

However, an "inmate claiming retaliation must allege *specific facts* showing retaliation because of the exercise of the prisoner's constitutional rights." *Fogle v. Pierson*, 435 F.3d 1252, 1264 (10th Cir. 2006) (quotations and citations omitted). Thus, for this type of claim, "it is imperative that plaintiff's pleading be factual and not conclusory. Mere allegations of constitutional retaliation will not suffice." *Frazier v. Dubois*, 922 F.2d 560, 562 n. 1 (10th Cir. 1990). "To prevail, a prisoner must show that the challenged actions would not have occurred 'but for' a retaliatory motive." *Baughman v. Saffle*, 24 F. App'x 845, 848 (10th Cir. 2001) (citing *Smith v. Maschner*, 899 F.2d 940, 949–50 (10th Cir. 1990); *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998)).

In his response, Plaintiff argues that on November 2, 2022, Defendant Spillman and other BIBR staff—Dave Johnson and C.J. Hughes[4]—conspired and retaliated against Plaintiff to have

---

[4]  Johnson and Hughes are not named as defendants.

Plaintiff removed from the BIBR program and Pod B5, "solely because [Plaintiff] submitted a KDOC grievance and appeal . . . and was preparing to file a K.S.A. 60-1501 Habeas Corpus in the Leavenworth Co. Dist. Court Case No.: 2022cv323 on 12-12-2022." (Doc. 10, at 9–10.)

The Court previously found in the MOSC II that Plaintiff's retaliation claim was not subject to dismissal at the screening stage. *See* Doc. 7, at 12–13. This same claim, asserted in the SAC, survives screening.

### C. Due Process - Removal from the BIBR Program

The Due Process Clause protects against "deprivations of life, liberty, or property; and those who seek to invoke its procedural protection must establish that one of these interests is at stake." *Wilkinson v. Austin*, 545 U.S. 209, 221 (2005). "A liberty interest may arise from the Constitution itself, by reason of guarantees implicit in the word 'liberty,' . . . or it may arise from an expectation or interest created by state laws or policies." *Id*. (citing *Vitek v. Jones*, 445 U.S. 480, 493–94 (1980) (liberty interest in avoiding involuntary psychiatric treatment and transfer to mental institution); *Wolff v. McDonnell*, 418 U.S. 539, 556–58 (1974) (liberty interest in avoiding withdrawal of state-created system of good-time credits)).

The Court found in the MOSC II that Plaintiff's due process claim regarding his termination from the program was subject to dismissal. (Doc. 7, at 8.) The Court found that the option to participate in a rehabilitative program is a privilege, not a right. *See Sherratt v. Utah Dep't of Corr.*, 545 F. App'x 744, 748 (10th Cir. 2013) (unpublished) (citations omitted). These programs, "in themselves, do not implicate constitutional concerns." *Ruppert v. New Mexico Dep't of Corr.*, 625 F. App'x 820, 823 (10th Cir. 2015) (unpublished). Although constitutionally protected interests may sometimes arise from state law[,] . . . state law can create a protected interest only by imposing 'substantive limitations on official discretion.'" *Id*. (citing *Olim v.*

*Wakinekona*, 461 U.S. 238, 249 (1983)).

The Court found in the MOSC II that Plaintiff has pointed to no interest created by state law that imposes substantive limitations on KDOC officials' discretion in determining participation in the program at issue—the BIBR Program.  Plaintiff argues in his response that he has a protected liberty interest in his participation in the BIBR program "relevant to parole eligibility date."  (Doc. 10, at 11–12.)

To the extent that Plaintiff argues that his removal affected his parole consideration, he fails to state a claim for relief.  "Prisoners only have a constitutionally protected liberty interest in good time credits (i) that they have already earned or (ii) that are mandatory; they are not entitled to unearned good time credits that are discretionally awarded."  *Green v. Martinez*, 2024 WL 1134091, at *5 (D. N.M. March 15, 2024) (citing *see Fogle v. Pierson*, 435 F.3d 1252, 1262 (10th Cir. 2006) ("denying a prisoner mandatory earned time credits—*i.e.*, those to which he has some entitlement—would deprive him of a liberty interest if those credits advance his mandatory date of release on parole. However, where . . .  the credits are discretionally awarded, the defendants have not deprived [the prisoner] of any earned time to which he was entitled and thus no liberty interest was involved."); *see also Stine v. Fox*, 731 F. App'x 767, 770 (10th Cir. 2018) (unpublished) (explaining that where good-time credits are discretionally awarded, "the defendants have not deprived the prisoner of any earned time to which he was entitled" and thus no liberty interest is involved) (quoting *Fogle*, 435 F.3d at 1262); *cf. Templeman v. Gunter*, 16 F.3d 367, 370 (10th Cir. 1994) (recognizing that a statute which states "the department . . . *shall* grant . . . an earned time deduction" might implicate the mandatory rule) (emphasis added)).

"Because there is 'no constitutional or inherent right to receive parole,' federal law does not create a liberty interest in parole."  *Love v. Schnurr*, 2024 WL 748990, at *3 (10th Cir.

Feb. 23, 2024) (unpublished) (citing *Malek v. Haun*, 26 F.3d 1013, 1015 (10th Cir. 1994)). "[T]he Kansas parole statute does not create a liberty interest as would be required to maintain a due-process claim." *Id.* (citing *Heath v. Norwood*, 772 F. App'x 706, 708 (10th Cir. 2019) (unpublished) (citing *Gilmore v. Kansas Parole Bd.*, 756 P.2d 410, 415 (Kan. 1988)).

Plaintiff's due process claim based on his removal from the BIBR program is dismissed for failure to state a claim.

### 2. Count II

#### A. Medical Care

Plaintiff alleges that he was denied medical care for over two hours[5] after his cell mate assaulted him. The Eighth Amendment guarantees a prisoner the right to be free from cruel and unusual punishment. "[D]eliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain' . . . proscribed by the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976) (citation omitted).

The "deliberate indifference" standard includes both an objective and a subjective component. *Martinez v. Garden*, 430 F.3d 1302, 1304 (10th Cir. 2005) (citation omitted). In the objective analysis, the deprivation must be "sufficiently serious," and the inmate must show the presence of a "serious medical need," that is "a serious illness or injury." *Estelle*, 429 U.S. at 104, 105; *Farmer v. Brennan*, 511 U.S. 825, 834 (1994), *Martinez*, 430 F.3d at 1304 (citation omitted). A serious medical need includes "one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Martinez*, 430 F.3d at 1304 (quoting *Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000)).

---

[5]  Plaintiff indicated in his Amended Complaint that the delay was two hours. In his response to the MOSC II, Plaintiff states that it was "over" two hours. (Doc. 10, at 4.)

"The subjective component is met if a prison official knows of and disregards an excessive risk to inmate health or safety." *Id*. (quoting *Sealock*, 218 F.3d at 1209). In measuring a prison official's state of mind, "the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id*. at 1305 (quoting *Riddle v. Mondragon*, 83 F.3d 1197, 1204 (10th Cir. 1996)).

Delay in providing medical care does not violate the Eighth Amendment, unless there has been deliberate indifference resulting in substantial harm. *Olson v. Stotts*, 9 F.3d 1475 (10th Cir. 1993). In situations where treatment was delayed rather than denied altogether, the Tenth Circuit requires a showing that the inmate suffered "substantial harm" as a result of the delay. *Sealock v. Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) (citation omitted). "The substantial harm requirement 'may be satisfied by lifelong handicap, permanent loss, or considerable pain.'" *Mata v. Saiz*, 427 F.3d 745, 751 (10th Cir. 2005) (quoting *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001)).

"A plaintiff 'need not show that a prison official acted or failed to act believing that harm actually would befall an inmate,' but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist.'" *Lucas v. Turn Key Health Clinics, LLC*, 58 F.4th 1127, 1137 (10th Cir. 2023) (quoting *Farmer*, 511 U.S. at 842, 843 n.8).

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory." *Id*. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided *some* care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." *Id*. (citations omitted). Under the

deliberate indifference analysis, "merely doing *something* (with no reference to the underlying condition) does not necessarily insulate one from liability." *Id*. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." *Id*. (citations omitted).

In his response, Plaintiff claims that "he had to personally initiate his own medical care through a different unit officer, more than (2) two hours after the assault." (Doc. 10, at 5.) Plaintiff alleges that the denial of medical care by Defendants Parks, Meredith, and Chapman, was deliberately indifferent to his health and safety and in a conspiracy to extort Plaintiff's signature on a PC waiver "and/or because of a lack of adequate training and/or KDOC policy or custom." *Id*. Plaintiff claims that he had scrapes, scratches, nail gouges, bruises, and "could barely speak with great pain, throat swelling and considerable/substantial throat, neck and back pain" and "was x-ray[ed] at the LCF clinic, then rushed by ambulance to KU Hospital." *Id*. Plaintiff alleges that while at the hospital, he was monitored for additional swelling in his throat that "had the potential to cut off breathing." *Id*. at 6. Plaintiff alleges that the delay in receiving medical care "could have easily led to suffocation and death." *Id*. Plaintiff alleges that he asked all three defendants for medical help and they "could easily see the scrapes and bruising developing on and around [his] throat, and [he] could barely speak, because of the swelling and pain." *Id*.

The Court finds that Plaintiff's gatekeeper claim that Defendants failed to fulfill their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs, survives screening.

### B. Due Process – Disciplinary Hearing

Plaintiff continues to argue in his response that he was issued three false and unwarranted

disciplinary reports.  (Doc. 10, at 15.)  He alleges that he was found guilty of the first two because he was not allowed to have witnesses and he was not present at the hearing. *Id*.  He claims that the DRs were in retaliation for filing grievances and due to his complaints about excessive drug and tobacco smoke.  *Id*.  Plaintiff alleges that he was found "not guilty" for the third DR and it was issued because Defendant Parks continued to put other prisoners in the same cell with Plaintiff after Plaintiff returned from the KU Hospital.  *Id*.

The Court is finding in this Memorandum and Order that Plaintiff's retaliation claims survive screening.  However, to the extent Plaintiff argues that his due process rights were violated at his disciplinary hearings, his claims are dismissed.  Plaintiff claims the third DR was retaliatory and the first two DRs denied him due process.

Plaintiff was found guilty of the first two DRs. Section 1983 is not applicable to "challenges to punishments imposed as a result of prison disciplinary infractions," unless the disciplinary conviction has already been invalidated.  *Cardoso v. Calbone*, 490 F.3d 1194, 1199 (10th Cir. 2007).  The Supreme Court has made clear that "a state prisoner's claim for damages is not cognizable under 42 U.S.C. § 1983 if 'a judgment in favor of the plaintiff would necessarily imply the invalidity of his conviction or sentence,' unless the prisoner can demonstrate that the conviction or sentence has previously been invalidated."  *Edwards v. Balisok*, 520 U.S. 641, 643 (1997) (quoting *Heck v. Humphrey*, 512 U.S. 477, 487 (1994)).  This rule applies not only when the prisoner challenges his conviction but also when he challenges punishments imposed as a result of prison disciplinary infractions.  *Balisok*, 520 U.S. at 648.

Challenges to prison disciplinary proceedings must be raised in a petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2241.  *Abdulhaseeb v. Ward*, 173 F. App'x 658, 659 n.1 (10th Cir. 2006) (citing *McIntosh v. United States Parole Comm'n*, 115 F.3d 809, 811 (10th

Cir. 1997) (petitions under § 2241 are used to attack the execution of a sentence, including the deprivation of good-time credits and other prison disciplinary matters); *Brown v. Smith*, 828 F.2d 1493, 1495 (10th Cir. 1987) ("If [the petitioner] can show that his due process rights were violated in the subject disciplinary proceedings, then § 2241 would be the appropriate remedy to use to restore his good time credits."); *see also Gamble v. Calbone*, 375 F.3d 1021 (10th Cir. 2004) (inmates were entitled to habeas relief on grounds that revocation of their earned credits resulting from unsupported disciplinary convictions violated due process), *superseded by statute on other grounds as stated in Magar v. Parker*, 490 F.3d 816, 818–19 (10th Cir. 2007).

Plaintiff's due process claim based on his disciplinary proceedings is dismissed for failure to state a claim.

### C.  Due Process – Restrictive Housing

Plaintiff also claims that his time in restrictive housing constituted atypical conditions of incarceration.  Liberty interests which are protected by the Due Process Clause are "generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force . . . nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." *Sandin v. Conner*, 515 U.S. 472, 484 (1995) (internal citations omitted).  Plaintiff does not have a constitutional right to a particular security classification or to be housed in a particular yard.  *Meachum v. Fano*, 427 U.S. 215, 224 (1976); *Harbin-Bey v. Rutter*, 420 F.3d 571, 577 (6th Cir. 2005) (increase in security classification does not constitute an atypical and significant hardship because "a prisoner has no constitutional right to remain incarcerated in a particular prison or to be held in a specific security classification")).

The Supreme Court has held that "the Constitution itself does not give rise to a liberty interest in avoiding transfer to more adverse conditions of confinement." *Wilkinson*, 545 U.S. at 221–22 (citing *Meachum*, 427 U.S. at 225 (no liberty interest arising from Due Process Clause itself in transfer from low-to maximum-security prison because "[c]onfinement in any of the State's institutions is within the normal limits or range of custody which the conviction has authorized the State to impose"). "Changing an inmate's prison classification . . . ordinarily does not deprive him of liberty, because he is not entitled to a particular degree of liberty in prison." *Sawyer v. Jefferies*, 315 F. App'x 31, 34 (10th Cir. 2008) (citing *Templeman v. Gunter*, 16 F.3d 367, 369 (10th Cir. 1994) (citing *Meachum*, 427 U.S. at 225)). Plaintiff has not alleged that his assignment imposed any atypical and significant hardship in relation to the ordinary incidents of prison life. *Cf. Wilkinson*, 545 U.S. at 223–24 (finding atypical and significant hardship in assignment to supermax facility where all human contact prohibited, conversation not permitted, lights on 24-hours-a-day, exercise allowed for only one hour per day in small indoor room, indefinite placement with annual review, and disqualification of otherwise eligible inmate for parole consideration).

Plaintiff does not have a constitutional right to dictate where he is housed, whether it is which facility or which classification within a facility. *See Schell v. Evans*, 550 F. App'x 553, 557 (10th Cir. 2013) (citing *Meachum*, 427 U.S. at 228–29; *Cardoso v. Calbone*, 490 F.3d 1194, 1197–98 (10th Cir. 2007). Moreover, jail officials are entitled to great deference in the internal operation and administration of the facility. *See Bell v. Wolfish*, 441 U.S. 520, 547–48 (1979).

Plaintiff alleges in his response that the protective custody status given to him at LCF should have been transferred with Plaintiff to LSCF, or else he "should have immediately been placed in general population [and] should not have again been held another 95 days in seg. At

16

LSCF, without due process, or reason given for [Plaintiff's hold in seg."   (Doc. 10, at 5.) However, as stated above, Plaintiff's conditions at LSCF are not at issue in this case.

Plaintiff also suggests that his physical disabilities and status as an "elder person" or a "prisoner" provides him with a liberty interest because there are Kansas statutes that prohibit mistreatment of an elder person or prisoner and prohibit intimidation of a witness or victim.[6] *Id.* at 7–8, 11–12.  These statutes, as addressed below, do not provide Plaintiff with a cause of action or direct benefit.  The Supreme Court has distinguished between statutes that provide "direct benefits," with those providing "indirect benefits." *See Town of Castle Rock, Colo. v. Gonzales*, 545 U.S. 748, 767–68 (2005) (stating that the indirect nature of a benefit is fatal to a due process claim).   In noting the Supreme Court's "continuing reluctance to treat the Fourteenth Amendment as a 'font of tort law,'" the Court found that "the benefit that a third party may receive from having someone else arrested for a crime does not trigger protections under the Due Process Clause, neither in its procedural nor in its 'substantive' manifestations." *Id.* at 768 (citations omitted).

Plaintiff states in his response that he "had to sign a PC waiver to get out of seg." (Doc. 10, at 17.)  Plaintiff alleges that his placement in segregation was also retaliatory. *See* Doc. 10, at 18.  Plaintiff alleges that when he returned from the hospital after the attack, he was told that he would be placed in a cell by himself in protective custody, but Defendants Parks, Meredith, and Chapman, refused to allow this. *Id.* at 19. Plaintiff's due process claim based on his alleged atypical conditions is dismissed for failure to state a claim.  However, the Court finds that Plaintiff's retaliation claim based on his placement in segregation and the denial of protective custody, survives screening.

---

[6]  In his response, Plaintiff lists various statutes, including state statutes prohibiting intimidation of a witness and mistreatment of a confined person, and federal statutes prohibiting harassment of a witness or victim and dealing with air pollution and control. *See* Doc. 10, at 21.

### 3. Count III – Failure to Protect

Plaintiff alleges that Defendants failed to protect him.  "Under the Eighth Amendment, prison officials have a duty to 'provide humane conditions of confinement,' including 'tak[ing] reasonable measures to guarantee the safety of . . . inmates.'"  *Requena v. Roberts*, 893 F.3d 1195, 1214 (10th Cir. 2018), *cert. denied*, 139 S. Ct. 800 (2019) (quoting *Farmer v. Brennan*, 511 U.S. 825, 832 (1994) (quotation marks omitted)).  This duty includes "a duty to protect prisoners from violence at the hands of other prisoners." *Farmer*, 511 U.S. at 833 (ellipsis and quotation marks omitted).  To prevail on a failure to protect claim, a plaintiff must show:  "(1) 'that the conditions of [her] incarceration present an objective substantial risk of serious harm' and (2) 'prison officials had subjective knowledge of the risk of harm,' '[i]n other words, an official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Requena*, 893 F.3d at 1214 (citation omitted).

"The unfortunate reality is that threats between inmates are common and do not, under all circumstances, serve to impute actual knowledge of a substantial risk of harm." *Turner v. Okla. Cty. Bd. of Cty. Comm'rs*, 804 F. App'x 921, 926 (10th Cir. 2020) (unpublished) (citing *Marbury v. Warden*, 936 F.3d 1227, 1236 (11th Cir. 2019) (per curiam) (internal quotation marks omitted); *Prater v. Dahm*, 89 F.3d 538, 541 (8th Cir. 1996) (same)). "[S]ubjective awareness of only *some* risk of harm to a prisoner is insufficient for a deliberate-indifference claim." *Id*. (citing *Marbury*, 936 F.3d at 1238).  Rather, "officials must possess enough details about a threat to enable them to conclude that it presents a strong likelihood of injury, not a mere possibility." *Id*. (citing *Marbury*, 936 at 1236 (internal quotation marks omitted)).

In his response, Plaintiff argues that his conditions were atypical, stating that there was a

"rotation of many violent prisoners, put in with [Plaintiff], and by loud radio noise being blasted into the cell by putting disciplinary charged drug user/dealers in the same cell with [Plaintiff], even individuals [Plaintiff] was requesting protection from, then being physically assaulted/battered/attempted murder by strangulation by Jeremy Garza, then denied immediate medical care. . . ."  (Doc. 10, at 14–15.)

Plaintiff alleges that he "previously and consistently" brought the issue up in his K.S.A. 60-1501 case filed on November 6, 2020.  *Id*. at 16.  Plaintiff states that the case was dismissed without an evidentiary hearing and included a physical assault by Officer Gardner, because of Plaintiff's "complaints about all the drug and tobacco smoke on the Unit, and him allowing other prisoner [sic] into [Plaintiff's] cell who didn't live there."  *Id*.  Plaintiff alleges that prior to this attack, Plaintiff "was assaulted in the rest-room, surrounded by gang members, who struck [Plaintiff] in the face, and breaking [sic] [his] eyeglasses."  *Id*.  Plaintiff also alleges that Defendant Spillman failed to protect Plaintiff because he told Plaintiff that Plaintiff "would be putting [his] life in [his] own hands, because most of the prisoners at LCF were drug users and dealers, [and] if [he] kept complaining about the drug and tobacco smoke problem."  *Id*.  Plaintiff alleges that this failed to protect Plaintiff, and by not correcting the problem it put Plaintiff's health and safety in danger.  *Id*.

Plaintiff alleges that Defendants Meredith and Chapman knew Plaintiff was requesting protection from other prisoners, "and knew that [Plaintiff] had individually requested help from both, even after the attack . . ."  *Id*.  Plaintiff alleges that Defendant Parks kept putting Plaintiff in danger by putting disciplinary drug users/dealers in the same cell with Plaintiff, and that Plaintiff confronted Parks about it on June 12, 2023—well before the attack by Garza.  *Id*.

The Court finds that Plaintiff's failure to protect claim survives screening.

### 4.  Additional Statutes

In addition to bringing this case under 42 U.S.C. § 1983, Plaintiff also asserts jurisdiction under 42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, and 18 U.S.C. § 1514.  (Doc. 8, at 2.)

### A.  42 U.S.C. § 1985

Section 1985 deals with conspiracies to interfere with civil rights.  *See* 42 U.S.C. § 1985. Plaintiff's bald allegation of a conspiracy is insufficient to state a claim.  Plaintiff fails to assert factual allegations in support of his claim.  To state a claim for conspiracy, Plaintiff must include in his complaint enough factual allegations to suggest that an agreement was made. *Gee v. Pacheco*, 627 F.3d 1178, 1183 (10th Cir. 2010).  A bare assertion of conspiracy, absent context implying a meeting of the minds, fails to raise a right to relief above the speculative level. *Id.* Here, Plaintiff provides no factual information whatsoever to demonstrate any type of agreement was made between anyone.  Such conclusory allegations fail to state a plausible claim for relief.

Any conspiracy claim under § 1985(2) also fails because Plaintiff has not shown discriminatory animus against him based on his membership in a protected class.  *See Garcia v. Yniquez*, 2022 WL 2734636, at *2 (10th Cir. July 14, 2022) (unpublished).  Causes of action under both sections (2) and (3) require a showing of "some racial, or perhaps otherwise class-based, invidiously discriminatory animus behind the conspirators' actions."  *Jones v. Norton*, 809 F.3d 564, 578 (10th Cir. 2015) (citations omitted); *see also Bisbee v. Bey*, 39 F.3d 1096, 1102 (10th Cir. 1994) (a § 1985 claim lacking an allegation of "class-based or racial discriminatory animus" must fail)); *see also Chubb v. Brownback*, 2016 WL 5410615, at *7 (D. Kan. Sept. 28, 2016) ("To assert a plausible claim under § 1985(3), plaintiff must allege a conspiracy based on racial animus.") (citing *Jones*, 809 F.3d at  576).

Plaintiff suggests in his response that he is in a protected class of "elder persons." (Doc. 10, at 3.)  He claims it is discriminatory to exclude this protected class.  *Id.*   Nothing in Plaintiff's SAC suggests any discriminatory animus against him based on his age.  Plaintiff has failed to state a claim under 42 U.S.C. § 1985.  *See Steshenko v. Albee*, 70 F. Supp. 3d 1002, 1016 (N.D. Cal. 2014) (finding that "even if Plaintiff had sufficiently plead his conspiracy claim, it is not cognizable under § 1985 because the Age Discrimination Act has its own comprehensive remedial structure" and where "a statute both creates a right and provides a remedial structure, a plaintiff may not use § 1985(3) to circumvent the statutory enforcement scheme").

## B.  18 U.S.C. § 241 and § 242

Plaintiff does not have a cause of action under these criminal statutes.  Section 241 deals with conspiracy against rights and § 242 deals with the deprivation of rights under color of law. Neither provide a private cause of action.  *See Houck v. Gurich*, 515 F. App'x 724, 724–25 (10th Cir. 2013) (unpublished) ("18 U.S.C. § 242 does not create a private civil cause of action.") (citations omitted).  It is a criminal statute, and "like other such statutes, do[es] not provide for a private civil cause of action."  *Henry v. Albuquerque Police Dep't*, 49 F. App'x 272, 273 (10th Cir. 2002) (unpublished) (citing *Newcomb v. Ingle,* 827 F.2d 675, 677 n. 1 (10th Cir. 1987) (noting § 241 does not authorize private right of action); *Cok v. Cosentino,* 876 F.2d 1, 2 (1st Cir. 1989) (same to both §§ 241 and 242)).

## C.  18 U.S.C. § 1514

This statute provides for a civil action to restrain harassment of a victim or witness.  18 U.S.C. § 1514.  It provides for a temporary restraining order prohibiting harassment of a victim or witness "in a Federal criminal case," and "upon application of the attorney for the

Government." *Id.* at (a)(1), (b)(1).  Plaintiff has not alleged that he is a victim or witness in a Federal criminal case.

In the MOSC II, the Court addressed Plaintiff citation to 18 U.S.C. § 1513(b), (d), (e) and (f), and his allegation that he is a whistleblower.  Again, this is a criminal statute dealing with obstruction of justice and retaliation against a witness, victim, or an informant.   "A private right of action is not recognized under this criminal statute."  *Shahin v. Darling*, 606 F. Supp. 2d 525, 539 (D. Del. 2009) (citation omitted); *see also Andrews v. Heaton*, 483 F.3d 1070, 1076 (10th Cir. 2007) (finding that various federal criminal statutes "do not provide for a private right of action and are thus not enforceable through a civil action") (citing *see United States v. Claflin,* 97 U.S. 546, 547, 24 L.Ed. 1082 (1878) ("That act contemplated a criminal proceeding, and not a civil action. . . . It is obvious, therefore, that its provisions cannot be enforced by any civil action. . . ."); *Schmeling v. NORDAM,* 97 F.3d 1336, 1344 (10th Cir. 1996) ("[W]e find no evidence that Congress intended to create the right of action asserted by Schmeling, and we conclude that such a right does not exist.")).

Plaintiff previously argued that he has been subjected to elder abuse, citing 34 U.S.C. § 12291(14)(A) and (B).  Although he does not cite this statute in his SAC, he claims in his response that he is not abandoning his elder abuse claim.  (Doc. 10, at 2, 21–22.)  This statute is a criminal statute and does not provide for a private cause of action.  *See Gibbs v. N.H. Dep't of Corr. Comm'r Helen Hanks*, 561 F. Supp. 3d 139, 150 (D. N.H. 2021) (finding that cited provisions of the statute regarding the definition of elder abuse appear in a federal statute that authorizes grants and embodies provisions relating to the prevention of violence against women, "that statute does not provide plaintiffs with a cause of action pertinent to the issues here") (citing *cf. Malouf v. Benson*, No. 17-10941-LTS, 2018 U.S. Dist. LEXIS 232207 at *6, 2018 WL

10155427, at *3 (D. Mass. Aug. 23, 2018) (neither definition of "child maltreatment" in 34 U.S.C. § 12291, nor Violence Against Women Act, creates private right of action)).

In his response, Plaintiff states that he "is not formally seeking any specific monetary award or legal enforcement of any criminal statutes of these protected classes in this civil action for punitive damages." (Doc. 10, at 2.)  Any claims Plaintiff asserts under these statutes are dismissed for failure to state a claim.

## IV.  Motion to Appoint Counsel

Plaintiff has filed a Motion for Appointment of Counsel (Doc. 9).  Plaintiff alleges that he is indigent and is a senior citizen with various health issues.  (Doc. 9, at 1–2.)  Plaintiff alleges that his injuries make it hard for him to write and to hold a pen.  *Id*. at 2.  He also claims that the time allotted for using a computer is not sufficient enough for him to meet deadlines, and his library time is limited.  *Id*.  Plaintiff states that he needs a trained litigator to conduct discovery, to argue his case, to present evidence, and to cross-examine witnesses.  *Id*. at 3.

The Court has considered Plaintiff's motion for appointment of counsel.  There is no constitutional right to appointment of counsel in a civil case.  *Durre v. Dempsey*, 869 F.2d 543, 547 (10th Cir. 1989); *Carper v. DeLand*, 54 F.3d 613, 616 (10th Cir. 1995).  The decision whether to appoint counsel in a civil matter lies in the discretion of the district court.  *Williams v. Meese*, 926 F.2d 994, 996 (10th Cir. 1991).  "The burden is on the applicant to convince the court that there is sufficient merit to his claim to warrant the appointment of counsel."  *Steffey v. Orman*, 461 F.3d 1218, 1223 (10th Cir. 2006) (quoting *Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111, 1115 (10th Cir. 2004)).  It is not enough "that having counsel appointed would have assisted [the prisoner] in presenting his strongest possible case, [as] the same could be said in any case."  *Steffey*, 461 F.3d at 1223 (quoting *Rucks v. Boergermann*, 57 F.3d 978, 979 (10th Cir.

1995)).

In deciding whether to appoint counsel, courts must evaluate "the merits of a prisoner's claims, the nature and complexity of the factual and legal issues, and the prisoner's ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115 (citing *Rucks*, 57 F.3d at 979). The Court concludes in this case that (1) the issues are not complex; and (2) Plaintiff appears capable of adequately presenting facts and arguments. The Court denies the motion without prejudice. If Plaintiff requires additional time to comply with deadlines in this case, he should file a motion seeking an extension of time.

## V.  Conclusion

The Court finds that Plaintiff's claims alleging the denial of his right to freely practice his religion at LCF, retaliation, failure to provide medical care, and failure to protect, survive the Court's screening. Plaintiff's remaining claims based on due process violations and violations of 42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, and 18 U.S.C. § 1514, are dismissed for failure to state a claim.

**IT IS THEREFORE ORDERED BY THE COURT** that Plaintiff's Motion for Appointment of Counsel (Doc. 9) is **denied without prejudice.**

**IT IS FURTHER ORDERED** that Plaintiff's claims in his Second Amended Complaint alleging the denial of his right to freely practice his religion at LCF, retaliation, failure to provide medical care, and failure to protect, survive the Court's screening. Plaintiff's remaining claims based on due process violations and violations of  42 U.S.C. § 1985, 18 U.S.C. §§ 241 and 242, and 18 U.S.C. § 1514, are dismissed for failure to state a claim.

**IT IS FURTHER ORDERED** that the Court will enter a separate service order for service on the Defendants.

**IT IS SO ORDERED**.

**Dated August 19, 2024, in Kansas City, Kansas.**

<u>S/  John W. Lungstrum</u>
**JOHN W. LUNGSTRUM**
**UNITED STATES DISTRICT JUDGE**