IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOBBY BRUCE WHITE, | ) |
| | ) |
|       Plaintiff, | ) |
| | ) |
| v. | )   Case No. 24-3023-DDC-RES |
| | ) |
| ANDREW PARKS, *et al.*, | ) |
| | ) |
|       Defendants. | ) |
| | ) |

## DEFENDANTS' MOTION TO DISMISS,

Defendants Andrew Parks and Bruce Chapman ("Defendants"), respectfully request, through Assistant Attorneys General Matthew L. Shoger, that this Court dismiss the claims against them under Fed. R. Civ. P. 12(b). They attach six new exhibits, as outlined in the table below, and state the following in support.

### INDEX OF EXHIBITS

| Exhibit | Description |
|---|---|
| A | KASPER Information Sheet |
| B | Response by Secretary of Corrections to appeal of grievance no. AA2023056 |
| C | Response by Secretary of Corrections to appeal of grievance no. AA2024081 |
| D | Response by Secretary of Corrections to appeal of grievance no. AA2024082 |
| E | Petition for Writ of Habeas Corpus in Leavenworth County case no. LV-2022-CV-323 (later renumbered to case no. PN-2024-CV-9 after being transferred to Pawnee County) |
| F | Declaration of Darcie Holthaus |

### NATURE OF THE CASE

Plaintiff Bobby Bruce White alleges that on July 12, 2023 – while incarcerated under the Kansas Department of Corrections (KDOC) at Lansing Correctional Facility (LCF) – Defendants denied White immediate medical care following an incident where another inmate attempted to strangle White. (Doc. 8 at 3-4; *see also* Doc. 10 at 5.) White alleges he told Defendants he

needed medical care, which was allegedly initially denied. (Doc. 8 at 6; *see also* Doc. 10 at 5.) White also alleges Defendants failed to protect him from the other inmate prior to the incident. (Doc. 8 at 6; *see also* Doc. 10 at 14-17.)

White alleges that after the incident Defendants placed him in segregation and denied him protective custody in retaliation for a grievance he submitted (one numbered AA2023056), for a habeas corpus case he filed (Leavenworth County case number 2022-CV-323), and for generic complaints about the "drug and tobacco smoke problem at LCF." (Doc. 10 at 18-19; *see also* Doc. 11 at 17 (treating Doc. 10 as part of the pleadings).) The grievance cited and the Petition in the habeas case refer to Defendant Spillman but do not mention the other defendants. (*See* Exhibit B; Exhibit E.)

White filed this lawsuit on February 12, 2024. (Doc. 1.) He filed his Second Amended Complaint on May 28, 2024. (Doc. 8.) On screening under the Prison Litigation Reform Act (PLRA), the Court dismissed White's due-process claims and all claims under 42 U.S.C. § 1985, 18 U.S.C. §§ 241, 242, and 1514. (Doc. 11 at 24.) White has three remaining counts under § 1983. (Doc. 8 at 4-7; Doc. 11 at 24.) Count II alleges Eight-Amendment deliberate indifference to medical needs, and (as supplemented by Doc. 10) also includes a First-Amendment retaliation claim. (Doc. 8 at 4, 6; Doc. 11 at 13 (citing Doc. 10 at 5), 17 (citing Doc. 10 at 18-19).) Court III alleges failure to protect under the Eighth Amendment. (Doc. 8 at 7.) Count I does not contain any allegations against the Defendants.  White seeks nominal, compensatory, and punitive damages. (Doc. 8 at 8.) Defendants now file their Motion to Dismiss.

The Court should dismiss official-capacity claims for lack of subject-matter jurisdiction due to Eleventh-Amendment immunity. The Court should dismiss the remaining claims against Defendants under Rule 12(b) as a matter in abatement for failure to exhaust administrative

remedies under the Prison Litigation Reform Act (PLRA). Alternatively, Defendants request an evidentiary hearing on the exhaustion issue, for the Court to dismiss this case under Rule 12(b)(6) due to failure to exhaust administrative remedies, or for the Court to convert this motion to a summary-judgment motion and grant the Defendants summary judgment due to failure to exhaust administrative remedies. Further in the alternative, the Court should dismiss the failure-to-protect and retaliation claims in light of qualified immunity for failure to state a claim.

## ARGUMENTS AND AUTHORITIES

I. **The Eleventh Amendment bars White's § 1983 claims against Defendants in their official capacities.**

Under Federal Rule of Civil Procedure 12(b)(1), a defendant may move to dismiss claims for lack of subject-matter jurisdiction. "Once effectively asserted, Eleventh Amendment immunity constitutes a bar to the exercise of federal subject matter jurisdiction." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). "The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Id.* (citing *Edelman v. Jordan*, 415 U.S. 651, 662-63 (1974)). State officials such as KDOC employees share the state's immunity from suits against them in their official capacities. *See id.; White v. Colorado*, 82 F.3d 364, 366 (10th Cir. 1996). A narrow exception allows a plaintiff to seek prospective relief against a state official for ongoing violations of federal law. *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1166 (10th Cir. 2012) (citing *Verizon Md. Inc. v. Pub. Serv. Comm'n*, 535 U.S. 635, 645 (2002)). But claims for "retrospective declaratory relief" are barred. *Meiners v. Univ. of Kan.*, 359 F.3d 1222, 1232 (10th Cir. 2004).

Here, White requests only monetary relief in the form of compensatory, punitive, and nominal damages (Doc. 8 at 8) which is barred by the Eleventh Amendment as asserted against Defendants in their official capacities. White does not request prospective relief. Therefore,

3

White's claims against the Defendants in their official capacities should be dismissed for lack of subject-matter jurisdiction due to Eleventh Amendment immunity.

**II.** **As a matter in abatement, White's claims should be dismissed because he failed to exhaust his administrative remedies under the PLRA.**

   **A. Exhaustion of administrative remedies is a matter in abatement, so factual disputes regarding it can be resolved on a motion to dismiss.**

Federal Rule of Civil Procedure 12(d) states: "If, on a motion under *Rule 12(b)(6)* or 12(c), matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56" (emphasis added). But a defense of failure to exhaust does not fall under Rule 12(b)(6) because it is not related to the merits of the action. *Bryant v. Rich*, 530 F.3d 1368, 1374-76 & n.12 (11th Cir. 2008) (approvingly cited by *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012)); *see also Valenzuela*, 699 F.3d at 1205 (saying failure to exhaust is a "threshold, nonmerits issue"), 1208 ("A dismissal based on lack of exhaustion should ordinarily be without prejudice"); *Semtek Int'l Inc. v. Lockheed Martin Corp.*, 531 U.S. 497, 505 (2001) ("an 'adjudication upon the merits' is the opposite of a 'dismissal without prejudice'"). "Federal courts . . . traditionally have entertained certain pre-answer motions that are not expressly provided for by the rules or by statute," including

> pretrial motions . . . closely related to the management of the lawsuit [that] might be characterized in general terms as involving matters of judicial administration; the authority to hear these motions lies in the inherent power of a court to regulate actions pending before it. In this category fall motions to stay and motions to dismiss because another action is pending.

5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1360 (3d ed. June 2024 Update). The court in *Bryant* held that exhaustion of administrative remedies under the PLRA is such a matter of judicial administration. *Bryant*, 530 F.3d at 1375 (11th Cir. 2008).

"When the court treats the motion as having been brought under Rule 12(b), then it is

4

subject to the rules and practices applicable to the most analogous Rule 12(b) motion." Wright & Miller § 1360. The *Bryant* case recognized exhaustion as a matter in abatement and compared it to how other matters in abatement are handled under Rule 12(b). *Bryant*, 530 F.3d at 1376. Black's Law Dictionary defines abatement as "[t]he suspension or defeat of a pending action for a reason unrelated to the merits of the claim." Abatement(2), Black's Law Dictionary (12th ed. 2024). So a matter in abatement is a matter that can suspend or defeat an action but is unrelated to the merits of that action. Matters in abatement include not only exhaustion but also jurisdiction, venue, and service of process, and such matters are not traditionally matters for a jury. *Bryant*, 530 F.3d at 1376-77 ("Requiring jury trials to resolve factual disputes over the preliminary issue of exhaustion would be a novel innovation for a matter in abatement" such as "the PLRA's exhaustion requirement"). Accordingly, the summary judgment standard, which considers whether "a reasonable jury could find in favor of the nonmovant," *see Sinclair Wyo. Refin. Co. v. A & B Builders, Ltd.*, 989 F.3d 747, 765 (10th Cir. 2021), does not apply, as no jury should be involved for the exhaustion issue.

> Because exhaustion of administrative remedies is a matter in abatement and not generally an adjudication on the merits, an exhaustion defense . . . is not ordinarily the proper subject for a summary judgment; instead, it should be raised in a motion to dismiss, or be treated as such if raised in a motion for summary judgment.

*Bryant*, 530 F.3d at 1374-75 (emphasis added); *see also* 5C Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1366 (3d ed. June 2024 Update) (saying "the defenses enumerated in Rule 12(b)(1) through Rule 12(b)(5) and Rule 12(b)(7) generally are not proper subjects for motions for summary judgment" because they "are in the nature of pleas in abatement"). As the Eleventh Circuit explained:

> Because the failure to exhaust is "treated as a matter in abatement and not an adjudication on the merits," the district court may consider facts outside the

5

> pleadings "so long as the factual disputes do not decide the merits and the parties have sufficient opportunity to develop a record."

*Shivers v. United States*, 1 F.4th 924, 935 (11th Cir. 2021) (quoting *Bryant*, 530 F.3d at 1376).

This does not contradict any holdings from the Tenth Circuit. Because failure to exhaust is an affirmative defense, the burden of asserting failure to exhaust lies with the defendants. *Freeman v. Watkins*, 479 F.3d 1257, 1260 (10th Cir. 2007). So the Tenth Circuit limited *sua sponte* dismissals based on failure to exhaust to when the failure is evident from the face of the complaint. *Freeman*, 479 F.3d at 1260 (citing *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007)). Three unpublished Tenth Circuit decisions have, in dicta, extended this limitation to motions to dismiss, but all three *affirmed* a dismissal based on failure to exhaust raised in a motion to dismiss. *Cirocco v. McMahon*, 768 F. App'x 854, 855, 858 (10th Cir. 2019) (affirming and remanding for employment-discrimination claims to be dismissed "without prejudice" based on failure to exhaust); *Burnett v. Okla. Dep't of Corr.*, 737 F. App'x 368, 371-73 (10th Cir. 2018); *Russell v. Lincoln*, 267 F. App'x 785, 787 (10th Cir. 2008). The undersigned counsel has diligently searched and has been unable to find any Supreme Court or Tenth Circuit decisions declining to allow evidence regarding exhaustion to be considered on a motion to dismiss. So to treat exhaustion under the PLRA as a matter in abatement would not require ignoring any holdings from the Supreme Court or Tenth Circuit. Alternatively, Defendants make a good faith, "nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law" in light of the Eleventh Circuit's sound reasoning. *See* Fed. R. Civ. P. 11(b)(2); *see also Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) ("A defense of failure to properly exhaust available administrative remedies under the PLRA should be treated as a matter in abatement.").

**B. Exhaustion of administrative remedies is mandatory under the PLRA.**

The PLRA requires an inmate to exhaust all available administrative remedies before bringing a § 1983 claim about prison conditions. 42 U.S.C. § 1997e(a); *Porter v. Nussle*, 534 U.S. 516, 520 (2002). "There is no question that exhaustion is mandatory under the PLRA and that unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007). "[T]he PLRA exhaustion requirement requires proper exhaustion." *Woodford v. Ngo*, 548 U.S. 81, 93 (2006). "An inmate properly exhausts a claim by utilizing each step the prison holds out for resolving the claim internally and by abiding 'with an agency's deadlines and other critical procedural rules.'" *Gray v. Sorrels*, 818 F. App'x 787, 789 (10th Cir. 2020) (quoting *Woodford*, 548 U.S. at 90). "In other words, a prisoner must comply with procedural 'rules that are defined not by the PLRA, but by the prison grievance process itself.'" *Williams v. Hill*, 422 F. App'x 682, 684 (10th Cir. 2011) (quoting *Bock*, 549 U.S. at 218).

In a suit governed by the PLRA, failure to exhaust is an affirmative defense, and the defendant has the burden regarding exhaustion of administrative remedies. *Roberts v. Barreras*, 484 F.3d 1236, 1240-41 (10th Cir. 2007). "The issue of Plaintiff's failure to exhaust his available administrative remedies before filing his lawsuit must be determined before reaching the merits of his lawsuit." *See Bateast v. Orunsolu*, No. 22-3093-JWL, 2023 WL 3072669, at *5 (D. Kan. Apr. 25, 2023) (citing *Little v. Jones*, 607 F.3d 1245, 1249 (10th Cir. 2010)).

The KDOC Grievance Procedure for Inmates is set forth in K.A.R. § 44-15-101 *et seq.*, and applies "to a broad range of matters that directly affect the inmate, including . . . [c]omplaints by inmates regarding policies and conditions within the jurisdiction of the facility or the department of corrections; and . . . actions by employees and inmates, and incidents occurring within the facility." K.A.R. § 44-15-101a(d)(1). Here, this regulation applies to White's § 1983 claim because his Complaint involves the alleged actions of LCF employees. *See*

7

*Lindsey v. Cook*, No. 19-3094-HLT, 2021 WL 483855, at *2 (D. Kan. Feb. 4, 2021).

An inmate must take four steps to complete the grievance process: (1) attempt an informal resolution with unit team members; (2) submit a grievance to an appropriate unit team member; (3) submit a grievance to the warden; and (4) appeal to the secretary of corrections. *Lindsey*, 2021 WL 483855, at *2; K.A.R. §§ 44-15-101(b), (d), 44-15-102(a)-(c). Step two must occur within 15 days of discovery of the issue, not counting weekends or holidays. *See* K.A.R. § 44-15-101b. If the inmate does not receive a response at steps two or three within ten days, the inmate can move to the next step in the process but must do so within three days of that deadline. *Lindsey*, 2021 WL 483855, at *3; K.A.R. § 44-15-102(a)(2), (b), (b)(3)(A)(ii), (G), (c)(1).

As the Tenth Circuit has recognized, grievances under K.A.R. § 44-15-101 *et seq.* (Article 15) and personal-injury claims under K.A.R. § 44-16-104a (Article 16) are "separate" and "distinct." *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *1 to *5 (10th Cir. Aug. 11, 2023). Exhaustion for § 1983 constitutional claims is accomplished through Article 15 grievances, and exhaustion for personal-injury claims is separately accomplished through Article 16 claims for personal injury. *Id.*

**C. White filed various grievances and personal-injury claims that mention the defendants in this case or the incident on July 12, 2023.**

White is currently incarcerated (Doc. 8 at 1, 8; *see also* Docket (showing White's address of record for purposes of service); Exhibit A at 2-3), and he brings conditions-of-confinement claims under § 1983, so the PLRA's exhaustion requirement applies. *See* 42 U.S.C. § 1997e(a).

1. *Grievances*

White filed a grievance numbered AA2023056 on October 5, 2022. (Exhibit B at 8; *see also* Doc. 8 at 8 (referencing this grievance); Exhibit E at 13; Exhibit F at ¶¶ 4-7.) In that grievance and its appeals, White complains about Gary Spillman and BIBR but not about

8

Defendants. (Exhibit B at 8-9, 3-6; Exhibit E at 13, 15-19.) The grievance was denied by the unit team on October 6, 2022 (Exhibit B at 8; Exhibit E at 13), by the warden on appeal on October 10, 2022 (Exhibit B at 8, 10; Exhibit E at 13-14), and by the Secretary of Corrections on appeal on November 3, 2022 (Exhibit B at 1; Exhibit E at 12).

White filed grievance AA2024081 on October 1, 2023. (Exhibit C at 6; *see also* Doc. 8 at 8 (referencing this grievance); Doc. 8-1 at 22; Exhibit F at ¶¶ 8-11.) In that grievance, White complains about noise in his cellhouse. (Exhibit C at 6; Doc. 8-1 at 22.) The grievance was denied by the unit team on October 10, 2023 (Exhibit C at 6; Doc. 8-1 at 22), and by the warden on appeal on February 5, 2024 (Exhibit C at 5-6; Doc. 8-1 at 21-22). When White appealed to the Secretary of Corrections, he added, for the first time, some allegations regarding Defendants and regarding the July 12, 2023, incident. (Exhibit C at 2-4; Doc. 8-1 at 19-20.) The Secretary of Corrections ignored the additional allegations[1] and denied the appeal on March 8, 2024, finding that the warden's response was correct. (Exhibit C at 1; Doc. 8-1 at 18.)

White filed grievance AA2024082 on September 27, 2023. (Exhibit D at 5; *see also* Doc. 8 at 8 (referencing this grievance); Exhibit F at ¶¶ 12-15.) In that grievance, White complains about not receiving library books. (Exhibit D at 5.) The grievance was denied by the unit team on October 10, 2023 (Exhibit D at 5), and by the warden on appeal on February 6, 2024 (Exhibit D at 4-5). When White appealed to the Secretary of Corrections, he added, for the first time, that Parks should fix the book problem. (Exhibit D at 2-4.) The Secretary of Corrections denied the appeal on March 8, 2024, finding that the warden's response was correct. (Exhibit D at 1.)

White allegedly filed an unnumbered grievance on April 25, 2023. (Exhibit F at 17; *see*

---

[1] *See* K.A.R. 44-15-102(d)(2) ("Responding to parts of grievances that are procedurally or substantively appropriate shall not constitute a waiver of defects with the remaining parts of the grievance that are not procedurally or substantively appropriate.").

9

*also* Doc. 8 at 8 (referencing this grievance); Exhibit F at ¶¶ 21-24.) In that grievance, White complains about Gary Spillman and BIBR but not about Defendants. (Exhibit F at 17.) The grievance was allegedly never responded to by the unit team or the warden. (Exhibit F at 17.) On appeal to the Secretary of Corrections, White complains that Defendants Parks and Meredith did not handle Form 9's and grievances correctly. (Exhibit F at 16, 18-23.) The Secretary responded to the alleged appeal as merely an "informal letter" on June 22, 2023, noting that there was no evidence that White had filed a grievance at the unit-team or warden levels. (Exhibit F at 15.)

White sent an emergency grievance to the Secretary of Corrections dated June 9, 2023. (Exhibit F at 26-29; *see also id.* at ¶¶ 25-28.) In that emergency grievance, White complained that he was in segregation and that he had drug dealers and users as cellmates. (Exhibit F at 26-29.) The Secretary of Corrections denied the grievance as "invalid" on June 26, 2023, because it was grieving the classification decision-making process. (Exhibit F at 25.)

White filed an unnumbered grievance on December 21, 2023, marked as an "emergency grievance." (Exhibit F at 39, 47; *see also id.* at ¶¶ 33-36.) In that grievance, White complains of his segregation status at Larned State Correctional Facility (LSCF). (Exhibit F at 39, 41-43, 47-50; *see also* Exhibit A at 3.) It was returned by the unit team without a response on December 22, 2023. (Exhibit F at 37, 45.) White immediately appealed it directly to the Secretary of Corrections, and it was received on January 2, 2024. (Exhibit F at 37-38, 45-46.) The grievance was denied as invalid by the Secretary of Corrections on January 4, 2024, because it was grieving the classification decision-making process. (Exhibit F at 36, 44.)

White filed grievance number IA003367 on December 27, 2023, marked as an "emergency grievance." (Exhibit F at 57; *see also id.* at ¶¶ 37-40.) In that grievance, complains about meal trays at LSCF. (Exhibit F at 57; *see also* Exhibit A at 3.) It was responded to and

10

denied by the warden's designee on January 10, 2024. (Exhibit F at 56-57.) When White appealed to the Secretary of Corrections, he added, for the first time, some allegations regarding the alleged July 12, 2023, incident but does not mention Defendants. (Exhibit F at 53-55.) The Secretary of Corrections denied the appeal on February 6, 2024. (Exhibit F at 52.)

White filed grievance number IA003368 on December 31, 2023, marked as an "emergency grievance." (Exhibit F at 75; *see also id.* at ¶¶ 41-44.) In that grievance, White complains of an LSCF officer knocking on his door. (Exhibit F at 75-76; *see also* Exhibit A at 3.) It was responded to and denied by the warden's designee on January 10, 2024. (Exhibit F at 74-75.) When White appealed to the Secretary of Correction, he added, for the first time, some allegations regarding the alleged July 12, 2023, incident, but does not mention Defendants. (Exhibit F at 71-73.) The Secretary denied the appeal on March 15, 2024. (Exhibit F at 70.)

2. *Personal-injury and property-loss claims*

White allegedly filed a personal-injury claim on October 9, 2023. (Doc. 8 at 8.) But White never appealed the personal-injury claim to the Secretary of Corrections. (Exhibit F at ¶ 49.) White allegedly filed a property-loss claim on December 11, 2023. (*See* Exhibit F at 81-82; *see also id.* at ¶¶ 45-48.) White filed a later property-loss claim on January 29, 2024. (Exhibit F at 82.) This claim was returned unprocessed by the facility as untimely, and the facility's reasoning pointed out that the earlier alleged property-loss claim would also have been untimely. (Exhibit F at 81.) White appealed the ruling to the Secretary of Corrections (Exhibit F at 78-80), and the Secretary of Corrections denied the appeal on October 4, 2024, finding the facility's response was correct. (Exhibit F at 77.)

3. *Other materials*

White also complained about Defendants in a letter to the Secretary of Corrections dated May 5, 2023, and in a letter to the Governor dated September 21, 2023. (Exhibit F at ¶¶ 16-20

11

29-32, pgs. 8-14, 30-35.) But these were not grievances.

### D. None of White's grievances or personal-injury claims satisfy the exhaustion requirement under the PLRA for his § 1983 claims.

#### 1. *Grievances*

As an initial matter, none of the grievances were timely filed within 15 days of the alleged incident on July 12, 2023. The emergency grievance dated June 9, 2023, was denied as an "invalid" use of the emergency grievance procedure, and it did not go through the proper grievance steps. *See* K.A.R. 44-15-106. Although several of the other grievances or appeals happen to mention the alleged July 12, 2023, incident, none of them alleged all the way through all grievance steps failure to provide medical care by Defendants, failure to protect by Defendants, or retaliation by Defendants.

#### 2. *Personal-injury and property-loss claims*

As the Tenth Circuit has recognized, grievances under K.A.R. § 44-15-101 *et seq.* (Article 15) and personal-injury claims under K.A.R. § 44-16-104a (Article 16) are "separate" and "distinct." *Brown v. Schnurr*, No. 22-3183, 2023 WL 5163987, at *1 to *5 (10th Cir. Aug. 11, 2023). Exhaustion for § 1983 constitutional claims is accomplished through Article 15 grievances, and exhaustion for personal-injury claims is separately accomplished through Article 16 claims for personal injury. *Id.* Therefore, White's personal-injury claim on October 9, 2023, and his property-loss claims on December 11, 2023, and January 29, 2024, do not satisfy the exhaustion requirement for his § 1983 constitutional claims here. Regardless, all of these were also untimely under the relevant time limits. *See* K.A.R. § 44-16-104a(a) (setting a 10-calendar-day time limit for personal-injury claims); K.A.R. § 44-16-102(b) (setting a 15-working-day time limit for property-loss claims); (*see also* Exhibit F at 77, 81 (discussing the untimeliness of White's property-loss claims).

**E. Alternatively, Defendants request an evidentiary hearing on the exhaustion issue.**

In the alternative, if the Court believes an evidentiary hearing is necessary to resolve the exhaustion issue at the dismissal stage, then Defendants request an evidentiary hearing regarding the exhaustion issue prior to any proceedings on the merits of the case, including prior to any answer to the Complaint being required and prior to any discovery on the merits. *See Bryant*, 530 F.3d at 1377 n.16 (citing Fed. R. Civ. P. 43(c)) (discussing such hearings).

**F. Alternatively, the claims should be dismissed under Rule 12(b)(6) or Rule 56.**

Further in the alternative, if the Court rules that exhaustion is not a matter in abatement that can be resolved on dismissal, then Defendants request that the Court dismiss Plaintiff's claims under Rule 12(b)(6) for failure to state a claim. The Complaint makes clear which grievances White considers to have exhausted his administrative remedies. (*See* Doc. 8 at 8.) The Complaint references grievance numbers AA2023056, AA2024081, AA2024082, and the unnumbered grievance dated April 25, 2023. Accordingly, the Court can consider Exhibits B through D because the Complaint references them and they are central to the claims (since exhaustion of administrative remedies is necessary to bring the claims in court).[2] *See Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010). For the same reason, the Court can consider the unnumbered grievance dated April 25, 2023, contained in Exhibit F at 15-24. The Court can take judicial notice of Exhibit E, which is a court record filed by White in a related court proceeding. *See Gee*, 627 F.3d at 1191. The Court need not consider Exhibit F, as the Complaint makes clear which grievances are relevant. The Court could also take judicial notice of Exhibit A[3] and the

---

[2] Doc. 8-1 and Exhibit E also contain some of the same pages, as indicated in section II.C.

[3] *United States v. Basher*, 629 F.3d 1161, 1165 & n.2 (9th Cir. 2011) (citing *Demis v. Sniezek*, 558 F.3d 508, 513 n.2 (6th Cir. 2009) and *United States v. Montgomery*, 550 F.3d 1229, 1231 n.1 (10th Cir. 2008)); *see also Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010) (holding the court can properly consider under Rule 12(b)(6) "matters of which a court may take judicial notice").

context it provides, although Exhibit A is not necessary to determine the exhaustion issue.

Alternatively, Defendants request that the Court convert this motion to a motion for summary judgment under Rules 12(d) and 56. If the Court so orders, the Court should give the Plaintiff a chance to respond to Defendants' asserted facts in Section II.C of this motion in accordance with the summary judgment standard. *See Gee*, 627 F.3d at 1186; *Jones v. Cannon*, 589 F. App'x 849, 854 & n.5 (10th Cir. 2014).

### III. Alternatively, White's failure-to-protect and retaliation claims should be dismissed under Rule 12(b)(6) for failure to state a claim.

On a Rule 12(b)(6) motion to dismiss, a complaint must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Although courts have traditionally construed *pro se* pleadings in a liberal fashion, this "does not relieve the plaintiff of the burden of alleging sufficient facts on which a recognized legal claim could be based." *Riddle v. Mondragon*, 83 F.3d 1197, 1202 (10th Cir. 1996).

White alleges Defendants failed to protect him from injury when he was strangled by another inmate. (Doc. 8 at 2, 7; Doc. 10 at 14-16.) White alleges that by placing him in the same cell as drug dealers and users, Defendants should have known an attack was on the horizon. (*See* Doc. 10 at 14-16.) But the KDOC Defendants are entitled to qualified immunity because White has not shown any clearly established law within this Circuit, or a robust consensus of cases outside of it, that put Defendants on notice that placing an inmate opposed to drugs in a cell together with drug dealers or users was a per se violation of the Constitution. *See Bateast v. Orunsolu*, No. 22-3093-DDC, 2024 WL 3756261, at *12 to *13 (D. Kan. Aug. 12, 2024) (holding that qualified immunity applied when the plaintiff had cited no clearly established law showing that protective-custody inmates could not be double-celled with inmates classified as "other security risk"); *Janny v. Gamez*, 8 F.4th 883, 913 (10th Cir. 2021) (discussing qualified

14

immunity). Therefore, the Defendant are entitled to qualified immunity as a matter of law on White's failure-to-protect claim, which should be dismissed for failure to state a claim.

White does not allege that he engaged in protected speech complaining of actions by Defendants as would support a claim of First-Amendment retaliation. *See Wilson v. Wallace*, No. 23-3030-EFM, 2023 WL 6849227, at *4 (D. Kan. Oct. 17, 2023) (citing *Gee v. Pacheco*, 627 F.3d 1178, 1189 (10th Cir. 2010)). He alleges that after the July 12, 2023, incident Defendants placed him in segregation and denied him protective custody in retaliation for a grievance he submitted (no. AA2023056), for a habeas corpus case he filed (in Leavenworth County case number 2022-CV-323), and for generic complaints about the "drug and tobacco smoke problem at LCF." (Doc. 10 at 18-19; *see also* Doc. 11 at 17 (treating Doc. 10 as part of the pleadings).) But that grievance and the Petition in the habeas case do not even mention Defendants. (*See* Exhibit B; Exhibit E.) And White does not allege that he complained of drug or tobacco smoke issues caused by Defendants. What is more, there was no sufficient temporal proximity between grievance AA2023056 (which reached the end of its appeal process on November 3, 2022) or the habeas Petition (which was filed December 12, 2022) and the alleged retaliatory conduct (starting July 12, 2023) to support causation. *See Wilson v. Wallace*, No. 23-3030, 2023 WL 6849227, at *4 (D. Kan. Oct. 17, 2023) (citing *Lauck v. Campbell Cnty.*, 627 F.3d 805, 815-16 (10th Cir. 2010)) ("The Tenth Circuit has held that if an adverse action occurs more than three months after the constitutionally protected activity, it is insufficient to independently support a finding of causation."). Therefore, White fails to state a claim for First Amendment retaliation.

## CONCLUSION

For all these reasons, Defendants request that the Court grant this motion.

15

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 10th day of December, 2024, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy to be served on December 11, 2024, by means of first-class mail, postage prepaid, addressed to:

Bobby Bruce White #76983
Larned State Correctional Facility
1318 KS Highway 264
Larned, KS 67550
*Plaintiff, pro se*

                                                */s/ Matthew L. Shoger*
                                                Matthew L. Shoger
                                                Assistant Attorney General