## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

BOBBY BRUCE WHITE,

                **Plaintiff**,

v.

ANDREW PARKS, et al.,

                **Defendants**.

Case No. 24-3023-DDC-RES

---

## MEMORANDUM AND ORDER

Pro se[1] plaintiff Bobby Bruce White has sued four Lansing Correctional Facility (LCF) employees for violating his constitutional rights. He alleges that defendants failed to provide him with medical care after his cellmate attacked him. He also alleges defendants retaliated against him for filing grievances, filing lawsuits, and complaining about LCF's rampant drug and tobacco smoke problem. And plaintiff claims that defendants knew his cellmate would attack him, given his opposition to drugs, and defendants deliberately ignored the risk by putting a drug dealer in his cell.

Four motions are before the court. Defendants Andrew Parks and Bruce Chapman filed a Motion to Dismiss (Doc. 30). Defendant Evan Meredith also filed a Motion to Dismiss (Doc. 50). It incorporates the arguments made in Mr. Parks and Mr. Chapman's motion. Plaintiff has also filed two outstanding motions. One is an Objection to Order (Doc. 39), which asks the court

---

[1] Plaintiff proceeds pro se. The court construes his filings liberally and "hold[s] them to less stringent standards than formal pleadings drafted by lawyers[.]" *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the court doesn't assume the role of advocate for the pro se litigant. *Hall*, 935 F.2d at 1110.

to review an order Magistrate Judge Rachel Schwartz issued. The other is a Motion for Summary Judgment (Doc. 55). This Order rules all four outstanding motions. The court starts by briefly reciting plaintiff's allegations.

## I.    Background

The court already has summarized the allegations in plaintiff's Second Amended Complaint and plaintiff's Response to the court's Show Cause Order in its Screening Order. Doc. 11.[2] So the court limits its discussion to those facts relevant to the motions decided here. The court recites the relevant facts, then explains how it construes each set of facts into a specific legal claim.

Plaintiff was an inmate at LCF. *Id.* at 1. In July 2023, his cellmate attacked him, resulting in severe injuries to plaintiff's throat and neck. Doc. 8 at 6 (Second Am. Compl.) Yet Mr. Parks, Mr. Meredith, and Mr. Chapman ignored plaintiff's pleas, refusing to provide him medical care. *Id.* at 4 (Second Am. Compl.). Plaintiff had to wait more than two hours before he received medical care. Doc. 10 at 5. Eventually, plaintiff was "rushed by ambulance to KU Hospital[,]" where he received treatment. *Id.* at 5–6. The court previously found that plaintiff's Eighth Amendment claim based on defendants' failure to provide him medical care survived screening. Doc. 11 at 13.

---

[2]    In its Screening Order, the court considered additional allegations that plaintiff supplied in his Response to the court's Show Cause Order. *E.g.*, Doc. 11 at 7. Because the court must construe plaintiff's filings liberally, the court continues to consider allegations set forth in plaintiff's response to the court's Show Cause Order. *See Lyons v. Kyner*, No. 09-2045-JWL-DJW, 2009 WL 10690905, at *7 (D. Kan. Sept. 3, 2009) (considering additional factual allegations supplied in response to court's show cause order when screening pro se plaintiff's complaint), *report and recommendation adopted*, 2009 WL 10690906 (D. Kan. Oct. 9, 2009), *aff'd*, 367 F. App'x 878 (10th Cir. 2010); *see also Duran v. Muse*, No. 16-CV-717-TCK-JFJ, 2017 WL 5985568, at *3 n.6 (N.D. Okla. Dec. 1, 2017) (considering additional allegations set for in pro se plaintiff's response brief when deciding 12(b)(6) motion).

Plaintiff also alleges that defendants placed him in segregated housing. Doc. 8 at 6 (Second Am. Compl.); Doc. 10 at 18. Plaintiff explains that this placement was unwarranted retaliation in response to plaintiff filing an administrative grievance and a state-court lawsuit and because plaintiff complained (through many channels) about "the excessive blatant, and unchecked drug and tobacco smoke problem at LCF[.]" Doc. 10 at 18. From these facts, the court previously found that plaintiff plausibly alleged a First Amendment retaliation claim. Doc. 11 at 17.

Plaintiff next asserts that defendants filed false disciplinary reports against him. Doc. 10 at 15. According to plaintiff, defendants filed these disciplinary reports to retaliate against him for filing complaints about the drugs and tobacco at LCF. *Id.* While plaintiff was convicted on two of the three disciplinary reports, he was acquitted on the third. *Id.* The court found that a First Amendment retaliation claim—based on the third disciplinary report—survived screening. Doc. 11 at 14.

Finally, plaintiff alleges that he repeatedly sought protection from defendants. Doc. 10 at 15–18. He explains that he was under threat because of his complaints about the "excessive drug and tobacco smoke" at LCF. *Id.* at 15. And, it claims, he had "relayed specific threats to defendants" who "were very aware[] there was a strong likelihood that" plaintiff's cellmate would attack him. *Id.* at 17.[3] But defendants ignored these cries for help. Doc. 8 at 7 (Second

---

[3]    Some of plaintiff's filing about the cellmate attack is difficult to decipher. It's not clear if plaintiff's allegation about defendants' knowledge that his cellmate would attack him refers to the time before or after his cellmate strangled him. *See* Doc. 10 at 17 ("White relayed specific threats to defendants and they were very aware[] there was a strong likelihood that the cellmate put in with White, while in restrictive house (Protective Custody after assault/strangulation by Jeremey Garza) would attack White."). The parenthetical suggests that plaintiff was referring to the period after Mr. Garza allegedly strangled him. *Id.* But in the next sentence, plaintiff explains that the "aforementioned cellmate Jeremey Garza had just also choked his previous cellmate and was a dangerous drug dealer/user[.]" *Id.* This sentence suggests that plaintiff's descriptions about the "strong likelihood" his cellmate would attack him referred to Mr. Garza. *Id.* Interpreting plaintiff's allegations in the light most favorable to him, the court

Am. Compl.) (alleging that Mr. Meredith and Mr. Chapman violated Eighth Amendment by

"knowing of and disregarding" the risk of plaintiff suffering "substantially serious injury").  And

Mr. Parks aggravated the risks by putting drug users and dealers in the same cell as plaintiff—

even though these were the individuals who plaintiff complained posed a threat to him.  *Id.* at 6;

Doc. 10 at 16.  Plaintiff then suffered a brutal attack by his cellmate.  Doc. 8 at 6 (Second Am.

Compl.).  That attack injured plaintiff's throat, neck, and back.  *Id.*  It left plaintiff with swelling,

bruises, gouges, scrapes, difficulty breathing, and considerable pain.  *Id.*  The court previously

found that this Eighth Amendment failure-to-protect claim survived screening.  Doc. 11 at 19.[4]

In sum, the court construes plaintiff's filings to bring four claims against Mr. Parks, Mr.

Meredith, and Mr. Chapman in their individual and official capacities:  (1) an Eighth

Amendment claim for failure to provide medical care; (2) a First Amendment retaliation claim

based on placement in segregated housing; (3) a First Amendment retaliation claim based on a

false disciplinary report; and (4) an Eighth Amendment failure-to-protect claim.  The court now

outlines the legal standards governing defendants' Motions to Dismiss (Doc. 30; Doc. 50).

## II.    Legal Standard

Defendants' motions invoke Rule 12(b)(1) and 12(b)(6).  So, the court explains the

standard governing motions made under each of these rules, starting with Rule 12(b)(1).

### A.  12(b)(1)

Under Rule 12(b)(1), a defendant may move the court to dismiss for lack of subject

matter jurisdiction.  Fed. R. Civ. P. 12(b)(1).  "Federal courts are courts of limited jurisdiction

---

assumes that plaintiff has alleged that defendants were on notice (before the assault occurred) that
plaintiff's cellmate might attack him.

[4]     Plaintiff also asserts claims against defendant Gary Spillman.  Doc. 8 at 1 (Second Am. Compl.)
Mr. Spillman hasn't filed any motions or entered an appearance in the case.  So, this Order omits
discussion of his involvement.

and, as such, must have a statutory basis to exercise jurisdiction." *Montoya v. Chao*, 296 F.3d 952, 955 (10th Cir. 2002). "A court lacking jurisdiction cannot render judgment but must dismiss the cause at any stage of the proceedings in which it becomes apparent that jurisdiction is lacking." *Basso v. Utah Power & Light Co.*, 495 F.2d 906, 909 (10th Cir. 1974). The party invoking federal jurisdiction—here, the plaintiff—bears the burden to prove it exists. *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994); *see also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 906 F.3d 926, 931 (10th Cir. 2018) (presuming "no jurisdiction exists absent an adequate showing by the party invoking federal jurisdiction").

### B. 12(b)(6)

Under Rule 12(b)(6), a party may move the court to dismiss an action for failing "to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). For a complaint to survive a Rule 12(b)(6) motion to dismiss, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.* (quoting *Twombly*, 550 U.S. at 556); *see also Christy Sports, LLC v. Deer Valley Resort Co.*, 555 F.3d 1188, 1192 (10th Cir. 2009) ("The question is whether, if the allegations are true, it is plausible and not merely possible that the plaintiff is entitled to relief under the relevant law." (citation omitted)).

When considering a Rule 12(b)(6) motion to dismiss, the court must assume that factual allegations in the complaint are true, but it is "'not bound to accept as true a legal conclusion couched as a factual allegation[.]'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).

And, while this pleading standard doesn't require "'detailed factual allegations,'" it demands more than a "pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" which, as the Supreme Court explained, "'will not do.'" *Id.* (quoting *Twombly*, 550 U.S. at 555).

An affirmative defense—if properly established—can provide grounds for granting a motion to dismiss. *See Miller v. Shell Oil Co.*, 345 F.2d 891, 893 (10th Cir. 1965); *Jiying Wei v. Univ. of Wyo. Coll. of Health Sch. Pharmacy*, 759 F. App'x 735, 739–40 (10th Cir. 2019) (explaining it's appropriate to resolve affirmative defense on 12(b)(6) motion to dismiss). But the court may dismiss a complaint because of an affirmative defense "only when the complaint itself admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez v. Clean House, LLC*, 883 F.3d 1296, 1299 (10th Cir. 2018).

### III.    Analysis

This Order's analysis unfolds in this sequence:  *First*, the court irons out two procedural wrinkles raised by the parties' briefing.  *Second*, the court addresses defendants' subject-matter-jurisdiction argument based on Eleventh Amendment immunity.  *Third*, the court considers defendants' contention that plaintiff failed to exhaust administrative remedies.  And *last*, the court takes up defendants' merits arguments.

#### A.    Procedural Wrinkles

In his response brief, plaintiff complains that defendants served their Motion to Dismiss (Doc. 30) a day late.  Doc. 38 at 1.  Not so; defendants submitted their Motion to Dismiss timely on December 10, 2024.  Doc. 30.  True, their motion reflects that they didn't serve the filing by mail until December 11.  *Id.* at 17.  But that doesn't mean the court should reject defendants' motion.  Although plaintiff "complains that it was not placed in the mail to him until the next day . . . he has not identified any prejudice caused by the one-day delay."  *Allen v. Zavaras*, 483 F.

App'x 411, 414 (10th Cir. 2012) (affirming decision to not strike untimely filing); *see also Miller v. Okla. Dep't of Hum. Servs.*, No. 23-6119, 2024 WL 2828863, at *3 (10th Cir. June 4, 2024) (finding no abuse of discretion where district court declined to strike filing because it was mailed one day late). Plaintiff's fulsome response suggests that he didn't suffer prejudice. *See* Doc. 38. And so the court declines plaintiff's invitation to deny the Motion to Dismiss based on timeliness.

Relatedly, defendants quip that plaintiff's response brief (Doc. 38) exceeds the local-rule page limits by eight pages. Doc. 40 at 1. Defendants don't ask the court to strike these excess pages, though, and the court declines to do so on its own motion. Plaintiff's filings are handwritten. And plaintiff didn't write in particularly small font. The court thus won't strike plaintiff's filing. But the court reminds plaintiff that he must abide our local rules in his future filings. Should he require pages beyond those permitted by D. Kan. Rule 7.1(d), he must seek the court's leave. *See* D. Kan. Rule 6.1(d)(2).

With these wrinkles resolved, the court next addresses defendants' Eleventh Amendment immunity arguments.

### B.    Eleventh Amendment Immunity

Defendants first argue that their Eleventh Amendment immunity bars any official-capacity suit. The court agrees.

"The Eleventh Amendment bars suits in federal court against a nonconsenting state brought by the state's own citizens." *Williams v. Utah Dep't of Corr.*, 928 F.3d 1209, 1212 (10th Cir. 2019). "This immunity extends to arms of the state and to state officials who are sued for damages in their official capacity." *Id.* And sovereign immunity deprives the court of subject matter jurisdiction. *Normandy Apartments, Ltd. v. U.S. Dep't of Hous. & Urban Dev.*, 554 F.3d 1290, 1295 (10th Cir. 2009). A state may waive its sovereign immunity. *Va. Off. of*

*Prot. & Advoc. v. Stewart*, 563 U.S. 247, 253–54 (2011). And Congress may abrogate a state's

sovereign immunity. *Id.* "But absent waiver or valid abrogation, federal courts may not

entertain a private person's suit against a State." *Id.* at 254.

The Kansas Department of Corrections is an arm of the state of Kansas. *Jones v.

Courtney*, 466 F. App'x 696, 699 (10th Cir. 2012) (compiling cases). And official-capacity suits

against individuals are suits against entities. *See Kentucky v. Graham*, 473 U.S. 159, 166 (1985).

Plaintiff thus can't sue any of the defendants in their official capacity for money damages. *See*

*Franklin v. Kan. Dep't of Corr.*, 160 F. App'x 730, 734 (10th Cir. 2005) (explaining that "[w]ell-

settled law bars . . . claims against Kansas and its agencies or arms" as well as "claims for money

damages from Kansas employees in their official capacities"). And neither waiver nor

abrogation applies to plaintiff's claims. *Waterman v. Zmuda*, No. 24-3239-JWL, 2025 WL

743972, at *3 (D. Kan. Mar. 7, 2025) ("Kansas has not waived the defense of sovereign

immunity with regard to § 1983 prisoner claims in federal courts."); *see also Hunter v. Young*,

238 F. App'x 336, 338 (10th Cir. 2007) (concluding Kan. Stat. Ann. § 19-811 did not waive

Kansas's sovereign immunity for prisoner claims); *Muscogee (Creek) Nation v. Okla. Tax*

*Comm'n*, 611 F.3d 1222, 1227 (10th Cir. 2010) ("§ 1983 does not abrogate a state's sovereign

immunity[.]").

So, the court dismisses any official-capacity claims that plaintiff asserts for lack of

subject-matter jurisdiction.[5] Next, the court addresses exhaustion.

---

[5] The court already has dismissed plaintiff's claims for injunctive relief. *See* Doc. 7 at 14–15. And to his credit, plaintiff has "humbly conceded" this determination. Doc. 10 at 23. Because plaintiff doesn't seek prospective relief, the court needn't consider the *Ex parte Young* exception to Eleventh Amendment immunity. *See Williams*, 928 F.3d at 1214 (explaining that notwithstanding Eleventh Amendment immunity, "a plaintiff may bring suit against individual state officers acting in their official capacities if the complaint alleges an ongoing violation of federal law and the plaintiff seeks prospective relief").

### C.    Exhaustion

Defendants argue that the court should dismiss plaintiff's claims because plaintiff failed to exhaust his administrative remedies.  Doc. 30 at 4–14.  The court begins its exhaustion discussion by outlining the law governing exhaustion of inmate claims.

### 1.    Law on Exhaustion

"The Prison Litigation Reform Act of 1995 (PLRA) requires prisoners with complaints about prison conditions to exhaust available grievance procedures before bringing suit in federal court." *Perttu v. Richards*, 605 U.S. 460, 464 (2025) (citing 42 U.S.C. § 1997e(a)).  Exhaustion "is mandatory under the PLRA and . . . unexhausted claims cannot be brought in court." *Jones v. Bock*, 549 U.S. 199, 211 (2007).

Failure "to exhaust is an affirmative defense under the PLRA, and . . . inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Id.* at 216.  Thus, the "defendant bears the burden of 'proving that the plaintiff did not exhaust his administrative remedies[.]'" *May v. Segovia*, 929 F.3d 1223, 1234 (10th Cir. 2019) (brackets omitted) (quoting *Tuckel v. Grover*, 660 F.3d 1249, 1254 (10th Cir. 2011)).  Only "once the defendant has carried that burden" does "'the onus fall[] on the plaintiff to show that remedies were unavailable to him.'" *Id.* (quoting *Tuckel*, 660 F.3d at 1254).

District "courts can dismiss prisoner complaints for failure to state a claim if it is clear from the face of the complaint that the prisoner has not exhausted his administrative remedies." *Aquilar-Avellaveda v. Terrell*, 478 F.3d 1223, 1225 (10th Cir. 2007) (citing *Jones*, 549 U.S. at 215–16).  But "only in rare cases will a district court be able to conclude from the face of the complaint that a prisoner has not exhausted his administrative remedies[.]" *Id.*  Such "cases will be rare because a plaintiff is not required to say anything about exhaustion in his complaint."

*Albino v. Baca*, 747 F.3d 1162, 1169 (9th Cir. 2014), *criticized on other grounds by Perttu*, 605 U.S. 460.

### 2.    Exhaustion Standard

A preliminary issue that the court must resolve is what materials it properly may consider.  Defendants argue that the court should consider all the materials that they have submitted—*i.e.* plaintiff's grievances, which defendants attached as exhibits to their motion.  *See* Doc. 30 at 4–6.  Citing an Eleventh Circuit case, defendants explain that a motion to dismiss based on exhaustion falls outside of the 12(b)(6) rubric.  *Id.* (citing *Bryant v. Rich*, 530 F.3d 1368, 1374–76, 1376 n.12 (11th Cir. 2008)).  Instead, defendants view exhaustion as a "matter in abatement" that a defendant should raise in an unenumerated 12(b) motion.  *Bryant*, 530 F.3d at 1376.  And, under this abatement-based view, the court can consider materials outside the four corners of the complaint and resolve factual disputes.  *Dimanche v. Brown*, 783 F.3d 1204, 1210 (11th Cir. 2015) (instructing district courts to "make specific findings in order to resolve the disputed factual issues related to exhaustion" (quotation cleaned up)).  Defendants urge the court to adopt the Eleventh Circuit's approach, consider the grievances they've attached with their response brief, and find plaintiff's claims unexhausted.  The court isn't persuaded.

First of all—and most of all—our Circuit hasn't adopted the Eleventh Circuit's approach to exhaustion on a motion to dismiss.[6]  The court thus rejects defendants' suggestion that it wade into the murky waters of unenumerated Rule 12(b) motions.[7]

---

[6]    The best defendants can do is claim that our Circuit has cited *Bryant* "approvingly."  Doc. 30 at 4 (citing *Valenzuela v. Silversmith*, 699 F.3d 1199, 1205 (10th Cir. 2012)).  Defendants' claim isn't impressive.  Our Circuit cited *Bryant* to support the idea that "fail[ure] to exhaust tribal court remedies is . . . a threshold, nonmerits issue."  *Valenzuela*, 699 F.3d at 1205.  Our Circuit never has come close to adopting defendants' view.

[7]    As best the court can tell, viewing an exhaustion defense as a matter in abatement, rather than an adjudication on the merits, originated in the Ninth Circuit.  *Wyatt v. Terhune*, 315 F.3d 1108, 1119 (9th

Instead, the court relies on well-established binding precedent governing our Circuit. Failure to exhaust is an affirmative defense. *Jones*, 549 U.S. at 211; *May*, 929 F.3d at 1229. And our Circuit's procedures for adjudicating affirmative defenses are clear: A court should grant a motion to dismiss based on an affirmative defense "only when the *complaint itself* admits all the elements of the affirmative defense by alleging the factual basis for those elements." *Fernandez*, 883 F.3d at 1299 (emphasis added). An exhaustion defense is no different. *See Burnett v. Okla. Dep't of Corr.*, 737 F. App'x 368, 371 (10th Cir. 2018) ("Although failure to exhaust is an affirmative defense, it may be raised in a motion to dismiss asserting a failure to state a claim when the grounds for this defense *appear on the face of the complain*t." (emphasis added)).

Our court and other district courts in our Circuit agree: this is the law in the Tenth Circuit. They routinely decide motions to dismiss based on failure to exhaust under the familiar 12(b)(6) standard. *E.g.*, *Scriven v. Corby*, No. 20-CV-03110-JAR-KGG, 2021 WL 2222682, at *1 (D. Kan. June 2, 2021) ("In the Tenth Circuit, plaintiff's failure to exhaust is not jurisdictional and a motion based upon failure to exhaust is properly brought under Rule 12(b)(6) for failure to state a claim—not under Rule 12(b)(1) for lack of subject matter jurisdiction."); *Lopez v. Shrader*, No. 19-cv-01754-WJM-NYW, 2020 WL 6119539, at *7 (D. Colo. July 15, 2020) (declining to consider documents outside the Complaint when considering exhaustion defense on motion to dismiss), *recommendation and report adopted*, 2020 WL 5088070 (D. Colo. Aug. 28,

---

Cir. 2003); *see also Bryant*, 530 F.3d at 1374 (citing *Wyatt*, 315 F.3d at 1119–20). The Ninth Circuit since has "conclude[d] that *Wyatt* is no longer good law after *Jones* (if it ever was good law)" because *Jones* held that exhaustion is an affirmative defense that the defendant bears the burden to prove. *Albino*, 747 F.3d at 1169. The Ninth Circuit thus has held that exhaustion defenses under the PLRA fall "within the framework of the Federal Rules of Civil Procedure." *Id.* And the Ninth Circuit now evaluates PLRA exhaustion raised in a motion to dismiss under Rule 12(b)(6)'s framework. *El-Shaddai v. Zamora*, 833 F.3d 1036, 1043–44 (9th Cir. 2016). Murky waters indeed.

2020); *Carr v. El Paso Cnty. Jail*, No. 21-cv-00392-RBJ-SKC, 2023 WL 2825923, at *3 (D. Colo. Mar 20, 2023) ("A defendant may properly raise an argument that plaintiff failed to exhaust his administrative remedies at the motion to dismiss stage as a 12(b)(6) motion.").

So the court applies the 12(b)(6) standard to defendants' dismissal arguments predicated on plaintiff's purported failure to exhaust. This conclusion limits the materials the court properly may review at this juncture. "Importantly, in assessing whether a plaintiff has stated a claim for relief, a court must restrict its review to only the allegations within the four corners of the complaint, and cannot consider other pleadings or external allegations." *Brown v. City of Tulsa*, 124 F.4th 1251, 1264 (10th Cir. 2025) (quotation cleaned up). "Exceptions to this rule are limited to: (1) documents attached to the complaint as exhibits, (2) documents referenced in the complaint that are central to the plaintiff's claims, provided their authenticity is undisputed, and (3) matters subject to judicial notice." *Id.* Our Circuit's unpublished cases confirm that these restrictions apply when adjudicating exhaustion arguments on a motion to dismiss. *See Russell v. Lincoln*, 267 F. App'x 785, 787 (10th Cir. 2008) (explaining that "a court may only consider the materials in the pleadings and must accept all of the plaintiff's allegations as true" when deciding a motion to dismiss based on failure to exhaust); *Cirocco v. McMahon*, 768 F. App'x 854, 858 (10th Cir. 2019) (similar). So, the court rejects defendants' framing of the issue. Like it or not, the 12(b)(6) standard governs defendants' failure-to-exhaust arguments. And that standard limits the materials that the court may review.

### 3. Analysis

The court won't dismiss plaintiff's claims on failure-to-exhaust grounds. Simply put, it's not clear—either from the face of the Complaint, plaintiff's filings, or the materials that the court properly may consider—that plaintiff has failed to exhaust administrative remedies. It's thus premature to dismiss plaintiff's claims at this stage.

12

Defendants have submitted some of the administrative grievances that the Second Amended Complaint references. *See* Doc 30-2; Doc. 30-3; Doc. 30-4; Doc. 30-5. The court declines to resolve the exhaustion issue based on these filings for two reasons: (1) it lacks a complete record of plaintiff's grievances and attempted grievances, and (2) plaintiff alleges defendants thwarted his efforts to file grievances.

*First*, plaintiff alleges that he filed grievances (and related materials) that aren't included in defendants' submissions. For instance, the Second Amended Complaint alleges plaintiff "submitted, re-submitted, and re-submitted" grievances to no avail. Doc. 8 at 8 (Second Am. Compl.). And he also alleges that he submitted a series of grievances directly to the Kansas Secretary of Corrections, Jeff Zmuda. *Id.* In fact, the Second Amended Complaint alleges that plaintiff sent filings directly to Mr. Zmuda on July 14, August 23, August 30, and September 30 of 2023. *Id.* But the court's review of defendants' submissions doesn't reveal grievances submitted on any of those dates. *See generally* Doc 30-2; Doc. 30-3; Doc. 30-4; Doc. 30-5. Relatedly, plaintiff's response brief alleges that the records that defendants produced for their motion are incomplete. Doc. 38 at 18–19 (alleging that Kansas Department of Corrections failed to keep accurate records and that pages of grievance forms are missing from defendants' submissions).

What's more, plaintiff's Response alleges that he filed an emergency grievance. *Id.* at 19–20. Although defendants attached a handwritten document titled "Emergency Grievance" to their motion, *see* Doc. 30-6 at 26–29, the court declines to consider that document. It's not part of the operative pleading's allegations. *See Brown*, 124 F.4th at 1264. And defendants haven't explained any exception permitting the court to consider it. *See id.* To the contrary, defendants nearly concede that the court can't consider this document under the 12(b)(6) standard. *See* Doc.

13

30 at 13 (explaining that the court "need not consider Exhibit F [Doc. 30-6], as the Complaint makes clear which grievances are relevant").

So, all in, plaintiff alleges that several filings he submitted are absent from the record. And he alleges that errors—including missing pages and inaccurate dates—plague defendants' filings. Without a complete record of plaintiff's attempts to file grievances, the court can't determine whether he properly exhausted administrative remedies.

*Second*, plaintiff also asserts that he tried to submit grievances to the Secretary of Corrections and that prison staff failed to pick up or deliver those grievances to Mr. Zmuda. Doc. 38 at 21–22. If true, that allegation might excuse plaintiff's duty to exhaust administrative remedies. *See Little v. Jones*, 607 F.3d 1245, 1250 (10th Cir. 2010) ("Where prison officials prevent, thwart, or hinder a prisoner's efforts to avail himself of an administrative remedy, they render that remedy 'unavailable' and a court will excuse the prisoner's failure to exhaust."). Indeed, our Circuit repeatedly has cautioned "that district courts are 'obligated to ensure that any defects in exhaustion were not procured from the action or inaction of prison officials' before dismissing a claim for failure to exhaust." *Id.* (quoting *Aguilar-Avellaveda*, 478 F.3d at 1225). Whether prison officials thwarted plaintiff's efforts to exhaust administrative remedies is an inquiry that the current record won't permit.

Take these points together. Plaintiff has alleged that defendants' filings are incomplete, that he submitted several additional grievances not reflected in defendants' submissions, and that defendants thwarted his efforts to submit grievances. Liberally construing plaintiff's filings, the court concludes that it can't resolve defendants' Motions to Dismiss on the current record. Neither plaintiff's Second Amended Complaint nor his response brief admit the elements of defendants' affirmative defense. At this stage of the proceedings, defendants aren't entitled to

judgment on their affirmative defense.  The court thus denies defendants' request to dismiss

plaintiff's claims for failing to exhaust administrative remedies.[8]

### 4.    Next Step

If the court determines that it can't resolve the exhaustion issue under the 12(b)(6)

standard, defendants invite the court to convert their motion to one for summary judgment or

convene an evidentiary hearing.  Doc. 30 at 13.  The court declines both invitations.

Circuit precedent suggests that—where issues of fact remain—courts should afford

prisoner-plaintiffs "a meaningful opportunity to gather evidence concerning" exhaustion and its

unavailability.  *Tuckel*, 660 F.3d at 1255.  In its discretion, the court thus declines to convene an

evidentiary hearing—a procedure that makes little sense given 12(b)(6)'s standard and its

exclusive focus on the allegations in the operative pleading.  *See Barnett v. Allbaugh*, 740 F.

App'x 653, 654 (10th Cir. 2018) (explaining that the district court "had no obligation to conduct

an evidentiary hearing" on motion to dismiss).  Likewise, the court won't convert defendants'

Motions to Dismiss into motions for summary judgment.  *See Lopez*, 2020 WL 6119539, at *8

(declining to convert motion to dismiss to one for summary judgment because plaintiff "has not

had an opportunity to seek any discovery on this matter and the accessibility of the information

to him needed to factually rebut Defendants' exhaustion arguments, in the ordinary course, may

be limited"); *Scriven*, 2021 WL 2222682, at *7 (denying exhaustion defense without prejudice

and declining to convert motion to one for summary judgment).

---

[8]     Our Circuit's cases drive home this point.  Cases where our Circuit has affirmed dismissal on a motion to dismiss based on exhaustion all have involved cases where plaintiffs conceded that they failed to exhaust their remedies.  *E.g.*, *Burnett*, 737 F. App'x at 371 ("In response to ODOC's motion to dismiss, Mr. Burnett did not contend that he had exhausted his claim."); *Gallagher v. Shelton*, 587 F.3d 1063, 1068 (10th Cir. 2009) ("In his response to defendants' motion to dismiss before the district court, Gallagher did not contend that he filed such a grievance, or that any grievances were lost or misplaced.").  Here, neither plaintiff's pleading nor his filings make any such concession.

To summarize, at this stage of the proceedings the court won't dismiss plaintiff's claims based on defendants' exhaustion defense. Nor will the court convert defendants' motions to ones for summary judgment or hold an evidentiary hearing. But the current rejection of defendants' exhaustion defense is a ruling without prejudice. Defendants remain free to assert their exhaustion defense on summary judgment or trial.

### D.    Merits

Having resolved the exhaustion issue—for now—the court next addresses defendants' substantive arguments that plaintiff's operative pleading fails to state a claim. *See* Doc. 30 at 14–15. Defendants offer two arguments. They argue that plaintiff hasn't stated a plausible First Amendment retaliation claim based on defendants placing him in segregated housing.[9] *Id.* at 15. And then they argue that they're qualifiedly immune from plaintiff's failure-to-protect claim. *Id.* at 14–15. The court's analysis starts with the retaliation claim.

### 1.    Retaliation

Defendants argue that plaintiff has failed to state a claim for relief based on his allegation that defendants retaliated against him for exercising his First Amendment rights by placing him in segregated housing. *Id.* at 15.[10]

---

[9]    Defendants moved only to dismiss one of the two First Amendment retaliation claims—the one based on defendants placing plaintiff in segregated housing but not the claim based on the disciplinary report. Doc. 30 at 15. The court thus confines its ruling to the claim that defendants have moved to dismiss.

[10]    A quick procedural point: The court previously held that this retaliation claim survived screening. Doc. 11 at 17. That ruling doesn't immunize this claim from a 12(b)(6) motion because the court is free to reconsider that prior holding in the face of adversarial testing. *Hunnicutt v. Smith*, 18-619 JCH/GBW, 2021 WL 3618315, at *7 (D.N.M. Aug. 16, 2021) (explaining that district courts may reconsider conclusions from § 1915A screening); *Worthen v. Okla. Dep't of Corr.*, No. CIV–07–687–R, 2010 WL 3295010, at *16 (W.D. Okla Aug. 4, 2010) (same); *see also Allison v. Bank One-Denv.*, 289 F.3d 1223, 1247 (10th Cir. 2002) ("A lower court's ability to depart from its own prior decisions [in the same case] is discretionary."). Here, defendants' arguments and plaintiff's feeble response persuade the court to dismiss plaintiff's retaliation claim.

Our Circuit has explained that "prison officials may not retaliate against or harass an inmate because of the inmate's exercise of his constitutional rights." *Peterson v. Shanks*, 149 F.3d 1140, 1144 (10th Cir. 1998) (brackets omitted). To state a First Amendment retaliation claim, a plaintiff must allege:

> (1) that the plaintiff was engaged in constitutionally protected activity; (2) that the defendant's actions caused the plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; and (3) that the defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.

*Shero v. City of Grove*, 510 F.3d 1196, 1203 (10th Cir. 2007). Defendants' motion takes aim at the third element. Doc. 30 at 15. They argue that plaintiff hasn't alleged substantial motivation plausibly. *Id.* The court agrees.

Plaintiff hasn't alleged "specific, objective facts" from which the court could infer a causal connection between plaintiff's protected activity and defendants' purported retaliation. *See Banks v. Katzenmeyer*, 645 F. App'x 770, 772–73 (10th Cir. 2016) (affirming dismissal of retaliation claim where plaintiff failed "to adequately allege specific facts showing" that defendants' response wouldn't have occurred "absent a retaliatory motive"). Plaintiff broadly alleges that his "atypical confinement in . . . restricted housing was done in retaliation[.]" Doc. 10 at 18. And then, in scattershot fashion, plaintiff asserts that defendants retaliated because he submitted a grievance; filed a state-court lawsuit; complained about drugs at LCF; acted as a whistleblower; and sought outside help from a variety of institutions. *Id.*

Such bare allegations won't do. Plaintiff hasn't alleged that defendants were aware of any of his protected activities. *See Wilson v. Wallace*, No. 23-CV-3030-EFM-TJJ, 2023 WL 6849227, at *4 (D. Kan. Oct. 17, 2023) (dismissing retaliation claim where plaintiff failed to allege that defendant knew about filed complaint). Nor has plaintiff alleged that defendants' purported retaliation occurred shortly after plaintiff's protected activity. *Cf. Gee v. Pacheco*, 627

17

F.3d 1178, 1189 (10th Cir. 2010) (finding complaint stated a claim for relief where it alleged that defendants knew about the protected activity and the retaliation "was in close temporal proximity to the protected activity"). Indeed, plaintiff hasn't explained at all—let alone logically—how his exercise of First Amendment rights motivated defendants' conduct. The Second Amended Complaint simply alleges no facts suggesting a causal connection between defendants' conduct and plaintiff flexing his constitutional rights. The court thus dismisses plaintiff's First Amendment retaliation claim premised on defendants placing plaintiff in segregated housing.

The court dismisses this claim for a second, independent reason. Plaintiff never responded to defendants' failure-to-allege-causation arguments. *See generally* Doc. 38. Our Circuit hasn't decided whether "failure to address an argument in response to a motion to dismiss categorically constitutes abandonment or requires a court to deem claims abandoned." *Brown v. Nationwide Ins. Co.*, No. 21-4122, 2023 WL 4174064, at *9 n.9 (10th Cir. June 26, 2023). But it has affirmed dismissal of an abandoned claim—that is "'when a party fails to develop arguments related to a discrete issue or when a litigant effectively abandons the litigation by not responding to alleged deficiencies in a motion to dismiss[.]'" *Id.* at *9 (quoting *Lee v. Ne. Ill. Reg'l Commuter R.R. Corp.*, 912 F.3d 1049, 1053–54 (7th Cir. 2019)); *see also C1.G ex rel. C.G. v. Siegfried*, 38 F.4th 1270, 1282 (10th Cir. 2022) ("The district court correctly dismissed Plaintiff's facial challenge here because he abandoned it by not addressing it in his response to Defendants' motion to dismiss."). Given this Circuit authority, the court considers plaintiff's segregated-housing retaliation claim abandoned. *See Kay v. Bemis*, 500 F.3d 1214, 1218 (10th Cir. 2007) (explaining that the same procedural rules govern pro se and represented litigants alike).

The court thus dismisses plaintiff's retaliation claim based on defendants placing him in segregated housing.

### 2.    Failure to Protect

Defendants next argue that they're entitled to qualified immunity on plaintiff's failure-to-protect claim. The court disagrees. Viewed in the light most favorable to plaintiff, his Complaint alleges that defendants violated clearly established law.

"When a defendant asserts qualified immunity at the motion to dismiss phase, the plaintiff 'must allege facts sufficient to show (assuming they are true) that the (1) defendant plausibly violated their constitutional rights, and that (2) those rights were clearly established at the time.'" *Brown*, 124 F.4th at 1265 (quotation cleaned up) (quoting *Robbins v. Oklahoma*, 519 F.3d 1242, 1249 (10th Cir. 2008)). That's so because the "doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant has "asserted the defense of qualified immunity, the burden is on Plaintiffs to establish their right to proceed." *Matthews v. Bergdorf*, 889 F.3d 1136, 1143 (10th Cir. 2018).

A constitutional right is clearly established when, "at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful. In other words, existing law must have placed the constitutionality of the officer's conduct beyond debate." *District of Columbia v. Wesby*, 583 U.S. 48, 63 (2018) (internal quotation marks and citations omitted). A plaintiff can't defeat qualified immunity "simply by alleging violation of extremely abstract rights," *White v. Pauly*, 580 U.S. 73, 79

(2017), and a court shouldn't "define clearly established law at a high level of generality," *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011).

Defendants argue they're qualifiedly immune from plaintiff's Eighth Amendment failure-to-protect claim. Doc. 30 at 14–15. According to defendants, plaintiff can't shoulder his burden on the second prong of qualified immunity—the one requiring plaintiff to show that defendants violated clearly established law. *Id.* As defendants put it, plaintiff "has not shown any clearly established law . . . that put [d]efendants on notice that placing an inmate opposed to drugs in a cell together with drug dealers or users was a per se violation of the Constitution." *Id.* at 14. The court comes down on the issue differently. Viewed in the light most favorable to plaintiff, the Second Amended Complaint (1) alleges a violation of a constitutional right that (2) was clearly established when it allegedly was violated. Take those points in turn.

### a.     Violation of Right

"Prison officials have a duty to protect prisoners from violence at the hands of other prisoners." *Benefield v. McDowall*, 241 F.3d 1267, 1270 (10th Cir. 2001) (quotation cleaned up); *see also Hooks v. Atoki*, 983 F.3d 1193, 1205 (10th Cir. 2020) ("Prison officials have a duty to provide humane conditions of confinement, including taking reasonable measures to guarantee the safety of inmates." (quotation cleaned up)). The Supreme Court has adopted a deliberate indifference standard for failure-to-protect claims under the Eighth Amendment. *Benefield*, 241 F.3d at 1270. "Deliberate indifference has both an objective and a subjective component." *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015).

"A plaintiff can meet [his] burden under the objective component by showing that the harm [he] suffered was sufficiently serious." *Id.* "In cases involving a failure to prevent harm, this means that the prisoner must show that the conditions of incarceration present an objective 'substantial risk of serious harm.'" *Howard v. Waide*, 534 F.3d 1227, 1236 (10th Cir. 2008)

20

(quoting *Farmer v. Brennan*, 511 U.S. 825, 834 (1994)). Plaintiff has alleged that he suffered serious harm. Specifically, his Second Amended Complaint explains that another prisoner attempted to kill him by strangulation, resulting in significant harm to his throat, neck, and back. Doc. 8 at 2. Plaintiff also alleges that his injuries were so severe that an ambulance had to transport him to a hospital. *Id.* These allegations of serious harm satisfy the objective component of deliberate indifference. *See Luck v. Smith*, No. 17-cv-00183-WJM-NYW, 2017 WL 3970512, at *6 (D. Colo. Sept. 8, 2017) (explaining that "there is no denying that" plaintiff "sufficiently allege[d] a substantial risk of serious harm" when plaintiff was assaulted by another inmate).

"To prevail on the subjective component, the prisoner must show that the defendants knew he faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Callahan v. Poppell*, 471 F.3d 1155, 1159 (10th Cir. 2006) (quotation cleaned up). Plaintiff has alleged the subjective component sufficiently. He asserts that Mr. Meredith and Mr. Chapman knew plaintiff was requesting protection from other prisoners. Doc. 10 at 16. He also alleges that Mr. Parks "kept putting [plaintiff] in danger by putting disciplinary drug users/dealers in the same cell" even though plaintiff had requested protection from those individuals. *Id.*; *see also* Doc. 8 at 6 (Second Am. Compl.) (alleging that plaintiff personally confronted Mr. Parks about the danger to his life a month before he was attacked). Plaintiff further explains that each time he saw Mr. Parks, Mr. Meredith, and Mr. Chapman, he would explain to them that he was in danger. Doc. 10 at 18. And he alleges that defendants were aware "there was a strong likelihood" that plaintiff's cellmate—who had choked another cellmate previously—would attack plaintiff. *Id.* at 17. Taken together, these allegations suffice to

establish the subjective component. Plaintiff's warnings—to defendants directly—placed defendants on notice that he faced a risk of serious harm.

That takes care of the first prong of qualified immunity. The court now turns to the second prong, the one asking whether the alleged violation was clearly established when it happened.

### b.    Clearly Established Violation

The court likewise finds that plaintiff has carried his burden on the second prong of the qualified-immunity inquiry. "More than [four] decades ago, [the Tenth Circuit] held that the Eighth Amendment imposes a duty on prison officials to protect prisoners from violence at the hands of other inmates." *Castillo v. Day*, 790 F.3d 1013, 1020 (10th Cir. 2015) (citing *Ramos v. Lamm*, 639 F.2d 559, 572–74 (10th Cir. 1980)). And in a 2008 case, the Tenth Circuit denied qualified immunity "to prison officials in a § 1983 civil rights suit alleging" prison employees "knew that an inmate had been physically assaulted by members of a prison gang but failed to protect him from future harm." *Id.* (citing *Howard*, 534 F.3d at 1234).

The court is cognizant that it mustn't "define clearly established law at a high level of generality." *Ashcroft*, 563 U.S. at 742. Our Circuit's cases make it clear. Prison guards aren't free to ignore substantial threats to inmate safety when they know about those threats. *See Castillo*, 790 F.3d at 1020. This case law is sufficient to have put defendants on notice of their duties to plaintiff here. *See Castro v. County of Los Angeles*, 833 F.3d 1060, 1067 (9th Cir. 2016) (en banc) ("The 'contours' of [plaintiff's] right were his right to be free from violence at the hands of other inmates. The Supreme Court need not catalogue every way in which one inmate can harm another for us to conclude that a reasonable official would understand that his actions violated [plaintiff's] right.").

Regardless, "a consensus of cases of persuasive authority" provided defendants with "fair warning of unlawful conduct." *Brown*, 124 F.4th at 1265 (quotation cleaned up). Prison guards aren't free to ignore pleas for help when they know that other inmates pose a threat to an inmate's safety. *Young v. Selk*, 508 F.3d 868, 870–71, 875 (8th Cir. 2007) (affirming denial of qualified immunity to guards who ignored inmate's plea for protection from cellmate, who subsequently assaulted him); *LaBrec v. Walker*, 948 F.3d 836, 845 (7th Cir. 2020) (reversing grant of summary judgment where plaintiff "repeated[ly] and insistent[ly]" "communicated the threat to his safety" and defendants failed to furnish protection); *Gevas v. McLaughlin*, 798 F.3d 475, 484 (7th Cir. 2015) ("As we have been saying, it is defendants who have the duty to protect a prisoner once they become aware he is in danger of assault by another prisoner, and this is now a well-settled aspect of Eighth Amendment jurisprudence."); *Caldwell v. Warden, FCI Talladega*, 748 F.3d 1090, 1102 (11th Cir. 2014) (explaining that "a prison guard violates a prisoner's Eighth Amendment right when that guard actually (objectively and subjectively) knows that one prisoner poses a substantial risk of serious harm to another, yet fails to take any action to investigate, mitigate, or monitor that substantial risk of serious harm").[11]

---

[11]     Defendants assert that this case is like *Bateast v. Orunsolu*, No. 22-3093-DDC-ADM, 2024 WL 3756261, at *12–13 (D. Kan. Aug. 12, 2024). Doc. 30 at 14. There, the court found defendants qualifiedly immune from plaintiff's failure-to-protect claim. *Bateast*, 2024 WL 3756261, at *12–13. But that plaintiff hadn't alleged that defendants there were aware that plaintiff was in danger. *See id.* at *2 (explaining that plaintiff had alleged that a different defendant had expressed that he "knew what was coming"). And the court found that plaintiff couldn't shoulder his burden to show that merely placing a prisoner in a cell with another inmate—one classified as an "other security risk"—violated clearly established law. *Id.* at *12–13. This case is different than *Bateast* because plaintiff has alleged that defendants knew about the risk he was facing and did nothing.

     To the extent one reads *Bateast* to require a plaintiff to cite specific authority for the clearly-established inquiry, the court rejects that interpretation. While plaintiff carries the burden on both qualified-immunity prongs, the court needn't confine its analysis on the clearly-established prong to cases that plaintiff cites. *See Baca v. Cosper*, 128 F.4th 1319, 1328 n.5 (10th Cir. 2025) (explaining that courts must conduct their "clearly established analysis with full knowledge of settled case law" even when plaintiff fails to cite that case law). To that end, the Supreme Court has instructed that whether "an asserted federal right was clearly established at a particular time . . . presents a question of law," so a

As alleged, defendants violated clearly established law. So, at least at this stage, they aren't qualifiedly immune from this suit.

These rulings resolve defendants' motions. The court next addresses plaintiff's motions, starting with his motion objecting to Magistrate Judge Schwartz's order.

## IV.     Plaintiff's Objection to Denial of Counsel

Plaintiff also has filed an Objection to Order (Doc. 39), which asks the court to review Magistrate Judge Schwartz's Order (Doc. 32) denying plaintiff's request that the court appoint him counsel. The court overrules plaintiff's objection, as explained below.

### A.     Legal Standard

District courts apply different legal standards to evaluate magistrate judge rulings on dispositive versus non-dispositive matters. *See* Fed. R. Civ. P. 72. "A matter is dispositive if the ruling effectively removes a defense or claim from the case." *Clarendon Nat'l Ins. Co. v. Glickauf*, No. 18-cv-02549-CMA-NYW, 2019 WL 7168657, at *2 (D. Colo. Dec. 23, 2019) (citing *In re Motor Fuel Temperature Sales Pracs. Litig.*, 261 F.R.D. 577, 579 (D. Kan. 2009)). Whether to appoint counsel is a non-dispositive issue. *E.g.*, *Dona't v. Amazon.com/Kindle*, 482 F. Supp. 3d 1137, 1142–43 (D. Colo. 2010) (characterizing motion for appointment of counsel as non-dispositive); *Langworthy v. Alcon*, No. 24-cv-1291-MLG-KRS, 2025 WL 2379491, at *1 (D.N.M. Aug. 15, 2025) (same).

When reviewing a magistrate judge's order deciding non-dispositive, pretrial matters, the district court applies a "'clearly erroneous or contrary to law'" standard of review. *First Union Mortg. Corp. v. Smith*, 229 F.3d 992, 995 (10th Cir. 2000) (quoting *Ocelot Oil Corp. v. Sparrow*

---

court reviewing qualified immunity should "use its full knowledge of its own and other relevant precedents." *Elder v. Holloway*, 510 U.S. 510, 516 (1994) (quotation cleaned up).

*Indus.*, 847 F.2d 1458, 1461–62 (10th Cir. 1988)); *see also* 28 U.S.C. § 636(b)(1)(A); Fed. R.

Civ. P. 72(a).  Under the clearly erroneous prong of this standard, a district judge does not

review factual findings de novo; instead, it must affirm a magistrate judge's findings unless a

review of the entire evidence leaves the district judge "with the definite and firm conviction that

a mistake has been committed." *Ocelot Oil Corp.*, 847 F.2d at 1464 (internal quotation marks

and citation omitted).  The clearly erroneous standard is "significantly deferential." *United

States v. Gallegos*, 314 F.3d 456, 462 n.3 (10th Cir. 2002) (internal quotation marks and citation

omitted).  The contrary-to-law aspect of this standard of review permits a district judge to

conduct an independent review of purely legal determinations made by the magistrate judge.

*Sprint Commc'ns Co. L.P. v. Vonage Holdings Corp.*, 500 F. Supp. 2d 1290, 1346 (D. Kan.

2007) (citations omitted).  A magistrate judge's order is contrary to law if it "fails to apply or

misapplies relevant statutes, case law or rules of procedure." *Walker v. Bd. of Cnty. Comm'rs*,

No. 09-1316-MLB, 2011 WL 2790203, at *2 (D. Kan. July 14, 2011) (citation omitted).

### B.     Analysis

Plaintiff argues that Magistrate Judge Schwartz failed to construe his motion liberally.

Doc. 39 at 4.  But even if true—and the court isn't convinced it is—plaintiff hasn't explained

why a liberal construction would change the Order's outcome.  The standard for determining

whether to appoint counsel—which Magistrate Judge Schwartz's Order applied faithfully, Doc.

32 at 3—assumes that the filer is pro se.  *See Hill v. SmithKline Beecham Corp.*, 393 F.3d 1111,

1115 (10th Cir. 2004).  So, the court isn't convinced that Magistrate Judge Schwartz failed to

construe plaintiff's filing liberally just because her order didn't say so expressly.  Rather, the

governing legal standard comes with liberal construction baked in.  *See id.* (including factors like

"the nature and complexity of the factual and legal issues" and "the prisoner's ability to

investigate the facts and present his claims").

Plaintiff next argues that he has limited resources and insufficient access to the law library. Doc. 39 at 4. He alleges that the LSCF "has failed to provide adequate staff to operate the library." *Id.* This argument might affect the factor which asks whether a prisoner has the "ability to investigate the facts and present his claims." *Hill*, 393 F.3d at 1115. But Magistrate Judge Schwartz's Order assumed the truth of plaintiff's argument and still found that this factor weighed against appointing counsel. Doc. 32 at 4–5. That's because plaintiff has demonstrated that he is capable of presenting arguments and facts adequately. *Id.* at 4. That conclusion isn't clearly erroneous or contrary to the law. And even if it were, the other relevant factors—like plaintiff's likelihood of success on the merits and the nature and complexity of the case—remain neutral or weigh against appointment of counsel. So, the court concludes, Magistrate Judge Schwartz's denial of counsel was appropriate.

Relatedly, plaintiff explains that he is scheduled for neurosurgery and may have difficulty responding timely to this litigation. Doc. 39 at 4. That's unfortunate, but this condition doesn't convince the court that Magistrate Judge Schwartz's Order is either contrary to the law or clearly erroneous. The court thus overrules plaintiff's Objection to Order (Doc. 39).[12]

Next up: Plaintiff's summary-judgment filing.

---

[12]    Plaintiff's motion raises a few issues that aren't connected to the Magistrate Judge's Order. This footnote addresses them. Plaintiff first suggests that he doesn't understand how the court can resolve this case's immunity issues. Doc. 39 at 1. The court has addressed the immunity issues raised by defendants' motions, above. Plaintiff next argues that it's wrong for Kansas taxpayers to shoulder the cost of representing defendants. *Id.* at 2–3. Plaintiff's entitled to his opinion, but this decision doesn't belong to plaintiff—or this court. Plaintiff also argues that he has exhausted his administrative remedies. *Id.* at 3– 4. Plaintiff had an opportunity to deal with that issue in his response to defendants' Motions to Dismiss. The court declines to consider his further discussion on the subject. And the court urges plaintiff to confine his arguments to the proper filing in the future.

Plaintiff's motion also makes passing reference to Magistrate Judge Schwartz's decision to deny plaintiff's Motion to Lift Discovery. *Id.* at 1. Plaintiff hasn't identified any error in Magistrate Judge Schwartz's order. *See id.* And his argument is otherwise perfunctory. Thus, to the extent that one could read plaintiff's motion as objecting to Magistrate Judge Schwartz's denial of plaintiff's Motion to Lift Discovery, the court overrules that objection.

V.    **Plaintiff's Motion for Summary Judgment (Doc. 55)**

Plaintiff has also filed a Motion for Summary Judgment (Doc. 55).  The court denies this motion.

Plaintiff hasn't complied with D. Kan. Rule 56.1.  This rule requires the summary judgment movant to "begin with a section that contains a concise statement of material facts as to which the movant contends no genuine issue exists."  D. Kan. Rule 56.1(a).  The same rule requires a party moving for summary judgment to number the facts and "refer with particularity to those portions of the record upon which movant relies."  *Id.*  Plaintiff's filing doesn't comply with either of those provisions of D. Kan. Rule 56.1(a).  "Failure to comply with D. Kan. Rule 56.1 justifies denying a motion for summary judgment."  *Griffin v. Bank of Am.*, 971 F. Supp. 492, 495 (D. Kan. 1997) (quotation cleaned up) (compiling cases).  By failing to set forth material facts in his motion, plaintiff failed to shoulder his initial burden of production.  He thus isn't entitled to summary judgment.  *See Kannady v. City of Kiowa*, 590 F.3d 1161, 1169 (10th Cir. 2010) (explaining moving party's burden of production).

Plaintiff's motion also argues that because defendants haven't yet filed an answer, the court must accept the allegations in his operative pleading as true.  Doc. 55 at 5–6.  But the Federal Rules of Civil Procedure don't require defendants to file an answer until 14 days after the court rules their Rule 12 motion.  Fed. R. Civ. P. 12(a)(4)(A).  So that argument also doesn't furnish a basis to grant summary judgment.  The court thus denies plaintiff's Motion for Summary Judgment (Doc. 55).

VI.    **Conclusion**

The court grants in part and denies in part defendants' Motions to Dismiss (Doc. 30; Doc. 50).  The court dismisses any official-capacity claim that plaintiff asserts without prejudice for

lack of subject matter jurisdiction.[13]  It also dismisses plaintiff's retaliation claim based on his placement in segregated housing without prejudice.[14]  The court otherwise denies defendants' motions.

Finding no error in Magistrate Judge Schwartz's Order, the court overrules plaintiff's Objection to Order (Doc. 39).  And the court denies plaintiff's Motion for Summary Judgment (Doc. 55).

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendants Andrew Parks and Bruce Chapman's Motion to Dismiss (Doc. 30) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff Bobby Bruce White's Objection to Order (Doc. 39) is overruled.

**IT IS FURTHER ORDERED THAT** defendant Evan Meredith's Motion to Dismiss (Doc. 50) is granted in part and denied in part.

**IT IS FURTHER ORDERED THAT** plaintiff Bobby Bruce White's Motion for Summary Judgment (Doc. 55) is denied.

**IT IS SO ORDERED.**

**Dated this 10th day of September 2025, at Kansas City, Kansas.**

> **s/ Daniel D. Crabtree**
> **Daniel D. Crabtree**
> **United States District Judge**

---

[13]    A "dismissal on sovereign immunity grounds . . . must be without prejudice." *Rural Water Sewer & Solid Waste Mgmt., Dist. No. 1, Logan Cnty. v. City of Guthrie*, 654 F.3d 1058, 1069 n.9 (10th Cir. 2011).

[14]    The court dismisses the claim without prejudice because "ordinarily the dismissal of a pro se claim under Rule 12(b)(6) should be without prejudice[.]"  *Gee*, 627 F.3d at 1186.