UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bobby Bruce White, Plaintiff
vs.
Andrew Parks, et al., Defendants
Gary Spillman

Case No: 24-3023-DDC-RES

Discovery

## I. Plaintiff's Second Request For Production of Documents

The plaintiff's first request was made through Doc. 31, filed 12-16-2024 and through Doc. 52 filed 3-3-2025.

Pursuant to Rule 34, Fed. R. Civ. P., the plaintiff requests that the defendants produce the documents listed within 30 days, by providing the plaintiff with copies.

1.) Any and all grievances, complaints, EAI investigation reports, correspondence / letters direct to the Lansing Correctional Facility Warden; and Kansas Department of Corrections - Secretary of Corrections, Jeff Zmuda, concerning:
(a) mistreatment of inmates by KDOC personnel/officers; and specificly relating to defendants Andrew Parks, Evan Meredith and Bruce Chapman; and
(b) Failure to protect/requests for protection, from prisoners/staff, from gang activity, and drug and tobacco user/dealers; and
(c) mistreatment/torture in Lansing segregation/restrictive housing by KDOC staff/personel, specificly and including by the defendants, Parks, Meredith and Chapman; and any memoranda, investigation, files or other documents created in response to the complaints, since January 1, 2020 to date of the response to this request.

2.) Any and all policies, directives, or instructions to KDOC personel concerning controling and preventing gangs, drug users/dealers activity in Kansas prisons.

3.) Any and all policies, directives, or instructions to KDOC personel concerning the humane treatment of prisoners, held in segregation/restrictive housing for protective custody, administrative and disciplinary hold.

1.

4.) Any and all policies, directives, or instructions to KDOC personel concerning the need to provide; protection to prisoners, from staff abuse and violence by other prisoners, to also specificly as it applies to the prevention of elder abuse.

5.) Any and all policies, directives, or instructions to KDOC personel concerning the requirement for prisoners to sign a (PC) Protective Custody Waiver before they could/would be released from segregation/restrictive housing. Also, the Plaintiff/White requests a copy of the PC Waiver, the Plaintiff signed on 7-12-2023 at Lansing Correctional Facility.

6.) All sick calls and medical intervention reports, made at all KDOC prison facilities, because of prisoner drug and tobacco use/misuse, to include all related deaths and hospitalizations of prisoners because of drug and tobacco use/misuse, for the past 10 years, up to the date of the response to this request.

7.) Any and all policies, directives, or instructions to KDOC personel concerning the double bunking of prisoner in segregation/restrictive housing and specificly to include prisoners under protective custody and/or prisoners who have requested protective custody.

8.) Any and all documents/reports of EAI investigation at Lansing Correctional Facility since January 1, 2020 up to the date of the response to this request to: specificly include White's questioning by EAI Officer Tomilson on 10-2-2023 - after White's strangulation and hospitalization for the injuries.

9.) Any and all medical records, x-rays, injury photo's taken at the KU Hospital and reports made by the; (a) LCF Medical Clinic, Lansing Correctional Facility; (b) Leavenworth County EMS, 500 Eisenhower Rd., #100, Leavenworth, Kansas 66048; and (c) The University of Kansas Hospital, University of Kansas Health System; Attention: Medical Records Custodian, 4000 Cambridge St., MS 9345, Kansas City, Ks. 66160; and (d) Kansas Department of Corrections, Lansing Correctional Facility; regarding -
    On 7-12-2023, the Plaintiff/White was transported by ambulance from the (LCF) Lansing Correctional Facility - Medical Clinic (after being x-rayed

2.

for physical injuries), to the KU Hospital, for the treatment of injuries due to strangulation, by prisoner Jeremey Garza. At the KU Hospital, photos were taken of the injuries to White's throat, neck, treated and monitored for any additional swelling.

10.) Any and all names of all attending KDOC staff/officers and medical personnel as well as all attending ambulance and KU Hospital attending medical staff and physicians, who provided care, to the Plaintiff, because of and after the 7-12-2023 strangulation.

11.) Any all records/reports, investigations, to include all disciplinary and/or criminal charges made or filed against the attacker, Jeremey Garza, to include the Plaintiff's request to press charges; (a) made in connection to the strangulation of the Plaintiff on 7-12-2023; (b) to include the reason why Jeremey Garza was being held in segregation, in the same cell as the Plaintiff; (c) To include any other previous allegations or reports, investigations of other acts of drug/tobacco user/dealer and strangulation by Jeremey Garza, and/or violent acts by Mr. Garza.

12.) The plaintiffs complete medical and mental health records in White's KDOC medical file, since the date of White's incarceration, up to the date of your response to this request.

13.) Any and all policies, directives, or instructions to KDOC personnel concerning the necessity or when required to call: (a) medical for medical care to an injuried prisoner; (b) making a trouble call; after the attack and violent interaction of prisoners in segregation/restrictive housing and in general population (if there is a difference).

Dated: 10-27-2025     by s/ Bobby White #2000046191
                                  Pro Se
                          Bobby White #2000046191
                          Larned State Correctional Facility
                          1318 KS, Highway 264
                          Larned, Kansas 67550

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| Bobby Bruce White, Plaintiff<br>vs.<br>Andrew Parks, et al., Defendants<br>Gary Spillman | Case No: 24-3023-DDC-RES<br><br>Discovery |

## II. Plaintiff's Interrogatories and Request for Production of Documents

Pursuant to Rules 33 and 34, Fed. R. Civ. P., the plaintiff submits the following interrogatories and requests for documents to the defendants. You are directed to answer each of the interrogatories in writing under oath, and provide the plaintiff with copies of each of the requested documents.

1.) State the duties of defendants; (a) Andrew Parks; (b) Evan Meredith; and (c) Bruce Chapman. If the duties are set forth in any job description or other document, produce the documents.

2.) State the specific duties of the defendants, Parks, Meredith and Chapman and as it may apply to all other KDOC employee's/staff (to include Wardens and Deputy Wardens); in-so-far as it pertains to: (a) providing protection to prisoners; and (b) medical care to prisoners; and (c) for receiving medical care at the prison facility; and out of the prison facility, specificly after an incident of violence against a prisoner, in segregation/restrictive housing and general population. If these duties are set forth in any job description or other document; produce the documents.

3.) State the names, titles, and duties of all Lansing Correctional Facility employees/officers/staff, who have the responsibility for ensuring that inmate's/prisoners request for medical attention are responded to. If these duties are set forth in any job description or other document, produce the documents.

4.) State the names, titles, and duties of all employees/officers/staff members at Lansing Correctional Facility (LCF) who have responsibility for

1.

responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description, policy, directive, or other document; produce the documents.

5.) State the procedure in effect during January 2020, through the date of your response; for responding to, investigating, and deciding inmate grievances; to include emergency grievances, and need for protective custody. If the procedure for handling grievances, are based on: (a) medical complaints; (b) protective custody needs, and (c) complaints about staff; and (d) drug and tobacco complaints are different from the procedure for handling other kinds of grievances; state all the procedures. If these procedures are set forth in any directive, manual, rule, law or other documents, produce the documents.

6.) State the rules, laws, policy and directive regarding, what constitues an Emergency as it applies to: (a) the protection of prisoners (health/safety); (b) submission of grievances; and (c) providing medical care to prisoners. If these duties/requirements are set forth in any statute, rule, directive or other document, produce the documents.

7.) State the method of enforcement of #6 above /and or the consequences to any KDOC personell and for who's duty it is to investigate non-compliance of individuals, who violate the rules, laws, policy and/or directive regarding the: (a) failure to protect prisoners; (b) grievance steps of due process (to include time requirements); and (c) failure to provide emergency medical care. If these duties/requirements are set forth in any statute, rule, policy or directive or other document, produce the documents.

8.) State the procedure and by who?, (a) regarding a prisoners right to know specificly why he is being held in segregation/restrictive housing and the allowable maximum time of holds for: (b) protective custody, (c) administrative segregation and, (d) disciplinary times; regarding (e) prisoners hold times personal reviews /evaluations; and give the difference of the conditions of incarceration; between protective custody holds, disciplinary and administrative segregation holds; and (f) who? (identify responsible personell) who's duty it is to see that the prisoner is properly and humanely treated. If the responsible personell duties are set forth in any job description or other

2.

document, produce the documents, and; If these procedures and conditions of restrictive housing are set forth in any directive, manual, rule, law or other documents, produce the documents.

9.) State the names of the KDOC/State of Kansas employees/personell who's duty it is to assure a prisoners rights to programs and services for a comprehensive prison record toward rehabilitation required by K.S.A. 75-5210 and the procedure to assure compliance. If those duty are set forth in any job description or other document, produce the document. If the procedures are set forth in any directive, manual, rule or law or other document, produce the documents.

10.) State the names of the KDOC/State of Kansas employees/personell, and the procedure, who's duty and responsibility it is, to assure that the grievance resolution, given by the Unit Team, Warden and Secretary of Corrections; is carried out, as to it's given relief. (Specificly see: Grievance resolution of #AA 2023056). If the duty and procedure of a grievance resolution compliance is set forth in any directive, manual, statute or rule, or other document, produce the document.

11.) The Plaintiff/White respectfully requests the State of Kansas, to provide the Plaintiff, a copy of the "mandate"; from the State Appellate Court. companion to this habeas corpus - In the Court of Appeals of the State of Kansas, Case No: 128,298, filed on August 1, 2025; by Chief Judge Sarah E. Warner; and give the Plaintiff his Constitutional right, per due process, to who or what court or entity currently has jurisdiction of that habeas corpus civil action.

12. Per the Unit Team response dated; 7-10-2025 by Amy L. Simmons, H.S.A. (For grievance #1A003455), who cited on: "3/28/2023 Resident BH classification was updated at Lansing to BH treatment level 4, requiring special needs monitoring due to Bi-polar Diagnosis." The plaintiff requests; (a) the identity and title of the individual/KDOC personel, who? updated/changed Whites' mental health classification and the justification/reason for the change done on 3/28/2023; and (b) the identity and medical/psthiatric title of the individual/Doctor, who?, examined and diagnosed White on 3/28/2023, and the justification/reason for the Bi-Polar diagnosis for

<u>3.</u>

the change of mental health classification change done on 3/28/2023 at Lansing Correctional Facility.

13.) Who's job is it? Specificly to enforce Kansas laws, such as K.S.A.19-1919; K.S.A.75-5210; K.S.A. 21-5417; K.S.A. 21-5416 and K.S.A. 22-3504 relating to the humane treatment and protection of state prisoners and elder abuse.

Dated: x/10-27-2025 by s/ Bobby White #2000046191
Pro Se

Bobby White #2000046191
Larned State Correctional Facility
1318 KS. Highway 264
Larned, Kansas 67550

4.

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| Bobby Bruce White, Plaintiff | |
| --- | --- |
| vs. | Case No: 24-3023-DDC-RES |
| Andrew Parks, et al., Defendants | |
| Gary Spillman | Discovery |

## III. PLAINTIFF'S REQUEST FOR ADMISSIONS

Pursuant to Rule 36, Fed. R. Civ. P., plaintiff requests the defendants to make the following admissions within 30 days after the service of this request.

I. 1) As stated in Grievance No. 2023056, dated 11-3-2022, the Conclusions Made by Secretary of Corrections - Darcie Holthaus (Designee) states: "...take the time to discuss your concerns with the program leads when you attend the new sessions; discuss what you are hoping to get out of the program..." This then implies, as the Unit Team response by Ms. Potter UTM, dated 10-6-2022, also clearly states: "You were not removed from BIBR..."

2) The plaintiff/White was a vested member and program participant of the BIBR/RDDC inmate program since May of 2022, having successfully completing his 1st quarter of the program and was half way through his 2nd quarter, when he was denied access to the program (group participation) by Mr. Gary Spillman, and was removed officially from the program and Pod B5 on March 2023.

3.) White, cited on 10-22-2022, Grievance #2023056, Appeal to Secretary of Corrections, page 2; (1st para.); "...This punishment and group program denial is nothing other than religious discrimination of doctrine belief by Gary Spillman, forcing his own personal opinion and condoning group discussion promoting legalization of drug use and manufacturing during the drug addiction group class..." "...(d) This is a security issue as drug use, is rampant here at LCF..."; (5th para) "...and they have the right to proselytizing their religious faith and belief on White by discriminating against him, by the denial to participation to group sessions and its program privileges

1.

and benefits, by not seriously investigating and determining the BIBR as a "security threat group."

4.) On 11-2-2023 and 11-3-2023, White documented by Form 9(informal resolution attempt) to Unit Team, included with grievance #AA2023056 on Appeal to Secretary of Correction (Courts Exhibit C (pages 1 and 2)); "On 11-2-2022, I had a meeting with Mr. C.J. Hughes, Mr. Dave Johnson and Mr. Gary Spillman regarding my BIBR membership Rule 305 Appeal and recently sent grievance appeal to Secretary of Corrections, at the end of this meeting Mr. Hughes state he was going to see me in court and have me removed from pod B5..."

5.) Mr. Gary Spillman has a criminal conviction for the manufacturing of methamphetamine, which can be confirmed through; State v Spillman 2005 Kan. Lexis 5391, 280 Kan. 990, District Case No: 02CR317BR; State v Spillman 110 P.3d 447, 2005 Kan. App. Lexis 405 (Kan. Ct. App. 2005)

II. 1.) On 3-28-2023, Administrative Restrictive Housing Report Number 01-23-1875, White was moved from cell B5-103 to Restrictive cell A2-206, citing as Facts: "Inmate White #76983 is being placed in restrictive housing for refusing to move to B8. Inmate previously tried going PC from staff..."

2.) Pursuant to "KAR 44-15-101a (f) A procedure shall be established by the warden for investigating the allegations and establishing the facts of each grievance. An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance."

3.) Pursuant to "KAR 44-15-101a (e) The remedies available to the inmate may include action by the warden of the facility to correct the problem or action by the secretary of corrections to cause the problem to be corrected. Relief may include an agreement by facility officials to remedy an objectionable condition within a reasonable, specific time, or to change a facility policy or practice."

4.) The plaintiff/White, in Doc.8, of this case No: 24-3023-JWC, filed 5-28-2024, B. Nature of the Case: "White asserts, over 4 years he has complained to LSF/ KDOC officials and State Court (LVCO 20CV243/22CV323) about the drug/ tobacco smoke problem at LCF, White was assaulted by gangs/unit officer when he complained, received no relief by grievance or state court, who just dismissed 20CV243 without addressing problem. White asserts he had his

2.

BIBR program membership revoked for same reason (needed for parole consideration), without due process, in retaliation, moved to cell with smokers/drug addicts, in retaliation for submitting grievance and court action. White protested his health/safety was in danger, requesting Protective Custody, was denied..."

5.) In White's first habeas corpus, legal action, in the States District Court, for these issues of this case, which was Appealed to the Appellate Court of Kansas Case No: 128298, a mandate was filed on 8-1-2025 by Chief Judge Sarah E. Warner. (Note: White has not been served a copy of mandate)

6.) On 6-5-2023 White was moved from Restrictive housing cell A1-117 to cell A1-119.

7.) Cell A-119 On 6-5-2023 also held prisoner Joshua Week.

8.) Joshua Weeks had a criminal drug conviction.

9.) Joshua Weeks was a BIBR program member and was a participant/member and same group 65, as did White.

10.) On 6-9-2023 the Plaintiff/White personally confronted Mr. Parks UTM, that he was putting White's life in danger.

11.) The interaction with Mr. Parks UTM was documented in an "Emergency" grievance, submitted 6-15-2023, direct to LCF Warden Geither and Ms. Chmidling, civil rights manager pursuant to KAR 44-15-106 Emergency grievance procedure.

12.) This grievance was also sent to the Leavenworth County District Court for Case No: LVCO 22CV323/PN 24CV009/Appellate Court Case No 128298) filed 6-22-2023, as Correspondence Emergency Grievance (Court Exhibit Copy): with legal service to S.O.C Jeff Zmuda; LCF Warden Geither, and Ms. Chmidling-LCF civil Rights Manager. White also sent a copy to KAKE-TV, Wichita, Ks. (by certified mail) for my own personal protection and for the record.

13.) In the body of this "Emergency" grievance, (on page1) White states: "But my most important and dangerous issue is that the A1 Unit Team; Mr. Parks UTM, Ms. Hall UTS, and Mr. Meredith CC keep rotating drug and tobacco users, drug addicts and dealers, who I've requested Protection from, into my cell. I recently on 6-9-2023, had to raise a fuss, because

3.

I was threatened by one individual, they did put in the cell with me..."

III. 1.) On 7-12-2023, the plaintiff/White was strangled by Jeremey Garza, who had been placed in the same cell, with White, cell A1-119.
2.) Jeremey Garza is a convicted drug record inmate.
3.) Jeremey Garza was a BIBR program participant/member.
4.) Jeremey Garza had been moved to segregation/restrictive housing to cell A1-119 from BIBR Pod B5.

5.) The plaintiff/White was made to sign a PC Waiver, before being allowed to be separated from Jeremey Garza, by defendants Chapman and Meredith.
6.) No trouble call, by the segregation officers was ever made after the strangulation of White on 7-12-2023
7.) Medical was not called to give medical care to White for the injuries to Whites throat/neck, from strangulation, by any segregation/restrictive housing personel/officers on 7-12-2023
8.) The plaintiff/White had to wait for Mr. Parks UTM to process the paperwork and move him back to general population, before White was allowed to go to medical by B cell house unit officer on 7-12-2023.

9.) The LCF medical clinic, took x-rays of Whites throat/neck injuries on 7-12-2023.
10.) The LCF medical clinic staff, had the plaintiff/White transported to the emergency room of the KU Hospital on 7-12-2023.
11.) The plaintiff/White was examined, treated and monitored for any additional throat swelling, by the KU Hospital personel.
12.) The KU Hospital staff took photographs of Whites throat/neck injuries.

IV. 1.) (UN-IDENTIFIED TO WHITE-NOTE) Some LCF medical professional on 3-28-2023 changed the Plaintiffs/Whites (mental health classification) to Resident BH classification to BH treatment level 4, requiring special needs monitoring, and also diagnosed White as Bi-Polar at LCF, after White was ~~[struck through]~~ placed in restrictive housing.

2.) Upon the plaintiff's return back to LCF, from the KU Hospital he was "not" placed back into general population.

4.

3.) Upon the plaintiff's return back to LCF, from the KU Hospital, he was placed, back under the same housing conditions, in the same cell A1-119, as he previously had been strangled and held under the same KDOC personel, Mr. Parks UTM and Bruce Chapman CO.

4.) Mr. Park's UTM continued to attempt to put other prisoners with drug and weapon possession charges in the same cell with White.

5.) The plaintiff/White was still being denied the protective custody conditions of incarceration as required by IMPP 20-108D by the segregation/restrictive housing Unit Team Manager Mr. Andrew Parks.

6.) On 9-26-2023, Mr. Parks UTM, through the Unit Officers had the plaintiff/White written up and issued a Disciplinary Report charge; Case No: 1138, for refusing to accept another prisoner to be placed in the same cell with White.

7.) The plaintiff/White was ultimately found "Not Guilty" of that charge by the Hearing Officer Snodgrass.

8.) On 10-2-2023, the plaintiff/White received a recorded meeting with EAI Officer Tomilson, about my need for protective custody and the abuses by the LCF personel/officers etc.

9.) On 10-23-2023 the plaintiff/White was transferred to (LSCF) Larned State Correctional Facility.

V 1.) At LSCF, the plaintiff/White continued to be held an additional 95 days in segregation and denied Protective Custody conditions of incarceration required by IMPP 20-108A.

2.) The plaintiff/White submitted numerous complaints including a PREA grievance, regarding further continuing abuse at LSCF.

3.) Since, the plaintiff/White was finally released from segregation he has not been issued or been charged with any disciplinary charges, now for over two (2) years.

4.) On September 16, 2025, the plaintiff/White, now (74) seventy four years of age, was transported to the Regional Hospital in Salina, Kansas for pneurological lower back surgery.

5. On Jan. 6, 2023, also, at Lansing Correctional Facility, 62 year old prisoner Gary Lee Raburn, was killed in prison by his cell mate,

5.

Ladarious Racquez Backers; by/through asphyxiation due to strangulation.

Dated: 10-27-2025   by s/ Bobby White #2000046191
                                                                  Pro Se
                          Bobby White #2000046191
                          Larned State Correctional Facility
                          1318 KS., Highway 264
                          Larned, Kansas 67550

### CERTIFICATE OF SERVICE

The undersigned hereby certifies a true copy of these:
(a) I. (3 page) Plaintiff's Second Request for Production of Documents;
(b) II. (4 page) Plaintiff's Interrogatories and Request for Production of Document;
and (c) III. (6 pages) Plaintiff's Request for Admissions, For "Discovery";
was served via; U.S. Mail, 1st Class, postage prepaid, on this 27th day of October, 2025 to:

1.) Kris W. Kobach; Kansas Attorney General; C/o Matthew L. Shoger and Scott G. Nading; Office of the Attorney General; 120 S.W. 10th Ave., 2nd Floor; Topeka, Kansas 66612-1597

2.) Gary L. Spillman, 105 Elm St., Lot #3; Overbrook, Kansas 66524
        and
3.) E-filed to the U.S. District Court Clerk.

Dated: 10-27-2025   by s/ Bobby White #2000046191
                                                    Pro Se.

                          Bobby White #2000046191
                          Larned State Correctional Facility
                          1318 KS., Highway 264
                          Larned, Kansas 67550

6.