Exhibit B

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOBBY BRUCE WHITE,            )
                              )
        Plaintiff,            )
                              )
v.                            )   Case No. 24-3023-DDC-RES
                              )
ANDREW PARKS, *et al.,*       )
                              )
        Defendants.           )
_____)

**DEFENDANTS' ANSWERS TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**

Under Federal Rules of Civil Procedure 33 and 34, Defendants Andrew Parks, Bruce Chapman, and Evan Meredith ("Defendants") provide the following answers:

1. State the duties of defendants; (a) Andrew Parks; (b) Evan Meredith, and (c) Bruce Chapman. If the duties are set forth in any job description or other document, produce the documents.

   **OBJECTION. The scope of this request includes confidential documents. Specifically, the post orders for these officers are "staff read only" for safety and security reasons.** *See* **Ct.'s Order,** *Dudley v. Warren*, **No. 22-3188-JWL (D. Kan. Jan. 24, 2023) (Doc. 30) (sealing a security-related prison policy and not allowing the plaintiff to view or possess it);** *see also Leek v. Peterson*, **360 P.3d 491 (Table), 2015 WL 7434671, at \*3 (Kan. Ct. App. Nov. 20, 2023) (noting that KDOC does not have a duty to disclose policies pertaining to emergency or security procedures under K.S.A. 75-5256(b)).**

   **Without waiving any objection, Andrew Parks serves as a Unit Team Manager. Evan Meredith is no longer employed with KDOC. Bruce Chapman serves as a Corrections Supervisor I. The current job description for Andrew Parks is attached as OAG000143-OAG000148. The current job description for Bruce Chapman is attached as OAG000003-OAG000009.**

2. State the specific duties of the defendants, Parks, Meredith and Chapman and as it may apply to all other KDOC employee's/staff (to include Wardens and Deputy Wardens); in-so-far as it pertains to: (a) providing protection to prisoners; and (b) medical care to prisoners; and (c) for receiving medical care at the prison facility; and out of the prison facility, specificly after an incident of violence against a prisoner, in

segregation/restrictive housing and general population. If these duties are set forth in any job description or other document; produce the documents.

> **See response to Interrogatory #1. Additionally, the following applicable policies are attached as OAG000092-OAG000112 and OAG000157-OAG000158: IMPP 16-107D, 16-108D, and LCF GO 13-102.**

3. State the names, titles, and duties of all Lansing Correctional Facility employees/officers/staff, who have the responsibility for ensuring that inmate's/prisoners request for medical attention are responded to. If those duties are set forth in any job description or other documents, produce the documents.

> **OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon v. Corr. Corp. of Am., Inc.*, No. 1:12-cv-559, 2015 WL 3948459, at *3 (D. Idaho June 29, 2015) (allowing redaction of the first names of non-party correctional employees). Here, the answer would broadly encompass every correctional officer, and a list of *every* correctional officer – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons.**
>
> **Without waiving any objection, Lansing Correctional Facility (LCF) expects every correctional officer to connect inmates with medical personnel when requested and appropriate. The titles and duties of Defendants Andrew Parks, Bruce Chapman, and Evan Meredith are provided in Defendants' response to Interrogatory #1.**

4. State the names, titles, and duties of all employees/officers/staff members at Lansing Correctional Facility (LCF) who have responsibility for responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description; policy, directive; or other document; produce the documents.

> **OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon*, 2015 WL 3948459, at *3. Here, if a list of names was provided, the list would broadly encompass numerous correctional employees who have any involvement with the grievance procedure. Such a large list of correctional employees – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons.**
>
> **Without waiving any objection, the persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101 *et seq. See also* Fed. R. Civ. P. 33(d).**

5. State the procedure in effect during January 2020, through the date of your response; for

2

responding to; investigating; and deciding inmate grievances; to include emergency grievances, and need for protective custody. If the procedure for handling grievances, are based on: (a) medical complaints; (b) protective custody needs, and (c) complaints about staff; and (d) drug and tobacco complaints are different from the procedure for handling other kinds of grievances; state all the procedures. If these procedures are set forth in any directive, manual, rule, law or other documents, produce the documents.

> **The grievance procedure is outlined in K.A.R. 44-15-101** *et seq.* **While protective custody classifications cannot be grieved through that grievance procedure (K.A.R. 44-15-101a(d)(2)), Internal Management Policy & Procedure (IMPP) 20-108D addresses requests for protective custody and is attached as OAG000135-OAG000138.**

6. State the rules; laws, policy and directive regarding, what constitutes an Emergency as it applies to: (a) the protection of prisoners (health/safety); (b) submission of grievances; and (c) providing medical care to prisoners. If these duties/requirements are set forth in any statute, rule, directive or other document, produce the documents.

> **OBJECTION. With regard to the "laws" governing what would constitute an emergency under the law for subparts (a) and (c), Plaintiff is asking for legal advice regarding the legal definition of "emergency." But the Defendants cannot provide Plaintiff with legal advice. With regard to the "rules . . . policy and directive" governing what would constitute an emergency for subparts (a) and (c), some of the applicable policies are confidential for safety and security reasons.** *See Dudley***, No. 22-3188-JWL (Doc. 30);** *see also Leek***, 2015 WL 7434671, at \*3. Specifically, the following policies designated as "Major Emergency Response Plans" are confidential for safety and security reasons: IMPP 19-101D (Development, Content, Training, Review, and Distribution of Facility Emergency Plans), -102D (Emergency Staff Services), -103A (Emergency Preparedness for Parole Offices), -104A (Hostage Situations in Field Service Offices), -105A (Fire/Smoke/Explosion in Field Service Offices), -106A (Evacuation Procedures), -107A (Bomb Threats in Field Service Offices), -108A (Severe Weather and Natural Disasters), -109A (Hazardous Materials and Occupational Exposures), -111A (Building Damage, Safety Hazards and Civil Disturbances), -113A (Medical Emergencies in Field Service Offices), -121D (Evacuation of Correctional Facilities), and -130D (Participation in the State Emergency Operations Plan).**
>
> **Without waiving any objection, Defendant responds to the remaining parts of this question as follows. With regard to "rules . . . policy and directive" for subparts (a) and (c), the following non-confidential policies apply and are attached as OAG000108-OAG000115: IMPP 16-108D, 19-120D. With regard to subpart (b), K.A.R. 44-15-106 governs emergency grievances.**

7. State the method of enforcement of #6 above /and or the consequences to any KDOC personell and for who's duty it is to investigate: non-compliance of individuals, who violate the rules, laws, policy and/or directive regarding the: (a) failure to protect prisoners; (b) grievance steps of due process (to include time requirements); and c) failure to provide emergency medical care. If these duties/requirements are set forth in any statute, rule, policy or directive or other document, produce the documents.

   **OBJECTION. Disciplinary actions taken with particular correctional employees constitute confidential personnel matters. For safety and security reasons, such information cannot be provided to inmates.** *See Martinez v. True*, **128 F. App'x 714, 716 (10th Cir. 2005) (affirming judgment based on an in-camera review of "confidential prison materials").**

   **Without waiving any objection, IMPP 02-120D outlines employee disciplinary procedures and is attached as OAG000025-OAG000031. Employee discipline is handled on a case-by-case basis. The persons responsible for investigating apparent or reported misbehavior by correctional employees may differ from circumstance to circumstance.**

8. State the procedure and by who?, (a) regarding a prisoners right to know specificly why he is being held in segregation/restrictive housing and the allowable maximum time of holds for: (b) protective custody, (c) administrative segregation and, (d) disciplinary times; regarding (e.) prisoners hold times personal reviews/evaluations; and give the difference of the conditions of incarceration; between protective custody hold, disciplinary and administrative segregation holds; and (f) who? (identify responsible personell) who's duty it is to see that the prisoner is properly and humanely treated. If the responsible personell duties are set forth in any job description or other document, produce the documents, and; If these procedures and conditions of restrictive housing are set forth in any directive, manual, rule, law or other documents, produce the documents.

   **With regard to subparts (a) through (d), IMPP 20-104A applies and is attached as OAG000122-OAG000127. With regard to subpart (e), see documents responsive to request for production #3. With regard to subpart (f), all KDOC employees that interact with prisoners are expected to treat prisoners properly and humanely.**

9. State the names of the KDOC/State of Kansas employees/personell who's duty it is to assure a prisoners rights to programs and services for a comprehensive prison record toward rehabilitation required by K.S.A. 75-5210 and the procedure to assure compliance. If those duty are set forth in any job description or other document, produce the document. If the procedures are set forth in any directive, manual, rule or law or other document, produce the documents.

   **OBJECTION. While K.S.A. 75-5210 directs the Secretary of Corrections to**

4

establish programs and services, it does not create a right for a prisoner to participate in any particular program or service.

10. State the names of the KDOC/State of Kansas employees/personell, and the procedure, who's duty and responsibility it is, to assure that the grievance resolution, given by the Unit Team, Warden and Secretary of Corrections; is carried out, as to it's given relief. (Specificly see: Grievance resolution of #AA2023056). If the duty and procedure of a grievance resolution compliance is set forth in any directive, manual, statute or rule, or other document, produce the document.

    **The persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101** *et seq.*

11. The Plaintiff/White respectfully requests the State of Kansas, to provide the Plaintiff, a copy of the "mandate"; from the State Appellate Court companion to this habeas corpus – In the Court of Appeals of the State of Kansas, Case No: 128,298, filed on August 1, 2025; by Chief Judge Sarah E. Warner; and give the Plaintiff his Constitutional right, per due process, to who or what court or entity currently has jurisdiction of that habeas corpus civil action.

    **OBJECTION. With regard to identifying which court or entity has jurisdiction of a legal matter, the Defendants cannot provide the Plaintiff with legal advice.**

    **Without waiving any objection, although the mandate described was not filed by Chief Judge Sarah E. Warner, the requested mandate is attached as OAG000001.**

12. Per the Unit Team response dated; 7-10-2025 by Amy L. Simmons, H.S.A. (for grievance #IA003455), who cited on: "3/28/2023 Resident BH classification was updated at Lansing to BH treatment level 4, requiring special needs monitoring due to Bi-polar Diagnosis." The plaintiff requests; (a) the identity and title of the individual/KDOC personel, who? updated/changed Whites' mental health classification and the justification/reason for the change done on 3/28/2023; and (b) the identify and medical/pschiatric title of the individual/Doctor, who? examined and diagnosed White on 3/28/2023, and the justification/reason for the Bi-Polar diagnosis for the change of mental health classification change done on 3/28/2023 at Lansing Correctional Facility.

    **Plaintiff will be able to examine any relevant medical records in KDOC's possession. Supervised viewing will be arranged for Plaintiff's medical records in KDOC's possession.** *See* **Fed. R. Civ. P. 33(d).**

13. Who's job is it? specificly to enforce Kansas laws, such as K.S.A. 19-1919; K.S.A. 75-5210; K.S.A. 21-5417; K.S.A. 21-5416 and K.S.A. 22-3504 relating to the humane treatment and protection of state prisoners and elder abuse.

5

**OBJECTION. Plaintiff is asking for legal advice. Specifically, Plaintiff is asking how to interpret certain Kansas statutes. The Defendants cannot provide the Plaintiff with legal advice.**

                Respectfully submitted,

                KRIS W. KOBACH
                ATTORNEY GENERAL OF KANSAS

                */s/ Matthew L. Shoger*
                Matthew L. Shoger, KS No. 28151
                Assistant Attorney General
                Office of the Attorney General
                120 SW 10th Avenue, 2nd Floor
                Topeka, Kansas 66612-1597
                matt.shoger@ag.ks.gov
                785-296-2215
                Fax: (785) 291-3767
                *Attorney for Defendants*

## VERIFICATION

STATE OF KANSAS              )
                             )
COUNTY OF __LV__             )

__Andrew S Parks__, Defendant, being duly sworn under oath, states that they have read the foregoing interrogatories and answers, and the answers given are true and correct to the best of their knowledge and belief.

__Andrew S Parks__
Name

The foregoing answers to interrogatories were subscribed and sworn to before me this __12__ day of __December__, ~~2024~~ 2025

__[signature]__
Notary Public

My Commission Expires:

__7/14/2029__

HANNAH E. HAGEDORN
Notary Public - State of Kansas
My Appt. Expires 7/14/29

7

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOBBY BRUCE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 24-3023-DDC-RES |
| | ) |
| ANDREW PARKS, *et al.*, | ) |
| | ) |
| Defendants. | ) |
| | ) |

## DEFENDANTS' RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Under Federal Rule of Civil Procedure 34, Defendants Andrew Parks, Bruce Chapman, and Evan Meredith ("Defendants") provide the following responses:

1. Any and all grievances, complaints, EAI investigation reports, correspondence/letters direct to the Lansing Correctional Facility Warden; and Kansas Department of Corrections Secretary of Corrections, Jeff Zmuda, concerning:

    (a) mistreatment of inmates by KDOC personel/officers; and specifically relating to defendants Andrew Parks, Eran Meredith and Bruce Chapman; and

    (b) failure to protect/requests for protection, from prisoners/staff, from gang activity, and drug and tobacco user/dealers, and

    (c) mistreatment/torture in Lansing segregation/restrictive housing by KDOC staff/personel, specifically and including by the defendants, Parks, Meredith and Chapman; and any memoranda, investigation, files or other documents created in response to the complaints, since January 1, 2020 to date of the response to this request.

    **OBJECTION. The scope of this request includes confidential information. Other inmates' grievances, complaints, and correspondence/letters are confidential. Investigation reports completed by Enforcement, Apprehensions & Investigations (EAI) are also confidential for safety and security reasons. Additionally, the request is not reasonably limited in time or scope, is overly broad, and is unduly burdensome. KDOC houses nearly ten thousand inmates and receives innumerable handwritten grievances, complaints, and correspondence/letters from inmates alleging mistreatment by KDOC employees. Defendants cannot feasibly search through all of those documents to**

**identify and find the documents requested.**

2. Any and all policies, directives, or instructions to KDOC personel concerning controling and preventing gangs, drug users/dealers activity in Kansas prisons.

   **OBJECTION. The scope of this request includes confidential information. Specifically, Internal Management Policy & Procedure (IMPP) 09-108D (Fentanyl Exposure and Search Kits) and 12-105D (Security Threat Groups Identification and Management) are "staff read only" for safety and security reasons and cannot be provided.** *See* **Ct.'s Order,** *Dudley v. Warren***, No. 22-3188-JWL (D. Kan. Jan. 24, 2023) (Doc. 30) (sealing a security-related prison policy and not allowing the plaintiff to view or possess it);** *see also Leek v. Peterson***, 360 P.3d 491 (Table), 2015 WL 7434671, at \*3 (Kan. Ct. App. Nov. 20, 2023) (noting that KDOC does not have a duty to disclose policies pertaining to emergency or security procedures under K.S.A. 75-5256(b)). Lansing Correctional Facility (LCF) General Order (GO) 9-128 (Fentanyl Exposure and Search Kit) is also "staff read only" for safety and security reasons and cannot be provided.**

   **Without waiving any objection, the following non-confidential policies are attached as OAG000010-OAG000024, OAG000032-OAG000058, OAG000075-OAG000091, and OAG000149-OAG000152: IMPP 02-110D, 02-127D, 09-107D, 10-104D, 12-124D, and LCF GO 03-105.**

3. Any and all policies, directives, or instructions to KDOC personel concerning the humane treatment of prisoners, held in segregation/restrictive housing for protective custody, administrative and disciplinary hold.

   **The following policies are attached as OAG000116-OAG000142 and OAG000153-OAG000156: IMPP 20-101A, 20-104A, 20-105A, 20-108D, and 20-111A, along with LCF GO 10-101.**

4. Any and all policies, directives, or instructions to KDOC personel concerning the need to provide; protection to prisoners, from staff abuse and violence by other prisoners, to also specificly as it applies to the prevention of elder abuse.

   **The following responsive policy is attached as OAG000059-OAG000074: IMPP 10-103D.**

5. Any and all policies, directives, or instructions to KDOC personel concerning the requirement for prisoners to sign a (PC) Protective Custody Waiver before they could/would be released from segregation/restrictive housing. Also, the Plaintiff/White requests a copy of the PC Waiver, the Plaintiff signed on 7-12-2023 at Lansing Correctional Facility.

   **The requested PC waiver is attached as OAG000002. Other policies regarding**

**protective custody and restrictive housing have been provided in Defendants' response to Plaintiff's Request for Production #3.**

6. All sick calls and medical intervention reports, made at all KDOC prison facilities, because of prisoner drug and tobacco use/misuse, to include all related deaths and hospitalizations of prisoners because of drug and tobacco use/misuse, for the past 10 years, up to the date of the response to this request.

   **OBJECTION. Under the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), Defendants cannot provide the confidential medical records of other inmates to Plaintiff.** *See Warren v. Corcoran*, **No. 9:09-CV-1146, 2011 WL 5599587, at \*7 (N.D.N.Y. Oct. 20, 2011) (describing HIPAA as applying to correctional employees); Robinson v. Holmes, No. 21-2602-DDC, 2022 WL 17569954, at \*1 & n.6 (D. Kan. Nov. 1, 2022) (recognizing that an inmate has a significant privacy interest in medical records). Additionally, Plaintiff's request is not reasonably limited in time or scope, is overly broad, and is unduly burdensome. KDOC houses nearly ten thousand inmates. An inmates' medical record is often hundreds or thousands of pages long. So responding to this request would require searching through the medical records of nearly ten thousand inmates, which would require searching through millions of pages of medical records. The tangential relevance to this case of any records responsive to this request does not outweigh the outsized burden it would require to produce such records. Further, revealing sensitive information to an inmate about other inmates may pose a safety and security risk by providing a convicted felon with medical secrets about other inmates that could be potentially used as leverage for blackmail or other nefarious purposes.**

7. Any and all policies, directives, or instructions to KDOC personel concerning the double bunking of prisoner in segregation/restrictive housing and specificly to include prisoners under protective custody and/or prisoners who have requested protective custody.

   **The following policy has been attached as OAG000122-OAG000127: IMPP 20-104A. Other policies regarding protective custody and restrictive housing have been provided in Defendants' response to Plaintiff's Request for Production #3.**

8. Any and all documents/reports of EAI investigation at Lansing Correctional Facility since January 1, 2020 up to the date of the response to this request to: specificly include White's questioning by EAI Officer Tomilson on 10-2-2023 – after White's strangulation and hospitalization for the injuries.

   **OBJECTION. The scope of this request includes confidential information. Specifically, EAI investigatory files are confidential for safety and security reasons.** *See Martinez v. True*, **128 F. App'x 714, 716 (10th Cir. 2005) (affirming**

3

**judgment based on an in-camera review of "confidential prison materials").**

**Without waiving any objection, supervised listening will be arranged for Plaintiff to listen to the audio recording of his interview with EAI Tomilson.**

9. Any and all medical records, x-rays, injury photo's taken at the KII Hospital and reports made by the; (a) LCF Medical Clinic, Lansing Correctional Facility; (b) Leavenworth County EMS, 500 Eisenhower Rd., #100, Leavenworth, Kansas 66048; and (c) The University of Kansas Hospital, University of Kansas Health System; Attention: Medical Records Custodian, 4000 Cambridge St.; MS9345, Kansas City, KS 66160; and (d) Kansas Department of Corrections, Lansing Correctional Facility; regarding:

   On 7-12-2023, the Plaintiff/White was transported by ambulance from the (LCF) Lansing Correctional Facility – Medical Clinic (after being x-rayed for physical injuries), to the KU Hospital, for the treatment of injuries due to strangulation, by prisoner Jeremey Garza. At the KU Hospital, photos were taken of the injuries to White's throat, neck, treated and monitored for any additional swelling.

   **OBJECTION. Defendants and KDOC do not have possession of all of Plaintiff's medical records from the specified locations; however, supervised viewing will be arranged for Plaintiff to view his medical records in KDOC's possession.**

10. Any and all names of all attending KDOC staff/officers and medical personnel as well as all attending ambulance and KU Hospital attending medical staff and physicians, who provided care, to the Plaintiff, because of and after the 7-12-2023 strangulation.

    **OBJECTION. No such document exists. Defendants are not required to create for their response documents that do not currently exist. This request was submitted as a request for documents under Federal Rule of Civil Procedure 34, not as an interrogatory under Federal Rule of Civil Procedure 33. Further, counting subparts, White has already reached the limit defined in the scheduling order for interrogatories, so Defendants are not required to respond to additional interrogatories.** *See* **Doc. 66 at 4.**

    **Without waiving any objection, as described in Defendants' response to Request for Production #9, supervised viewing will be arranged for Plaintiff's medical records in KDOC's possession. So Plaintiff will be able to examine any relevant medical records in KDOC's possession.** *See also* **Fed. R. Civ. P. 33(d).**

11. Any all records/ reports, investigations, to include all disciplinary and/or criminal charges made or filed against the attacker, Jeremey Garza, to include the Plaintiff's request to press charges; (a) made in connection to the strangulation of the Plaintiff

4

on 7-12-2023; (b) to include the reason why Jeremey Garza was being held in segregation, in the same cell as the Plaintiff; (c) To include any other previous allegations or reports; investigations of other acts of drug/tobacco user/dealer and strangulation by Jeremey Garza, and/or violent acts by Mr. Garza.

**OBJECTION. The scope of this request includes confidential information.** *See Martinez v. True*, **128 F. App'x at 716. EAI investigatory files are confidential for safety and security reasons. The classification status of other inmates in restrictive housing is confidential for safety and security reasons. (Some of them are in protective custody, for instance, which is confidential.) Criminal charges and convictions of other inmates are also kept confidential within the prison for safety and security reasons. (Some types of criminal charges or convictions may lead to violence against that inmate if discovered by other inmates. So criminal charges and convictions are kept confidential within the prison.) Grievances of other inmates and disciplinary reports against other inmates are also kept confidential within the prison for safety and security reasons.**

**Without waiving any objection, KDOC does not have any written documentation of Plaintiff's request to press charges; however, it appears that Plaintiff made an oral request to press charges. Plaintiff appears to have made that oral request in the EAI interview described in the response to Request for Production #8. As discussed in that response, supervised listening will be arranged for Plaintiff to listen to an audio recording of that interview. The Defendants and KDOC do not have any documentation regarding the reasons for cellmate assignments in general, including in this particular instance.**

12. The plaintiffs complete medical and mental health records in White's KDOC medical file, since the date of White's incarceration, up to the date of your response to this request.

    **As stated in Defendants' response to Request for Production #9, supervised viewing will be arranged for Plaintiff's medical records in KDOC's possession.**

13. Any and all policies, directives, or instructions to KDOC personel concerning the necessity or when required to call: (a) medical for medical care to an injured prisoner; (b) making a trouble call; after the attack and violent interaction of prisoners in segregation/restrictive housing and in general population (if there is a difference).

    **OBJECTION. The scope of this request includes confidential information. Specifically, IMPP 12-122D (Departmental Communication System) is "staff read only" for safety and security reasons and cannot be provided.** *See* **Ct.'s Order,** *Dudley*, **No. 22-3188-JWL (Doc. 30);** *see also Leek*, **2015 WL 7434671, at \*3.**

5

**Without waiving any objection, the following non-confidential policies are attached as OAG000092-OAG000112 and OAG000157-OAG000158: IMPP 16-107D, 16-108D, and LCF GO 13-102. Other, non-confidential policies regarding restrictive housing have been provided in Defendants' response to Plaintiff's Request for Production #3.**

6

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Matthew L. Shoger*
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
matt.shoger@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOBBY BRUCE WHITE, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>ANDREW PARKS, *et al.*, )<br>)<br>Defendants. )<br>_____ ) | Case No. 24-3023-DDC-RES |

### DEFENDANTS' RESPONSES TO PLAINTIFF'S REQUEST FOR ADMISSIONS

Under Federal Rule of Civil Procedure 36, Defendants Andrew Parks, Bruce Chapman, and Evan Meredith ("Defendants") provide the following responses:

### Section I

1. As stated in Grievance No: 2023056; dated 11-3-2022; the Conclusions Made by Secretary of Corrections – Darcie Holthaus (Designee) states: "… take the time to discuss your concerns with the program leads when you attend the new sessions; discuss what you are hoping to get out of the program…" This then implies, as the Unit Team response by Ms. Potter UTM, dated 10-6-2022, also clearly states: "You were not removed from BIBR …"

    **Admitted. But to avoid any ambiguity, Defendants clarify that Darcie Holthaus was the Secretary of Corrections' designee, not the Secretary of Corrections.**

2. The plaintiff/White was a vested member and program participant of the BIBR/KDOC inmate program since May of 2022, having successfully completing his 1st quarter of the program and was half way through his 2nd quarter, when he was denied access to the program (group participation) by Mr. Gary Spillman, and was removed officially from the program and Pod B5 on March 2023.

    **Neither admitted nor denied. Defendants made reasonable inquiry under Rule 36 to the director of BIBR but have not yet received a response, so – based on the information Defendants know or can readily obtain – Defendants lack sufficient knowledge or information at this time to admit or deny most of this request for admission. (Defendants will supplement this response if they later obtain sufficient information to admit or deny.)**

    **However, Defendants have sufficient knowledge to and do admit that Plaintiff**

    **was in the BIBR program starting in May 2022.**

3. White cited on 10-22-2022, Grievance #2023056, Appeal to Secretary of Corrections, page 2; (1st para.); "… This punishment and group program denial is nothing other than religious discrimination of doctrine belief by Gary Spillman, forcing his own personal opinion and condoning group discussion promoting legalization of drug use and manufacturing during the drug addiction group class…" "…(d)This is a security issue as drug use is rampant here at LCF…"; (5th para) "… and they have the right to proselytizing their religious faith and belief on White by discriminating against him, by the denial to participation to group sessions and its program privileges and benefits, by not seriously investigating and determining the BIBR as a "security threat group."

    **Denied. Plaintiff's appeal to the Secretary of Corrections was not submitted on October 22, 2022. Further, Defendants do not interpret this request for admission to be about the substance of the quotes, but to the extent that Defendants are being requested to admit the substance of the quotes, the substance of the quotes are denied.**

4. On 11-2-2023 and 11-3-2023, White documented by Form 9's (informal resolution attempt) to Unit Team, included with grievance #AA2023056 on Appeal to Secretary of Correction (Courts Exhibit C (pages 1 and 2)); "On 11-2-2022, I had a meeting with Mr. CJ Hughes, Mr. Dave Johnson and Mr. Gary Spillman regarding my BIBR membership Rule 3.5 Appeal and recently sent grievance appeal to Secretary of Corrections, at the end of this meeting Mr. Hughes state he was going to see me in court and have me removed from pod B5…"

    **Denied. While the quoted language is accurate, the year was 2022. Further, the quote was only in the November 2, 2022, Form 9, which was not attached in the appeal to the Secretary. The November 3, 2022, Form 9 was also not attached in the appeal to the Secretary. Lastly, Defendants do not interpret this request for admission to be about the substance of the quotes, but to the extent that Defendants are being requested to admit the substance of the quotes, the substance of the quotes are denied.**

5. Mr. Gary Spillman has a criminal conviction for the manufacturing of methamphetamine, which can be confirmed through; State v. Spillman 2005 Kan. Lexis 5391, 280 Kan. 990, District Case No: 02CR317BR; State v. Spillman 110 P.3d 447, 2005 Kan. App. Lexis 405 (Kan. Ct. App. 2005)

    **Denied. The "State v. Spillman 2005 Kan. Lexis 5391, 280 Kan. 990, District Case No. 02CR317BR" Kansas Reports and Lexis citations are incorrect and are thus denied. Admitted that the cited Kansas Court of Appeals case discussed a Gary Lee Spillman's past conviction for manufacturing methamphetamine.**

## Section II

1. On 3-28-2023, Administrative Restrictive Housing Report Number 01-23-1875, White was moved from cell B5-103 to Restrictive cell A2-206. citing as Facts: "Inmate White #76983 is being placed in restrictive housing for refusing to move to B8. Inmate previously tried going PC from staff…"

   **Admitted.**

2. Pursuant to: "KAR 44-15-101a(f) A procedure shall be established by the warden for investigating the allegations and establishing the facts of each grievance. An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance."

   **Admitted.**

3. Pursuant to "KAR 44-15-101a(e) The remedies available to the inmate may include action by the warden of the facility to correct the problem or action by the secretary of corrections to cause the problem to be corrected. Relief may include an agreement by facility officials to remedy an objectionable condition within a reasonable, specific time, or to change a facility policy or practice."

   **Denied. The word "specific" in the quote should be "specified."**

4. The plaintiff/White, in Doc. 8, of this case No: 24-3023-JWC, filed 5-28-2024, B. Nature of the Case: "White asserts, over 4 years he has complained to LSF/KDOC officials and State Court (LVCO 20CV243/22CV323) about the drug/tobacco smoke problem at LCF. White was assaulted by gangs/unit officer when he complained, received no relief by grievance or state court,, who just dismissed 20CV243 without addressing problem. White asserts he had his BIBR program membership revoked for same reason (needed for parole consideration), without due process, in retaliation, moved to cell with smokers/drug addicts, in retaliation for submitting grievance and court action. White protested his health/safety was in danger, requesting Protective Custody, was denied…"

   **Denied. Inaccurate quote, "officer" should be "officers." It is admitted that White wrote this quote in this specified document. Defendants do not interpret this request for admission to be about the substance of the quote, but to the extent that Defendants are being requested to admit the substance of the quote, the substance of the quote is denied.**

5. In White's first habeas corpus, legal action, in the States District Court, for these issues of this case, which was Appealed to the Appellate Court of Kansas Case No: 128298, a mandate was filed on 8-1-2025 by Chief Judge Sarah E. Warner. (Note: White has not been served a copy of mandate)

3

**Denied. The referenced case is not Plaintiff's first habeas corpus action in Kansas courts. The referenced legal action did not involve the same issues as the present matter. Specifically, it did not involve Counts II or III or Defendants Parks, Chapman, or Meredith. The referenced mandate was not filed by Chief Judge Sarah E. Warner. After a reasonable inquiry, the information known or that could be readily obtained is insufficient to enable Defendants to admit or deny Plaintiff's last sentence.**

6. On 6-5-2023 White was moved from Restrictive housing cell A1-117 to cell A1-119.

    **Admitted.**

7. Cell A-119 on 6-5-2023 also held prisoner Joshua Week.

    **Denied. But correcting the cell number to A1-119, it is admitted. (But "Week" should be spelled "Weeks.")**

8. Joshua Weeks had a criminal drug conviction.

    **Admitted.**

9. Joshua Weeks was a BIBR program member and was a participant/member and same group 65, as did White.

    **Neither admitted nor denied. Defendants made reasonable inquiry under Rule 36 to the director of BIBR but have not yet received a response, so – based on the information Defendants know or can readily obtain – Defendants lack sufficient knowledge or information at this time to admit or deny this request for admission. (Defendants will supplement this response if they later obtain sufficient information to admit or deny this request for admission.)**

10. On 6-9-2023 the Plaintiff/White personally confronted Mr. Parks UTM., that he was putting White's life in danger.

    **Denied.**

11. The interaction with Mr. Parks UTM was documented in an "Emergency" grievance, submitted 6-15-2023, direct to LCF Warden Geither and Ms. Chmidling, civil rights manager pursuant to KAR 44-15-106 Emergency grievance procedure.

    **Denied.**

12. This grievance was also sent to the Leavenworth County District Court for Case No: LVCO22CV323/PN 24CV009/Appellate Court Case No: 128298) filed 6-22-2023, as Correspondence Emergency Grievance (Court Exhibit Copy): with legal service to S.O.C. Jeff Zmuda; LCF Warden Geither, and Ms. Chmidling – LCF Civil Rights

4

Manager. White also sent a copy to KAKE-TV, Wichita, KS. (by certified mail) for my own personal protection and for the record.

**Neither admitted nor denied. Defendants have no way to verify what Plaintiff mailed out. So based on the information Defendants know or can readily obtain after all reasonable inquiry, Defendants lack sufficient knowledge or information to admit or deny this request for admission.**

13. In the body of this "Emergency" grievance; (on page 1) White states: "But, my most important and dangerous issue is that the A1 Unit Team; Mr. Parks UTM, Ms. Hall UTS, and Mr. Meredith CC Keep rotating drug and tobacco users, drug addicts and dealers, who I've requested Protection From, into my cell. I recently on 6-9-2023, had to raise a fuss, because I was threatened by one individual, they did put in the cell with me…"

**Admitted. The quoted text is in the referenced grievance. Defendants do not interpret this request for admission to be about the substance of the quote, but to the extent that Defendants are being requested to admit the substance of the quote, the substance of the quote is denied.**

## Section III

1. On 7-12-2023, the plaintiff/White was strangled by Jeremey Garza, who had been placed in the same cell, with White, cell A1-119.

   **Denied.**

2. Jeremey Garza is a convicted drug record inmate.

   **Admitted. But "Jeremey Garza" should be spelled "Jeremy Garza."**

3. Jeremey Garza was a BIBR program participant/member.

   **Neither admitted nor denied. Defendants made reasonable inquiry under Rule 36 to the director of BIBR but have not yet received a response, so – based on the information Defendants know or can readily obtain – Defendants lack sufficient knowledge or information at this time to admit or deny this request for admission. (Defendants will supplement this response if they later obtain sufficient information to admit or deny this request for admission.)**

4. Jeremey Garza had been moved to segregation/restrictive housing to cell A1-119 From BIBR Pod B5.

   **Neither admitted nor denied. Defendants made reasonable inquiry under Rule 36 to the director of BIBR but have not yet received a response, so – based on the**

5

**information Defendants know or can readily obtain – Defendants lack sufficient knowledge or information at this time to admit or deny part of this request for admission. (Defendants will supplement this response if they later obtain sufficient information to admit or deny.)**

**However, Defendants have sufficient knowledge to and do admit all of this sentence except the word "BIBR" at this time. (But "Jeremey Garza" should be spelled "Jeremy Garza.")**

5. The plaintiff/White was made to sign a PC Waiver, before being allowed to be separated From Jeremey Garza, by defendants Chapman and Meredith.

    **Denied.**

6. No trouble call, by the segregation officers was ever made after the strangulation of White on 7-12-2023.

    **Denied.**

7. Medical was not called, to give medical care to White for the injuries to Whites throat/neck, from strangulation, by any segregation/restrictive housing personel/officers on 7-12-2023.

    **Denied.**

**OBJECTION TO THE REMAINING REQUESTS FOR ADMISSION. The Scheduling Order limited Plaintiff to 25 requests for admission. (Doc. 66 at 4.) Plaintiff did not receive leave of court to submit additional requests for admission, so requests for admission III(8)-V(5) are invalid and improper. Defendants are not required to respond to them.**

    Respectfully submitted,

    KRIS W. KOBACH
    ATTORNEY GENERAL OF KANSAS

    */s/ Matthew L. Shoger*
    Matthew L. Shoger, KS No. 28151
    Assistant Attorney General
    Office of the Attorney General
    120 SW 10th Avenue, 2nd Floor
    Topeka, Kansas 66612-1597
    matt.shoger@ag.ks.gov
    785-296-2215
    Fax: (785) 291-3767
    *Attorney for Defendants*