

**STATE OF KANSAS**
**OFFICE OF THE ATTORNEY GENERAL**

**KRIS W. KOBACH**
ATTORNEY GENERAL

MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597
(785) 296-2215 • FAX (785) 296-6296
WWW.AG.KS.GOV

|  | EXHIBIT B |
|--|--|

March 4, 2026

Bobby Bruce White #2000046191
Larned State Correctional Facility
1318 KS Highway 264
Larned, KS 67550

**Re:   Phone Conference on March 3, 2026, for Case No. 24-3023-DDC-RES**

Dear Mr. Bobby Bruce White,

    This letter is to memorialize the phone conversation between you, Scott Nading, and myself on Tuesday, March 3rd, regarding a possible joint protective order. The call lasted from 1:30 PM to about 2:50 PM. I began the call by asking if you had received the two documents we sent: our latest proposed protective order and the court's recent order numbered as Document 123. You confirmed that you had received the proposed protective order and the court order. I clarified that the court order should say Document 123 on it and the proposed protective order should mention on the second line KDOC is an interested party. You confirmed that you had the correct documents.

    I explained that the purpose of the protective order was to outline the supervised viewing process. I clarified that the latest draft of the protective order reduced the types of confidential information covered by the proposed order to just the documents for which supervised viewing has been provided (your KDOC medical records and the EAI interview). I explained that we had drafted the previous version to cover any possible future disclosures, but the court indicated it disliked that in its order rejecting that version, so we cut all of that content out, reducing the

protective order down to cover only supervised viewing. I also pointed out where the supervised viewing process was outlined in the order. You indicated that you were reading that section, and I said I would give you time to read it. You confirmed that you had read it.

With regard to KDOC being mentioned in the order as an interested party, I explained that we included KDOC because KDOC is the party actually facilitating the supervised viewing. You said that you were upset with KDOC for withholding documents from you. I asked what you meant, and you said that KDOC would not provide you with Jeremy Garza's KASPER report or with the reasons that Garza was in administrative segregation.

You also objected that you had not received your medical records prior to 2022. I asked whether you wanted me to provide those records to you. You said no. You said you wanted to proceed to trial based on what the parties' currently have. You also said, "I already looked at all my medical information" that had been made available through supervised viewing.

You said that the parties have no duty to meet and confer because discovery is over, and you asked why we were talking about the proposed protective order. I explained that Mr. Nading and I have a duty to confer with you about the proposed protective order before filing a motion regarding it. I pointed to the court's order in Doc. 123, where the court explained that "a motion for a protective order 'must include a certification that the movant has in good faith conferred or attempted to confer with other affected parties in an effort to resolve the dispute without court action.'" (Doc. 123 at 2-3 (quoting Fed. R. Civ. P. 26(c).) I asked if you were refusing to meet and confer regarding the protective order. You said you were refusing to sign it. I explained that the judge signs it, not the parties. I said that, if you agreed to the proposed protective order, it would be proposed as a jointly proposed protective order. But none of the parties would sign it.

As we discussed the proposed protective order (without further objection to the discussion), you objected to the proposed order itself for the following reasons:

1) You objected that the confidential information in the protective order was reduced. You said that documents you were entitled to were removed from the protective order. (I explained that we reduced it down to cover only supervised viewing and only the documents relevant to supervised viewing.)

2) Regarding the proposed protective order, you said "there's nothing in it for me." (I explained that the protective order outlines and clarifies the supervised viewing process both for you and the court.)

3) You asserted that the protective order was the "same as before." (I explained that we reduced it down to cover only supervised viewing.)

4) You said the supervised viewing process provided was "not workable" because the process to reach corrections counselors and unit team members through a Form 9 could take days. You said that you rarely, if ever, see the unit team manager in person. (I pointed out that you stated earlier in the conversation that you had already viewed all of the medical information available to you through supervised viewing as well as the recording of the EAI interview. So I did not understand how the process was not workable.)

5) You said it was "too late" for a protective order because discovery was closed. (I explained that the court had asked us to document the supervised viewing process in a protective order despite discovery being closed.)

6) You said that you were concerned that you would not be able to talk to reporters about the case even after it was finished. (I explained that the protective order only covers your

medical records and the interview recording. I also explained that you remained free to talk about even the EAI interview and your medical records to reporters or others. You would simply not be able to provide the EAI interview recording itself to others. You were present at the EAI interview, and nothing prohibits you from discussing your recollection of that interview, even though the recording may have refreshed your recollection of the interview. And the confidentiality interest in the medical records is yours, so nothing prohibits you from discussing those medical records.)

In addition to discussing the proposed protective order, we also discussed a few other matters. You brought up the recent discovery requests from Defendants Parks, Meredith, and Chapman ("Defendants"). You said you were working on your responses to those requests. You also said it was difficult to do so because your legal papers had been packed up by KDOC staff when you transferred facilities and several pages became either out of order or missing. You said you were still working on sorting through those papers. You discussed some of those papers with us, such as grievance receipts. You discussed the difficulty of documenting the grievance procedure if the unit team does not respond to your grievance or cooperate with your efforts to document the process. I explained that you only need to provide copies of documents and pages that you have, not documents or pages that you do not have.

You mentioned that having to sort through your papers was affecting your ability to respond to Defendants' requests for production and your ability to prepare for motions for summary judgment. I asked if you wanted an extension of time for either, and you said no. I clarified that we would not oppose a reasonable extension of time. I suggested that we could even do a joint motion for an extension of time, which you declined.

You asked if you need to provide copies of documents that Defendants had sent to you as part of this litigation and copies of court filings from this case. We said no. We also said that if you wanted to be especially clear you could put in your response something like, "By agreement of the parties, copies of documents provided to Plaintiff by Defendants or the U.S. District Court for the District of Kansas as part of this litigation are not being produced."

You also said that you believed you should not have to respond to the discovery requests because you received them after the close of discovery, without a certificate of service, and with a postmark dated after the close of discovery. I explained that Mr. Nading placed those discovery requests in a U.S. Postal Service (USPS) mail drop box in Topeka on February 13th, that the postmark from "Kansas City" must have been from the USPS sorting facility in Kansas City (not the post office in Topeka where Mr. Nading put the requests into the mail), and that the certificate of service, although mistakenly left out of the original mailing, was mailed to you a few days later. You confirmed that you had indeed received that certificate of service on February 25th. You said you planned to bring up this issue with the court.

I brought up your KU medical records and asked if you would be willing to sign a waiver so that I could obtain them and provide them to you through supervised viewing. You declined. You suggested that you might have agreed had you been asked several months earlier during discovery. To provide context, I quoted a recent court order that said, "the Court encourages the moving Defendants to contact Plaintiff concerning a stipulation to this discovery occurring beyond the discovery deadline and to attempt to obtain Plaintiff's authorization for the release of Plaintiff's medical records—particularly given Plaintiff's statements during the January 27, 2026 discovery conference where he also explained that he also wants to obtain these records." (Doc. 119 at 5.) You again declined.

I asked if you had anything else that you would like to discuss with us. You said no. The call ended around 2:50 PM.

Sincerely,

*Matthew Shoger*

Matthew L. Shoger

Assistant Attorney General