EXHIBIT
C

To: Kris W. Kobach - Kansas Attorney General          12-3-2025
℅: Matthew L. Stoger and Scott G. Nading
Office of the Kansas Attorney General
120 S.W. 10th Ave., 2nd Floor
Topeka, Kansas 66612-159

Regarding: U.S. District Court Case No. 24-3023-DDC-RES
            Discovery - Request pursuant to D-Kan. Rule 26.3(a)
Dear Attorneys: Mr. Stoger and Mr. Nading.

I. Plaintiff's Second Request For Production of Documents.
    The plaintiff's first request was made through Doc. 31, filed 12-16-2024, through Doc 52 filed 3-3-2025, and Doc 73 filed 10-27-2025
    Pursuant to Rule 34, Fed. R. Civ. P., the plaintiff requests that the defendants produce the documents listed within 30 days by providing the plaintiff with copies and answers.

1.) Any and all grievances, complaints, EAI investigation reports, correspondence / letters direct to the Lansing Correctional Facility Warden, and Kansas Department of Corrections, Secretary of Corrections, Jeff Zmuda, concerning;
(a) mistreatment of inmates by KDOC personel/officers, and specificly, relating to defendants Andrew Parks, Evan Meredith and Bruce Chapman;
(b.) failure to protect/requests for protection, from prisoners/staff, from gang activity and drug and tobacco user/dealers, and
(c) mistreatment/torture in Lansing segregation/restrictive housing by KDOC staff personel, specificly and including by the defendants, Parks, Meredith and Chapman, and any memoranda, investigation, files or other documents created in response to the complaints, since January 1, 2020 to date of the response to this request.

2.) Any and all policies, directives, or instructions to KDOC personel concerning controling and preventing gangs, drug users/dealers activity in Kansas prisons.

3.) Any and all policies, directives, or instructions to KDOC personel concerning the humane treatment of prisoners, held in segregation/restrictive housing for protective custody, administrative and disciplinary hold.

1.

4.) Any and all policies, directives, or instructions to KDOC personel concerning the need to provide; protection to prisoners, from staff abuse and violence by other prisoners, to also specificly as it applies to the prevention of elder abuse.

5.) Any and all policies, directives, or instructions to KDOC personel concerning the requirement for prisoners to sign a (PC) Protective Custody Waiver before they could/would be released from segregation/restrictive housing. Also, the Plaintiff/White requests a copy of the PC Waiver, the Plaintiff signed on 7-12-2023 at Lansing Correctional Facility.

6.) All sick calls and medical intervention reports, made at all KDOC prison facilities, because of prisoner drug and tobacco use/misuse, to include all related deaths and hospitalizations of prisoners because of drug and tobacco use/misuse, for the past 10 years, up to the date of the response to this request.

7.) Any and all policies, directives, or instructions to KDOC personel concerning the double bunking of prisoner in segregation/restrictive housing and specificly to include prisoners under protective custody and/or prisoners who have requested protective custody.

8.) Any and all documents/reports of EAI investigation at Lansing Correctional Facility since January 1, 2020 up to the date of the response to this request to; specificly include White's questioning by EAI Officer Tomilson on 10-2-2023 - after White's strangulation and hospitalization for the injuries.

9.) Any and all medical records, x-rays, injury photo's taken at the KU Hospital and reports made by the; (a) LCF Medical Clinic, Lansing Correctional Facility; (b) Leavenworth County EMS, 500 Eisen hower Rd., #100, Leavenworth, Kansas 66048; and (c) The University of Kansas Hospital, University of Kansas Health System; Attention: Medical Records Custodian, 4000 Cambridge St.; MS 9345, Kansas City, Ks. 66160; and (d) Kansas Department of Corrections, Lansing Correctional Facility; regarding -
On 7-12-2023, the Plaintiff/White was transported by ambulance from the (LCF) Lansing Correctional Facility - Medical Clinic (after being x-rayed

2

for physical injuries), to the KU Hospital, for the treatment of injures due to strangulation, by prisoner Jeremey Garza. At the KU Hospital, photos were taken of the injuries to White's throat, neck, treated and monitored for any additional swelling.

10.) Any and all names of all attending KDOC staff/officers and medical personel as well as all attending ambulance and KU Hospital attending medical staff and physicians, who provided care, to the Plaintiff, because of and after the 7-12-2023 strangulation.

11.) Any, all records/ reports, investigations, to include all disciplinary and/or criminal charges made or filed against (the attacker), Jeremey Garza, to include the Plaintiff's request to press charges; (a) made in connection to the strangulation of the Plaintiff on 7-12-2023; (b) to include the reason why Jeremey Garza was being held in segregation, and placed in the same cell as the Plaintiff; (c) to include any other previous allegations or reports, investigations of other acts of drug/tobacco use/dealer and strangulation (choke outs) done by Jeremey Garza, and/any other violent acts by Mr. Garza.

12.) The plaintiffs complete medical and mental health records in White's KDOC/Kasper etc. medical file, since the date of White's incarceration, up to the date of your response to this request.

13.) Any and all policies, directives, or instructions to KDOC personel concerning the necessity or when required to call for: (a) medical for medical care to an injuried prisoner; (b) making a trouble call, (back-up by outside unit officers), after the attack and violent interaction of prisoners in segregation/ restrictive housing and/or in general population (if there is a difference).

14.) The plaintiff requests a copy of the legal mail delivery record, from the Larned State Correctional Facility, showing proof of delivery to White, through the signed and dated receipt, of the U.S. District Court Case No: 5:24-CV-3023-DDC-RES, legal service of Courts Document #66 "Scheduling Order", on or around, after 09/16/2025 [White should have received for legal service by 9/22/2025]. [White received Doc's 64-65 from the Court on 9/23/2025, but "No" Document 66 "Scheduling Order".]

Dated: 12-3-2025                    Bobby White #2000046191
                    3.                    Pro Se.

To: Kris W. Kobach - Kansas Attorney General        12-8-2025
Yo: Matthew L. Stoger and Scott G. Nading

Dear Attorneys: Mr. Stoger and Mr. Nading
    U.S. District Court Case No: 24-3023-DDC-RES.
II Plaintiff's Interrogatories and Request For Production of Documents.

    Pursuant to Rules 33 and 34, Fed. R. Civ. P., the plaintiff submits the
following interrogatories and requests for documents to the defendants. You
are directed to answer each of the interrogatories in writing under oath,
and provide the plaintiff with copies of each of the requested documents.

1.) State the duties of the defendants, (a) Andrew Parks; (b) Evan Meredith;
and (c) Bruce Chapman. If the duties are set forth in any job descrip-
tion or other document, produce the documents.

2.) State the specific duties of the defendants, Parks, Meredith and Chapman
and as it may apply to all other KDOC employee's/staff (to include Wardens
and Deputy Wardens); in-so-far as it pertains to: (a) providing protection
to prisoners, and (b) medical care to prisoners, and (c) for receiving
medical care at the prison facility, and out of the prison facility specifically
after an incident of violence against a prisoner, in segregation/restrictive
housing and general population. If these duties are set forth in any job
description or other document; produce the documents.

3.) State the names, titles, and duties of all Lansing Correctional Facility
employees/officers/staff, who have the responsibility for ensuring that
inmates/prisoners request for medical attention are responded to. If
these duties are set forth in any job description or other documents,
produce the documents.

4.) State the names, titles and duties of all employees/officers/staff
members at Lansing Correctional Facility (LCF) who have responsibility for

                            1.

responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description, policy, directive, or other document, produce the document.

5.) State the procedure in effect during January 2020, through the date of your response, for responding to; investigating; and deciding inmate grievances; to include emergency grievances, and need for protective custody. If the procedure for handling grievances, are based on: (a) medical complaints; (b) protective custody needs, and (c) complaints about staff; and (d) drug and tobacco complaints are different from the procedure for handling other kinds of grievances; state all the procedures. If these procedures are set forth in any directive, manual, rule, law or other documents, produce the documents.

6.) State the rules; laws, policy and directive regarding, what constitues an Emergency as it applies to: (a) the protection of prisoners. (health / safety); (b) submission of grievances; and (c) providing medical care to prisoners. If these duties/requirements are set forth in any statute, rule, directive or other document, produce the documents.

7.) State the method of enforcement of #6 above and or the consequences to any KDOC personell and for who's duty it is to investigate 'non-compliance of individuals, who violate the rules, laws, policies and/or directive regarding the: (a) failure to protect prisoners; (b) grievance steps of due process (to include time requirements); and (c) failure to provide emergency medical care. If these duties/requirements are set forth in any statute, rule, policy or directive or other document, produce the documents.

8.) State the procedure and by who?, (a) regarding a prisoners right to know specificly, why he is being held in segregation/restrictive housing and the allowable maximum time of holds for: (b) protective custody, (c) administrative segregation and, (d) disciplinary times; regarding (e) prisoners hold times personal reviews/evaluations; and give the difference of the conditions of incarceration; between protective custody hold, disciplinary and administrative segregation holds; and (F) who? (identify responsible personell) who's duty it is to see that the prisoner is properly and humanely treated. If the responsible personell duties are set forth in any job description or other

2.

document, produce the documents, and; IF these procedures and conditions of restrictive housing are set forth in any directive, manual, rule, law or other documents, produce the documents.

9.) State the names of the KDOC/State of Kansas employees/personell who's duty it is to assure a prisoners rights to programs and services for a comprehensive prison record toward rehabilitation required by K.S.A. 75-5210 and the procedure to assure compliance. If those duty are set forth in any job description or other document, produce the document. If the procedures are set forth in any directive, manual, rule or law or other document, produce the documents.

10.) State the names of the KDOC/State of Kansas employees/personell, and the procedure; who's duty and responsibility it is, to assure that the grievance resolution, given by the Unit Team, Warden and Secretary of Corrections; is carried out, as to it's given relief. (Specificly see: Grievance resolution of #AA 2023056). If the duty and procedure of a grievance resolution compliance is set forth in any directive, manual, statute or rule, or other document, produce the document.

11.) The Plaintiff/White respectfully requests the State of Kansas, to provide the Plaintiff, a copy of the "mandate"; from the State Appellate Court companion to this habeas corpus - In the Court of Appeals of the State of Kansas, Case No: 128,298, Filed on August 1, 2025; by Chief Judge Sarah E. Warner; and give the Plaintiff his Constitutional right, per due process, to who or what court or entity currently has jurisdiction of that habeas corpus civil action.

12. Per the Unit Team response dated; 7-10-2025 by Amy L. Simmons, H.S.A. (for grievance #1A003455), who cited on: 3/28/2023 Resident BH classification was updated at Lansing to BH treatment level 4, requiring special needs monitoring due to Bi-polar diagnosis." The plaintiff requests (a) the identity and title of the individual/KDOC personel, who? updated/changed Whites' mental health classification and the justification/reason for the change done on 3/28/2023; and (b) the identity and medical/psthiatric title of the individual/Doctor, who?, examined and diagnosed White on 3/28/2023, and the justification/reason for the Bi-Polar diagnosis for

3.

the change of mental health classification, change done on 3-28-2023, at
Lansing Correctional Facility.

13.) Who's job is it? Specificly to enforce Kansas Laws, such as K.S.A.
19-1919, K.S.A. 75-5210, K.S.A. 21-5417, K.S.A. 21-5416, and K.S.A.
22-3504 relating to assurance of the humane treatment and protection
of state prisoners and from elder abuse.

Dated = 12-3-2025,          Bobby White #2000046191
                                 Pro Se.

4.

To: Kris W. Kobach - Kansas Attorney General                12-3-2025
%: Matthew L. Stoger and Scott G. Nading

Dear Attorneys: Mr. Stoger and Mr. Nading
    U.S. District Court Case No: 24-3023-DDC-RES - Discovery

III. Plaintiff's Request For Admissions

    Pursuant to Rule 36 Fed. R. Civ. P., plaintiff requests the defendants
(a) Andrew Parks; (b) Evan Meredith, and (c) Bruce Chapman, to make
the following admissions within 30 days after service of this request

I. 1.) On 3-28-2023 Administrative Restrictive Housing Report Number 01-23-1875
White was moved from general population cell B5-103 to Restrictive cell A2-
206, citing as Facts: "Inmate White #76983 is being placed in restrictive
housing for refusing to move to 138. Inmate previously tried going
PC from staff..."

2.) On 6-5-2023 White was moved from Restrictive housing cell A1-117 to
cell A1-119.
3.) Cell A1-119 on 6-5-2023 also held prisoner Joshua Weeks.
4.) Joshua Weeks had a criminal drug conviction.
5.) Joshua Weeks was a BIBR program member and was a participant/
member and in the group 65, as previously did White.

6.) On 6-9-2023 the Plaintiff/White personally confronted Mr. Parks.
UTM, that he was putting White's life in danger.
7.) The interaction with Mr. Parks UTM was documented in an "Emergency"
grievance, submitted 6-15-2023, direct to LCF Warden Geither and
Ms. Chmidling, civil rights manager pursuant to KAR 44-15-106
Emergency grievance procedure.
8.) This grievance was also sent to the Leavenworth County District
Court for Case No: LVCO22CV323 / PN 24 CV 009 / Appellate Court Case
No: 128 298, filed 6-22-2023, as Correspondence Emergency Grievance
(court Exhibit Copy): with legal service to S.O.C. Jeff Zmuda, LCF
Warden Geither, and Ms. Chmidling -LCF Civil Rights Manager. White
also sent a copy to KAKE TV, Wichita, Ks. (by certified mail) for his

1.

own personal protection and for the record.

9.) In the body of this "Emergency" grievance; (on page 1) White states; "But my most important and dangerous issue is that the A1 Unit Team; Mr. Parks UTM, Ms. Hall UTS, and Mr. Meredith CC keeps rotating drug and tobacco users, drug addicts and dealers, who I've requested Protection from, into my cell. I recently on 6-9-2023, had to raise a fuss, because I was threatened by one individual, they did put in the cell with me..."

16.) On 7-12-2023, (less than a month later), the plaintiff/White was strangled by Jeremey Garza, who had been placed in the same cell, with White, cell A1-119.

11.) Jeremey Garza is a convicted drug record inmate.

12.) Jeremey Garza was a BIBR program participant/member.

13.) Jeremey Garza had been moved to segregation/restrictive housing to cell A1-119 from BIBR Pod B5.

14.) The plaintiff/White was made to sign a PC Waiver, before being allowed to be separated from Jeremey Garza; by defendants Chapman and Meredith.

15.) No trouble call, by any segregation officer was ever made, after the strangulation of White on 7-12-2023.

16.) Medical was never called, to give medical care, and examination of White for the injuries to White's throat/neck, from strangulation, by any segregation/restrictive housing personel/officers on 7-12-2023, directly after the strangulation.

17.) The plaintiff/White was made to wait in a holding cell, after the strangulation, for Mr. Parks UTM to process the paperwork, to have White moved back to general population, Thus causing White to have to also make a request to also, B-cell house (general population) unit officer, to be allowed to go to medical, for the strangulation injuries.

18.) Upon the plaintiff/White's return back to LCF, from the KU Hospital, White was placed "Not" back in general population in B-cell house, but once again placed back under the same housing conditions, in the same cell A1-119, where he had previously been strangled and held under the same KDOC personel, Mr. Parks UTM and Bruce Chapman CO.

19) Mr. Parks UTM continued to attempt to put other prisoners with drug and weapon possession charges in the same cell with White.

20) The plaintiff/White was still being denied the protective custody conditions of incarceration as required by IMAP 20-108D by the seg regation/restrictive housing Unit Team Manager Mr. Andrew Parks.

21) On 9-26-2023, Mr. Parks UTM, through the Unit Officers had the plaintiff/White written-up and issued a Disciplinary Report charge; Case No: 1138, For refusing to accept another prisoner to be placed in the same cell with White.

22) The plaintiff/White was ultimately found "Not Guilty" of that charge by the Hearing Officer Snodgrass.

23) On 10-2-2023, the plaintiff/White received a recorded meeting with EAI Officer Tomilson, about my need for protective custody; (which I had been assured would occur, upon my return from the KU Hospital, after I was strangled) and the abuses by the LCF personel/officers etc. at Lansing Correctional Facility.

24) On 10-23-2023 the plaintiff/White was transferred to (LSCF) Larned State Correctional Facility.

25) Prior to the strangulation of the Plaintiff/White on 7-12-2023; On Jan. 6, 2023, also at Lansing Correctional Facility, 62 year old prisoner; Gary Lee Raburn, was killed in a prison cell by his cell mate, Ladarious Roc quez Barkers, by and through asphyxiation due to strangulation.

White requests these Facts be confirmed (#1 through #25) by defendants (a) Andrew Parks; (b) Evan Meredith, and (c) Bruce Chapman.

II.    Further the plaintiff/White requests the admission and state-ment as the Facts, by the KDOC/Secretary of Corrections Jeff Zmudy, or his Designee the following statements:

1) As stated in Grievance No: 2023056, dated 11-3-2022, as the Conclusions made by the Secretary of Corrections - Darcie Holthaus (Designee) states: "... take the time to discuss your concerns with the program leads when you attend the new sessions; discuss what you are hoping to get out

of the program . . . " This then implies, as the Unit Team response by Ms.
Potter UTM, dated 10-6-2022, also clearly states: " You were not
removed from BIBR . . . "

2.) The plaintiff / White was a vested member and program participant of
the BIBR / KDOC inmate program since May of 2012, having no
disciplinary action, while a program participant, and having successfully
completed his 1st quarter of the program, and was halfway through
his 2nd quarter, when he was denied access to the program (group
participation) by Mr. Gary Spillman, BIBR / KDOC program counselor,
and was removed officially from the program and Pod B5 on March
28, 2023.

3.) White cited on 10-22-2022 Grievance #2023056, Appeal to Secretary
of Corrections, page 2; (1st para.) " . . . This punishment and group
program denial is nothing other than religious discrimination of doc-
trine belief by Gary Spillman, forcing his own personal opinion and
condoning group discussions promoting legalization of drug use and
it's manufacturing during the drug addiction group class . . . " ( . . . (d)
This is a security issue as drugs use, is rampant here at LCF . . . "
(5th para.) " . . . and they have the right to proselytizing their religious
faith and belief on White by discriminating against him, by the denial
to participation to group sessions and its program privileges and
benefits, by not seriously investigating and determining the BIBR as a
" security threat group . " "

4.) On 11-2-2023 and 11-3-2023, White documented by Form 9's (informal
resolution attempt) to Unit Team, included with grievance #AA2023056,
on Appeal to Secretary of Corrections (Counts Exhibit C (pages 1 and 2); " On
11-2-2022, I had a meeting with Mr. C.J. Hughes, Mr. Dave Johnson and
Mr. Gary Spillman regarding my BIBR membership Rule 3.5 Appeal and
recently sent grievance appeal to Secretary of Corrections, at the end of
this meeting Mr. Hughes state he was going to see me in court and have
me removed from Pod B5 . . . "

5.) Mr. Gary Spillman BIBR / KDOC group program counselor, has a
prior criminal conviction for the manufacturing of methamphetamine,

4.

which can be confirmed through; State v Spillman, 2005 Kan. Lexis 539[],
280 Kan. 990, District Case No: 02CR3178R; State v Spillman 110 P.3d.
447, 2005 Kan. App. Lexis 405 (Kan. Ct. App. 2005)

6.) Pursuant to: "KAR 44-15-101a (f) A procedure shall be established by the
warden for investigating the allegations and establishing the facts of
each grievance. An inmate or employee who appears to be involved in
the matter shall not participate in any capacity in the resolution of
the grievance."

7.) Pursuant to: "KAR 44-15-101a (e) The remedies available to the inmate
may include action by the warden of the facility to correct the problem
or action by the secretary of corrections to cause the problem to be
corrected. Relief may include an agreement by facility officials to
remedy an objectionable condition within a reasonable, specific time,
or to change a facility policy or practice."

8.) The plaintiff/White in Doc. 8, of this Case No: 24-3023-JWC, filed
5-28-2024, B. Nature of the Case: "White asserts, over 4 years he has
complained to LSF/KDOC officials and State Court (LYCo 10CV243/
22CV323) about the drug/tobacco smoke problem at LCF, White
was assaulted by gangs/unit officers when he complained, received
no relief by grievance or state court, who just dismissed 20CV243,
without addressing problem. White asserts he had his BIBR program
membership revoked for same reason (needed for parole consideration)
without due process, in retaliation, moved to cell with smokers/drug
addicts, in retaliation for submitting grievance and court action, White
protested his health/safety was in danger, requesting Protective Custody,
was denied..."

9.) In White's first habeas corpus, legal action, in the State of Kansas,
State District Court, for these issues of this case, which has since
been Appealed to the Appellate Court of Kansas No: 128298, a mandate
was filed on 8-1-2025 by Chief Judge Sarah E. Warner. But, White
has been denied a copy of the mandate, nor details of its con-
clusions. So, as far as White is aware non of the issues that
White has brought before the Court has been ruled on. Denying
White to Justice without Delay and Due process.

5

10) On 7-12-2023, after White was strangled by Jeremy Garza, the LCF medical clinic, took x-rays of White's throat/neck injuries.

11) The LCF medical clinic staff, had the plaintiff/White transported to the emergency room of the KU Hospital on 7-12-2023.

12.) The plaintiff/White was examined, treated and monitored for any additional throat swelling, by the KU Hospital personal.

13.) The KU Hospital staff took photographs of White's throat/neck strangulation injuries.

14.) Some (unidentified to White) LCF non-medical staff/officer or without any examination of White of a mental health nature, on 3-28-2023 (day White was placed in restrictive housing through Administrative Restrictive Housing Report Number 01-23-1875), without adequate justification, changed the Plaintiff's/White's (mental health classification) to Resident BH classification to BH treatment, level 4, requiring special needs monitoring, and also falsily (diagnosed) recorded White as Bi-Polar at LCF, after White was placed in restrictive housing. Yet no "special needs monitoring" was ever instatuted at (LCF) Lansing Correctional Facility.

15.) After, White was ultimately transferred to (LSCF) Larned State Correctional Facility, the plaintiff continued to be held an additional 95 days in segregation, and still denied Protective Custody conditions of incarceration required by IMPP 20-108A.

16.) The plaintiff/White submitted numerous complaints including a PREA grievance, and regarding further continuing pattern of abuse of LSCF. These LSCF issues have been now brought before the Pawnee County District Court Case No: PN-2025-CV-000031, Filed 10-8-2025, as a continuing pattern of abuse, to be attached and included in the mandate, issued by the Appellate Court of Kansas Case No: 128 298 on 8-1-2025.

17.) Since, the plaintiff/White was finally released from segregation he has not been issued or been charged with any disciplinary charges, now for almost two (2) years.

18.) On, 9-16-2025, the plaintiff/White, now (73) seventy three years of age, was transported to the Regional Hospital in Salina, Kansas, for neurological lower back surgery.

<u>6.</u>

The plaintiff White prays these statements, been addited as facts; by the Defendants, State of Kansas and Kansas Department of Corrections, for the support of justice and judicial economy, for the resolution of this civil rights/habeas corpus action.

Respectfully Submitted; Bobby White #2000046191
Dated 12-3-2025                    Pro Se.

Bobby White #2000046191
Larned State Correctional Facility
1318 KS., Highway 264
Larned, Kansas 67550

## CERTIFICATE OF SERVICE

The undersigned hereby certifies he is the plaintiff in this civil action, and that a true copy of these; (a) I."Plaintiff's Second Request for Production of Documents,"(3 pages); (b) II."Plaintiff's Interagatories and Request for Production of Documents," (4 pages) and (c) III "Plaintiff's Request for Admissions"; (7 pages) "for Discovery pursuant to: D. Kan. Rule 26.3(a) was served via, U.S. mail, 1st Class, postage prepaid, on this 3rd day of December, 2025; to attorneys:

1.) Kris W. Kobach, Kansas Attorney General; C/o Matthew L. Stoger, and Scott G. Nading; Office of the Attorney General, 120 S.W. 10th. Ave., 2nd Floor; Topeka, Kansas 66612-1597

Dated: 12-3-2025        by s/ Bobby White #2000046191
                                    Pro Se,
Bobby White #2000046191
Larned State Correctional Facility
1318 KS., Highway 264
Larned, Kansas 67550

7

Bobby White #2000046191
Larned State Correctional Facility
1318 KS₀, Highway 264
Larned, Kansas 67550



FIRST-CLASS
US POSTAGE (IM) PITNEY BO
ZIP 67550
02 7H          $ 002.1
0006229882    DEC 04 2

Kris W. Kobach-Kansas Attorney General
c/o Matthew L. Stoger and Scott G₀ Nading
Office of the Attorney General
120 S.W. 10th Ave., 2nd Floor
Topeka, Kansas 66612-1597

"Legal Mail"

This correspondence was mailed from an institution operated by Kansas Department of Corrections. It's contents are uncensored.