<div style="border:1px solid">**EXHIBIT**

**E**</div>

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| **BOBBY BRUCE WHITE,**           ) | |
|           ) | |
| **Plaintiff,**       ) | |
|           ) | |
| **v.**           ) | **Case No. 24-3023-DDC-RES** |
|           ) | |
| **ANDREW PARKS,** *et al.,*      ) | |
|           ) | |
| **Defendants.**      ) | |

## DEFENDANTS' SUPPLEMENTAL RESPONSES TO PLAINTIFF'S SECOND REQUEST FOR PRODUCTION OF DOCUMENTS

Under Federal Rule of Civil Procedure 34, Defendants Andrew Parks, Bruce Chapman, and Evan Meredith ("Defendants") provide the following supplemental responses:

1. Any and all grievances, complaints, EAI investigation reports, correspondence/letters direct to the Lansing Correctional Facility Warden; and Kansas Department of Corrections Secretary of Corrections, Jeff Zmuda, concerning:

    (a) mistreatment of inmates by KDOC personel/officers; and specificly relating to defendants Andrew Parks, Eran Meredith and Bruce Chapman; and

    (b) failure to protect/requests for protection, from prisoners/staff, from gang activity, and drug and tobacco user/dealers, and

    (c) mistreatment/torture in Lansing segregation/restrictive housing by KDOC staff/personel, specifically and including by the defendants, Parks, Meredith and Chapman; and any memoranda, investigation, files or other documents created in response to the complaints, since January 1, 2020 to date of the response to this request.

    **OBJECTION. The scope of this request includes confidential information. Other inmates' grievances, complaints, and correspondence/letters are confidential. Investigation reports completed by Enforcement, Apprehensions & Investigations (EAI) are also confidential for safety and security reasons. Additionally, the request is not reasonably limited in time or scope, is overly broad, and is unduly burdensome. KDOC houses nearly ten thousand inmates and receives innumerable handwritten grievances, complaints, and correspondence/letters from inmates alleging mistreatment by KDOC employees. Defendants cannot feasibly search through all of those documents to identify and find the documents**

requested. However, these issues are likely moot due to the following paragraph.[1]

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

2. Any and all policies, directives, or instructions to KDOC personel concerning controling and preventing gangs, drug users/dealers activity in Kansas prisons.

**OBJECTION. The scope of this request includes confidential information. Specifically, Internal Management Policy & Procedure (IMPP) 09-108D (Fentanyl Exposure and Search Kits) and 12-105D (Security Threat Groups Identification and Management) are "staff read only" for safety and security reasons and cannot be provided. *See* Ct.'s Order, *Dudley v. Warren*, No. 22-3188-JWL (D. Kan. Jan. 24, 2023) (Doc. 30) (sealing a security-related prison policy and not allowing the plaintiff to view or possess it); *see also Leek v. Peterson*, 360 P.3d 491 (Table), 2015 WL 7434671, at \*3 (Kan. Ct. App. Nov. 20, 2023) (noting that KDOC does not have a duty to disclose policies pertaining to emergency or security procedures under K.S.A. 75-5256(b)). Lansing Correctional Facility (LCF) General Order (GO) 9-128 (Fentanyl Exposure and Search Kit) is also "staff read only" for safety and security reasons and cannot be provided. However, this confidentiality issue is likely moot due to the following paragraph.**

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following non-confidential policies as OAG000010-OAG000024, OAG000032-OAG000058, OAG000075-OAG000091, and OAG000149-OAG000152: IMPP 02-110D, 02-127D, 09-107D, 10-104D, 12-124D, and LCF GO 03-105. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000188-OAG000202, OAG000165-OAG000187, OAG000210-OAG000213, OAG000214-OAG217, OAG000218-OAG000230, and OAG000251-OAG000254.**

3. Any and all policies, directives, or instructions to KDOC personel concerning the humane treatment of prisoners, held in segregation/restrictive housing for protective custody, administrative and disciplinary hold.

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

---

[1] Counsel includes objections that may be moot out of an abundance of caution to avoid waiving the objections.

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following policies as OAG000116-OAG000142 and OAG000153-OAG000156: IMPP 20-101A, 20-104A, 20-105A, 20-108D, and 20-111A, along with LCF GO 10-101. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000234-OAG000239, OAG000276-OAG000281, OAG000240-OAG000246, OAG000247-OAG000250, OAG000295-OAG000298, and OAG000255-OAG000258.**

4. Any and all policies, directives, or instructions to KDOC personel concerning the need to provide; protection to prisoners, from staff abuse and violence by other prisoners, to also specifically as it applies to the prevention of elder abuse.

   **Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

   **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following responsive policy as OAG000059-OAG000074: IMPP 10-103D. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000299-OAG000314.**

5. Any and all policies, directives, or instructions to KDOC personel concerning the requirement for prisoners to sign a (PC) Protective Custody Waiver before they could/would be released from segregation/restrictive housing. Also, the Plaintiff/White requests a copy of the PC Waiver, the Plaintiff signed on 7-12-2023 at Lansing Correctional Facility.

   **Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

   **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced a PC waiver as OAG000002. KDOC also voluntarily produced policies regarding protective custody and restrictive housing for Plaintiff's Request for Production #3 above.**

6. All sick calls and medical intervention reports, made at all KDOC prison facilities, because of prisoner drug and tobacco use/misuse, to include all related deaths and hospitalizations of prisoners because of drug and tobacco use/misuse, for the past 10 years, up to the date of the response to this request.

   **OBJECTION. Under the federal Health Insurance Portability and Accountability Act of 1996 (HIPAA), Defendants cannot provide the confidential medical records of other inmates to Plaintiff. *See Warren v. Corcoran*, No. 9:09-CV-1146, 2011 WL 5599587, at \*7 (N.D.N.Y. Oct. 20, 2011) (describing HIPAA as applying to**

**correctional employees); Robinson v. Holmes, No. 21-2602-DDC, 2022 WL 17569954, at \*1 & n.6 (D. Kan. Nov. 1, 2022) (recognizing that an inmate has a significant privacy interest in medical records). Additionally, Plaintiff's request is not reasonably limited in time or scope, is overly broad, and is unduly burdensome. KDOC houses nearly ten thousand inmates. An inmates' medical record is often hundreds or thousands of pages long. So responding to this request would require searching through the medical records of nearly ten thousand inmates, which would require searching through millions of pages of medical records. The tangential relevance to this case of any records responsive to this request does not outweigh the outsized burden it would require to produce such records. Further, revealing sensitive information to an inmate about other inmates may pose a safety and security risk by providing a convicted felon with medical secrets about other inmates that could be potentially used as leverage for blackmail or other nefarious purposes. However, these issues are likely moot due to the following paragraph.**

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

7. Any and all policies, directives, or instructions to KDOC personel concerning the double bunking of prisoner in segregation/restrictive housing and specifically to include prisoners under protective custody and/or prisoners who have requested protective custody.

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following policy as OAG000122-OAG000127: IMPP 20-104A. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000276-OAG000281. KDOC also voluntarily produced other policies regarding protective custody and restrictive housing for Plaintiff's Request for Production #3 above.**

8. Any and all documents/reports of EAI investigation at Lansing Correctional Facility since January 1, 2020 up to the date of the response to this request to: specifically include White's questioning by EAI Officer Tomilson on 10-2-2023 – after White's strangulation and hospitalization for the injuries.

**OBJECTION. The scope of this request includes confidential information. Specifically, EAI investigatory files are confidential for safety and security reasons. *See Martinez v. True*, 128 F. App'x 714, 716 (10th Cir. 2005) (affirming judgment based on an in-camera review of "confidential prison materials"). However, this confidentiality issue is likely moot due to the following paragraph.**

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

9. Any and all medical records, x-rays, injury photo's taken at the KU Hospital and reports made by the; (a) LCF Medical Clinic, Lansing Correctional Facility; (b) Leavenworth County EMS, 500 Eisenhower Rd., #100, Leavenworth, Kansas 66048; and (c) The University of Kansas Hospital, University of Kansas Health System; Attention: Medical Records Custodian, 4000 Cambridge St.; MS9345, Kansas City, KS 66160; and (d) Kansas Department of Corrections, Lansing Correctional Facility; regarding:

On 7-12-2023, the Plaintiff/White was transported by ambulance from the (LCF) Lansing Correctional Facility – Medical Clinic (after being x-rayed for physical injuries), to the KU Hospital, for the treatment of injuries due to strangulation, by prisoner Jeremey Garza. At the KU Hospital, photos were taken of the injuries to White's throat, neck, treated and monitored for any additional swelling.

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

10. Any and all names of all attending KDOC staff/officers and medical personnel as well as all attending ambulance and KU Hospital attending medical staff and physicians, who provided care, to the Plaintiff, because of and after the 7-12-2023 strangulation.

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

11. Any all records/ reports, investigations, to include all disciplinary and/or criminal charges made or filed against the attacker, Jeremey Garza, to include the Plaintiff's request to press charges; (a) made in connection to the strangulation of the Plaintiff on 7-12-2023; (b) to include the reason why Jeremey Garza was being held in segregation, in the same cell as the Plaintiff; (c) To include any other previous allegations or reports; investigations of other acts of drug/tobacco user/dealer and strangulation by Jeremey Garza, and/or violent acts by Mr. Garza.

**OBJECTION. The scope of this request includes confidential information. *See Martinez v. True*, 128 F. App'x at 716. EAI investigatory files are confidential for safety and security reasons. The classification status of other inmates in restrictive housing is confidential for safety and security reasons. (Some of them are in protective custody, for instance, which is confidential.) Criminal charges and convictions of other inmates are also kept confidential within the prison for safety and security reasons. (Some types of criminal charges or convictions may lead to violence against that inmate if discovered by other inmates. So criminal charges and convictions are kept confidential within the prison.) Grievances of other inmates and disciplinary reports against other inmates are also kept confidential**

within the prison for safety and security reasons. However, these issues are likely moot due to the following paragraph.

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

12. The plaintiffs complete medical and mental health records in White's KDOC medical file, since the date of White's incarceration, up to the date of your response to this request.

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

13. Any and all policies, directives, or instructions to KDOC personel concerning the necessity or when required to call: (a) medical for medical care to an injured prisoner; (b) making a trouble call; after the attack and violent interaction of prisoners in segregation/restrictive housing and in general population (if there is a difference).

**OBJECTION. The scope of this request includes confidential information. Specifically, IMPP 12-122D (Departmental Communication System) is "staff read only" for safety and security reasons and cannot be provided. *See* Ct.'s Order, *Dudley*, No. 22-3188-JWL (Doc. 30); *see also Leek*, 2015 WL 7434671, at \*3. However, this confidentiality issue is likely moot due to the following paragraph.**

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following non-confidential policies as OAG000092-OAG000112 and OAG000157-OAG000158: IMPP 16-107D, 16-108D, and LCF GO 13-102. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000263-OAG000275,[2] OAG000259-OAG000262,[3] OAG000288-OAG000294. KDOC also voluntarily produced other policies regarding protective custody and restrictive housing for Plaintiff's Request for Production #3 above.**

14. The plaintiff requests a copy of the legal mail delivery record, from the Larned State Correctional Facility, showing proof of delivery to White, through the signed and dated receipt, of the U.S. District Court Case No: 5:24-CV-3023-DDC-RES, legal service of Courts Document #66 "Scheduling Order," on or around, after 09/16/2025 [White should have received for legal service by 9/22/2025]. [White received Doc's 64-65

---

[2] IMPP 16-107D was previously IMPP 10-122D, which has been provided.
[3] IMPP 16-108D was previously IMPP 10-114D, which has been provided.

from the Court on 9/23/2025, but "No" Document 66 "Scheduling Order."]

**Defendants do not, in their individual capacities, have possession, custody, or control of any records responsive to this request.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following responsive documents as OAG000159-OAG000164.**

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Scott G. Nading*
Scott G. Nading, KS No. 29665
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Scott.nading@ag.ks.gov
785-296-2215
Fax: (785) 291-3767
*Attorney for Defendants*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | | |
|---|---|---|
| **BOBBY BRUCE WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-3023-DDC-RES** |
| | ) | |
| **ANDREW PARKS,** *et al.,* | ) | |
| | ) | |
| **Defendants.** | ) | |

## DEFENDANT ANDREW PARKS' SUPPLEMENTAL ANSWERS TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Under Federal Rules of Civil Procedure 33 and 34, Defendant Andrew Parks ("Defendant")

provides the following supplemental answers:

1. State the duties of defendants; (a) Andrew Parks; (b) Evan Meredith, and (c) Bruce Chapman. If the duties are set forth in any job description or other document, produce the documents.

> **OBJECTION. The scope of this request includes confidential documents. Specifically, the post orders for these officers are "staff read only" for safety and security reasons. *See* Ct.'s Order, *Dudley v. Warren*, No. 22-3188-JWL (D. Kan. Jan. 24, 2023) (Doc. 30) (sealing a security-related prison policy and not allowing the plaintiff to view or possess it); *see also Leek v. Peterson*, 360 P.3d 491 (Table), 2015 WL 7434671, at \*3 (Kan. Ct. App. Nov. 20, 2023) (noting that KDOC does not have a duty to disclose policies pertaining to emergency or security procedures under K.S.A. 75-5256(b)). However, this issue is likely moot due to the following paragraph.[1]**

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

> **I serve as a Unit Team Manager. Evan Meredith is no longer employed with KDOC, but last served as a Corrections Counselor I. Bruce Chapman serves as a Corrections Supervisor I.**

---

[1] Counsel includes objections that may be moot out of an abundance of caution to avoid waiving the objections.

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following documents: The current job description for Andrew Parks has been produced as OAG000143-OAG000148. The job description for Evan Meredith's last position with KDOC is attached as OAG000282-OAG000287. The current job description for Bruce Chapman has been produced as OAG000003-OAG000009.**

2.  State the specific duties of the defendants, Parks, Meredith and Chapman and as it may apply to all other KDOC employee's/staff (to include Wardens and Deputy Wardens); in-so-far as it pertains to: (a) providing protection to prisoners; and (b) medical care to prisoners; and (c) for receiving medical care at the prison facility; and out of the prison facility, specifically after an incident of violence against a prisoner, in segregation/restrictive housing and general population. If these duties are set forth in any job description or other document; produce the documents.

     **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

     **See also response to Interrogatory #1 above.**

     **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following applicable policies as OAG000092-OAG000112 and OAG000157-OAG000158: IMPP 16-107D, 16-108D, and LCF GO 13-102. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000263-OAG000275,[2] OAG000259-OAG000262,[3] OAG000288-OAG000294.**

3.  State the names, titles, and duties of all Lansing Correctional Facility employees/officers/staff, who have the responsibility for ensuring that inmate's/prisoners request for medical attention are responded to. If those duties are set forth in any job description or other documents, produce the documents.

     **OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon v. Corr. Corp. of Am., Inc.,* No. 1:12-cv-559, 2015 WL 3948459, at \*3 (D. Idaho June 29, 2015) (allowing redaction of the first names of non-party correctional employees). Here, the answer would broadly encompass every correctional officer, and a list of *every* correctional officer – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons. However, this issue is likely moot due to the following paragraph.**

---

[2] IMPP 16-107D was previously IMPP 10-122D, which has been provided.
[3] IMPP 16-108D was previously IMPP 10-114D, which has been provided.

> **I do not, in my individual capacity, have possession, custody, or control of any list of names, titles, and duties responsive to this request.**
>
> **Lansing Correctional Facility (LCF) expects every correctional officer to connect inmates with medical personnel when requested and appropriate. The titles and duties of Defendants Andrew Parks, Bruce Chapman, and Evan Meredith are provided in Defendant's response to Interrogatory #1 above.**

4. State the names, titles, and duties of all employees/officers/staff members at Lansing Correctional Facility (LCF) who have responsibility for responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description; policy, directive; or other document; produce the documents.

> **OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon*, 2015 WL 3948459, at \*3. Here, if a list of names was provided, the list would broadly encompass numerous correctional employees who have any involvement with the grievance procedure. Such a large list of correctional employees – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons. However, this issue is likely moot due to the following paragraph.**
>
> **I do not, in my individual capacity, have possession, custody, or control of any list of names, titles, and duties responsive to this request.**
>
> **The persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101 *et seq. See also* Fed. R. Civ. P. 33(d).**

5. State the procedure in effect during January 2020, through the date of your response; for responding to; investigating; and deciding inmate grievances; to include emergency grievances, and need for protective custody. If the procedure for handling grievances, are based on: (a) medical complaints; (b) protective custody needs, and (c) complaints about staff; and (d) drug and tobacco complaints are different from the procedure for handling other kinds of grievances; state all the procedures. If these procedures are set forth in any directive, manual, rule, law or other documents, produce the documents.

> **The grievance procedure is outlined in K.A.R. 44-15-101 *et seq.* While protective custody classifications cannot be grieved through that grievance procedure (K.A.R. 44-15-101a(d)(2)), Internal Management Policy & Procedure (IMPP) 20-108D addresses requests for protective custody.**
>
> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**
>
> **Although this discovery request was not directed to the third parties KDOC or**

3

the State of Kansas, KDOC has voluntarily produced IMPP 20-108D as OAG000135-OAG000138. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000247-OAG000250.

6.  State the rules; laws, policy and directive regarding, what constitutes an Emergency as it applies to: (a) the protection of prisoners (health/safety); (b) submission of grievances; and (c) providing medical care to prisoners. If these duties/requirements are set forth in any statute, rule, directive or other document, produce the documents.

    **OBJECTION. Some of the applicable policies are confidential for safety and security reasons. *See Dudley*, No. 22-3188-JWL (Doc. 30); *see also Leek*, 2015 WL 7434671, at \*3. Specifically, the following policies designated as "Major Emergency Response Plans" are confidential for safety and security reasons: IMPP 19-101D (Development, Content, Training, Review, and Distribution of Facility Emergency Plans), -102D (Emergency Staff Services), -103A (Emergency Preparedness for Parole Offices), -104A (Hostage Situations in Field Service Offices), -105A (Fire/Smoke/Explosion in Field Service Offices), -106A (Evacuation Procedures), -107A (Bomb Threats in Field Service Offices), -108A (Severe Weather and Natural Disasters), -109A (Hazardous Materials and Occupational Exposures), -111A (Building Damage, Safety Hazards and Civil Disturbances), -113A (Medical Emergencies in Field Service Offices), -121D (Evacuation of Correctional Facilities), and -130D (Participation in the State Emergency Operations Plan). However, this issue is likely moot due to the following paragraph.**

    **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

    **With regard to subpart (b), K.A.R. 44-15-106 governs emergency grievances.**

    **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following: For subparts (a) and (c), the following non-confidential policies apply and have been produced as OAG000108-OAG000115: IMPP 16-108D, 19-120D. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000259-OAG000262 and OAG000231-OAG000233.**

7.  State the method of enforcement of #6 above /and or the consequences to any KDOC personell and for who's duty it is to investigate: non-compliance of individuals, who violate the rules, laws, policy and/or directive regarding the: (a) failure to protect prisoners; (b) grievance steps of due process (to include time requirements); and c) failure to provide emergency medical care. If these duties/requirements are set forth in any statute, rule, policy or directive or other document, produce the documents.

**OBJECTION. Disciplinary actions taken with particular correctional employees constitute confidential personnel matters. For safety and security reasons, such information cannot be provided to inmates.** *See Martinez v. True*, **128 F. App'x 714, 716 (10th Cir. 2005) (affirming judgment based on an in-camera review of "confidential prison materials"). However, this issue is likely moot due to the following paragraph.**

**I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

**Employee discipline is handled on a case-by-case basis. The persons responsible for investigating apparent or reported misbehavior by correctional employees may differ from circumstance to circumstance.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following: IMPP 02-120D outlines employee disciplinary procedures and has been produced as OAG000025-OAG000031. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000315-OAG000321.**

8. State the procedure and by who?, (a) regarding a prisoners right to know specifily why he is being held in segregation/restrictive housing and the allowable maximum time of holds for: (b) protective custody, (c) administrative segregation and, (d) disciplinary times; regarding (e.) prisoners hold times personal reviews/evaluations; and give the difference of the conditions of incarceration; between protective custody hold, disciplinary and administrative segregation holds; and (f) who? (identify responsible personell) who's duty it is to see that the prisoner is properly and humanely treated. If the responsible personell duties are set forth in any job description or other document, produce the documents, and; If these procedures and conditions of restrictive housing are set forth in any directive, manual, rule, law or other documents, produce the documents.

**I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

**With regard to subparts (a) through (d), IMPP 20-104A applies. With regard to subpart (e), see documents responsive to Plaintiff's Second Request for Production of Documents #3. With regard to subpart (f), all KDOC employees that interact with prisoners are expected to treat prisoners properly and humanely.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced IMPP 20-104A as OAG000122-OAG000127. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000276-OAG000281.**

9.  State the names of the KDOC/State of Kansas employees/personell who's duty it is to
    assure a prisoners rights to programs and services for a comprehensive prison record
    toward rehabilitation required by K.S.A. 75-5210 and the procedure to assure compliance.
    If those duty are set forth in any job description or other document, produce the document.
    If the procedures are set forth in any directive, manual, rule or law or other document,
    produce the documents.

    > **OBJECTION. While K.S.A. 75-5210 directs the Secretary of Corrections to
    > establish programs and services, it does not create a right for a prisoner to
    > participate in any particular program or service. However, this issue is likely moot
    > due to the following paragraph.**

    > **I do not, in my individual capacity, have possession, custody, or control of any
    > records responsive to this request.**

10. State the names of the KDOC/State of Kansas employees/personell, and the procedure,
    who's duty and responsibility it is, to assure that the grievance resolution, given by the Unit
    Team, Warden and Secretary of Corrections; is carried out, as to it's given relief.
    (Specificly see: Grievance resolution of #AA2023056). If the duty and procedure of a
    grievance resolution compliance is set forth in any directive, manual, statute or rule, or
    other document, produce the document.

    > **The persons responsible for the grievance procedure at each level are outlined in
    > K.A.R. 44-15-101 *et seq.* However, this issue is likely moot due to the following
    > paragraph.**

    > **I do not, in my individual capacity, have possession, custody, or control of any
    > records responsive to this request.**

11. The Plaintiff/White respectfully requests the State of Kansas, to provide the Plaintiff, a
    copy of the "mandate"; from the State Appellate Court companion to this habeas corpus –
    In the Court of Appeals of the State of Kansas, Case No: 128,298, filed on August 1, 2025;
    by Chief Judge Sarah E. Warner; and give the Plaintiff his Constitutional right, per due
    process, to who or what court or entity currently has jurisdiction of that habeas corpus civil
    action.

    > **I do not, in my individual capacity, have possession, custody, or control of any
    > records responsive to this request.**

    > **I am not an attorney, and I do not know which court or entity has jurisdiction of
    > the specified civil action.**

    > **My counsel has voluntarily produced a mandate as OAG000001 in response to
    > this request.**

12. Per the Unit Team response dated; 7-10-2025 by Amy L. Simmons, H.S.A. (for grievance #IA003455), who cited on: "3/28/2023 Resident BH classification was updated at Lansing to BH treatment level 4, requiring special needs monitoring due to Bi-polar Diagnosis." The plaintiff requests; (a) the identity and title of the individual/KDOC personel, who? updated/changed Whites' mental health classification and the justification/reason for the change done on 3/28/2023; and (b) the identify and medical/pschiatric title of the individual/Doctor, who? examined and diagnosed White on 3/28/2023, and the justification/reason for the Bi-Polar diagnosis for the change of mental health classification change done on 3/28/2023 at Lansing Correctional Facility.

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

13. Who's job is it? specifically to enforce Kansas laws, such as K.S.A. 19-1919; K.S.A. 75-5210; K.S.A. 21-5417; K.S.A. 21-5416 and K.S.A. 22-3504 relating to the humane treatment and protection of state prisoners and elder abuse.

> **I am not an attorney, and I do not know who, if anyone, enforces the various statutes listed.**

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Scott G. Nading*
Scott G. Nading, KS No. 29665
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Scott.nading@ag.ks.gov
785-296-6945
Fax: (785) 291-3767
*Attorney for Defendant*

7

## VERIFICATION

STATE OF KANSAS                    )
                                  )
COUNTY OF _____ L∨ _____        )

Andrew Parks, Defendant, being duly sworn under oath, states that they have read the foregoing interrogatories and answers, and the answers given are true and correct to the best of their knowledge and belief.

_____ *Andrew S Parks* _____
Name

The foregoing answers to interrogatories were subscribed and sworn to before me this
_____ 5 _____ day of _____ *February* _____, 2026.

_____ *Susan K. Peavler* _____
Notary Public

My Commission Expires:

SUSAN K. PEAVLER
Notary Public - State of Kansas
My Appt. Expires *1-28-2028*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF KANSAS

| | |
|---|---|
| BOBBY BRUCE WHITE, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )    Case No. 24-3023-DDC-RES |
| | ) |
| ANDREW PARKS, *et al.*, | ) |
| | ) |
| Defendants. | ) |

## DEFENDANT EVAN MEREDITH'S SUPPLEMENTAL ANSWERS TO PLAINTIFF'S INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS

Under Federal Rules of Civil Procedure 33 and 34, Defendant Evan Meredith ("Defendant") provides the following supplemental answers:

1. State the duties of defendants; (a) Andrew Parks; (b) Evan Meredith, and (c) Bruce Chapman. If the duties are set forth in any job description or other document, produce the documents.

> **OBJECTION. The scope of this request includes confidential documents. Specifically, the post orders for these officers are "staff read only" for safety and security reasons.** *See* **Ct.'s Order,** *Dudley v. Warren*, **No. 22-3188-JWL (D. Kan. Jan. 24, 2023) (Doc. 30) (sealing a security-related prison policy and not allowing the plaintiff to view or possess it);** *see also Leek v. Peterson*, **360 P.3d 491 (Table), 2015 WL 7434671, at \*3 (Kan. Ct. App. Nov. 20, 2023) (noting that KDOC does not have a duty to disclose policies pertaining to emergency or security procedures under K.S.A. 75-5256(b)). However, this issue is likely moot due to the following paragraph.[1]**

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

> **I am no longer employed with KDOC, but I last served as a Corrections Counselor I. I do not know whether Andrew Parks or Bruce Chapman still work at KDOC. I also do not know their job titles, if any.**

---

[1] Counsel includes objections that may be moot out of an abundance of caution to avoid waiving the objections.

> Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following documents: The current job description for Andrew Parks has been produced as OAG000143-OAG000148. The job description for Evan Meredith's last position with KDOC is attached as OAG000282-OAG000287. The current job description for Bruce Chapman has been produced as OAG000003-OAG000009.

2. State the specific duties of the defendants, Parks, Meredith and Chapman and as it may apply to all other KDOC employee's/staff (to include Wardens and Deputy Wardens); in-so-far as it pertains to: (a) providing protection to prisoners; and (b) medical care to prisoners; and (c) for receiving medical care at the prison facility; and out of the prison facility, specifically after an incident of violence against a prisoner, in segregation/restrictive housing and general population. If these duties are set forth in any job description or other document; produce the documents.

> I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.

> See also response to Interrogatory #1 above.

> Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following applicable policies as OAG000092-OAG000112 and OAG000157-OAG000158: IMPP 16-107D, 16-108D, and LCF GO 13-102. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000263-OAG000275,[2] OAG000259-OAG000262,[3] OAG000288-OAG000294.

3. State the names, titles, and duties of all Lansing Correctional Facility employees/officers/staff, who have the responsibility for ensuring that inmate's/prisoners request for medical attention are responded to. If those duties are set forth in any job description or other documents, produce the documents.

> OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon v. Corr. Corp. of Am., Inc.*, No. 1:12-cv-559, 2015 WL 3948459, at *3 (D. Idaho June 29, 2015) (allowing redaction of the first names of non-party correctional employees). Here, the answer would broadly encompass every correctional officer, and a list of *every* correctional officer – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons. However, this issue is likely moot due to the following paragraph.

---

[2] IMPP 16-107D was previously IMPP 10-122D, which has been provided.
[3] IMPP 16-108D was previously IMPP 10-114D, which has been provided.

I do not, in my individual capacity, have possession, custody, or control of any list of names, titles, and duties responsive to this request.

Lansing Correctional Facility (LCF) expects every correctional officer to connect inmates with medical personnel when requested and appropriate. The titles and duties of Defendants Andrew Parks, Bruce Chapman, and Evan Meredith are provided in Defendant's response to Interrogatory #1 above.

4. State the names, titles, and duties of all employees/officers/staff members at Lansing Correctional Facility (LCF) who have responsibility for responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description; policy, directive; or other document; produce the documents.

OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon*, 2015 WL 3948459, at *3. Here, if a list of names was provided, the list would broadly encompass numerous correctional employees who have any involvement with the grievance procedure. Such a large list of correctional employees – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons. However, this issue is likely moot due to the following paragraph.

I do not, in my individual capacity, have possession, custody, or control of any list of names, titles, and duties responsive to this request.

The persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101 *et seq. See also* Fed. R. Civ. P. 33(d).

5. State the procedure in effect during January 2020, through the date of your response; for responding to; investigating; and deciding inmate grievances; to include emergency grievances, and need for protective custody. If the procedure for handling grievances, are based on: (a) medical complaints; (b) protective custody needs, and (c) complaints about staff; and (d) drug and tobacco complaints are different from the procedure for handling other kinds of grievances; state all the procedures. If these procedures are set forth in any directive, manual, rule, law or other documents, produce the documents.

The grievance procedure is outlined in K.A.R. 44-15-101 *et seq*. While protective custody classifications cannot be grieved through that grievance procedure (K.A.R. 44-15-101a(d)(2)), Internal Management Policy & Procedure (IMPP) 20-108D addresses requests for protective custody.

I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.

Although this discovery request was not directed to the third parties KDOC or

the State of Kansas, KDOC has voluntarily produced IMPP 20-108D as OAG000135-OAG000138. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000247-OAG000250.

6.  State the rules; laws, policy and directive regarding, what constitutes an Emergency as it applies to: (a) the protection of prisoners (health/safety); (b) submission of grievances; and (c) providing medical care to prisoners. If these duties/requirements are set forth in any statute, rule, directive or other document, produce the documents.

> **OBJECTION. Some of the applicable policies are confidential for safety and security reasons.** *See Dudley*, **No. 22-3188-JWL (Doc. 30);** *see also Leek*, **2015 WL 7434671, at \*3. Specifically, the following policies designated as "Major Emergency Response Plans" are confidential for safety and security reasons: IMPP 19-101D (Development, Content, Training, Review, and Distribution of Facility Emergency Plans), -102D (Emergency Staff Services), -103A (Emergency Preparedness for Parole Offices), -104A (Hostage Situations in Field Service Offices), -105A (Fire/Smoke/Explosion in Field Service Offices), -106A (Evacuation Procedures), -107A (Bomb Threats in Field Service Offices), -108A (Severe Weather and Natural Disasters), -109A (Hazardous Materials and Occupational Exposures), -111A (Building Damage, Safety Hazards and Civil Disturbances), -113A (Medical Emergencies in Field Service Offices), -121D (Evacuation of Correctional Facilities), and -130D (Participation in the State Emergency Operations Plan). However, this issue is likely moot due to the following paragraph.**

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

> **With regard to subpart (b), K.A.R. 44-15-106 governs emergency grievances.**

> **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following: For subparts (a) and (c), the following non-confidential policies apply and have been produced as OAG000108-OAG000115: IMPP 16-108D, 19-120D. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000259-OAG000262 and OAG000231-OAG000233.**

7.  State the method of enforcement of #6 above /and or the consequences to any KDOC personell and for who's duty it is to investigate: non-compliance of individuals, who violate the rules, laws, policy and/or directive regarding the: (a) failure to protect prisoners; (b) grievance steps of due process (to include time requirements); and c) failure to provide emergency medical care. If these duties/requirements are set forth in any statute, rule, policy or directive or other document, produce the documents.

OBJECTION. Disciplinary actions taken with particular correctional employees constitute confidential personnel matters. For safety and security reasons, such information cannot be provided to inmates. *See Martinez v. True*, 128 F. App'x 714, 716 (10th Cir. 2005) (affirming judgment based on an in-camera review of "confidential prison materials"). However, this issue is likely moot due to the following paragraph.

I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.

Employee discipline is handled on a case-by-case basis. The persons responsible for investigating apparent or reported misbehavior by correctional employees may differ from circumstance to circumstance.

Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following: IMPP 02-120D outlines employee disciplinary procedures and has been produced as OAG000025-OAG000031. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000203-OAG000209.

8. State the procedure and by who?, (a) regarding a prisoners right to know specifically why he is being held in segregation/restrictive housing and the allowable maximum time of holds for: (b) protective custody, (c) administrative segregation and, (d) disciplinary times; regarding (e.) prisoners hold times personal reviews/evaluations; and give the difference of the conditions of incarceration; between protective custody hold, disciplinary and administrative segregation holds; and (f) who? (identify responsible personell) who's duty it is to see that the prisoner is properly and humanely treated. If the responsible personell duties are set forth in any job description or other document, produce the documents, and; If these procedures and conditions of restrictive housing are set forth in any directive, manual, rule, law or other documents, produce the documents.

I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.

With regard to subparts (a) through (d), IMPP 20-104A applies. With regard to subpart (e), see documents responsive to Plaintiff's Second Request for Production of Documents #3. With regard to subpart (f), all KDOC employees that interact with prisoners are expected to treat prisoners properly and humanely.

Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced IMPP 20-104A as OAG000122-OAG000127. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000276-OAG000281.

9. State the names of the KDOC/State of Kansas employees/personell who's duty it is to assure a prisoners rights to programs and services for a comprehensive prison record toward rehabilitation required by K.S.A. 75-5210 and the procedure to assure compliance. If those duty are set forth in any job description or other document, produce the document. If the procedures are set forth in any directive, manual, rule or law or other document, produce the documents.

> **OBJECTION. While K.S.A. 75-5210 directs the Secretary of Corrections to establish programs and services, it does not create a right for a prisoner to participate in any particular program or service. However, this issue is likely moot due to the following paragraph.**

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

10. State the names of the KDOC/State of Kansas employees/personell, and the procedure, who's duty and responsibility it is, to assure that the grievance resolution, given by the Unit Team, Warden and Secretary of Corrections; is carried out, as to it's given relief. (Specificly see: Grievance resolution of #AA2023056). If the duty and procedure of a grievance resolution compliance is set forth in any directive, manual, statute or rule, or other document, produce the document.

> **The persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101 *et seq.* However, this issue is likely moot due to the following paragraph.**

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

11. The Plaintiff/White respectfully requests the State of Kansas, to provide the Plaintiff, a copy of the "mandate"; from the State Appellate Court companion to this habeas corpus – In the Court of Appeals of the State of Kansas, Case No: 128,298, filed on August 1, 2025; by Chief Judge Sarah E. Warner; and give the Plaintiff his Constitutional right, per due process, to who or what court or entity currently has jurisdiction of that habeas corpus civil action.

> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

> **I am not an attorney, and I do not know which court or entity has jurisdiction of the specified civil action.**

> **My counsel has voluntarily produced a mandate as OAG000001 in response to this request.**

12. Per the Unit Team response dated; 7-10-2025 by Amy L. Simmons, H.S.A. (for grievance #IA003455), who cited on: "3/28/2023 Resident BH classification was updated at Lansing to BH treatment level 4, requiring special needs monitoring due to Bi-polar Diagnosis." The plaintiff requests; (a) the identity and title of the individual/KDOC personel, who? updated/changed Whites' mental health classification and the justification/reason for the change done on 3/28/2023; and (b) the identify and medical/pschiatric title of the individual/Doctor, who? examined and diagnosed White on 3/28/2023, and the justification/reason for the Bi-Polar diagnosis for the change of mental health classification change done on 3/28/2023 at Lansing Correctional Facility.

**I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

13. Who's job is it? specificly to enforce Kansas laws, such as K.S.A. 19-1919; K.S.A. 75-5210; K.S.A. 21-5417; K.S.A. 21-5416 and K.S.A. 22-3504 relating to the humane treatment and protection of state prisoners and elder abuse.

**I am not an attorney, and I do not know who, if anyone, enforces the various statutes listed.**

Respectfully submitted,

Kris W. Kobach
Attorney General of Kansas

*/s/ Scott G. Nading*
Scott G. Nading, KS No. 29665
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Scott.nading@ag.ks.gov
785-296-6945
Fax: (785) 291-3767
*Attorney for Defendant*

## VERIFICATION

**STATE OF KANSAS**                                )
                                                   )
**COUNTY OF** Johnson                              )


Evan Meredith, Defendant, being duly sworn under oath, states that they have read the foregoing interrogatories and answers, and the answers given are true and correct to the best of their knowledge and belief.

_____  Evan Meredith
Name

The foregoing answers to interrogatories were subscribed and sworn to before me this _____5th_____ day of _____FEB_____, 2026.

_____
Notary Public

Alvin Johnson Jr  Notary Publ,

My Commission Expires:

_____04.03.2027_____

ALVIN JOHNSON JR
Notary Public, State of Kansas
My Appointment Expires
April 03, 2027

8

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | |
|---|---|
| **BOBBY BRUCE WHITE,** | ) |
| | ) |
| **Plaintiff,** | ) |
| | ) |
| **v.** | )      **Case No. 24-3023-DDC-RES** |
| | ) |
| **ANDREW PARKS,** *et al.,* | ) |
| | ) |
| **Defendants.** | ) |
| | ) |

<u>**DEFENDANT BRUCE CHAPMAN'S SUPPLEMENTAL ANSWERS TO PLAINTIFF'S**</u>
<u>**INTERROGATORIES AND REQUEST FOR PRODUCTION OF DOCUMENTS**</u>

Under Federal Rules of Civil Procedure 33 and 34, Defendant Bruce Chapman

("Defendant") provides the following supplemental answers:

1. State the duties of defendants; (a) Andrew Parks; (b) Evan Meredith, and (c) Bruce Chapman. If the duties are set forth in any job description or other document, produce the documents.

> **OBJECTION. The scope of this request includes confidential documents. Specifically, the post orders for these officers are "staff read only" for safety and security reasons. *See* Ct.'s Order, *Dudley v. Warren*, No. 22-3188-JWL (D. Kan. Jan. 24, 2023) (Doc. 30) (sealing a security-related prison policy and not allowing the plaintiff to view or possess it); *see also Leek v. Peterson*, 360 P.3d 491 (Table), 2015 WL 7434671, at \*3 (Kan. Ct. App. Nov. 20, 2023) (noting that KDOC does not have a duty to disclose policies pertaining to emergency or security procedures under K.S.A. 75-5256(b)). However, this issue is likely moot due to the following paragraph.[1]**
>
> **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**
>
> **I serve as a Corrections Supervisor I. Andrew Parks serves as a Unit Team Manager. Evan Meredith is no longer employed with KDOC, but last served as a Corrections Supervisor I.**

---

[1] Counsel includes objections that may be moot out of an abundance of caution to avoid waiving the objections.

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following documents: The current job description for Andrew Parks has been produced as OAG000143-OAG000148. The job description for Evan Meredith's last position with KDOC is attached as OAG000282-OAG000287. The current job description for Bruce Chapman has been produced as OAG000003-OAG000009.**

2. State the specific duties of the defendants, Parks, Meredith and Chapman and as it may apply to all other KDOC employee's/staff (to include Wardens and Deputy Wardens); in-so-far as it pertains to: (a) providing protection to prisoners; and (b) medical care to prisoners; and (c) for receiving medical care at the prison facility; and out of the prison facility, specifically after an incident of violence against a prisoner, in segregation/restrictive housing and general population. If these duties are set forth in any job description or other document; produce the documents.

   **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

   **See also response to Interrogatory #1 above.**

   **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following applicable policies as OAG000092-OAG000112 and OAG000157-OAG000158: IMPP 16-107D, 16-108D, and LCF GO 13-102. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000263-OAG000275,[2] OAG000259-OAG000262,[3] OAG000288-OAG000294.**

3. State the names, titles, and duties of all Lansing Correctional Facility employees/officers/staff, who have the responsibility for ensuring that inmate's/prisoners request for medical attention are responded to. If those duties are set forth in any job description or other documents, produce the documents.

   **OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided.** *See Castillon v. Corr. Corp. of Am., Inc.,* **No. 1:12-cv-559, 2015 WL 3948459, at \*3 (D. Idaho June 29, 2015) (allowing redaction of the first names of non-party correctional employees). Here, the answer would broadly encompass every correctional officer, and a list of *every* correctional officer – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons. However, this issue is likely moot due to the following paragraph.**

---

[2] IMPP 16-107D was previously IMPP 10-122D, which has been provided.
[3] IMPP 16-108D was previously IMPP 10-114D, which has been provided.

**I do not, in my individual capacity, have possession, custody, or control of any list of names, titles, and duties responsive to this request.**

**Lansing Correctional Facility (LCF) expects every correctional officer to connect inmates with medical personnel when requested and appropriate. The titles and duties of Defendants Andrew Parks, Bruce Chapman, and Evan Meredith are provided in Defendant's response to Interrogatory #1 above.**

4. State the names, titles, and duties of all employees/officers/staff members at Lansing Correctional Facility (LCF) who have responsibility for responding to, investigating or deciding inmate grievances. If those duties are set forth in any job description; policy, directive; or other document; produce the documents.

**OBJECTION. The names of correctional employees not involved in the current lawsuit are confidential for safety and security reasons and will not be provided. *See Castillon*, 2015 WL 3948459, at \*3. Here, if a list of names was provided, the list would broadly encompass numerous correctional employees who have any involvement with the grievance procedure. Such a large list of correctional employees – even with first names redacted – would be inappropriate to provide to an inmate for safety and security reasons. However, this issue is likely moot due to the following paragraph.**

**I do not, in my individual capacity, have possession, custody, or control of any list of names, titles, and duties responsive to this request.**

**The persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101 *et seq. See also* Fed. R. Civ. P. 33(d).**

5. State the procedure in effect during January 2020, through the date of your response; for responding to; investigating; and deciding inmate grievances; to include emergency grievances, and need for protective custody. If the procedure for handling grievances, are based on: (a) medical complaints; (b) protective custody needs, and (c) complaints about staff; and (d) drug and tobacco complaints are different from the procedure for handling other kinds of grievances; state all the procedures. If these procedures are set forth in any directive, manual, rule, law or other documents, produce the documents.

**The grievance procedure is outlined in K.A.R. 44-15-101 *et seq.* While protective custody classifications cannot be grieved through that grievance procedure (K.A.R. 44-15-101a(d)(2)), Internal Management Policy & Procedure (IMPP) 20-108D addresses requests for protective custody.**

**I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

**Although this discovery request was not directed to the third parties KDOC or**

3

the State of Kansas, KDOC has voluntarily produced IMPP 20-108D as **OAG000135-OAG000138. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000247-OAG000250.**

6. State the rules; laws, policy and directive regarding, what constitutes an Emergency as it applies to: (a) the protection of prisoners (health/safety); (b) submission of grievances; and (c) providing medical care to prisoners. If these duties/requirements are set forth in any statute, rule, directive or other document, produce the documents.

> **OBJECTION. Some of the applicable policies are confidential for safety and security reasons. *See Dudley*, No. 22-3188-JWL (Doc. 30); *see also Leek*, 2015 WL 7434671, at \*3. Specifically, the following policies designated as "Major Emergency Response Plans" are confidential for safety and security reasons: IMPP 19-101D (Development, Content, Training, Review, and Distribution of Facility Emergency Plans), -102D (Emergency Staff Services), -103A (Emergency Preparedness for Parole Offices), -104A (Hostage Situations in Field Service Offices), -105A (Fire/Smoke/Explosion in Field Service Offices), -106A (Evacuation Procedures), -107A (Bomb Threats in Field Service Offices), -108A (Severe Weather and Natural Disasters), -109A (Hazardous Materials and Occupational Exposures), -111A (Building Damage, Safety Hazards and Civil Disturbances), -113A (Medical Emergencies in Field Service Offices), -121D (Evacuation of Correctional Facilities), and -130D (Participation in the State Emergency Operations Plan). However, this issue is likely moot due to the following paragraph.**

> **I do not in my individual capacity have possession, custody, or control of any records responsive to this request.**

> **With regard to subpart (b), K.A.R. 44-15-106 governs emergency grievances.**

> **Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following: For subparts (a) and (c), the following non-confidential policies apply and have been produced as OAG000108-OAG000115: IMPP 16-108D, 19-120D. Attached, KDOC has produced any older versions of those policies in effect on July 12, 2023, as OAG000259-OAG000262 and OAG000231-OAG000233.**

7. State the method of enforcement of #6 above /and or the consequences to any KDOC personell and for who's duty it is to investigate: non-compliance of individuals, who violate the rules, laws, policy and/or directive regarding the: (a) failure to protect prisoners; (b) grievance steps of due process (to include time requirements); and c) failure to provide emergency medical care. If these duties/requirements are set forth in any statute, rule, policy or directive or other document, produce the documents.

**OBJECTION. Disciplinary actions taken with particular correctional employees constitute confidential personnel matters. For safety and security reasons, such information cannot be provided to inmates.** *See Martinez v. True*, **128 F. App'x 714, 716 (10th Cir. 2005) (affirming judgment based on an in-camera review of "confidential prison materials"). However, this issue is likely moot due to the following paragraph.**

**I do not in my individual capacity have possession, custody, or control of any records responsive to this request.**

**Employee discipline is handled on a case-by-case basis. The persons responsible for investigating apparent or reported misbehavior by correctional employees may differ from circumstance to circumstance.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced the following: IMPP 02-120D outlines employee disciplinary procedures and has been produced as OAG000025-OAG000031. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000315-OAG000321.**

8.  State the procedure and by who?, (a) regarding a prisoners right to know specificly why he is being held in segregation/restrictive housing and the allowable maximum time of holds for: (b) protective custody, (c) administrative segregation and, (d) disciplinary times; regarding (e.) prisoners hold times personal reviews/evaluations; and give the difference of the conditions of incarceration; between protective custody hold, disciplinary and administrative segregation holds; and (f) who? (identify responsible personell) who's duty it is to see that the prisoner is properly and humanely treated. If the responsible personell duties are set forth in any job description or other document, produce the documents, and; If these procedures and conditions of restrictive housing are set forth in any directive, manual, rule, law or other documents, produce the documents.

**I do not in my individual capacity have possession, custody, or control of any records responsive to this request.**

**With regard to subparts (a) through (d), IMPP 20-104A applies. With regard to subpart (e), see documents responsive to Plaintiff's Second Request for Production of Documents #3. With regard to subpart (f), all KDOC employees that interact with prisoners are expected to treat prisoners properly and humanely.**

**Although this discovery request was not directed to the third parties KDOC or the State of Kansas, KDOC has voluntarily produced IMPP 20-104A as OAG000122-OAG000127. Attached, KDOC has produced an older version of that policy in effect on July 12, 2023, as OAG000276-OAG000281.**

9.  State the names of the KDOC/State of Kansas employees/personell who's duty it is to assure a prisoners rights to programs and services for a comprehensive prison record toward rehabilitation required by K.S.A. 75-5210 and the procedure to assure compliance. If those duty are set forth in any job description or other document, produce the document. If the procedures are set forth in any directive, manual, rule or law or other document, produce the documents.

    **OBJECTION. While K.S.A. 75-5210 directs the Secretary of Corrections to establish programs and services, it does not create a right for a prisoner to participate in any particular program or service. However, this issue is likely moot due to the following paragraph.**

    **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

10. State the names of the KDOC/State of Kansas employees/personell, and the procedure, who's duty and responsibility it is, to assure that the grievance resolution, given by the Unit Team, Warden and Secretary of Corrections; is carried out, as to it's given relief. (Specificly see: Grievance resolution of #AA2023056). If the duty and procedure of a grievance resolution compliance is set forth in any directive, manual, statute or rule, or other document, produce the document.

    **The persons responsible for the grievance procedure at each level are outlined in K.A.R. 44-15-101 *et seq*. However, this issue is likely moot due to the following paragraph.**

    **I do not, in my individual capacity, have possession, custody, or control of any records responsive to this request.**

11. The Plaintiff/White respectfully requests the State of Kansas, to provide the Plaintiff, a copy of the "mandate"; from the State Appellate Court companion to this habeas corpus – In the Court of Appeals of the State of Kansas, Case No: 128,298, filed on August 1, 2025; by Chief Judge Sarah E. Warner; and give the Plaintiff his Constitutional right, per due process, to who or what court or entity currently has jurisdiction of that habeas corpus civil action.

    **I do not in my individual capacity have possession, custody, or control of any records responsive to this request.**

    **I am not an attorney, and I do not know which court or entity has jurisdiction of the specified civil action.**

    **My counsel has voluntarily produced a mandate as OAG000001 in response to this request.**

12. Per the Unit Team response dated; 7-10-2025 by Amy L. Simmons, H.S.A. (for grievance #IA003455), who cited on: "3/28/2023 Resident BH classification was updated at Lansing to BH treatment level 4, requiring special needs monitoring due to Bi-polar Diagnosis." The plaintiff requests; (a) the identity and title of the individual/KDOC personel, who? updated/changed Whites' mental health classification and the justification/reason for the change done on 3/28/2023; and (b) the identify and medical/pschiatric title of the individual/Doctor, who? examined and diagnosed White on 3/28/2023, and the justification/reason for the Bi-Polar diagnosis for the change of mental health classification change done on 3/28/2023 at Lansing Correctional Facility.

**I do not in my individual capacity have possession, custody, or control of any records responsive to this request.**

13. Who's job is it? specificly to enforce Kansas laws, such as K.S.A. 19-1919; K.S.A. 75-5210; K.S.A. 21-5417; K.S.A. 21-5416 and K.S.A. 22-3504 relating to the humane treatment and protection of state prisoners and elder abuse.

**I am not an attorney, and I do not know who, if anyone, enforces the various statutes listed.**

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Scott G. Nading*
Scott G. Nading, KS No. 29665
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Scott.nading@ag.ks.gov
785-296-6945
Fax: (785) 291-3767
*Attorney for Defendant*

## VERIFICATION

**STATE OF KANSAS**                          )
                                             )
**COUNTY OF** Leavenworth                    )

Bruce Chapman, Defendant, being duly sworn under oath, states that they have read the foregoing interrogatories and answers, and the answers given are true and correct to the best of their knowledge and belief.

_____
Name

The foregoing answers to interrogatories were subscribed and sworn to before me this
____5TH____ day of ___Foducry___, 2026.

_____
Notary Public

My Commission Expires:

5/14/28

CHRISTINA K. FARR
Notary Public-State of Kansas
My Appt. Expires 5-14-28