IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bobby Bruce White, Plaintiff

vs.

Case No: 24-3023-DDC-RES

Andrew Parks, et al. Defendants.

MOTION FOR SUMMARY JUDGEMENT AGAINST DEFENDANTS:
Andrew Parks; Evan Meredith, and Bruce Chapman

Comes Now the Plaintiff, Bobby White, Pro-Se, pursuant to: Fed. R. Civ. P. 56(a) and requests the court for a ruling, in the Plaintiff's favor, for a Summary Judgement of this civil rights case, pursuant to 42 U.S.C. §1983 against the Defendants Andrew Parks, Evan Meredith and Bruce Chapman, in their individual capacity. Or in the alternative to grant a partial summary judgement and to allow this case to proceed to a Jury trial to determine finding of fact of any outstanding issues.

This requested ruling is for all issues of this complaint in [Doc 8] For page 4 of 8 For : "C. Cause of Action: B)(i) Count II: Mr. Parks UTM violated White's 8th Amendment right to be free from cruel and unusual punishment, denied White immediate medical care on 7-12-2023, for substantially serious injury from strangulation, while denying White protective custody pursuant to IMPP 20-108D, and holding White for 209 days under "atypical" conditions of confinement, without due process, and extortion of signature on PC waiver."; and page 7 of 8, for:
"C)(i) Count III: Mr. Meredith and OIC Chapman violated White's 8th Amendment right to be free from cruel and unusual punishment, by their Knowing of and disregarding (failure to protect) the substantially serious injury to White's throat/neck, caused by strangulation at LCF, on 7-12-2023 and with evil intent conspired with Mr. Parks UTM, to extort White's signature on a PC waiver.
This applicable to the Courts ruling [Doc 64] on page 4 of 28, of (1) 8th Amendment claim for failure to provide medical care; (3) a 1st Amendment retaliation claim base on a false disciplinary report; and (4) 8th Amendment failure to protect claim. For which the court construed the

1.

plaintiff brings against Mr. Parks, Mr. Meredith, and Mr. Chapman, in their individual capacities.

Further, the Plaintiff requests the full relief requested in [DOC 8] page 8 of 8, for: 2) Request for Relief 1)(B) Count II: $1.00 Nominal or Compensatory award of $50,000, and punitive damages, as to be determined by jury or court (up to or equal to the nominal or compensatory award); and; 1)(C) Count III: $1.00 Nominal or Compensatory award of $75,000 from each defendant, and punitive damages, as to be determined by jury or court (up to or equal to nominal or compensatory award, from each defendant; and court costs, and any attorney fee and any other award or settlement the court or jury finds fair and equitable, up to the legal limit allowed by law.

## Causations:

I.) Original issues similar to those of this case were filed with the Kansas State Court under a K.S.A. 60-1501/60-1507 Habeas Corpus in the Leavenworth Co. Dist. Ct. Case No: LYCO 2020-CV-243, "White v Warden Meyer". This was regarding to the excessive drugs and tobacco smoke, at LCF; being assaulted by Officer Gardner; and threats by other prisoners, because of Plaintiff's complaints. This case was just summarily dismissed without addressing the substantive issues.

The Plaintiff then refiled once again in the State court. Again under another K.S.A. 60-1501/60-1507 Habeas Corpus in the Leavenworth Co. Dist. Ct. Case No: LYCO-2022-CV-323, filed 12-12-2022, "White v Jeff Zmuda S.O.C." This time because of continued retaliations, threats and resulted in the Plaintiff (White) being removed, by defendant Gary Spillman from the B1BR group. Because of my complaints regarding the drug and tobacco smoke problem at (LCF) Lansing Correctional Facility.

This culminated in my being wrongfully placed in segregation, tortured and abused, denied access to my legal materials needed to proceed, Pro Se, in that case. Further, even though I was suppose to be treated and held in protective custody conditions of incarceration; I was punished and treated as a disciplinary charged prisoner. I was intentionally terrorized by the Defendants Parks, Meredith and Chapman, who would put the very people, I had requested protection from in the same cell with me.

2.

This to attempt to terrorize and intimidate me, in an attempt to silence me. This then ultimately culminated in my being strangled by cell-mate Jeremy Garza on 7-12-2023, which required my being transported by ambulance to the KU Hospital emergency room.

Yet, even upon my being returned to the prison (LCF), from the KU Hospital. I continued to be held under disciplinary seg, conditions of incarceration and with the continued intimidation and retaliation by the defendants Parks and Chapman. This cruel and unusual punishment continued until I was ultimately transferred for my protection out of LCF, to LSCF (Larned State Correctional Facility).

After, the Plaintiff was transferred to Pawnee, Co. the Leavenworth Co. Dist. Ct. Case No: LVCO 2022 CV 323 was changed to Case No: PN 2024 CV 60009, and again just summarily dismissed as "moot".

This then cause the necessity for the Plaintiff's filings of this §1983 civil rights case in the U.S. District Court on 2-12-2024.

The Plaintiff, White is a 73 year old senior citizen, elder person, and can not tolerate the excessive drug and tobacco smoke, which amounts to elder abuse and cruel and unusual punishment. Yet, the Defendants/prison officials at Lansing Correctional Facility were doing nothing to end or correct the problem. This while other drug addicted prisoners continued to violate the law and fall out from overdoses and with some even dying. Their solution to the problem seemed to be to just ignore the problem and abuse and mistreat those prisoners (the Plaintiff), who dared to complain.

"The Kansas Office of Vital Statistics identified 678 drug overdoses deaths among Kansas residents in 2021. This is a 42 percent increase in deaths compared to the 477 drug overdose deaths identified in 2020, with synthetic opiod deaths spiking 790% between 2012 and 2021. Due to the increase in drug overdose deaths, Kansas has significantly shifted in how drug-related overdoses are handled."

"Kansas already has a drug-induced homicide charge that allows individuals to be charged for the death of someone who overdoses on drugs they supplied. This is to include those who introduced the drug, others who took the drug, or those involved in the purchasing of the drug."

3.

"Federal prosecutors in Kansas are actively pursuing cases against those linked to fatal overdoses, with sentences ranging up to 25-40 years." "The risk of overdose on synthetic drugs is high, as the chemicals used in making them are unknown and may result in death."

The above (3) three paragraphs were provided to prisoners at LSCF prison as recent drug information. Yet, they still do not mention anything about the risks and effect of the second-hand smoke, may have on other prisoners especially the elder prisoner, as in the Plaintiff's case. This needs to be properly addressed and corrected, beginning with this present civil rights case. Not just ignored, dismissed and covered up.

Before the KDOC, built its new prison at Lansing, Kansas (LCF) It housed some state prisoners in a separate (adjunct) Protective Custody Unit. This was behind the stone walls of the old Lansing prison, in ("TRU" unit) Therapeutic Recovery Unit. This as is required by (IMPP) Internal Management Policy and Procedure.

When the new prison was built, it closed down the old stone prison, and the officials failed to provide, nor did they develop a dedicated (adjunct) wing or unit for the housing need for those prisoners (Plaintiff) needing "Protective Custody" in the new prison.

As a result the KDOC officials/Defendants, found it easier to just ignore the real problems of gang activity, drugs and tobacco use by some prisoners to just create a false narrative. Thereby, to create false charges against anyone (Plaintiff) who dares to complain and requests protective custody. By just issuing them a disciplinary (charge) report. Thus, then they would; rather than provide the required "Protective Custody" housing, they could justify the punishing, and torturing of those (victims) prisoners (Plaintiff) who were just trying to do the right thing and protect themselves.

But, then this caused a problem; for them, of their liability. If a prisoner who did have a legitimate protection need was harassed out of protective custody, back to general population and was then physically injured by another prisoner. Therefore their solution to protect themselves was to require the signing of a phoney PC waiver, to be signed by a prisoner requesting protection. As currently being administered by the KDOC officials/defendants, this phoney PC waiver is nothing

4.

but extortion of a prisoners signature, under duress and amounts to misrepresentation, fraud and failure to protect. These PC waivers are not supported by any legitimate IMPP as a valid attachment required by any rule, statute or constitutional provision.

To coerce/force a prisoner/Plaintiff to sign, such PC waiver, these defendants must then themselves, torture, terrorize, abuse, mistreat, harass and retaliate against a prisoner, constituting cruel and unusual punishment to an even greater threat extent, than the fear and danger that existed, outside the segregation housing, from that occurring in general population. That is exactly what has happened in this particular case: See: Exhibit PL#7. This where, the Plaintiff, Bobby White on 7-12-2023 was forced to sign the KDOC/LCF "Inmate waiver of Protective Custody" "Under Duress was attacked by PC seg. cellmate." Before, Defendants Bruce Chapman, Evan Meredith and Andrew Parks would separate Jeremy Garza from Bobby White, even after Mr. Garza attempted to murder the Plaintiff by strangulation. Both Mr. Parks UTM and Mr. Meredith sign the waiver and clearly knew and saw, the "under duress" disclaimer White added to the PC waiver. Further, the end note added by the defendants were clearly made after White was forced to sign the PC waiver.

Therefore in consideration of the causion above the Plaintiff requests the Court reconsider the courts previous ruling regarding; (2) a First Amendment retaliation claim based on placement in segregation housing; [Doc. 64 at 4]; and/or in the alternative to give it due consideration of the different conditions of incarceration between disciplinary and "Protective Custody" holds, under totality of circumstances for a Summary Judgement ruling in the Plaintiff's favor for the rest of the applicable count issues.

The Plaintiff justifies this request through; [Doc 64 at 16] "... The court previously held that this retaliation claim survived screening. Doc. 11 at 17. That ruling doesn't immunize this claim from a 12 (b)(6) motion because the court is free to reconsider that prior holding in the face of adversarial testing. Hunnicutt v Smith, 18-619, JCH/GBW, 2021 WL 3618315, at *7 (D. N.M. Aug. 16, 2021) (explaining that district courts may reconsider conclusions from § 1915A screening); Worthen v. Okla. Dept of Corr.

5.

No. CIV-07-687-R, 2010 WL329,5010, at *16 (W.D. Okla. Aug. 4, 2010) (same); see also Allison v Bank One-Denv., 289 F.3d 1223, 1247 (10th Cir. 2002) ("A lower court's ability to depart from its own prior decisions [in the same case] is discretionary.").

The Plaintiff proceeding Pro Se, prays "the court construes his filings liberally and "hold[s] them to less stringent standards than formal pleadings drafted by lawyer[.]" Haines v Kerner, 404 U.S. 519, 520-21 (1972); Hall v Bellon, 935 F. 2d 1106, 1110 (10th Cir. 1991) [Doc 64 at []].

Under Schneider v City of Grand Junction Police Dep't, 717 F.3d 760 (10th Cir. June 5, 2013) A "42 U.S.C. § 1983 imposes liability on a government official who subjects, or causes to be subjected, any citizen to the deprivation of any rights. Like deliberate indifference; causation is an element of §1983 claims. Causation is generally a question of fact for the jury. But whether the plaintiff has presented sufficient evidence of causation to defeat a motion for summary judgment is a legal question. Causal connection is satisfied if defendants set in motion a series of events that defendants knew or reasonably should have known would cause others to deprive plaintiffs of their constitutional rights."

## Plaintiff's Supporting Factual Position

The Defendants during discovery, have (the Plaintiff asserts) not acted in good-faith, have repeatedly failed to meet court ordered timelines, have lied about agreement the Plaintiff did not make, have failed to send their dated certificates of service along with their late responses (so that the Plaintiff would actually know himself the due date for his response); have been intentionally evasive, with the defendants attorneys answering the discovery requests for the individual defendants in their personal capacity; by either making objections, without logical reason or by simply stating in their boiler-plate responses uniformly for all (3) three defendants that: "Defendants do not, in their individual capacities, have possession, custody or control of any records responsive to the Plaintiff's request for discovery." [Doc 135 at 2]

Also, the Defendants have made it clear, by their response to the direct question by Magistrate Judge Schwartz, that they are, "not withholding any responsive documents because the Court had not yet, entered a protective order." [Doc 135 at 4], Nor the attorneys possession,

6.

custody or control based on an objection or otherwise.

·The Plaintiff has repeatedly objected to the defendants attorneys giving answers of the discovery requests, made for the individuals, and the fact the Plaintiff was not legally served, nor received [Doc 66] "scheduling Order" until 11-4-2026, which did seriously prejudice the Plaintiff's ability to timely learn and implement his discovery attempts, because of lack of knowledge of court procedures. [see: Doc 121 at 12-14].

Further, the Plaintiff has been denied his requested, "Motion for Protective Order [Doc 122] regarding the Defendants attorneys providing the Plaintiff his own private, HIPAA protected medical records, and the KU Hospital records. Which the Plaintiff asserts were illegally obtained by the Defendants attorneys. At the suggestion of Judge Schwartz [see: Doc 135 at 3]. The Plaintiff has mailed, on 3-16-2026 a "Health Information Privacy & Security Complaint", (See: Exhibit PL #1. (7 pages) less original citation exhibits). The Plaintiff requests sanctions from the court regarding legal standing, against the defendants illegal act of wrongfully acquiring the Plaintiff's private personal medical records, in violation of HIPAA, without a judge signed subpoena or the written consent of the Plaintiff. [also see: Doc 135 at 3]

Causion of Wrongful "Atypical" Hold in Segregation, and "(3) a 1st Amendment retaliation claim base on a false disciplinary report"

I) (A) See: Exhibit PL #2 (2 pages); "Declaration of Nicolaus Ball at (1of 2) - "#2. Plaintiff Bobby White (#2000046191) was placed in protective custody at LCF because he requested it." and at "#4. Plaintiff could be housed in managed movement, which would keep him separated from other inmates during any stay at LCF.

(B) The Plaintiff requested protective custody on 3-27-2023. See: Exhibit PL #3 - Report No: 01-23-1875-at Facts: "... Inmate previously tried going PC from staff..."; and "Inmate Request to Staff Member", to LCF Captain receipt dated 3-27-2023; where; Plaintiff "Request for PC placement." This form 9 request was never answered nor returned.

(C.) Pursuant to: "IMPP 20-104A (V)(C)(1)(a) Documentation that protective custody is warranted is provided in writing by the Warden and reasonable alternatives are not available. (b) A denial of protective custody is to be fully documented in the EAI file.", and;

7.

Per "IMPP 20-105 A (III)(A); (iv)(B) The resident is to be given the opportunity to present the resident's case; (vi)(R) Administrative restrictive housing must not be used or considered as punishment." and;

Per "IMPP 20-108 D "Protective Custody": The KDOC provides those in protective custody, to the extent possible, the same access to education, treatment, recreation, and amenities as those of the same custody level. As such, each facility must operate a protective custody program as an "ad junct" (emphasis added by B.W.) to the facility's administrative restrictive housing unit. "Protective custody" Housing in administrative restrictive housing or modified operational units for residents requiring protection from others until reintegration into general population environment is facilitated."

(D) Yet, as can be plainly seen through the Plaintiff's many attempts by (form 9) "Inmate Request to Staff Members" (Exhibits PL #4 (9 pages). The Plaintiff was clearly being wrongfully punished, denied the conditions of incarceration as required by IMPP, Therefore "denied the treatment, recreation, and amenities as those of the same custody level", in violation of IMAP 20-105A and 20-108D; which has resulted in the 8th Amendment violation to be free from cruel and unusual punish, and denial to due process in disciplinary actions.

Exhibits: PL #4 are dated from 5-15-2023 through 5-27-2023, before the Plaintiff's strangulation (attempted murder) by Jeremy Garza on 7-12-2023; and then even afterward continuing from 7-15-2023 through 7-20-2023. Many of these requests, as can be seen, were addressed directly to Mr. Parks, and Mr. Meredith. Further, page #7 of these exhibits clearly shows that Mr. Parks UTM was fully aware of the protective needs of the Plaintiff, but chose to ignore them with deliberate indifference, by his reply: "...you are remaining seg. status for your safety until you are transferred."

(E.) Yet Mr. Parks, continued to retaliate against the Plaintiff putting him in continuing danger (denial of protection) by putting (and/or attempting to put) disciplinary charged prisoners in the cell with the Plaintiff in violation of IMPP 20-108 D, which requires a "modified operational unit for residents requiring protection from others ..."

This includes when on 9-26-2023, Mr. Parks UTM had Co Preitzler write the Plaintiff up on a phoney Disciplinary Report #1138. To be used for his continuation of deliberate indifference, to force yet another forced PC waiver, which constitutes the continuing pattern of

8.

elder abuse, and cruel and unusual punishment of the Plaintiff to intimidate and terrorize the Plaintiff into forced signing under duress, yet, another PC waiver and stopping the Plaintiff's grievances and court actions. The Hearing Officer CO Snodgrass saw through Mr. Parks attempts and found the Plaintiff "not guilty" of this particular False disciplinary report. (See: Exhibit PL #5 (7 pages))

(C) The implication and proof of Mr. Parks 4TM personal involvement is and was substantiated by CO I Brentzler's transcribed testimony at the DR. Hearing at (page 5): "I/M to R/O: Who told you to put that prisoner in the cell with me? R/O to I/M: Mr. Parks", and the proof that Mr. Parks knew that the Plaintiff had requested and should have been held under the conditions of incarceration as in "Protective Custody", was his reply to the Plaintiff's regarding page 7 of Exhibit PL #4, "...for your safety until you are transferred."

(ii) The proof of personal involvement and that Mr. Meredith's UTS knew that the Plaintiff had requested protective custody and should have been held under the conditions of incarceration as in "Protective Custody" IMPP 20-108 D. Began when the Plaintiff personally advised him of the situation, when he acted and was appointed as my Proxy and represented me at the DR Hearing For Case No: 2872 on 4-24-2023. This was well before the Plaintiff's strangulation on 7-12-2023 and for which Mr. Meredith and Mr. Chapman were the first responders, when the Plaintiff, was forced to protect himself, when I had to make a noisy ruckus, to get attention, to keep from being killed on 7-12-2023.

(iii) The proof that Mr. Chapman's personal involvement and that he knew that the Plaintiff had requested, and should have been held under the conditions of Protective Custody IMPP 20-108 D is: ① was a first responder as mentioned above; ② was given grievance receipts and form 9 receipts and requests to deliver to Unit Team such as: form 9 request dated 5-15-2023 (page 1) of Exhibit PL #4, as well as (page 5) dated 7-15-2023. of Exhibit PL #4; as well as many other form 9's "Inmate Request to Staff Members", see: signed receipts dated 10-6-2023 and 7-15-2023, see: Exhibit PL #3; ③ As well as Mr. Chapman would regularly approach me, laugh and ask me if I was scared straight yet? I was not amuzed.

(iv) In [Doc 70] Filed 9-24-2025 the Defendants have admitted that: ① Andrew Parks was employed at Lansing Correctional Facility

9.

("LCF") as a Unit Team Manager.

② Evan Meredith was employed at LCF as a Unit Team Supervisor; and

③ Bruce Chapman was employed at LCF as a Corrections Supervisor.

Therefore, Mr's Parks, Meridith and Chapman are all managers or supervisors, and per their job duties descriptions all "reasonably should have known (the danger they were putting the Plaintiff in which) would cause others to deprive Plaintiff of their constitutional rights." Schneider v City of Grand Junction Police Dep't.

(F.) Other instantances where Mr's Parks, Meridith, and Chapman had put the Plaintiff in danger was of course when they placed Jeremy Garza (who attempted to murder the Plaintiff by strangulation) in the cell with the Plaintiff, but, also inmate Joshua Weeks. Both were BIBR members, from Pod 5, from the same housing pod, that the Plaintiff was (before seg.) housed and Joshua Weeks was even in the same BIBR group as the Plaintiff. Joshua Weeks and Jeremy Garza was from the same groups that the Plaintiff requested protection from. (see: Exhibit PL #6 (2 pages))

The Plaintiff states a First Amendment retaliation claim, by alleging:

(1) The Plaintiff was engaged in the Constitutionally protected activity:

(A) Regarding a prisoners Constitutional right to Living Condition, medical care and Disciplinary treatment, 8th, 14th Amendment; Kan. Const Bo8 R §9; to be free from cruel and unusual punishment, from continuing imminent danger and the right to actual protection, while being held in Protective Custody. and;

(2) That the defendant's action caused the Plaintiff to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity; (B) When Mr. Park's for a continuing of abuse, failed to provide the Plaintiff with the Living conditions and protection (after being previously strangled) consistent with IMPP 09-107D, 10-114D, 10-122D; (LCF 13,102); IMPP 20-101A, 20-104A, 20-105A, 20-108D, and through the misuse of the disciplinary process and provisions to attempt, to further retaliate, to cover-up and justify his mistreatments and abuses.

(3) That the defendants adverse action was substantially motivated as a response to the Plaintiff's exercise of his constitutionally protected conduct associated with the right to invoke the grievance process and to redress those grievances in the court, for the Plaintiffs right to protection.

10.

This from a continuous on-going, pattern of abuse and mistreatment to force the Plaintiff to sign, yet another PC waiver, which then caused the escalation and was "substantially motivated" factor by : ① On 9-21-2023 the Plaintiff, concerned for his health and safety sent a plea letter; "IE, Emergency Grievance" for help direct to Kansas Governor Laura Kelly. (see: Courts Exhibit F-5, from; "Declaration of Darcie Holthaus; Exhibit F.), because I was getting no help, nor response from the LCF Warden, or EAI, nor from KDOC-SOC regarding my submitted, "Emergency Grievance" and "EAI Incident Statement" (regarding the Plaintiff's strangulation on 7-12-2023), which the Plaintiff submitted on 7-15-2023. ② The Plaintiff then on 9-25-2023, personally requested from the Unit Team - Mr. Park's UTM; to be supplied with the forms necessary to file this 42 U.S.C.S. §1983 civil rights action. Mr. Park's UTM advised me to make the request to the law library. Which the Plaintiff did also on 9-25-2023. (See: Exhibit PL#8). ③ Then on 9-26-2023 Mr. Parks UTM, in retaliation, had Co. Prentzler issue the Plaintiff, yet another phoney Disciplinary Charge #1138 (see: Exhibit PL#5) (For which the Plaintiff was ultimately found "Not Guilty") The Plaintiff asserts this action constitutes deliberate indifference for the Plaintiff's health and safety - failure to protect, by Mr. Andrew Parks UTM.

As such the Plaintiff asserts all the defendants; Parks, Meredith, and Chapman, constituting the Segregation Unit Team as managers and supervisors were all fully aware of the Plaintiff's protected activities of the Plaintiff; through personal interaction on a daily basis, and the fact that all requests, legal mail, etc. go directly too and through the Unit Team and Mr. Parks.

— and also —

II. (1)(A) Prisoners Constitutional right to Access the Courts. 5th, 7th and 6th, 14th and Kan. Const. B of R. §3 to petition the government or any department for the redress of grievance. For which the Plaintiff was litigating; Pro Se, not only this civil rights action, while being denied legal documents and materials, abused, terrorized, tortured and physically injuried by strangulation. But, also the Plaintiff was acting Pro Se in a State Court habeas corpus, under conditions of incarceration violations; for Case No. PN-2024-CV-0009 / LVCO 2022-CV-323.

(2)(B) The State habeas corpus was dismissed as "moot", because the Plaintiff was being denied his legal materials, to adequately defend and litigate the matter. Even after the Plaintiff was transferred out of LCF - Leavenworth Co. to LSCF - Pawnee Co., for the Plaintiff's safety.

11.

(3) This "substantially motivated" factor was the same as for; I (1)(A) & (2)(B), #(3) above.

— and also —

III (1)(A) A prisoners right to due process and equal treatment and protection of the law, and treatment, amenities and living conditions enjoyed by other state prisoners. 5th, 6th, 8th and 14th Amendment. The Plaintiff has a Constitutional right to be free from cruel and unusual punishment and equal treatment and protection of the law, (through all previously cited IMPP's), and for which the State of Kansas has not enforced or provided the Plaintiff the protection provided for violations of K.S.A.19-1919, K.S.A. 21-5416, K.S.A. 21-5417 for mistreatment of a prisoner and an elder person's human and civil rights; and pursuant to provisions provided under: IMPP 20-101 A(1)(B)(2)(3)(4), (C)(1) (D),(E); II (A),(C)(5),(D)(1); III (D),(E),(F)(3)(a); IV (A),(B)(1),(C),(F); V (A), VI (B)(1),(3),(4),(5),(C)(1); and IMPP 20-104 A (Definitions)-Restrictive Housing, (1)classification. Protective Custody (PC) refer to IMPP 20-108 D; II (A),(C)(2); III (F)(1); IV (B)(1); V (C)(1)(a),(b); and IMPP 20-105 A Policy, I(A),(B)(1); (C)(1), III (A)(1)(a), IV (A)(B); VI (B); and IMPP 20-108 D Policy, I (A),(B)(2),(C), (D)(1),(E),(F).

(5)(B) To cover-up this unconstitutional violation of cruel and unusual punishment, and to rapidly get protective custody prisoners out of protective custody (seg.) restrictive housing; The defendants are intentionally torturing, terrorizing, harassing and retaliating against these prisoners (Plaintiff), to a greater extent, than the potential threat of violence, which could have happened to them, back in general population. Thus, forcing through coercion, "under duress" forced signing of a PC waiver. (see: Full explanation under "Causion" pages 2-5 this doc.).

(3) The "substantially motivated" factor, was the same as for; I (1)(A) & (2)(B) #(3) above.

## (4) 8th Amendment failure to protect claim

The Plaintiff has asserted he was denied protection from other prisoners, BIBR members, drug dealers/users at LCF, because of physical threats against the Plaintiff, because of the Plaintiff had been complaining about the excessive (ETS) tobacco and drug smoke at LCF.

1) The Plaintiff has shown that he was placed in restrictive housing under protective custody, "because he requested it."; on 3-27-2023, proof through

12.

the "Declaration of Nicolaus Ball" (Exhibit PL#2) & (Exhibit PL#3) (see: page 7 of this doc. at I (A)(B))

2.) The Plaintiff has shown that inmates, Joshua Weeks, was a BIBR member/ drug user/dealer and was put in the same cell with the Plaintiff. As well the Plaintiff asserts was inmate, Jeremy Garza, who strangled the Plaintiff in the cell on 7-12-2023 (See: Exhibit PL#6 on (page 10) this doc.)

3.) The Plaintiff asserts both, Joshua Weeks and Jeremy Garza, had been placed in segregation for disciplinary reasons and should not have been housed with the Plaintiff. As this was a violation of Protective Custody IMPP 20-108D, "adjunct" modified housing provision, and they were both placed (at different times) in the same cell with the Plaintiff, by the LCF, Unit Team, Mr. Parks UTM, Mr. Meredith UTS, and Co Chapman C.o.S.

4.) The Plaintiff asserts he was entitled to actual protective custody conditions and to be protected from these individuals, because of the threats of violence, by these groups, and because of and through their disciplinary course of violation pursuant to: (a) "KAR 44-12-306 Threatening or intimidation of any person.", (b) "KAR 44-12-903 Tobacco Contraband", (c). KAR 44-12-311 "No inmate shall at any time be drunk, intoxicated, or be in a chemically induced state of altered consciousness;" (d). "KAR 44-12-312(a) No inmate shall take into the bodily system any kind of substance that is capable of producing intoxication, ..." (e). "IMPP 09-107D I (A) The use or possession of all tobacco or tobacco related products by any person is prohibited on property under the supervision and control of the Secretary..."

5.) The Plaintiff has shown through: Exhibit PL#9, that on 7-12-2023 the Plaintiff was physically assaulted and strangled by his cell-mate (who at that time was Jeremy Garza) and was then transported by ambulance to the KU Hospital Emergency for his throat/neck/ and back injuries.

6.) Further considering all other previously cited material regarding LCF Unit Team.

7.) Thus the Plaintiff has shown and proven he was denied and the defendants Andrew Parks UTM, Evan Meredith UTS, and Bruce Chapman C.S. have failed to protect in violation of the Plaintiff's 8th Amendment right to be free from cruel and unusual punishments.

"(1) 8th Amendment claim for failure to provide medical care."

13.

The Plaintiff has asserted he was denied timely Emergency Medical care by the Defendants; Andrew Parks, Evan Meredith, and Bruce Chapman, after he was strangled by his cellmate Jeremy Garza on 7-12-2023 at (LCF) Lansing Correctional Facility. As proof of this deliberate indifference of the health and safety of the Plaintiff by the LCF restrictive housing Unit Team. The Plaintiff submits the following:

A) On 7-12-2023 when the Plaintiff was strangled, he was suppose to be and which has been previously established on (page 7 at I (A)(B) this doc.), that he was being housed under Protective custody. Therefore entitled to protection from physical injury.

B) Pursuant to: Centurion; Nurse Visit; on 7-12-2023 at 12:04 PM, Bobby White (#76983), now (2000046191) (see: Exhibit PL#9 (4 pages)

1. Reason for visit: "Emergency Response"

2. Statement of complaint: "came in reporting that he was choked by his cellmate around 10:00 AM".

3. Location of incident: "in cell"

4. Is patient greater than 65 years of age: "Yes"

5. Description of incident per patient: "cellmate decided to choke him and he does not know if he had other marks than the neck due to he was fighting him off."

Objective:

6.) Last Meal: (etc): tried eating lunch but, was only able to take 1 bite, due to throat hurt to swallow.

7. Trauma: "Neck Trauma, Redness, Abrasions/lacerations, Hoarseness

Plan:

Emergency Room transfer - documentation completed (see: Exhibit PL#10)

Depart Date/time: 12

Type of Transport: ...: EMS to KU.

Additional notes: "pt walked into clinic, with the help of a cane."

The Plaintiff has alleged that Evan Meredith and Bruce Chapman, were the first responders for my calls/plea for help, when strangled. Both refused to seperate me from Garza until I agreed to sign a PC waiver. Plus they both refused to call for me medical help or to allow me to go to medical. After; the Plaintiff sat in a holding cell for approx. 1½ hours., until he was seen by Mr. Parks UM, who

14.

processed the Plaintiff, back to general population. Where, after approx. two hours after being strangled, and after Mr. Park's also refused to call medical for me or allow me to go to medical. The plaintiff walked himself to the clinic. Where the clinic recognized the emergency and sent me to the KU emergency as a "life threatening emergency" (See Exhibit PL#10) by ambulance.

• Pursuant to : IMPP 10-114D "I (A) The Facility health authority shall ensure 24 hour availability of consultation, advise and emergency medical ... (c) All medical, dental, and behavioral health emergency shall be triaged immediately and any necessary treatment provided. II (A) Per IMPP 07-104b, the facility health authority, in cooperation with the warden/supperintendent and training officer/coordinator, shall establish a program for training all health care staff, corrections officers, unit team and other personnel as specified by the warden/superintendent to respond to health related emergencies within a four (4) minute response time. 1) The training program for all personnel designated for the emergency response shall include at least the following:
(a) Recognition of signs and symptoms in potential emergency situations and knowledge of action required for each;
(d) Methods of obtaining assistance;
(f) Security procedures for transfer of offenders to appropriate medical facilities or other health care providers. (OAG 000260)
This (4) four minute response requirement is set out under the Policy Statement. (OAG 000259) and IMPP 10-122D XII (A), (D)(i)(a)(c), (E).

• Under LCF 13,102 Policy: Offenders shall be provided with unimpeded access to medical services ... or the twenty four hour per day availability of emergency sick call. IV (A)(1) Any employee who has reason to believe an offender is in need of emergency care shall immediately notify the medical staff (4) Restrictive housing emergencies shall follow the same guidelines as general population. (OAG000289)

• General Health Services Policy and Procedure :
(c)(i) Unreasonable barriers will be avoided to include, but not limited to:
(a) Punishing a patient for seeking care for their serious health needs. (OAG 000292)


As can be clearly seen by the medical records, the restrictive housing Unit Team defendants, Parks, Meredith and Chapman. All

15.

with deliberate indifference to the Plaintiff's pain and suffering. Failed to provide the Plaintiff with emergency medical care, for his injuries caused by assault and strangulation, required in the four-minute response time. But in actuality they provided no care or help at all. Injuries for which the LCF clinic medical professionals immediately recognized and rushed by ambulance to the KU Hospital for care, and in which Physician Kalma determined was "the patients condition is extremely life threatening" to require emergency transport by ambulance. (See: Exhibit PL#10).

The Plaintiff requests the Court to allow this 16 page "Motion for Summary Judge to proceed for consideration (if over the 15 page limit), because of the Plaintiff inexperience, need to hand write the motion, the subject matter of pleading against three defendants and because of the large volume of information I had to chose whether to include or leave out.

The Plaintiff prays the Court to grant and award him the relief, he has requested and/or the opportunity to plead my cause and case before a jury at trial.

Respectfully Submitted;    Bobby White #2000046191
Dated: 3-23-2026                          Pro Se.

Bobby White #2000046191
Larned State Correctional Facility
1318 KS., Highway 264
Larned, Kansas 67550

16.

## Declaration and Affirmation

The Plaintiff, Bobby White, Pro Se affirms under penalty of perjury, that the aforementioned "Motion for Summary Judgement Against Defendants: Andrew Parks, Evan Meredith, and Bruce Chapman, was made in good-faith, and is true and correct per my own memory, notes, records, Knowledge, and ability.

Respectfully Submitted;    by / Bobby White #2000046191

Dated: 3-23-2026                              Pro Se

## CERTIFICATE OF SERVICE

The undersigned hereby certifies a true copy of this; "Motion for Summary Judgement against Defendants: Andrew Parks, Evan Meredith, and Bruce Chapman", and (34 page) Exhibits PL#1 through PL#10; was served via, U.S. Mail, 1st Class, postage prepaid, on this 26th day of March 2026 to:

1) Kris W. Kobach, Kansas Attorney General, C/o Matthew L. Shoger, and Scott G. Nading, Office of the Attorney General, 120 S.W. 10th Ave., 2nd Floor, Topeka, Kansas 66612-1597

and

2) E-Filed to the U.S. District Court Clerk on 3-23-2026

Dated: 3-23-2036                    by / Bobby White #2000046191

                                        Pro Se.

Bobby White #1000046191
Larned State Correctional Facility
1318 Ks., Highway 264
Larned, Kansas 67550

(i)