DEFENDANT'S
EXHIBIT

H

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOBBY BRUCE WHITE,                                   )
                                                     )
            Plaintiff,                               )
                                                     )
v.                                                   )      Case No. 24-3023-DDC-RES
                                                     )
ANDREW PARKS, et al.,                                )
                                                     )
            Defendants.                              )
                                                     )

_Plaintiff's Response to:_

**DEFENDANTS' FIRST SET OF INTERROGATORIES TO PLAINTIFF**

Under Fed. R. Civ. P. 33, Defendants Andrew Parks, Evan Meredith, and Bruce Chapman

("Defendants") submit the following interrogatories to Plaintiff:

**Interrogatory No. 1**

What evidence do you have to support the allegation that Plaintiff requested protection by

Defendant Chapman from Plaintiff's cellmate, J. Garza, before the alleged altercation on July 12,

2023?

Plaintiff's Response.

1. (a) Defendants "Declaration of Nicolaus Ball" at ("#2) Plaintiff Bobby White (#200004191) was placed in protective custody at LCF, because he requested it."

(b) Protective Custody was requested by the Plaintiff on 3-27-2023, from Lt. Jewell. (see: Report Number 01-23-1875 dated ; 3-28-2023, and also by Form 9 to LCF Captain on 3-27-2023 (see: Form 9 receipt) (Form 9 never returned)

(c) Also through rough notes of "Event Statement" and "Emergency Grievance" submitted 7-14-2023, regarding events leading up to and including the strangulation on 7-12-2023 and afterwards. First, a Form 9 was given to Defendant Chapman to have the documents picked up by EAI. They were never picked up, so the documents were given to the Evening Shift Officer Gordon, to be taken direct to the EAI / captains office on 7-15-2023.

(d) EAI Tomlinson audio interview of the Plaintiff on 10-2-2023.

(e) Defendant Chapmans'- Position (Job) Description.

(f) Numerous Form 9 request to be released from seg. but requiring a PC Waiver.

1 of 2

(g) Defendant Chapman never gave any response or answer to the Plaintiff's Request For Admissions under Fed. R. Civ. P. 36, therefor pursuant to : Fed. R. Civ P. 36(a)(3) "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or its attorney.

Bobby White

(1a)

IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

BOBBY BRUCE WHITE,                    )
                                      )
        Plaintiff,                    )
                                      )
v.                                    )        Case No. 24-3023-DDC-RES
                                      )
ANDREW PARKS, *et al.*,               )
                                      )
        Defendants.                   )
                                      )

## DECLARATION OF NICOLAUS BALL

I, Nicolaus Ball, being of lawful age, make the following declaration, pursuant to 28 U.S.C. § 1746, relating to the above captioned matter based upon my personal knowledge and information made known to me from official records reasonably relied upon by me in the course of my employment.

1.  I am currently the Deputy Warden of Operations at Lansing Correctional Facility (LCF) for the Kansas Department of Corrections (KDOC).

2.  Plaintiff Bobby Bruce White (#2000046191) was placed in protective custody at LCF because he requested it.

3.  KDOC is not aware of any threats to Plaintiff's safety. When KDOC identifies a threat to an inmate's safety, KDOC internally issues what is called a "central monitor" to assist in monitoring and counteracting that potential threat. Plaintiff does not have any central monitors with KDOC.

4.  Plaintiff could be housed in managed movement, which would keep him separated from other inmates during any stay at LCF.

Page 1 of 2

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct.

Executed on January _28_, 2026.

Nicolaus Ball
LCF Deputy Warden of Operations
Kansas Department of Corrections

## CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January, 2026, I electronically filed the foregoing with the Court using the CM/ECF system, which sent a notice of electronic filing to all counsel of record, and that a copy was sent to Plaintiffs *pro se* by ordinary mail addressed to:

Bobby Bruce White #76983
Larned State Correctional Facility
1318 KS Highway 264
Larned, KS 67500-9304


/s/Scott G. Nading
Scott G. Nading
Assistant Attorney General

F2201A

Attachment A, IMPP 12-139D
Effective 04-30-23

## KANSAS DEPARTMENT OF CORRECTIONS
## LEGAL, OFFICIAL, PRIVILEGED MAIL DELIVERY FORM

**SECTION A: This section is to be filled out by mail room staff (please print):**

Staff Name: Juanita Karlowsky          Signature: _Juanita Karlsey_          Date: 2/3/2026

Resident Name: WHITE, BOBBY, BRUCE          Athena Number: 2000046191

Sender's Name: Attorney General - Kris Kobach

Sender's Address: 120 SW 10th Ave.  Topeka KS 66612

**SECTION B: Inspection and clearance by designated staff (please print):**

Clear For Processing: YES ___x___   NO _____

Staff Name: Juanita Karlowsky          Signature: _Juanita Karlsey_          Date: 2/3/2026

**SECTION C: To be filled out by Delivering Staff (please print):**

Staff Name:_____          Rank/Position:_____

Staff Signature:_____          Date: _2-3-26_

**SECTION D: Resident Acknowledgement (please print):**

Please respond "Yes"or "No" to the statement below:
_Yes_ Quality of photocopy is acceptable.    _Yes._ I am accepting my legal, official, privileged mail.

Resident Signature: _Bobby White_          Date: _2-3-2026_

**SECTION E: To be filled out by Witnessing Staff if Resident refuses to sign Section D (please print):**

Staff Name as Witness (please print):_____
Staff Signature as Witness:_____
Noted Concerns:_____

8261



**ATTORNEY GENERAL**
**KRIS W. KOBACH**
MEMORIAL HALL
120 SW 10TH AVE., 2ND FLOOR
TOPEKA, KS 66612-1597



KANSAS CITY   640

31 JAN 2026   PM 5   L

F20A

Bobby Bruce White # 2000046191

Larned State Correctional Facility

1318 KS Highway 264

Larned. KS 67500-9304

67550-535318

LCMHF
MAILROOM

CONFIDENTIAL
RECEIVED
FEB 3 2026



*EXHIBIT*

Attachment B, IMPP 20-105A
Effective 05-13-22

## Kansas Department of Corrections
## Administrative Restrictive Housing Report

TO: _____S.O.C_____   Report Number: **01-23-1875** _____

FROM: ___Lansing Correctional Facility____

Date This Report Filed _____3-28-23_____   Time of Report ___0624__ ☒ a.m. ☐ p.m.

Date of Restrictive Housing Placement __3-28-23__   Time of Placement _0634_ ☐ a.m. ☐ p.m.

| | Reason(s) for Restrictive Housing (including Rule No. and Title) |
|---|---|
| Resident Name: **White**          #76983 | |
| Moved from Cell: **B5-103** ___ to Restrictive Housing Cell #: __A2-206__ | IMPP 20-104A ; III. C. Pre-Hearing Detention |
| ☒ Pre-Restrictive Housing hearing conducted | |
| ☐ Pre-Restrictive hearing NOT conducted (Explain | IMPP Choose an item. |

Facts:

Inmate White #76983 is being placed in restrictive housing for refusing to move to B8. Inmate previously tried going PC from staff. Inmate was seen by medical prior to placement. Inmate was not present when property was packed.

☐ This placement is an Involuntary Protective Custody due to PREA Concerns (respond to next two (2) sections)

What is the basis for the facility's concern for the resident's safety?

NA

What is the reason no alternative means of separation can be arranged?

NA

Lt. Jewell

_____ 3-28-23          Approved By: _/f. Jewell_____ 3-28-23
Signature and Title of Reporting Officer   Date      Shift Supervisor or Restrictive Housing Unit Mgr.   Date

                                                                                                3-28-23
                                                        _____
                                                        Warden Authorization (if needed)        Date

**********************************************************************************************************

ACKNOWLEDGMENT:

I received a copy of this report on:   Date _3-28-23____     Time _0634_ ☒ a.m. ☐ p.m.

_Refused to sign_____              _Lt. Jewell_____
Resident Signature and Number        #              Staff Witness and Title

Record this Document in Imaging
Original to Master File
Copy to: Warden
         Resident
         PCM



Not complete (and close)

(only) Attention "EAI" Event Statement

**KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM**

**INMATE COMPLAINT** "EMERGENCY GRIEVANCE"

Inmate's Name Bobby White                     Number 76983

Facility LCF          Housing Unit A1-119          Work Detail Retired

**NATURE OF COMPLAINT** BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMEN-TATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member). On Thursday 7-12-2023 (other cell 119 prisoner) Jeremy Garza came back after a medical visit; he immediately became irate and accussed me of eating one of "HIS" food trays, and claiming there was no meat on the one tray, which there was. He said when he came back, OIC Chapman told him he gave cell 119 two trays. Which he did, one for Garza and one for me. He then proceeded into a tantrum, yelling for OIC Chapman. Then he started complaining about what I was watching on my TV and demanded I change the channel to watch "Real housewives" reality show. For which I refused. He then stated he was going to break my TV. He had already previous broken the antenna on my radio, and would not keep his hands off my property. Then after the cell lights went off. I turned the TV off and tried to sleep. When I refused to allow him to watch my TV, while I was trying (over)

Date this report was given to Unit Team for informal resolution (to be completed by inmate). 7-14-2023

Page 1

**UNIT TEAM RESPONSE** (Complete and return to inmate within 10 calendar days.)

_____          _____
Unit Team Signature                                        Date

**INMATE RESPONSE** (Complete and return to Unit Team within 3 calendar days)

_____ I am satisfied with the Unit Team response and wish to withdraw my formal grievance.

_____ I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff). _____

_____          _____
Inmate Signature                                          Date

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Tear off and give to inmate when submitted to Warden through Unit Team.

Inmate Name _____          Number _____

Unit Team Staff Signature _____          Date _____

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

"Emergency Grievance" Attention EAI - "Event Statement"

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name Bobby White          Number 76983

Receiving Staff Signature OFFICER GORDON SIGNED FOR AND TOOK ORIGINAL   Date 7-14-2023   EAI
EVENING SHIFT   to Captain's Office for OFFICER BAXTER   7-15

Effective Date (3-18-96) P-157 Assault and battery by Jeremy Garza and failure to protect by A1 Unit Team, Mr. Parks, Mr. Meredith, OIC Chapman

denial to medical aid

"EMERGENCY GRIEVANCE" "Every step" (continued)

to sleep (Mr. Garza has a routine of staying up all night, intentionally making noise, to keep me awake, then sleeps all day) continually to talk starting; he promised to destroy my TV, before he was moved out of the cell. I then told him this room mate situation wasn't working and I had-had enough. I would speak to Mr. Parks, UTM in the morning about moving one of us. Mr. Garza then proceeded all night to thump on the desk, scrap the chair across the floor, yell out the door etc.

Earlier that same evening around 9:00 P.M., when it should have been count time, Mr. Garza sat on the floor, with the bean hole open, and talked the Evening OIC into letting him come out to shower (it was not our day to shower) and use the phone. I asked the officer to please let the first shift know, that I had not been allowed to shower. He said he'd only mark down Garza as showering.

But, the next morning 7-13-2023, I heard the officer asking other cells, if they wanted to shower, but skipping past cell 119. I set the call light, but, could not get the officers to respond or answer. I was desperate at that point because I also needed to speak with Mr. Parks, UTM. for help. Finally an officer did come to the cell with the pill nurse, to deliver my new card of Med for min KOA's. I asked the officer when I would be allowed out to shower and that I needed to speak with Mr. Parks. He said 119 had showered last night and Mr. Parks wasn't here. I told him I had not been allowed to shower only GARZA and I needed to see some one in authority. He said he'd tell Mr. Meredith and walked off. I then kept restarting the call light, but they all continued to ignore it. I had been trying to see the Unit Team and specifically Mr. Parks for over three weeks. GARZA laughed and said; "they don't care about your ass". I then became frustrated and started making noise, hitting the door. That's seem to be the only way they'll respond. This is the very reason why people die in this prison cell, from the deliberate indifference.

When I started making noise hitting the door Mr. Garza, then got up in my face threatening to kill me, and again threatening to break my TV. I then went to the far wall and again re-started the call light. When I turned around GARZA advanced on me and pushed me down to the floor, and told me; "I told you I promised to break your TV, if you went to the Unit Team." He turned toward my TV and I got up and between him and my TV. He then grabbed me by the throat and pushing me back onto the bunk. I clawed at his hand on my throat and tried to maneuver myself between him and my TV. I struck at him somewhere in his facial area (I couldn't see well) and hit his arm, finally breaking his grip on my throat. I pushed him back, grabbed my cane and he backed off toward the table and I started hitting the door with my cane requesting help. Finally Mr. Meredith came to my door and I told him I needed help, but he only said; "We offered you a PC waiver." I told him OK I'll sign a PC Waiver, but, I need help. He then left and came back with a PC waiver, which I signed, stating clearly "Under Duress, because of being attacked by cell mate" (something like that). Then Mr. Meredith CC left.

A while later OIC Chapman came to the door and ordered me to cuff-up (but did not address Garza), while I was in the process of taking down my TV and storing it for safety deep in my property box. OIC Chapman kept yelling for me to come to the door to cuff up (but not Garza who was still standing by the table/door. I kept telling him I would, but I wasn't going to allow Garza access to my TV and property. So, I kept packing my property for safety. OIC Chapman then finally cuffed Garza, and I had finished and allowed Chapman to cuff me up. We were then taking

"EMERGENCY GRIEVANCE"

and placed in separate cages in the front of the Unit. I had pleaded with OIC Chapman while he was cuffing me up and on the way to the front cages that I was hurt and needed to see medical, but he refused to call them or give me access ignoring my request even though he should have been able to clearly see the bruises and marks on my neck. I told him Garza had the key. He merely said since no one witnessed the incident, we were both to blame. This was before he even questioned either one of us and ignoring the fact that Mr. Garza was a convicted drug dealer/user and I was suppose to be in protective custody from them.

Later, when I was taken in to see Mr. Parks, I also pleaded with him that I needed to see medical, because it hurt to swallow and other body pain. But, he also, denied me medical help, choosing to attempt to cover-up the incident, for which I have previously warned was going to/or "is" al to happen, from Mr. Parks continuing to put these people in the cell with me. This was "not" the first time I was injured by out of control addicts. Mr. Parks only interest was that I had signed a PC Waiver (under duress) and he was moving me to B6-109. Where an officer escorted me and my property still denying me the opportunity to see medical.

When we got to B6-109, we found the cell was already full and they were out to lunch. When I first came into Unit B6, I was approached by several friends, who all advised me, that I wouldn't be liking that cell because it was full of drug and tobacco smokers. (Again denying me protection.) But, the officer went ahead and put my property in cell 109 closed the door and left. I again went and told the B6 Unit Officer I needed to see medical. She advised me I needed to put in a sick call. I told her "No" I needed to see them now, I could hardly speak and I showed her the scraps and bruises on my neck. She then called medical and I was sent to see them. It seem medical nor Officer Baxter who came to the clinic to see me knew anything about me being hurt.

Officer Baxter wondered why an alert had not been called or him notified (while we spoke) and I have no idea. other than A1 - Unit Team and OIC were attempting to cover-up the incident and their responsible. I had asked Mr. Parks during a similar prior incident to see the Captain and he told me he was a Captain and the only one I was going to see. So he has therefore accepted responsibility for my physical injuries and denial to protect and medical care.

I was then taken by ambulance to the KU Hospital for examination and care. Yet, when I arrived back at LCF, I was again placed in restrictive housing, back in cell A1-179, and now being denied all (my previously given property, TV etc.) even all my legal papers paper, stamps, envelopes hygiene etc.

(over)

Page 3

Copy,

## ~~KANSAS DEPARTMENT OF CORRECTIONS INMATE GRIEVANCE FORM~~

~~INMATE COMPLAINT~~

Inmate's Name _____ Number _____

Facility _____ Housing Unit _____ Work Detail _____

~~NATURE OF COMPLAINT~~ ~~BE SPECIFIC. (Include names, dates, places, rules, regulation, etc.; how you have been affected and action you believe the Warden should take.) Use additional paper if necessary. ATTACH DOCUMENTATION OF ATTEMPTS AT INFORMAL RESOLUTION PRIOR TO FILING THIS FORMAL GRIEVANCE (i.e. Form 9s or other correspondence and response from staff member).~~ I have previously submitted another "Emergency Grievance" to Warden Greither, S.O.C. Jeff Zmudu and the Leavenworth County District Court Case No. 22-CV-323, which has never been answered or acknowledged regarding Mrs. Parks and the A1 Unit Team members, putting my life in danger by continuing to place drug dealers and drug users (addicts) and tobacco smokers in the same cell as I. This while I'm supposedly being held in Protective Custody against those very same people.

_____ I request the LCF Warden Greither and S.O.C. Jeff Zmuda, to:

~~Date this report was given to Unit Team for informal resolution (to be completed by inmate).~~ _____

1.) Make an example of Mr. Jeremy Garza, by requesting the Leavenworth District ~~UNIT TEAM RESPONSE~~ Attorney to file charges against Mr. Garza for at the ~~(Complete and return to inmate within 10 calendar days.)~~ minimum assault and battery of an elder person (or maximum charge of attempted murder of an elder person with restitution for cost of White's medical care and court costs.

2.) Central Monitor placed against B1B2 staff and A1 Unit Team members named in this grievance for Bobby White #76983. (This was requested in prior grievance)

3.) The immediate transfer of White out of LCF to Winfield minimum security facility for needed medical care (currently being repeatedly put off) / with the recommendation that the Court; That White be given an immediate ~~Unit Team Signature~~ ~~Date~~ release from KDOC custody for LVCO-12-323, along with the issuance of the ~~INMATE RESPONSE~~ ~~(Complete and return to Unit Team within 3 calendar days)~~ $15.00 check which has been requested to be issued (6 times now) made payable ~~I am satisfied with the Unit Team response and wish to withdraw my formal grievance.~~ to the Shawnee County Sheriff, and sent to the Leavenworth County District ~~I am not satisfied with the Unit Team response, and wish to forward to the Warden's office. (This must be done~~ ~~within 3 calendar days.) Date forwarded to Warden's Office (to be completed by staff)~~ _____ Court / or the summission of a waiver of service.

~~Inmate Signature~~ Respectfully Submitted, Bobby White #76983 ~~Date~~ 7-14-2023

~~WARDEN RESPONSE~~ ~~(Complete, attach response and return within 10 Working days.)~~

~~Date Received~~ _____ ~~Date of Final Answer~~ _____ ~~Date Returned to Inmate~~ _____

Page 4.

~~Inmate's Signature~~ _____ ~~Date~~ ~~Unit Team Signature~~ _____ ~~Date~~
~~If dissatisfied with this response, the inmate may appeal to the Secretary of Corrections within three (3) calendar days of receipt of this decision from the Warden.~~

~~TO BE COMPLETED BY STAFF ONLY~~

Grievance Serial Number _____

Type of Complaint (Item 4: Code 01-75) _____

Cause of Complaint (Item 5: Code 01-30) _____

Type of Response (Item 6a: Code 01,02,08 or 09) _____

Received my ... than team signed to me ... recommended to me ... I appeal this "Emergency Grievance" direct to LCF Warden for the second time, because the Unit Team response is not accurate, nor does it address the issues and makes false conclusions. This "Emergency Grievance" was not answered or returned in the required 10 working or calendar days or expedited at every level as required by ...

2. The Unit Team does not consider that I was being held in restrictive custody in A1 at the time of the assault by Jeremy Garza under protective custody for, (at that time for already) 106 days, for protection from B1BR staff and drug users and dealers. I was not being held in general population, so the "two or four man room facility" does not apply to some-one who was suppose to be under protection from the very individuals I was suppose to be protected. To deny protection and to intentionally and wantonly put the individuals in the same cell shows deliberate indifference by the Unit Team, Mr. Parks UTM and shows the intent to harass me into signing a PC waiver, through intimidation. There are many individuals at this facility in cells by themselves.

3. The Unit Team response does not say who has accused me or saw me raising my cane in the air as to hit "your roommate". First, if as you claim I am using my cane as a weapon twice, the LCF officers and staff are therefore neglect and not doing their job by allowing me to continue to have my cane. Because I still have it and have never used it as a weapon. I was using it to cause a racket by hitting the door, because I can't kick the door as other prisoners, the unit officers do not answer the call light and I needed help, because I'm 71 years old, disabled and Jeremy Garza was strangling me and trying to kill me. That is an "Emergency".

4. I did not voluntarily live with any "addict" for months, as you have pointed out, the Unit Team and LCF officials, believe they can arbitrarily and capriciously put anyone they want in the cell with you, even while you are under protective custody, just because this is a two or four man facility. I have no control who is put in with me, I am a prisoner. I can not protect myself and must rely on the LCF and State officials. I am dependent on the State and Courts for protection of the elderly. K.S.A. Supp. 21-5417(a),(1),(A),(3),(e),(3), I can not make contracts or volunteer for anything which may risk my health or safety. Any other such voluntary actions are only being made by and/or under duress, threats and coercion from the LCF/KDOC officials.

5. This facility is suppose to be drug, alcohol and tobacco free pursuant to State and Federal Law. The LCF/KDOC officials are neglect because drugs are rampant here at LCF and they are allowing drug users and dealers and gangs, to threaten and attack non-using prisoners and the

elderly, who have had enough abuse and can not take the second hand environmentally harmful smoke and out of control addicts, that are place in the same cell. If the tobacco and drugs can not be or the officials continue to deny the problem, then the KDOC/LCF officials must designate a pod strictly for non-smoking-non drug using prisoners. (There is one for workers, Tru and B1BR, why not the elderly and non drug users?)

6. The Unit Team claims, I've shown no wrong doing. But, I've requested a central moniter placed on Jeremy Garza and B1BR staff, but still Jeremy Garza was after the attack allowed day room, while I was locked down, and access to come up to my door for intimidation.

(a) I claim Mr. Garza threatened to kill me, and break my TV and then he acted on this, to strangling me, causing me to be taken to the Hospital, I asked for charges to be filed and central moniter. There is wrong when someone puts their hands on you and you are an elder person.

(b) I claimed I asked OIC Chapman and Mr. Parks UTM, that I was hurt and needed to go to medical, but was denied. But, no troubled call was given, nor was medical called at the time, because OIC Chapman and Mr. Meredith CC was trying to cover-up the incident, because I had already warned the Unit Team, that this was likely to occur in a previously submitted "Emergency Grievance" on 6-10-2023, which was also filed with the court in LVCO 22-CV-323.

(c) Mr. Meredith CC refused to help me when I called for help until I agreed to sign a PC waiver, which I did, but also added done under duress, because I was under attack by other prisoner in cell.

All this is not only wrong, it's criminal on the part of these KDOC/LCF officials. The KDOC claims to support victims, but, then continues to allow the victimication of their older, weaker prisoners, by gangs and drug addict, users.

I still request the LCF Warden to give White the relief he's originally requested.

Thank You.

7. The Unit Team has not considered a previously ~~not mentions~~ submitted "Emergency Grievance" mailed and filed with the Leavenworth District Court Case LVCO 22-CV-323 and to S.O.C. Jeff Zmuda on 6-10-2023, which has not been answered or returned, warning I was likely to be hurt if the A1 Unit Team continued to try to intimidate me into signing a PC waiver, by putting ~~violent~~ drug addicts in with me.

(2)X

On 7-12-2023 I was assaulted, battered, strangled by Jeremy Garza, in cell A1-119, who Mr. Parks UTM took responsibility for putting in the same cell with me, while I was suppose to be being held under protective custody, after I had complained to Mr. Parks that he was putting my life in danger by putting these people in the cell with me, that I was suppose to be protected from. I was then moved out of A1 and had my property taken to B6, while at the same time denied by Mr. Meredith CC, Mr. Parks UTM and OIC Chapman to go to, or be seen by medical for my injuries. After I was moved to B6, I was finally allowed to go to medical who knew nothing of the attack, and rushed me by ambulance to KU Hospital. When I was returned back to LCF from the Hospital, the EA1 officers at the LCF while checking, who, I was told, was speaking to Mr. Park UTM on the phone, told me they were going to put me back in A1 protective custody, in a cell by myself, instead of B6. I was told by these EA1 officers that they were speaking to Mr. Parks UTM on the phone, and he agreed I would be held in a cell by myself.

But, every day after, (as long as there wasn't already some one else placed in the cell with me) I been harassed and taunted by the Unit Officers, lead by OIC Chapman, that they needed to put some one in the cell with me. I told Ms. Hall UTS personally in her office on 8-16-23, that I was not going to agree for them to put anyone else in the same cell with me, but after we were moved from A1 to A14, I was again coerced, harassed and had another individual put in the cell with me. I clearly and plainly told Ms. Hall UTS; if the LCF official/staff were going to deny me protection, they may as well move me back to general population. My legal, civil and human rights are being daily violated, which include but not limited too;

(a) I asked for a central monitor to be placed on Jeremy Garza, but he has been allowed day room and access to my door.

(b) I have been denied my shower shoes, stamps, TV, legal paper and other of my property that I previously had in my property before it was taken to B6 and left by the LCF officers.

(c) I resubmitted (2) two "Emergency Grievances" (and incident report) to EA1 officer Baxter, Warden Geither and OIC Jeff Zmudy on 7-15-2023 and 6-10-2023, that has never been answered and returned. The 6-10 being about putting my life in danger by putting drug addicts in the cell with me, and the 7-15 about me being assaulted, battered and strangled ...

(d). I've been denied a transfer out of LCF to another facility for my protection.

(e). I've been held in seg. under disciplinary seg. conditions now as of 8-25-2023 for 150 days, (5 months), lock down 24 hours a day, denied property, day room, yard, and without any seg review ~~on any term~~.

(f.) I've been denied OSR status by the LCF Unit Team and any long term housing plan.

(g.) I'm being denied medical care, hygiene and indigent status. clothes, and book from the library.

(h.) I'm being denied State pay and canteen or job.

(i.) I'm being denied ~~any~~ any kind of actual protection.

(j.) I'm been harassed by ofc chapman constantly, about why I'm still here?, and he's going to put other violent prisoners in with me.

(K.) I've submitted numerous form 9's, grievance and made many personal request for assistance which have all gone unanswered and unreturned

X I request an immediate transfer out of LCF for my personal safety to another facility, back to general population.

8-23-2023.

2.

Appeal of Grievance submitted on 8-23-2023 for Warden's Response

I appeal the Unit Team/UTM Frontelth 33 Response, as inaccurate facts and conclusions, makes false conclusions and facts and fails to properly investigate and take responsibility for unprofessional and perhaps illegal acts and continues to denial White protection and humane conditions of incarceration, taking consideration for White's age and disabilities and dependency as a dependent of the State of Kansas and KDOC in violation of K.S.A. 21-5417(a) mistreatment of a dependent adult or an elder person is knowingly committing one or more of the following acts

1.) Infliction of physical injury, unreasonable confinement, or unreasonable punishment upon a dependent adult or elder person.

(A) Undue influence, coercion, harassment, duress, deception, false representation false pretense, or without adequate consideration to such dependent adult or elder person.

(3) Omission or depreciation of treatment, goods, services that are necessary to maintain physical or mental health of such dependent adult or elder person.

(e)(3) "Elder person" means a person 60 years of age or older.

White is 71 years old, with physical disabilities dependent on the state of Kansas and KDOC for his, health, safety, humane treatment and very life. The KDOC and LCF officials have knowingly and wantantly violation every one of these acts in its treatment of unreasonable confinement and punishment ~~others~~ of White while he's been repeatedly and constantly requesting help and protection from the illegal actions of others (BIBA staff, drug addicts and drug dealers) and which has resulted in White's physical injuries, by strangulation and need for transfer by ambulance and hospitalization.

the Unit Team's Response is wrong because, "I was under duress to sign the PC waiver to get help, from the assault by Mr. Garza, I did not request it. Mr. Meredith CC refused to help me unless I did, which I also wrote "under duress, because of being attacked by other prisoner in the cell (Mr. Garza).

(b) I did indeed request multiple times to ~~tell~~ all three officials, Mr. Parks UTM, OIC Chapman and Mr. Meredith CC that I needed medical help. I even questioned OIC Chapman why he was denying me medical help, and Mr. Parks said I could go to medical after I was moved to B6.

(c) I shouldn't have needed to ask for medical help, after I clearly told all three that I was hurt and Mr. Garza had strangled me. The marks on my neck could be plainly seen and was photographed at

the KU Hospital.

This is all a showing of wrong by white and the only part of the situation that I was a part of in the incident was as a victim of a felony criminal physical attack, of attempted murder and victim of physical and mental abuse because of Whites condition of unreasonable incarceration and punishment, when he has done nothing wrong, except request help and protection.

As I've clearly explain in the Appeal to Warden of the "Emergency Grievance" original submitted on 7-14-2023 and was also returned at the time of this grievance and mentioned by the Unit Team, I've explained I was in PC (restrictive house) because EAI, put me here and was told when they brought me back from the Hospital, they were putting me back in PC for my protection, because of the assault and I was to be placed in a cell by myself. But, they AI-New AY Unit Team continues to put other prisoners in with me in violation of the EAI directive. Thus continuing to deny me any real protection, but with only continuing unreasonable confinement and punishment.

I again request the LCF Warden and more Jeff Zmudu give White the relief and request White has made in this original grievance and to include the relief White requested in the "Emergency Grievance" original submitted on 7-14-2023.

Respectfully submitted,

Thank you and God Bless,

Tylly White 2023

1s, Hall finally came by and      Please sign and return this receipt. Thank You.    I asked several
and now she never                                                                    officers to as.
received the papers.                                                                 Ms. Hall, they sa
that I had to give to Officer CSI  **INMATE REQUEST TO STAFF MEMBER**               they would, but
because Ms. Hall refused to come pick them up.                                       never did. She
                                                                                     came by my cell
To: Ms. Hall UTS / A4 Unit Team _____   Date: 10-6-2023  but I gave
        (Name and Title of Officer or Department)                                   me my my
                                                                                     form 9 request an
             OIC Chapman _____                                         to step for call
        Unit Team, Detail, or Cellhouse Officer's Signature    **To be retained by inmate**  light.

I was wondering if my court papers had been copied? I was wanting to get them in
the mail before the long weekend. If I can.

    Please sign and return receipt.                    Thank you. "Emergency"
    Please give Form 9 to proper                                   KAA44-15-706
    authority.          **INMATE REQUEST TO STAFF MEMBER**

To: EAI/Gill/West/Gift/Tomlson _____   Date: 9-28-2023
        (Name and Title of Officer or Department)
       Col S.        (Gave to Co Sonnier he said
                      he'd give to Co Theryie to put in EAI Mail)
        Unit Team, Detail, or Cellhouse Officer's Signature    **To be retained by inmate**
Need Central Monitor and protection against Mr. Parks UTM, Mr. meredith cloud OIC Chapman
drug users and dealer and Jeremy Garza for reprisal, harassment and Attempted Murder
(cruel and unusal punishment)

    Please sign and return this receipt. Thank You,

                 **INMATE REQUEST TO STAFF MEMBER**

To: EAI-Officer _____   Date: 7-15-2023
        (Name and Title of Officer or Department)
             OIC Chapman _____
        Unit Team, Detail, or Cellhouse Officer's Signature    **To be retained by inmate**
Notification for EAI to pick-up "incident report statement" and "Emergency Grievance"

                 **INMATE REQUEST TO STAFF MEMBER**

To: LCF Captain _____   Date: 3-27-2023
        (Name and Title of Officer or Department)

        Unit Team, Detail, or Cellhouse Officer's Signature    **To be retained by inmate**
(Request For PC placement) LCF reprisal by staff (B:BR)

*Warden Response Receipts Regarding not complying with EAI-PC cell by my self, not being able originally submitted 8-23-2023 to get out of seg status; denied OSR property, yard, day room etc.*

**Tear off and give to inmate when submitted to Warden through Unit Team.**

Inmate Name **Bobby White**                          Number **76983**

Unit Team Staff Signature _____ Co Chapman          Date **8-30-2023** ①

*Violation of R.S.A. 21 Supp 5417 unreasonable confinement and punishment.*

*Attack by Mr. Garza — harassment and coercion for cellie while being held in AC-M violation of EAI — 1 man cell agreement, No clothes, medical care, yard, dayroom, library access property. Failure to answer and return forms and grievances, including "Emergency Grievances" submitted 7-15 and 6-10 Now in seg for 3 months.*

**Tear off and give to inmate when submitted to Unit Team through receiving staff.**

*Step* Inmate Name **Bobby White**                   Number **76983**
*White Team Response*  Receiving Staff Signature COI L. Miller   Date **8-23-2023**

**Effective Date (3-18-96) P-157** *Put in U.S. Mail (envelope) as official mail direct to KAR 44-15-101a(5) Warden Geither to be Forwarded to the Approporat Unit Team c.c.*

---

"EMERGENCY GREIVANCE" Direct to Warden    Attention: EAI "event statement"
*need 2nd time Warden Response*           *Garza Assault originally submitted on 7-14-2023 (2nd E.G)*

**Tear off and give to inmate when submitted to Warden through Unit Team.**

Inmate Name **Bobby White**                          Number **76983**

Unit Team Staff Signature _____ Co Chapman          Date **8-30-2023**  ②

*Added 3 extra pages of facts.*

---

"EMERGENCY GREIVANCE"        Attention: EAI "Event Statement"

**Tear off and give to inmate when submitted to Unit Team through receiving staff.**

Inmate Name **Bobby White**                          Number **76983**

Receiving Staff Signature COI _____ Officer Gordon picked up for EAI   Date **7-14-2023**

**Effective Date (3-18-96) P-157** *Assault and Battery by Jeremey Garza and failure to protect and denial to medical aid, by A) Unit Team — Mr. Parks, Mr. Meredith and OIC Chapman Over 120 days of wrongfully disciplinary seg, status*

*#1 No response by LCF Warden, nor S.O.C. Jeff Zmuda*

*#2 No response by LCF Warden, nor S.O.C. Jeff Zmuda*

*(left margin, vertical):* **COURT Exhibit "E"** — *Proof by grievance Receipts and attempt of exhaustion of Administrative process*

Proof by Grievance Receipts and attempts of exhaustion of administrative process.

4                                                                                                    N

No response or help from Unit Team or Mr. Parks UTM

will not change door/cell diet label to Regular/No peanut butter                    (3)

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name ___Bobby White___     Number _76983_

Receiving Staff Signature _____     Date _4-27-2023_

---

grievance receipt for AA 20230536 see Exhibit A

(4)

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name ___Bobby White___     Number ~~76~~ 76983

Receiving Staff Signature ___A. Miller___     Date _50-5-2022_

Effective Date (3-18-96) P-157  BIBR - Gary Spillman Religious persecution witness - AR Hearty Officer

---

see: Exhibit B had to make multiple submissions #3 #3 to Res ponse from Unit Team Mr. Parks or LCF Warden

2nd attempt U.S. Mail letter direct to Warden pursuant to KAR 44-15-102(a)(2)    and step

Tear off and give to inmate when submitted to Warden through Unit Team.

Inmate Name ___Bobby White #76983___     Number _76983_

Unit Team Staff Signature ___CO1 FrySmIT___     Date _5-7-2023_

Harassment/Discrimination by BIBR Gary Spillman & DR Officer said I was Removed from BIBR because I filed legal action    (5)    LCF 22-CT-323

This is my proof of submission as explained in the grievance

#1

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name ___Bobby White___     Number _76983_

Receiving Staff Signature ___Col Ellis___     Date _4-25-2023_

Effective Date (3-18-96) P-157  Gave to officer Ellis for delivery to Unit Team Tuesday

---

New Submission Unit Team Mr. Parks UTM still putting my life in danger even after attempted murder by Jeremey Garza

To Unit Team  LCF Staff putting my life in danger - putting weapon charged inmate with me while I'm in protective custody.

(6)

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name ___Bobby White___     Number _76983_

Receiving Staff Signature ___CO1 Halberg___     Date _9-30-2023_

Effective Date (3-18-96) P-157  Emergency Grievance KAR 44-15-106  CS1 Coy and Lt Jawraski - Tru inmate Adams.

Proof by   Grievance Receipts and attempt of
exhaustion of Administrative process

E

Unit Team Response
Torture by loud radio noise blasted into cell (No control of situation)    24 hours harassment

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name  Bobby White    Number 76983    (7)

Receiving Staff Signature  Col Keyer    Date 9-1-2023

Effective Date (3-18-96) P-157 KAR 44-12-318 and 44-12-202

---

Unit Team 2nd grievance prior submitted on 9-7-2023 gone unanswered

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name  Bobby White    Number 76983    (8)

Receiving Staff Signature  COL Colyson  10/1/23    Date 10-1-2023

Effective Date (3-18-96) P-157
Radio Noise torture and pollution blasting into cell.

---

Unit Team  Library Books not being returned back to the library when given
to Unit officer for return and/or library denying book because of this??

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name  Bobby White    Number 76983    (9)

Receiving Staff Signature  HCPD  9.27.23    Date 9-27-2023

Effective Date (3-18-96) P-157 Constant problem with being denied Novels to read and legal forms
and documents needed for the court. Ms. Hell refused to come by and pick-up sec 6 9-27

---

Unit Team Response receipt.
$15.00 check to Shawnee County Sheriff, 9"x11" envelope of "Exhibits" from 6-30-2023 missing

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name  Bobby White    Number 76983    (10)

Receiving Staff Signature  CO1 Thorpe    Date 8-1-2023

Effective Date (3-18-96) P-157 Property Missing, Discrimination - Refused to make a promised
A1 Unit Team - Mr. Parks UTM refused to accept and sign for so gave to hall    phone call -
officer Thorpe.

---

KDOC/LCF refused use of ADA approved handicap shower.

Tear off and give to inmate when submitted to Unit Team through receiving staff.

Inmate Name  Bobby White    Number 76983    (11)

Receiving Staff Signature  CM NDn    Date 5-1-2023

Effective Date (3-18-96) P-157 Form 9 attached - answered by Mr. Meredith CC

---

#7 No response from Unit Team Mr. Parje UTM
#8 New resent submission requiring #7
#9 New resent submission - regarding past form 9 complaint
#10 No response from Unit Team / wont explain about what happened to
9"x11 Exhibits sent to the court on 6-30-2013
#11 No response from Unit Team Mr. Parks UTM.

42
(45 total pages)

3

COURT EXHIBIT "H" for proof of attempts of Exhaustion of
Administrative Process LYCO-22-CV-323

_____ Submitted at Lansing Correctional Facility _____

mergency Grievance "~~The~~ ~~~~ falsified "Admin Seg. Review" dated
9-26-2023

Tear off and give to inmate when submitted to Unit Team through receiving staff.
Inmate Name Bobby White        CO Hopkins    Number #76983
Receiving Staff Signature  10-10   crewings.   Date 10-10-2023

Effective Date (3-18-96) P-157 No personal copy included - False Facts of Review. I wasn't included
re Unit Team                                              nor did I appear before
                              New Grievance                the board.

: Warden Appeal

Tear off and give to inmate when submitted to Warden through Unit Team.
Inmate Name Bobby White        Number 76983
Unit Team Staff Signature UTS R.Hull    Date 10-11-2023

To Warden: Appeal

Tear off and give to inmate when submitted to Warden through Unit Team.
Inmate Name Bobby White        Number 76983
Unit Team Staff Signature UTS R.Hull    Date 10-11-2023

To Warden Appeal

Tear off and give to inmate when submitted to Warden through Unit Team.
Inmate Name Bobby White        Number 76983
Unit Team Staff Signature UTS R.Hull    Date 10-11-2023

3 grievances "Past Due For Response, Forwarded on to the L.C.F Warden @ Lansing

Yet another attempt to get Writ served for LYCO Case No: 22-CV-323
This one submitted at LCMHF

please sign and return this receipt. Thank you
INMATE REQUEST TO STAFF MEMBER

To: Central Bank                        Date: 11-16-2023
(Name and Title of Officer or Department)
                                        7th Attempt -
Unit Team, Detail, or Cellhouse Officer's Signature        To be retained by inmate
h Attempt to get a #15.00 check issued ~~out~~ to the Shawnee County Sheriff.

1.                                          J

Unit Officer please sign and return receipt, thank you

(To accompany 7-5-2023 Grievance - Informal Resolution)

INMATE REQUEST TO STAFF MEMBER

A1

To: Unit Team /Mr. Meredith CC _____        Date: 5-15-2023
(Name and Title of Officer or Department)

_____
when do I get off seg. status?? and get rest of property?

Unit Team, Detail, or Cellhouse Officer's Signature

To be retained by inmate

---

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

White
Last Name Only

KANSAS DEPARTMENT OF CORRECTIONS

76983
Number

A1

**INMATE REQUEST TO STAFF MEMBER**

To: Unit Team /Mr. Meredith CC _____   Date: 5-15-2023
(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

I was wondering when I'd be off seg. status and could get my
TV and rest of my property?? The unit officer keeps asking why
I'm pink tag and I have no idea.

Thank you

Work Assignment: Retired _____     Living Unit Assignment: A1-117 _____

Comment: _____     Detail or C.H. Officer: _____

Disposition:
We are working on clenging the
whole pod and will get to you

SGOA

Received back
5-17-2023 B.W.

To: _____     Date: _____
(Name & Number)

Disposition: _____
_____
_____
_____
_____

_____
Employee's Signature

**To be returned to inmate.**

P-0009

7

INMATE REQUEST TO STAFF MEMBER

exhibit C

To: _LCF Warden_____          Date: _5-22-2023_
(Name and Title of Officer or Department)

_CSII A May_____
Unit Team, Detail, or Cellhouse Officer's Signature

Need Warden response mailed to Warden grievance on 5-7-2023 due set 5-23 KAR 44-15-102(a)(2)
Admin Review for DR# 2872 due on 5-22-2023 KAR 44-13-701
Will be in seg for 60 days on 5-27-2023- maximum allowed pursuant to KAR 44-12-308

/ X 0'

Form 9
For Cellhouse Transfer                                           _White_
Work Assignment _____                              Last Name Only
Interview Requests (To accompany 7-5-2023 Grievance-Informal Resolution)

KANSAS DEPARTMENT OF CORRECTIONS

_76983_
Number

**INMATE REQUEST TO STAFF MEMBER**

To: _LCF Warden_____          Date: _5-22-2023_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

① Pursuant to KAR 44-12-308 Disciplinary Seg. limit (a) shall not exceed 60 days. As of 5-27-2023, I will have been in Disciplinary seg. 60 days. ② Also, pursuant to KAR 44-13-701 (a) the Admin review for DR #2872 was due as of 5-22-2023 and past the "within seven working days." ③ Also the grievance regarding the DR hearing officer and Mr. Gary Spillman interaction, I mailed to you pursuant to KAR 44-15-102(2) on 5-7-2023 will be due back with a Wardens Response on 5-23-2023. May I please get these responses so that I am timely appeal them to the S.O.C. if necessary and also, get off seg. status moved to PC status with the return of my TV and other property. Thank you.

Work Assignment: _Retired_____     Living Unit Assignment: _A1-117_

Comment: _____     Detail or C.H. Officer: _____

Disposition: We offered you a waiver to be released from pending investigation status however you refused. You were told you need to write a statement to TAI explaining why you

To: _Cannot return to general population. We have yet_
(Name & Number)                                           Date:
to recieve that statement.    who did??
                                                      They did Not
Disposition: _Received back to 117 B.W.    B.W.

All three of these form 9's were answered by the same person, but not signed, except one.
(Not received by person to) B.W. 7-5-2023
on answered

Employee's Signature

P-0009                                                     To be returned to inmate.

INMATE REQUEST TO STAFF MEMBER

To: _Captain Howlett_    Date: _5-25-2023_
(Name and Title of Officer or Department)

_C Clifton_
Unit Team, Detail, or Cellhouse Officer's Signature    To be retained by inmate

Why am I still on seg. status and can't get the rest of my property?

Form 9
For Cellhouse Transfer
Work Assignment ____    _White_
Interview Requests (To accompany 7-5-2023 Grievance Informal Resolution)    Last Name Only
KANSAS DEPARTMENT OF CORRECTIONS

_76983_
Number

INMATE REQUEST TO STAFF MEMBER

To: _Captain Howlett_    Date: _5-25-2023_
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

I was wondering if you had any idea why? I'm still on disciplinary segregation status. I've been held now going on or or 60 days this weekend, which is the max, allowed pursuant to KAR 44-12-1308. I was wondering if I could get my TV and rest of my property.

Thank You,

Work Assignment: _Retired_    Living Unit Assignment: _A1-117_
Comment: ____    Detail or C.H. Officer: _C Clifton_

Disposition: You were offered a waiver to return to general population however you refused.

To: ____    Date: ____
(Name & Number)

Received back 5-26 B. W.

Disposition: ____

_UTS Z_
Employee's Signature    To be returned to inmate.

P-0009

*Unit officer please sign and return receipt. Thank you*

## INMATE REQUEST TO STAFF MEMBER

To: Unit Team / Mr. Parks UTM                                      Date: 5-27-2023
_____
(Name and Title of Officer or Department)

_____
Unit Team, Detail, or Cellhouse Officer's Signature              **To be retained by inmate**

*Informal Resolution Attempt # 4*
*Can't be cuffed from behind and handi-cap shower device use.*

---

**Form 9**
For Cellhouse Transfer                                           _White_
Work Assignment _____          **Last Name Only**
Interview Requests

### KANSAS DEPARTMENT OF CORRECTIONS

76983
_____
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: Unit Team / Mr. Parks UTM            Date: 5-27-2023
_____
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

*Informal Resolution Attempt*
*4th Attempt. On Friday 5-26-2023, I was asked to shower, but the Unit*
*officers demanded I be cuffed from behind, when they should know I can't walk,*
*and then they didn't even have the handi-cap showers available in violation of*
*the ADA. This is all because of illegal disciplinary segregation hold status.*
*This was all included in a prior grievance submitted on 5-1-2023, but has*
*never been answered or returned in violation of KAR and access to court constitutional*
*right. Water got to shower Friday. I demand this harassment be stopped. Thank you.*

Work Assignment: _____    Living Unit Assignment: A1=117

Comment: _____           Detail or C.H. Officer: _____

---

Disposition: _____

*I will look into this. However since*
*you are seg status, you are required to be*
*cuffed everytime you exit your cell. Since the*
*walk to the shower is short, being cuffed from*
*behind is the quick and efficient way to escort*
To: *you.*                     Date: _____
(Name & Number)

Disposition: _____ *Received*

---

③⑥

_____
Employee's Signature                                    **To be returned to inmate.**

P-0009

*Please sign and return receipt. Thank You*

INMATE REQUEST TO STAFF MEMBER

To: A1- Unit Team - Mr. Parks UTM /Mr. Meredith CC          Date: 7-15-2023
(Name and Title of Officer or Department)

_____OIC Chapman_____     ~~shower~~          **To be retained by inmate**
Unit Team, Detail, or Cellhouse Officer's Signature

Need hygiene sign-ups, clothes, soap, towel etc. and day room.

**Form 9**
For Cellhouse Transfer                                    _____White_____
Work Assignment _____              **Last Name Only**
Interview Requests

**KANSAS DEPARTMENT OF CORRECTIONS**                   _____76983_____
                                                          **Number**
**INMATE REQUEST TO STAFF MEMBER**

To: A1- Unit Team - Mr. Parks UTM /Mr. Meredith C  Date: 7-15-2023
(Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)
Need indigent hygiene sign-up.
I wish to have day room priveleges, and need to know what
I must do. I also need indigent hygiene pack. I
currently have no hygiene, clothes, towel etc. (no basic items
such as toothpaste, tooth brush, soap.) I've been in disciplinary
seg. status now for over 120 day with no          Thank You.
LR write-ups.

Work Assignment: Retired _____ Living Unit Assignment: A1-119

Comment: _____ Detail or C.H. Officer: _____

Disposition: _____
You are not urgent this month.
You will need to sign a PC waiver
to ~~he~~ leve dayroom priveleges.

To: _____          Date: _____
        (Name & Number)

Disposition: _____
_____
_____

(31)

_____
Employee's Signature                              **To be returned to inmate.**
P-0009

*Unit officer please sign and return this receipt.*
*Thank You.*

INMATE REQUEST TO STAFF MEMBER

To: *Al-Unit Team /Mr. Meredith CC/Mr. Parks UTM*          Date: *7-18-2023*
  (Name and Title of Officer or Department)

*officer Reyes*

*coll gro*

  Unit Team, Detail, or Cellhouse Officer's Signature          **To be retained by inmate** *Central*

*I'm requesting a restrictive housing waiver. back to general population and a Monitor.*

Form 9
For Cellhouse Transfer                                  *White*
Work Assignment _____          **Last Name Only**
Interview Requests

### KANSAS DEPARTMENT OF CORRECTIONS

                                                    *76983*
                                                      **Number**

### INMATE REQUEST TO STAFF MEMBER

To: *Al-Unit Team/Mr. Meredith CC/Mr. Parks. UTM* Date: *7-18-2023*
  (Name and Title of Officer or Department)
  State completely but briefly the problem on which you desire assistance. (Be specific.)

*I would request a PC Restrictive Housing Waiver for a release*
*back to general population.*
                    *Thank You.*

*I also request that a Central Monitor be placed on me From*
            *Jeremey Garza.*

Work Assignment: *Retired* _____ Living Unit Assignment: *A1-119*

Comment: _____ Detail or C.H. Officer: _____

Disposition: _____
*This would be a PC waiver.*
*You were released to GP last week*
*and came back to A1. I can create*
*another waiver*

To: _____          Date: _____
    (Name & Number)

Disposition: _____

*(3)*

_____
    Employee's Signature                         **To be returned to inmate.**
P-0009

*Please sign and return receipt. Thank You*

### INMATE REQUEST TO STAFF MEMBER

To: Mr. Parks UTM                                                    Date: 7-20-2023
       (Name and Title of Officer or Department)

CO1 _____
       Unit Team, Detail, or Cellhouse Officer's Signature

Job request and move to B7 or out of LCF

**To be retained by inmate**

Form 9
For Cellhouse Transfer
Work Assignment _____
Interview Requests

White
**Last Name Only**

### KANSAS DEPARTMENT OF CORRECTIONS

76983
**Number**

### INMATE REQUEST TO STAFF MEMBER

To: Mr. Parks UTM                          Date: 7-20-2023
       (Name and Title of Officer or Department)
State completely but briefly the problem on which you desire assistance. (Be specific.)

(I have never agreed with anyone to have another person put in the cell with me)
Every day since being returned back to A1-119 after being transported by ambulance to KU
Hospital. I've been asked to accept another cellie. It was my understanding you had me placed
back in A1, with the condition I be the only person in this cell. If this is not the case, I would
like to know what the facility's plans for my future housing. I believe my only safe recourse
is to be transferred out of LCF, but if that is not possible, I request to be given a job and
transferred to B7 worker pod. I have friends in that pod and there is less likely to be drug and
tobacco problems. I'd prefer to take my chances in the open rather than hidden in a lock Thank you.
Work Assignment: Retired                          Living Unit Assignment: A1-119    cell. (No enemies protection.)

Comment: _____          Detail or C.H. Officer: _____

Plus, I could use some money.

Disposition:
You have been given opportunities to
return to GP but continue to refuse. As
of now you are remaining seg status for
your safety until you are transferred.

To: _____                          Date: _____
       (Name & Number)

Disposition: _____

_____

Employee's Signature

**To be returned to inmate.**

P-0009

## Interrogatory No. 2

What evidence do you have to support the allegation that Plaintiff requested protection by

Defendant Meredith from Plaintiff's cellmate, J. Garza, before the alleged altercation on July 12,

2023?

Plaintiff's Response

2. (a) See: all from 1.) plus: from (Exhibit F) "Declaration of Darcie Holthaus (Doc. 30-6) page 1 of 83 —

(b) Exhibit F-3 at (3-6) - Response dated June 25, 2023 - Appeal to S.A.C dated 5-25-2023 of Unnumbered grievance dated 4-25-2023.

(c) Exhibit F-4 at (1-3) - Response dated 6-26-2023 for "Emergency Grievance" dated 6-9-2023; of Appeal to S.A.C dated 6-12-2023

(d) EAI Tomlinson audio interview of the Plaintiff on 10-2-2023.

(e) Defendant Meredith's Position (Job) Description

(f) Defendant Meredith acted as Plaintiff's-Proxy for DR Hearing No: 2872 dated 4-24-2023

(g) Same as 1.); Defendant Meredith never gave any response or answer to the Plaintiff's Request for Admissions under Fed. R. Civ. P. 36, therefore the matter is admitted pursuant to Fed. R. Civ. P. 36 (a)(3).

Bobby White

2

Interrogatory No. 3

What evidence do you have to support any allegation that you suffered substantial harm due to any alleged delay in providing medical care by Defendants?

Plaintiff's Response

3. (a) Per Defendants (deposition) Exhibit D and E. The Plaintiff was transported by EMS to KU Hospital on 7-12-2023 per attempted strangulation assault.

(b) The Plaintiff received Neck Trauma

(c) The pain was sufficiently severe to require oxycodone pain medication.

(d). Plaintiff had sore throat and trouble swallowing.

(e.) Plaintiff suffered other bodily pain for several weeks after

(f.) Plaintiff is a 73 year old senior citizen.

(a) K.S.A. 21-5402(c)(i)(v) defines mistreatment of an elder person K.S.A. 21-5417 as an "inherently dangerous felony."

(b) Violations of K.S.A. 21-5416 mistreatment of a state prisoner, and K.S.A. 21-5417 mistreat of an elder person; (1) Infliction of physical injury, unreasonable confinement or unreasonable punishment upon a dependent adult or an elder person, and (3) Omission or depre-ration of treatment, goods, services that are necessary to main-tain physical or mental health of such dependent adult or elder person.

(c) Pursuant to: IMPP 10-114D "Corrections officers and other desig-nated staff shall be trained to respond to health-related situations within a four-minute response time (AC1.4-4389).

(d) Pursuant to: IMPP 10-122D "Emergency medical ... including transportation off site, shall be provided to offenders in accordance with IMPP 10-114D.

(e.) Pursuant to: LCF 13,102 (1Y)(A)(1) Any employee who has reason to believe an offender is in need of emergency care shall immediately notify the medical staff,

(over)

3

(F) The Plaintiff has a form 9 dated 7-20-2023 from Defendant Parks response: "... As of now you are remaining seg. status for your safety until you are transfered.

*Bobby White*

(3a)

## Interrogatory No. 4

What evidence do you have to support the allegations in your Response (Doc. 38 at 21-22)

that prison staff failed to pick up or deliver your grievances to the Secretary of Corrections or Mr.

Zmuda?

Plaintiff's Response

4. (a) See #1 (c) answer

(b) If the grievance is regarding the actions and abuses of the unit team or any particular staff member/employee, per: "KAR 44-15-101 a (f)... An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance."

(c) See: Exhibit F-3 at 3-5 of grievance submitted 4-25-2023, appealed to S.O.C. on 5-25-2023.

(d) Per KAR. all grievances should take no longer than 68 days for processing and "return back to an inmate". The above cited grievance took 94 days and still didn't get properly processed. Further, F-3 and F-4 (exhibits) were both "Emergency Grievances and shouldn't take any longer than 28 day, or immediate within 24 hours if a prisoners life is being placed in danger, and/or if he is being mistreated, tortured or abused by inhumane treatment in violation of State and Federal statutes, KAR's and IMPP's.

Bobby White

4

Interrogatory No. 5

With regard to Plaintiff's First Amendment retaliation claim based on the alleged third false

disciplinary report from September 2023:

a)  What activities were you participating in, prior to issuance of the disciplinary report, that

Defendant Parks allegedly retaliated against you for?

b)  What alleged actions, taken by Defendant Parks, caused you to stop participating in any of

the activities you listed in response to part (a) above?

Plaintiff Response:

5) I ⓐ Prisoners Constitutional right to Living Conditions, Medical Care and Disciplinary Treatment, 8th / 14th Amendments, Kan. Const. B of R § 9, to be free from cruel and unusual punishment; from imminent danger and right to protection; while being held in protective custody.

ⓑ Mr. Parks failed to provide the Plaintiff with the Living Conditions consistent with IMPP 09-107D; 10-114D; 10-122D; (LCF-13,102); IMPP 20-101A; 20-104A; 20-105A; 20-108D; and through the misuse of the disciplinary treatment to attempt, and to retaliate, to cover-up and to justify his mistreatments and abuses.

II ⓐ Prisoners Constitutional right to Access the Courts. 5th, 7th, and 6th, 14th and Kan. Const. B of R § 3 to petition the government or any department for the redress of grievance. For which the Plaintiff was litigating, Pro Se; not only this civil rights action, while being abused, terrorized and tortured, while being held in atypical conditions of incarceration. But, also the Plaintiff was acting Pro Se in a State habeas corpus action; under conditions of incarceration violations for PN-2024-CV-0009/ LVCO 2022-CY-323.

ⓑ This case was dismissed, because the Plaintiff was being denied his legal materials to adequately defend and litigate the matter, and then (found) ruled "moot" for the issues asserted by the Plaintiff. After, the Plaintiff was transferred out of Leavenworth Co. to Pawnee Co., to Larned State Correctional Facility, for the Plaintiff's safety.

III ⓐ Prisoners right to due process and equal treatment and protection of
(over)

5

the law, and treatment, amenities and living conditions enjoyed by other state prisoners. 5th, 6th, 8th and 14th Amendment of the U.S. and State of Kansas Constitution. The Plaintiff has a Constitutional right to be free from cruel and unusual punishment and equal treatment and protection of the law, (by all previously cited ImPP's), and which the State of Kansas has not enforced the violations of K.S.A. 19-1919, K.S.A. 21-5416, K.S.A. 21-5417; for mistreatment of a prisoner and an elder person (senior citizen) and pursuant to *ImPP 20-101 A (1)(B)(2)(3)(4), (C)(1), (D), (E); (II)(A), (C)(5), (D)(1); (III)(D), (E), (F)(3)(a); (IV)(A), (B)(1), (C), (F); (V)(A); (VI)(B)(1), (3), (4), (5), (C)(1).

* ImPP 20-104A (Definitions)-Restrictive Housing ? Long-Term Administrative Restrictive Housing: (1) Classification. Protective Custody (PC) refer to ImPP 20-108 D [Protective Custody]; Long-Term Restrictive Housing Committee ? and (II)(A), (C)(2); (III)(I)(1); (IV)(B)(1); (V)(C)(1)(a),(b) ?

* ImPP 20-105A - Policy; and (I)(A), (B)(1), (C)(1); (III)(A),(1)(a); (IV)(A)(B); (VI)(B) "Administrative restrictive housing must not be used or considered as punishment."

* ImPP 20-108 D - Policy "Protective Custody (PC) is a housing assignment that separates an individual from the general population for that individual's safety. ...["]

"The KDOC provides those in protective custody, to the extent possible, the same access to education, treatment, recreation, and amenities as those of the same custody level."

"As such, each facility must operate a protective custody program as an adjunct to the facility's administrative restrictive housing unit." (see) (I)(A)(B)(2);

"(C) The reason for protective custody must be documented;" (see) (D)(1);

"(E) Each denial of protective custody is to be documented showing the reason justifying the denial." (see) (1), (F).

ⓑ Before Lansing built it's new prison, protective custody prisoners were housed in their own separate Unit, behind the Stone Walls; in (TRU) Building (Theuraputic Recovery Unit). Since the new prison was built (and the old prison, no longer housing prisoners), there were no provisions built into the new prison for housing prisoners in/for protective custody as an adjunct (or separate) to the facility.

Now, the Kansas Dept. of Corr. (KDOC) and their employees are intentionally and with deliberate indifference to a prisoners health and safety, putting prisoners lives in danger by mixing and combining (housing) prisoners in Protective Custody with other prisoners with disciplinary (even violent) charges and those under administrative investigation for violent or criminal acts.

So, to cover-up this criminal and Unconstitutional oversite, cruel and unusual punishment, to rapidly get these protective custody prisoners out of the restrictive segregation housing. They are intentionally torturing and

(5a)

terrorizing prisoners, to a greater extent, than the potential threat of a violent act, from other prisoners in general population.

But then to cover their possible liability, to a prisoner, if they force a release of someone, and who then gets killed or violently assaulted. These defendants are illegally extorting and forcing the Plaintiff under duress to sign a phony "PC Waiver" before the prisoners release.

This needs to be stopped. Which the Plaintiff intended and does intend to do - GOD Willing. I challenge the Kansas Attorney General's Office to enforce U.S. and Kansas laws and the Constitution to get this stopped. Before more protective custody prisoners are physically assaulted or even killed and to stop these drug and tobacco users from overdosing, fall out and even dying and or their second hand smoke making non-smoking prisoners sick.

Bobby dellato

(5b)

## Interrogatory No. 6

For every request for admission that Plaintiff denied in Defendants' First Set of Requests

for Admission, identify the factual basis for that denial.

### Plaintiff's Response

6. (a) For #1, Never happened - but as I explained numerous times during deposition. I did use my cane to pound on cell door to get help, because Mr. Garza was trying to kill me.

(b) For #2, Never happened in the morning, and only after I had to take myself to the clinic. (see: #3 (f)(c), "IMPP 10-114D staff shall be trained to respond to health-related situations within a four-minute response time."

(c) for #3, Every time I was ever housed with a drug and tobacco user, I've been physically assaulted, when the drug/tobacco user chose to smoke and violated to no drug/tobacco policy and laws of Kansas and KDOC. (Tobacco/drug smoke is an assault)

"The Kansas Office of Vital Statistics identified 678 drug overdose deaths among Kansas residents in 2021. This is a 42 percent increase in deaths compared to the 477 drug overdose deaths identified in 2020; with synthetic opiod deaths spiking 790% between 2012 and 2051. Due to this increase in drug overdose deaths, Kansas has significantly shifted in how drug-related overdoses are handled."

"Kansas already has a drug-induced homicide charge that allows individuals to be charged for the deaths of someone who overdoses on drugs they supplied. This is to include those who introduced the drug, others who took the drug, or those involved in the purchasing of the drug."

"Federal prosecutors in Kansas are actively pursuing cases against those linked to fatal overdoses, with sentences ranging up to 25-40 years"

"The risk of overdose on synthetic drugs is high as the chemical used in making them are unknown and may result in death."

(d) If these drug charged are now being placed in prison and are chosing to continue their illegal and death resulting action, then Non-Smokers/ Non drug using prisoners must be protected from them per the Constitution. Bobby White, B.W.

6

Respectfully submitted,

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

/s/ Scott G. Nading
Scott G. Nading, KS No. 29665
Assistant Attorney General
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Avenue, 2nd Floor
Topeka, Kansas 66612-1597
Scott.nading@ag.ks.gov
Matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorneys for Defendants*

7

## VERIFICATION

I, _Bobby White_, being of lawful age, declare under penalty of perjury pursuant to 28 U.S.C. § 1746 that I have read the foregoing interrogatories ~~and answers,~~ *Bribes* and the answers given are true and correct. *Under Fed. R. Civ P. 33.*

_Bobby B. White_ *#2000046191*
Bobby Bruce White
*Plaintiff, pro se*

8