IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

Bobby Bruce White, Plaintiff

vs.

Case No: 24-3023-DDC-RES

Andrew Parks, et al, Defendants

Responsive Brief

Plaintiff's Opposition to: Memorandum in Support of
Defendant's Motion for Summary Judgment:
Responsive Brief
PROLOGUE
Nature of Reply Against: Defendant Gary L. Spillman
-No Reply Made-

I. 1.) On 1-21-2026, the Plaintiff filed a; "Motion for Clerk's Entry
of Default against Defendant: Gary L. Spillman; which went unanswered
by Defendant Gary L. Spillman   [DOC 99]

2.) On 3-11-2026, the Plaintiff filed a; "Motion For Summary Judgment",
against Defendant Gary L. Spillman. [DOC 132]

3.) The Defendant Gary L. Spillman has not answered, defended, nor
opposed the "Motion for Summary Judgment" in the required (21)
twenty one days, which was due on 4-1-2026.

   The Plaintiff Bobby Bruce White, requests the court for a ruling
of Summary Judgment by default, in the Plaintiff's favor against
Defendant Gary L. Spillman.

Nature of Reply Against: Defendants: Andrew Parks, Evan Meredith,
   and Bruce Chapman.

4.) On 3-23-2026, the Plaintiff filed a "Motion for Summary Judgment
against Defendants: Andrew Parks, Evan Meredith, and Bruce Chapman.
With legal service dated 3-26-2026 and with their response due
by 4-16-2026 (21) twenty one days. [DOC 139]

5.) This was done within the [DOC 66] Scheduling Order due date

1.

for filing, for all parties their "Motions for Summary Judgments", by 3-27-2026.

6.) In the Plaintiff's "Motion for Summary Judgment; against Defendants Parks, Meredith and Chapman; he established the fact that the Plaintiff was being held under Protective Custody pursuant to the testimonial affidavit of LCF Deputy Warden Nicolaus Ball. (See: Plaintiff's Exhibit PL#2 and PL#3; also Defendants Exhibit H, page 3 of 40, page 8 of 40, and page 19 of 40) on 3-27-2023.)

7.) This Plaintiff's Protective Custody status and classification, housing in restrictive housing is also supported by the fact the Plaintiff was forced to sign a PC waiver, before the Defendants would separate the Plaintiff from his cellmate Jeremy Garza, after he strangled and assaulted the Plaintiff on 7-12-2023. (See: Defendants [DOC 140] pages 7 & 8, at ¶ 32-34).

8.) On page 8 of the Plaintiff's "Motion for Summary Judgment against Parks, Meredith and Chapman, filed 3-23-2026 with the U.S. Dist. Court. The Plaintiff established that per: IMPP 20-105A (vi)(B) Administrative Restrictive housing must not be used or considered as punishment. (and) IMPP 20-108D "Protective Custody" "The KDOC provides those in protective custody, the same access to education, treatment, recreation and amenities as those of the same custody level. As such each facility must operate a protective custody program as an adjunct to the facilities administrative restrictive housing unit. "Protective Custody" housing in administrative restrictive housing or modified operational units for residents requiring protection from others until reintegration into general population environment is facilitated." (see: Exhibit PL#11 and PL#12 included)

9.) So therefore, pursuant to: Plaintiff's Exhibit PL#2 and Defendant's Exhibit H page 3 of 40 at ¶4 Testimonial affidavit of Deputy Warden Nicolaus Ball "4. Plaintiff could be housed in managed movement, which would keep him separated from other inmates during any stay at LCF."

• Yet, the question in controversy, which must be determined by jury finding/determination of facts, from the Defendants question or by deposition. Also, relevant is why then?, was the Plaintiff not being protected and "kept separated from other inmates, before and even after the Plaintiff was assaulted and strangled (attempted murder) by his cellmate Jeremy Garza on 7-12-2023, and after the Plaintiff

2.

had requested Protective Custody on 3-27-2023, was he not provided the proper hearing required by IMPP 20-105·A (I)(B) and (III)(A) and (IV)(A)(B) and (VI)(B) and/or any denial of protective custody not properly documented as required by IMPP 20-108 N(III)(E).

• 10.) This reasonable questions in controversy could have and should have been answered by the Defendants Parks, Meredith and Chapman during discovery. But, the court has denied the Plaintiff the right and fair opportunity to depose the defendants in [DOC 86] at 4, individually and separately, nor required them to give answers individual. Allowing Defendants appointed attorney to answer for them; not individually but as a single party response. Those testimonies may be critical for the showing of willfull evil intent and criminal violations against the Plaintiff in violation of K.S.A. 21-5416/21-5417 mistreatment of a State prisoner and an elder person, for punitive damages.

• 11.) Also in controversy, the court has failed to legal service /and/or the Plaintiff did not receive [DOC 66] scheduling Order until 11-4-2025, because the Plaintiff was having back surgery at the Salina Regional Hospital, (which the Plaintiff adequately informed the court before the surgery) when it was filed on 9-16-2025, Which has seriously prejudiced the Plaintiff discovery. [And] The court has unfairly handicapped the Plaintiff by allowing the Defendant Parks, to the late filing/submission of the Plaintiff's Rule 36 'Request for Admissions, in violation of Rule "36 (a)(3) Time to Respond," which clearly and plainly states, "A matter is admitted unless, within 30 days after being served, the party to whom the request is directed serves on the requesting party a written answer or objection addressed to the matter and signed by the party or it's attorney..." Mr. Parks failed to give answer in the time allowed and the Defendants attorney freely admitted to being late (without requesting an extension of time) at the 1-27-2026 Discovery Hearing. Also the judge ordered the Defendants to produce a position description for Defendant Meredith [DOC 108] at 2 (I)., for which they have failed to do, for per as the Court Records: Evan Meredith Unit Team Supervisor and as the Defendants attorneys have admitted in [DOC 70] at I ¶ #4. Yet, the court has prejudically refused to allow the Plaintiff the due process right, to consider the "matter admitted", for those requests for admissions, not timely addressed by Defendant Parks and not at all by the Defendants Meredith and Chapman in their individual

3.

capacity, party designations. The Plaintiff requests the court, give him his due process right to a Summary Judgment or allow the Plaintiff his 7th Amendment right to question the defendants for the finding of facts at a jury trial. (See: [Doc 140] page 6 of 37, footnote[2] [Doc 135 at 4-5]

## Argument

Under; James v Kentucky, 647 S.W. 2d 79; The court ruled the assertion of Federal rights, when plainly and reasonably made, was not to be defeated under the guise of local rules and practices. "Where rights secured by the Constitution are involved, there can be "no rule making" or legislation which would abrogate them." Miranda v Arizona, 384 U.S. 436, 491

## Addendum to Prologue: [also see the following att II]

12). Also, at controversy and for objection; Magistrate Judge Schwartz asked the Defendant's attorney Mr. Noding directly, if he was holding any responsive documents in his possession, and he affirmed, he did not. This was at the March 11, 2026 Discovery Conference. Yet, clearly the Defendants had the Plaintiff's personal (HIPAA protected) Defendants Exhibit C, (which only viewing of the documents was previously allowed to the Plaintiff); and Defendants Exhibit D and E, the Plaintiff's personal KU medical records (which the Plaintiff objects too and asserts he has never previously seen these KU Hospital "Billing Records", which were never served on the Plaintiff), which were apparently provided by a Kathern Barter-Records Custodian on 2-12-2026, but also includes Exhibit "D" HIPAA protected documents; and Defendant's Exhibit I transcript of Recorded Interview of Bobby White by Special Agent Chris Tomlinson which was transcribed by Carol Roberts on 2-3-2026. — The Plaintiff does not perse object to the documents themselves (other than by the following of alleged illegal possession in violation of HIPAA, presented in the following II), But the Plaintiff objects to the timing, in that they were not timely provided to the Plaintiff in violation of due process during Discovery. In which clearly shows (the Plaintiff alleges) the Defendants and their attorney did in fact have custody, possession, and control of responsive documents, they were timely denying the Plaintiff during Discovery. The Plaintiff alleges this amounts to perjury and with a malicious abuse of process to deny the Plaintiff

4.

his constitutional rights and the administration of justice, discovery. to circumvent
[See: DOC 108 and 135. The Plaintiff requests a ruling of a
Summary Judgment in his favor, or a jury trial.

II. 13.) The Plaintiff in controversy has objected and submitted a "HIPAA"
Health Information Privacy & Security complaint against the Defendants
for illegally obtaining the Plaintiff's KDOC/Centurion and KU Hospital
(personal-private) medical records without a court ordered judges
signed subpoena or the Plaintiff's written consent. (See: Plaintiff's
"Motion for Summary Judgment Against Defendants; Parks, Meredith
and Chapman", filed 3-23-2026. Plaintiff's "Exhibit PL#1 (7 pages)
The Plaintiff requests sanctions against the Defendants, by the denial
to allow the Defendants to use as Defendants Exhibits into evidence
of all illegally acquired medical documents referenced as "Defendants
Exhibits "C", "D", and "E". [Miranda v Arizona]
                        Arguments:
      The Due Process Clause of the 14th Amendment protects inmates from
the unwanted disclosure of health-related information. Doe v City of
New York 15 F. 3d 264, 267 (2d Cir. 1994), cited in Verley v Goord, 2004
WL 526740, 2004 U.S. Dist. Lexis 857, at *60 (S.D.N.Y. Jan. 23, 2004).
With respect to the disclosure of medical information, the court notes that
an inmate's privacy right varies with the inmate's condition; the court
notes that an inmate's privacy right varies with the inmates condition,
with a greater interest in preventing the disclosure of highly sensitive
conditions. Webb v. Goldstein, 117 F. Supp. 2d 289, 298 (E.D.N.Y. 2000)
cited in; Warren v Corcoran, 2011 U.S. Dist. Lexis 135012.
- Supporting sensitive conditions - relevant to all Defendants
        Exhibit C, D, and E citings.
14.) The Plaintiff's highly sensitive conditions are based on the Defendant's
claim of mental health issues, which the Plaintiff claims and asserts
are false as recorded and documented by the KDOC/Centurion medical
and for which the Defendants have cited too in their [DOC 140 page
4 of 37 at ¶#11. by Chauncey Hester MHP. (Exhibit C at 1-2) and page
12 of 37 at ¶#72. (Exhibit C at 14-15) - Notice these two documents are
exactly alike except for a change of date and time.
15.) The Plaintiff asserts and affirms per Rule 56(c)(4) [through
personal knowledge], that he has had no such personal contact for

                        5.

any mental health exam, by anyone identifying themselves as from mental health during the Plaintiff's residency at LCF from 1-12-2016 through 10-23-2023. Further, I've never even been in the mental health wing or section of the new LCF prison. The Plaintiff asserts these are phoney/false documents and Chaunsey Hester MAP must be sworn under Oath at trial for the Finding of Fact for this controvercy.

16.) The Plaintiff asserts, the issues of this case Is not relevent to any such mental health issues; relevent to a bi-polar disorder and has been misused to prejudice me and my claims in violation of Fed. R. Civ. P. 26(c) Protective Order (i)(A) "... The court may, for good cause, issue an order to protect a party or person from annoy ance, embarrassment, oppresion, or undue burden or expense, including one or more of the following: (A) forbidding the disclosure or discovery;

17.) This false mental health issue is currently in litigation before the Pawnee County Dist. Ct. Case No: PN-2025-CV-000031, filed on 10-8-2025, with a pending motion for the change of Venue/Jurisdiction to the Butler County Dist. Ct. (the plaintiff's court of conviction) under a K.S.A. 60-1507 Habeos Corpers, for the "Count II: The KDOC Bi-polar diagnosis, record and classification imposed upon White, created a burden on him that significantly altered his status, when compared with Inmates not classified as Bi-polar, in violation of the Due Process Clause and HIPAA." -citing: Arguments: - Daniels v Williams, 474 U.S. 327, 331-32 (1986), Doe v Delie. 257 F. 3d 309, 311-12, 323 (3rd Cir 2001) Prisoners retain due process right to privacy in their medical information "[and] State v Pyle, 216 K. 423, 441; 532 A.2d 1309, Disclosure of each mental health examination, where a defense is to be based on mental disease or defect is the rule.

18.) The Plaintiff has previously brought this controvercial issue up to the court and defendants, during discovery, but to no avail or any ruling. See: [Doc 122] at 2, and [Doc 123] at 2,3; Defendants Exhibit B at 239-245. This a jurisdiction(al) issue for the State Courts.

19.) The Plaintiff requests the court bars the Defendants Exhibits for mental health reasons as not relevent or as a controvercy issue for the Plaintiff Summary Judgment request, or for the need for the finding of Facts in a jury trial, and/or a final determination/ ruling of what court has jurisdiction of the mental health issue.

6.

Argument

. This case as like; *Estate of B. I. C. v Gilken, 2011 U.S. Dist. Lexis 72718 (10th Cir. Kan. 2011)* "..., because the court views all controverted facts along with all favorable inferences in the light most favorable to the plaintiff. see: *Hall v United Parcel Serv., No. Civ. A. 99-2467-cm, 2000 U.S. Dist. Lexis 11116, 2000 WL 1114841 at #5 (D. Kan. July 31, 2000)* citing *Adler v Wal-Mart Stories, Inc.; 144 F. 3d 664, 670 (10th Cir. 1998)*.

The reviewing court is, "required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against who summary judgment is sought." *Johnson v Killian, 680 F. 3d 239, 236, (2nd Cir. 2012)* (quoting *Terry v Ashcroft, 336 F. 3d 128, 137 (2d Cir 2003)*.

The same standards apply where, as here, the parties have filed cross-motions for Summary Judgment, *Morales v Quintel Entertainment, Inc., 249 F. 3d 115, 121 (2nd Cir. 2001)* "Each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party who motion is under consideration. (citing *Schwabenbauer v Board of Educ, 667 F 2d 305, 314 (2d Cir. 1981)*

*❖ (Note: See "Addendum for (SUMF) #9 on page 19 this document)❖

➡ III. Plaintiff's opposition to Defendants: II. (SUMF) (page 3 of 37)

: Return to LCF (page 12 of 37)

20.) Opposition to: #11, #12 page 4 of 37 and #72 page 12 of 37

21.) Both are hear-say and Plaintiff objects under Rule 56 (c)(2).

• 22.) At controversy is the accuracy and reliability of the KDOC/Centurion medical records; because they are a bias record and not made under oath, by the KDOC employee's who created them.

• 23.) As for the Defendants (Exhibit C at 1-2)(#11 & #12) and (Exhibit C at 14-15)(#72) created by Chauncey Hester MHP, at controversy is the question of: What constitutes an "Onsite Consult"? ① Is is merely a walk past and looking at the prisoner; through a locked door mini-window? ② Or does it involve; pulling the prisoner out of the cell and properly interviewing the prisoner in a secure private office setting as required by HIPAA?

24.) Does the KDOC MH professionals actually expect prisoners to freely discuss their personal-private medical and mental health issues, in front of another prisoner in the same cell with them, or expect them to yell through a closed locked cell door; for all other unit prisoners to hear, in violation of HIPAA?

• 25.) At controversy, needing questioning of all KDOC/Centurion staff

7.

officers and medical personell at a jury trial setting are those questions above and also whether they always clearly identify themselves to the prisoner, especially during any alleged mental health visit or exam.

26) The Plaintiff can attest through personal first hand experience, from Mental Health (State/KDOC controled) he did not want nor did he have any interaction with mental health. (See: Defendants Exhibit A, Document 140-1) The Plaintiff was wrongfully housed and held in violation of his sentencing (making for an illegal sentence) at LCMHF and LSH from 12-12-2006 through 8-1-2012, over 6 years. When I was moved to Lansing on 8-1-2012, I was lead to believe the Bi-polar stigma had been removed from my record, but as it now turns out Lansing CF re-instated it to attempt to cover-up and prejudice me in this litigation. Further, if the Plaintiff had any such debilitating mental health problem, he should have rightfully been appointed legal counsel to represent him in this litigation.

IV. Plaintiff's opposition to Defendants: LCF Medical page 10 of 37

#51, 58    27.) Opposition to: #51, #58 (page 10).

28.) At controversy is the narrative time line-up of events and the accuracy of the KDOC/Centurion medical records, and not made under Oath, by the KDOC employee who created them.

29.) The Plaintiff from first hand Know ledge questions the accuracy of [Doc 140] #51, of the 11:38 am time documentation that the Plaintiff was seen by Mariah Kalma, APRN, and asserts he was first seen by Hanna Taylor, LPN on July 12, 2023 at 12:04 p.m. who took the Plaintiff's vitals upon first arriving at LCF medical clinic.

30.) At controvercy, the Plaintiff asserts by first hand Knowledge that he was first approached upon entering the clinic, by Captain Baxter and Nurse Hanna Taylor, LPN, who took my vitals at 12:04 p.m. Then while I tried hoarsely to speak to Captain Baxter to explain about the strangulation, the nurse left to arrange the X-ray. I was X-rayed, placed on an ambulance gurney and transported to KU Medical Emergency Hospital. The Plaintiff doesnt ever recall speaking to Mariah Kalma, APRN at that time.

8.

31.) This is supported by Defendants Exhibit C at 3 [Note] "Established patient. This 70 year old male presents to the clinic for evaluation. Hanna RN asked me to assess this patient; please see nursing note for YS."

32.) Logically if Hanna RN, had encountered Date: 07/12/2023 12:04 PM and then "asked" Mariah Kalma APRN to; "assess this patient," then the encounter date/time for Mariah Kalma APRN had to logically be after 12:04 P.M., not earlier.

33.) This logical medical care sequence of events is also supported by First hand knowledge, through Defendants Exhibit J page 81 of 130 ¶17-20: "So I go over to medical. I meet Baxter over there. And, uh, Baxter wants to know what went on. I told him that Garza had tried to kill me." [then] page 82 of 130 ¶1-5: "I said they're just try'in to cover it up. As far as I'm concerned. So, 'bout that time, the lady from X-ray bring -- comes in an they take me in and X-ray me. And then they decided that I need to go to KU. So, they put me in an ambulance and rush me to KU." also, see: Defendants Exhibit B pages 212-232 and Exhibit H (Doc 140-4) page 1 of 40.

34.) At possible controversy is the need for an explanation by a medical professional, for the determination of what the dark/black spot, the X-ray technician saw that indicated the need for emergency medical care and transport by ambulance to the KU Hospital. See: Defendant's Exhibit B pages 218 ¶19-25, 219 ¶1-23.

## V Plaintiff's opposition to Defendants: Garza as Cellmate  page 4 of 37

35.) Opposition in controversy to: #17.

36.) At controversy the Plaintiff asserts and objects that Defendants counsel has made a False/misleading statement regarding Exhibit G at ¶17, because the Plaintiff clearly stated he could neither Admit; nor deny. Because the Plaintiff was being denied the paper document copy of the Agent Tomilinson interview and at the time didn't have access to the audio record.

37.) Whether "explicitly" or "implicity", the intent was the same. So see:

38.) Defendants Exhibit J page 69 of 130 at ¶2-3 "And he says, you know how easy it would be to come over here and get in this pod and take care of you" (at ¶20-22), "he said, you know how easy it is

9.

to get over here and get with you if somebody wanted to kill you?"
And I said, is that why you're over here?" (Page 76 of 130 at ¶ 7-8)
"He threatened to kill me and -- but first he was gonna break my
TV."                     - Argument -
Ramos v Lamm, 639 F.2d 559 (10th Cir)"An inmate does have a right
to be reasonably protected from constant threats of violence and sexual
assaults from other inmates. Moreover, he does not need to wait until
he is actually assaulted before obtaining relief."
39.) Note: The Plaintiff was already being housed in restrictive "Protective
Custody" and should not have been housed with Jeremy Garza, nor
Joshua Weeks, who were in segregation for disciplinary charges;
and included in the "Plaintiff's Motion for Summary Judgment Against
Defendants: Parks, Meredith, and Chapman", Filed 3-23-26. (see's
page 13 ¶ 2-7)

#24→ 40.) Opposition in controversy to: #24 "No Admissible evidence"
41.) At controversy the Plaintiff asserts and objects that the Defendants
Counsel narrative claims make no logical sence. Because, why would a
state prisoner in imminent danger, being detained under protective
custody, for his protection, ever be required (beyond his own personal
control), be further required, to have to request protection from every
random other prisoner, put in the cell with him, from the very people
holding, detaining and responsible for his protection and safety. This
potential criminal act - Failure to protect an elder person/state
prisoner is specially egregious and the Plaintiff asserts, because
at controversy is the Plaintiffs claim that Jeremy Garza was placed
in segregation for disciplinary reasons, which included Mr. Garza,
having chocked-out his previous cell mate, also,
                        Argument:
    When the state takes a person into it's custody and holds him there
against his will, the Constitution imposes upon it a corresponding
duty to assume some responsibility for his safety and general
well-being... The affirmative duty to protect arises,... from the
limitation, which it has imposed on his freedom to act on his own
behalf. Deshaney v Winnebago County Dep't of Soc. Servs. 489 U.S. 189,
199 -200 (1989)
    The court has held that misuse of power -possessed by virtue of
                        10.

of state law and made possible only because the wrong doer is clothed with the authority of state law, is action taken "under color of state law)." U.S. v Classic, 313 U.S. 299, 326 (1991)

Public officials can not rely on ignorance of even the most esoteric aspect of law to avoid liability. The reasonableness standard is determined "under settled law" in the circumstances. Long v Norris, 929 F.2d 1111, 1115 (6th Cir 1991) It is well settled law that deliberate indifference by prison officials to a prisoners serious injury or illness may constitute cruel and unusual punishment in violation of the 8th Amendment. Estelle v Gamble 429 U.S. 97, 104-05 (1976)

The deference to prison officials does not give them constitutional license to torture inmates, but, is limited to what is necessary for internal prison security. William v Benjamin 77 F.3d 756, 765 (4th Cir. 1996)

~Admissible Evidence~

42.) The Plaintiff asserts at controversy as admissible evidence of the knowledge and intent of the Plaintiff's protection issues by Defendant Meredith:

a) Exhibit H at 31, 1-30, clearly by Deputy Warden Nicolaus Ball shows proof and evidence of "placed in protective custody" from the Defendants own document and should have been "separated from other inmates."

b) Because Evan Meredith pursuant to his own job duties and responsibilities, clearly knew as a Unit Team Supervisor I (The official duties/responsibilities for this position the Defendants have refused to provide to the Plaintiff in violation of the courts order) but, (see: U.S. District Court Civil Docket, this case, for Defendant Evan Meredith)

c) See: (included) Plaintiff's Exhibit PL #13, page 19 (section II #13) "Defendant's Responses to Plaintiff's Request for Admissions". verification 12-12-2025. Referencing a "Emergency Grievance" dated with legal service filed 6-22-2023 to S.O.C. Jeff Zmuda etc. regarding an incident on 6-9-2023 (a little over a month before the strangulation), for which has been admitted by the Defendants, which includes Defendants legal counsel and A1 Unit Team, Defendants Mr. Parks and Mr. Meredith, and the question clearly states "who I've requested Protection from in my cell".

d) Also, see: Exhibit F-1, Doc 30-6, dated 5-16-2023, from grievance dated 5-5-2023, page 13 of 83; to S.O.C. Jeff Zmuda (2nd para.) stating: "I had asked for PC (Protective Custody) and protection

11.

from the BIBR staff and from these drug dealers and drug and tobacco smokers and was denied."

"I've also submitted past grievances which have come up missing and/or gone unanswered by the Unit Team".

e.) Also see: Exhibit F-3, Doc 30-6, dated 6-22-2023 for grievance dated 4-25-2023. This grievance was clearly about Mr. Meredith's refusal to assist the Plaintiff with the grievance process; and his representation for me as proxy for DR Hearing case No: 2872. See: page 18 of 83 ¶ (para. 6) "I tried to get the Unit Team/Mr. Meredith to come to my holding cell and pick-up this original grievance through two different Unit Officers ... so, I had Officer Ellis; sign the receiving grievance receipt ... and deliver ... to Mr. Meredith CC."; page 19&83 (para 1) "Mr. Meredith CC. can not possibly claim he knows nothing about my claims and grievance ...," and page 20 of 83, "My grievance has consistently and repeatedly claimed the BIBR program ... is a security threat group as defined by KAR 44-12-325." Further, the KDOC officials response on page 15 of 83 of: "It appears you are or have addressed this matter with the courts, if you have you will need to address this with our legal office."

Thus, then making any Further attempt of exhaustion of the administrative process futile for the Plaintiff.

• d.) Also see: critical "iminent danger" - "Emergency Grievance" as best admissible evidence: Exhibit F-4, Doc. 30-6, dated 6-26-2023 (16 days before Plaintiff's strangulation by Jeremy Garza) of "Emergency Grievance" submitted on 6-9-2023 pursuant to: KAR 44-15-106 Emergency grievance procedure, and E.O. 92-154 ADA Grievance, to LCF Warden Geither and Ms. Chmidling Civil Rights Manager. (This as advised by KDOC officials through, Exhibit F-1, Doc 30-6, page 8 of 83) for page 26 of 83 (last para.) "But, my most important and dangerous issue is that the A1 Unit Team, Mr. Parks UTM, Ms. Hall UTS, and Mr. Meredith CC keep not ating drug and tobacco users, drug addicts, and dealers, who I've requested Protection from, into my cell ... They are intentionally putting me in danger, torturing me, denying me the basics ... being held under Protective Custody." (then page 27 of 83 + para 3); "... Mr. Parks UTM are helping him, because he is putting my life in danger, by intentionally putting these same people in the same cell as I, while I'm suppose to be under protective.

12.

custody from these people. (para 4) "Mr. Parks UTM and the A1 Unit Team are intentionally torturing me and putting me in danger..." (page 28 of 83, para 3); "Please help me, get these abuses stopped..." This "Emergency Grievance" was made on appeal to the S.O.C. Jeff Zmuda, through legal service on 6-12-2023 for/by Leavenworth County District Court Case No: LVCO 22-CV-323 (page 23 of 83) This "Emergency Grievance" obviously is not a classification decision issue, as claimed by the KDOC officials. But, clearly a plea for help for the Plaintiff life and humane treatment. This blatantly shows deliberate indifference, constituting cruel and unusual punishment in violation of the 8th Amendment, and with evil intent.

e.) The Plaintiff objects and asserts, under controversy, that all the Plaintiff's cited documents are relevant and admissible evidence.

f.) See: [1] Exhibit PL #14, Position Description (duties and responsibilities) for Defendant Andrew Parks Unit Team Manager, and [2] Exhibit PL #15, Position Description (duties and responsibilities for Defendant Bruce Chapman, Correctional Officer Supervisor 1 [3] Document for Evan Meredith refused to be provided by Defendants. all relevant for #42 (b) above issues, and (g) below.

also see: Referenced for and cited in:
Plaintiffs: "Motion For Summary-Judgment Against Defendants: Andrew Parks, Evan Meredith, and Bruce Chapman"
[4] Exhibit PL #16, IMPP 10-114D    Availability of Emergency Med.
[5] Exhibit PL #17, IMPP 20-104A Seg/Restrictive Housing
[6] Exhibit PL #18, LCF G.O. 13,102 Medical/Health Care Services.

g.) The Plaintiff asserts through personal first-hand knowledge that Mr. Meredith knew of the Plaintiff's need for protection from physical threats, while representing the Plaintiff as his proxy, (during a pre-representation interview with the Plaintiff and through the course of his job duties as the Plaintiff correctional counselor-supervisor) during DR case 2872 and this represents "requested protection" as admissible evidence. See: Defendants Exhibit I page 44 of 56, "Facts: 4) White requested protective custody because of the threats by Mr. Gary Spillman and drug users and dealers.", then at; "6.) White was then put in danger by the attempted forced move in a (4) fourman cell with drug and tobacco

13.

users, which because of White's age and physical health, he can not tolerate."

#56  43.) Opposition in controversy to: #26 "No admissible evidence"

44.) At controversy; the Plaintiff asserts that he has addressed Defendant Chapman's liability (which includes elements of all #42 above), in the Plaintiffs; "Motion for Summary Judgment against the Defendants: Parks, Meredith, Chapman," regarding Defendant Chapmans knowledge of the Plaintiff's requests and need for protection and "Protective Custody" through Defendant's Unit Team connection and Defendant Chapmans own job duties and responsibilities requirements which includes Defendant Co Chapman was a functional member of the Seg./Restrictive housing Unit Team along with Defendant Parks and Meredith. As such his job Position (duties and responsibilities) per Exhibit PL #15 included:

(i) "This position serves a critical role in the overall operations of the facility by providing immediate supervision to all levels of the inmate population during a routine shift, and resolving problems or respond to emergencies within the compound in a judicious, expedient manner with the goal of creating a safe living and working environment."

(ii) "Ensure that ordered...secure...and safe conditions are established and maintained in cell house... while they are segregated for punitive, protective, and administrative purposes." [Note: notice separately-segregation]

(iii) "Enforce policies, rules and regulations... Report incidents or behaviors that deviate from the inmate's general profile or that could cause an immediate problem.

(iv) "Conduct briefing for all new inmates assigned to a cell house,... Responds to emergency situations... Proceed to area where emergency is taking place."

(v) "Submit reports within a time frame determined to be appropriate on all irregularities and incidents that could potentially be threatening to the safety of employees, inmates, and/or state property"

(vi) "Knowledge of procedures and practices of supervising inmates confined to an adult maximum correctional institution." and "responding quickly to emergencies."

(vii) "Duties are directly related to the reason the position exist and cannot be reassigned without changing the nature of the position."

45.) Therefore Defendant Chapmans "duties are directly related to the

14.

to the reason [sic: His] position exist" and Defendant Chapman is responsibile and required to: "conduct briefing for all new inmates", which includes, the Plaintiff, Garza and Weeks, and "ensure that safe conditions in" in the cell house, for all prisoners," while they are segregated for punitive, protective and administrative purposes," Therefore, Defendant Chapman was required to know that the Plaintiff, had requested protection and "Protective Custody" and that Garza and Weeks; should have been "segregated" from the Plaintiff, because they were there for "punitive purposes" and should not have been housed together, pursuant to: Exhibit PL#2 #4, "which would keep him separated from other inmates during any stay at LCF" Further, Defendant Chapman was required to: "Report incidents", "that could cause an immediate problem", and "could potentially be threatening to the safety of... inmates" [the Plaintiff].

46.) Further, Defendant Chapman signed many (form 9) Inmate Requests and grievance and receipts, the Plaintiff submitted and always either scanned them for content, or fully read them, before he signed them. Thus, giving him knowledge of the Plaintiff's need for protection. —Imminent Danger of serious physical injury—

47.) Other admissible evidence includes: The Plaintiff's problem with the inhumane, cruel and unusual treatment by Defendant Chapman was not at issue or relevant, until (just) before the submission of Exhibit F-4, dated 6-26-2023 (before strangulation on 7-12-2023) regarding: Page 27 of 83; "I recently on 6-9-2023, had to raise a fuss, because I was threatened by one individual, they did put in the cell with me." [By Defendant Chapman], Page 28 of 83; "The Unit Team won't come to the cell to pick-up such items [grievances, inmate requests etc]. "I have to give it to the Unit Officers, to give to the Unit Team..."

48.) Also, see: Exhibit F-5 dated 9-28-2023 regarding the Plaintiff Plea for help, to Kansas Governor Laura Kelly (Head of the KDOC); dated 9-21-2023, page 3 of 83; "As of 9-21-2023, I've been held under disciplinary seg. status for 177 days. That quite a bit than the 60 days max. and going on more than 6 months. I've been locked down 24 hours a day, 7 days a week, no property, shower shoes, legal papers need for the court, access to the library and law library, no yard, no dayroom, always cuffed up, many times denied use of the handicap shower, often getting, only 2 shower and no more than 3 showers a week, but, then I don't have clothes anyway, ability to shave [until]

15.

a month ago) and not been given a hair cut in over 7 months. I've had to cut my own hair with a boot leg razor (used) given to me by another prisoner. I've done nothing wrong but try to protect myself and my physical and mental health while being tortured by Mr. Parks UTM, Ms. Hall UTS, Ms. Oplinger UTM, Mr. Meredith CC and OIC Chapman." (From Page 32 of 83)

"The above named officials have decided, instead of providing me protection they have chosen to coerce and intimidate me by putting dangerous drug users and dealers in the same cell with me. The very people I've asked for protection. They've taunted me numerous times, tell me they will only release me if I sign a PC-waiver, back to general population (back without protection)..." (See: Exhibits PL#4)

"On 6-22-2023 I submitted an Emergency Grievance to S.O.C. Jeff Zmuda and several other state officials as proof, as well submitting a copy to the Leavenworth County District Court as an Exhibit about the LCF named officials above terrorizing and harassing me by putting these dangerous drug dealers and users in the same cell as I. In that grievance I mentioned it was only a matter of time before I was seriously hurt."

"Sure enough on 7-12-2023, I was strangled /attempted murder/ and assault and battery by Jeremy Garza, who they put in the same cell with me. He was being put in seg. for chocking out his then current cellmate. After the attack Mr. Meredith CC and OIC Chapman denied help, away from Mr. Garza, until, I agreed to sign a PC-waiver. I relented to get help, but after my signature, I added, "under duress because of being attacked by cell prisoner." I was then denied to go to medical for my injuries by OIC Chapman, Mr. Parks UTM, and Mr. Meredith CC." (see: Exhibit PL#7)

This is admissable evidence under personal First hand Knowledge, and documentation for exhaustion of admistrative process, and having been legally served and filed as Exhibits in a State Court for LVCO case No: 22-CV-323 on 6-12-2023 for Exhibit F-4 and on appeal to S.O.C. Jeff Zmuda.

49.) Further, relevant documentation regarding Defendant Chapman and in which substantuates the "Emergency Grievance" Exhibit F-4 and Exhibit F-5 letter to Governor Kelly can be found in Defendant's Exhibit J, page 64-130; "Whether or not you ever get it, it's probably because of — — Co Chapman. [This regarding incident which occurred]

16.

in F-4.]; page 77 of 130, "Mr. Meredith -- - Chapman, OIC Chapman came running to the door..." [Regarding the Plaintiff pounding on the door with my cane, when Jeremy Garza tried to kill me by strangulation]; page 103 of 130 # 14-19, "but, you know, but I want a central monitor put on Parks, Meredith, --- COI Chapman, OK?"; [This where I request protection and central monitor; to end the inhumane treatment, harrassment and cruel and unusual punishment, from EAI Agent Tomlinson, during the interview]; page 114 of 130 #9-11; "But I need protection away from Parks... Parks and Chapman." [The Plaintiff repeating of his plea for help and protection.]

50.) "LCF Medical - Opposition to: 50-61, at controvercy for pages #4, #5, #6, #7, #8, #9, and at #61.) The plaintiff is unsure he ever "saw" or even spoke to Mariah Kalma; APRN, before being sent to KU Medical and the Exhibit C at 6,10 (showing the start and stop dates of various medication, have nothing to do with any treatment for injuries or medication given, as they are merely the medication listing for my normal daily (KOP) Keep on Person medication prescription for diabetes, high blood pressure etc.)

#60  51.) Opposition to #60.: In controversy is and was the Plaintiff's pain level. The Plaintiff asserts he has personal first-hand knowledge of aggravated back condition and debated the issue with Defendant's counsel during deposition of Defendant's Exhibit B, page 207 # 13-23 for:
13. Q. "... -- What were your pain levels after the incident..." [Note: The plural on levels], on a scale of 1 to 10?
16. A. "... probably eight or nine for the first couple two or three weeks.
21. Q. "So, then my follow-up then on that was how long, did each symptom last, so --- "
23. A. "Well, until I got the surgery."
[Note: Referencing the back surgery for aggravating pain to back caused by the incident, at the Salina Hospital on 9-6-2025.]
52.) At controversy; for #51 above: Is the need for the Plaintiff for his own medical expert to testify regarding, medical opinion regarding the long term back and leg pain the Plaintiff suffered after the assault and strangulation of the Plaintiff by Jeremy

17.

Garza on 7-12-2023. This causing sciatic nerve pain as an aggravating factor which ultimately caused the need for lower-back surgery on 9-6-2025 at the Salina Regional Hospital.

In support see: Defendant's Exhibit B page 227 #25 - 228 # 7.

A. "But I'm just telling you the way, you know, you got to use a little common sense in this, okay, because there's long term damages. There's long-term things that happen any time that you're physically attacked, okay, and when you're physically attacked, sometimes you don't necessarily feel any long-term symptoms until after the fact, maybe a day or two later." Then at page 229 # 14-24.

"I'm telling you that I had to have surgery on the others. That may or may not have aggravated the need for the surgery. I'm not -- I'm not a doctor. I don't know that they aggravated. I'm not saying that they aggravated those -- those issues, okay. I'm not saying that, I'm just saying that they aggravated those issues, as far as it went for pain and suffering, okay."

"Now, the ... the pain to my --- throat and neck and my lower back, I think I'm pretty sure that it did aggravate, you know.

53.) This Plaintiff's controverted position is supported by: Defendants Exhibit D page 23, Finalized by Judson Bertsch M.D. on 7-12-2023 3:39 AM. "ERG-Medical Decision Making:" ... but was not limited to blunt force abdominal injury, contusion, strangulation hernia." "Wednesday July 12, 2023 1408 CTA neck ordered. Pt. does have epigastric and RUQ abdominal pain with palpation, will get CT abd/pelvis. Treating pain with IV acetaminophen", Then on: page 26, Clinic Notes: Discharge instructions by Turner, Rebecca A, APRN-NP at 7-12-2023 1710 "... You may have continued pain as you continue to heal. I recommend Tylenol and ibruprofen as needed for pain..."; then on page 28, "Imaging: Answer: Assault victim, abdominal pain, Flank pain. Comment - Was choked in his cell this AM, does not believe he lost consciousness, in c-collar, neck pain." also see: page 29 of 34, Clinical Indication: Assault victim with abdominal and Flank pain.

54.) At controversy, the Plaintiff asserts the reply to "Return to LCF" #73, (also see #20) and to include issues of #52 and #53 above this document, to include serious physical pain and suffering

18.

from aggravating factor to lower back and sciatic leg pain, from "experienced pain", neck trauma, sore throat and trouble swallowing constituting serious physical harm/injury from assault on the Plaintiff because of imminent danger.

#9 →*• Addendum from page 7 (this doc.) regarding SUMF: #9 (Statement)
• 55.) At controversy regarding statement: "no physical altercation between him and Plaintiff", which the Plaintiff asserts was a "threat of physical violence", which constitutes a continuing pattern toward creating imminent danger for which Defendants Parks, Meredith and Chapman were fully aware. (see: #5 this doc. and Defendants Exhibit J page 66 of 130 #12 "So he threatened to hit me...") This in regards to incident stated in Exhibit F-4 page 2 of 83, for 6-9-2023.

Disciplinary Report (page 13 of 37)

#79 →• 56.) At controversy for #79; Plaintiff admits he is neither omnipotent nor omniscient, but does recognize evil intent and deliberate indifference for a persons, protection, health and safety, by a person in a management position (supervising others) misusing his position under the color of state law applicable to Constitutional violations and 42 U.S.C. § 1983.

#82 →◉ 57.) At controversy for #82, the Plaintiff asserts the admissible evidence is the sworn testimony of "R/O CO1 Prentzler"; (see: Defendants Exhibit F, page 7 of 9; "R/O and I/M sworn in."; and "I/M to R/O: who told you to put that prisoner in the cell with me?, R/O to I/M: McParks" This record for the disciplinary record for KDOC/DR case No. 1138 on 9-29-2023, also see: "I/M closing statements: UTM Parks is trying to kill me or seriously or physically harm me again and I need a central monitor against UTM Parks, UTS Meredith, and CS1 Chapman. UTM Parks is trying to extort me to sign a PC waiver." This is applicable and admissible evidence for imminent danger exception and exhaustion of administrative process, which is futile for a state prisoner as the KDOC/State of Kansas consistantly and routinely fails to keep accurate records and fails to properly investigate prisoners claims, back dates its records, fails to keep records of the actual date a grievance, request etc. are returned to a prisoner, and most often fails to process a grievance at all. "As is indicated by the

19.

above Plaintiff's request, to the KDOC/LCF officials, there still has been no central monitor (requested multiple times by the Plaintiff) ever recorded or issued by the KDOC/LCF officials, regarding the defendants and/or the Plaintiff's protection against smokers, drug user/dealers/ BIBR members. (Failure to Protect) see: Defendants Exhibit H page 3 of 40, Declaration of [Deputy Warden] Nicolaus Ball #3; "Plaintiff does not have any central monitors with KDOC," and also see: (Plaintiff's "Motion for Summary Judgment against defendants: Parks, Meredith and Chapman," under Causation: page 4-5) and/or (Defendants Exhibit H (at (5a)) page 36-37 of 40) regarding extortion of a prisoners signature on a PC waiver.

#85 → 0   58.) Plaintiff's response in controversy to: #85; is of course, it wouldn't mention Defendant Parks, as he didn't become a factor (for issues alleged in the habeas corpus regarding protection); until after the Plaintiff was placed in restrictive housing (without protection) on 3-28-2023, and he continued to fail to protect and actually inten-
(see page 27 for #86)   tionally, wantonly and with deliberate indifference and evil intent put the Plaintiff's life in danger, by putting the very people, the Plaintiff had been requesting protection from in the same cell with him. see; Exhibit F-4 page 26 of 83 (last para). and 27 of 83.

#87 → 0   59.) At controversy for #87; and for correction of the record. The Defendants have misquoted and misrepresented the facts and intent. The Plaintiff stated for; Defendants Exhibit B page 152 ¶7; "7 2020. This — this was before I even went into — to BIBR.oo"

•   60.) At controversy, the Plaintiff asserts and submits the following facts and evidence as proof regarding: #90. This regarding the violation of his right to access the court, and to be kept adequately informed, while representing himself in a state habeas corpus Pro Se. See as one critical example: Exhibit PL #19 @ pages 5-8 of 10 of a, "Motion to Amend to Add Issues" for Case No: 2022 CV.323, Habeas Corpus in the District Court of Leavenworth Co, Kan., mailed for filing on 10-9-2023; with Certificate of Service on 10-9-2023 (page 8 of 10), with proof of mail out through AWR-to the court, through LCF, UTS Hall on 10-10-2023 (page 9 of 10); and for legal service to KDOC/SOC Jeff Zmuda on 10-10-2023 (page 10 of 10).

20.

(b) Yet, the State District Court mis-identified this Motion, (never giving a ruling)(see page 2 of 10) and recorded it on 10/13/2023, filed merely as "Correspondence from Plaintiff."

(c.) This was while the Plaintiff was being held for the second time, in atypical conditions of incarceration, after the Plaintiff's return to LCF from the KU Hospital from the strangulation incident and a week/half after the DR case No. 1138 Hearing on 9-29-2023 (see: Defendant's Exhibit F)

(d.) The Plaintiff on 10-23-2023 was transferred to LSCF for his protection, but continued to be held under the same conditions.

(e.) On 11-7-2023, The Plaintiff was appointed counsel by the Leavenworth Co. Court, but the Plaintiff never saw the man, nor did I ever consult or speak to the man. Because he was located in the Leavenworth Co. Court area.

(f.) On 2-12-2024 the Plaintiff filed this 42 U.S.C. §1983 action in the Federal Court, because he could get no information from the Leavenworth State Court and because of the continuing atypical incarceration at (LSCF) Larned State Correctional Facility.

(g.) On 2-15-2024 The Plaintiff's court appointed attorney was allowed to withdraw by the Leavenworth Court. (less than 4 month appointment.)

(h.) On 3-22-2024 (since the Plaintiff had been transferred) the Leavenworth Court ordered a change of venue to Pawnee Co. Court.

(i) On 9-26-2024 the Pawnee Co. Dist. Court then summarily dismissed the Plaintiff's habeas corpus case as "moot" since, the Plaintiff was no longer being held at (LCF) Lansing Correctional Facility.

(j) Because of the atypical conditions of incarceration, physical assault (attempted murder of the Plaintiff), constant threat of violent acts against the Plaintiff, harassment and retaliation, (see: page 7 of 10 of Exhibit PL #19, legally served on S.O.C Jeff Zmuda); denial to; "ability to do legal research, or access to the law library and my own personal research books, court rules and procedures and other legal papers used for reference." Further, I was unaware of the mis-identification of this valid "Motion to Amend to Add Issues" (which was never ruled on) until it was too late; after the summary dismissal by the Pawnee County District Court No: PN-2024-CV-00009. Also, because of

21.

the Plaintiff's transfer from Lansing to Larned, while he was representing himself Pro Se, in two different court actions; and because of the mis-handling of the Plaintiff's property and legal documents; by the KDOC officers/staff. The Plaintiff has lost (over time) many pages of legal documents. The Plaintiff had informed the Defendants counsel of this fact in; Defendants, Exhibit I page 3 of 56.

Legal Arguments.

A defendant may be held liable as a supervisor under 42 U.S.C §1983 if there exists either (1) his or her personal involvement in the constitutional deprivation, or (2) a sufficient causual connection between the supervisor's wrongful conduct and the constitutional violation. A claim of unconstitutional conditions of confinement, unlike a claim of unconstitutional discrimination, is actionable on a theory of deliberate indifference. A showing that a supervisor acted, or failed to act, in a manner that was deliberately indifferent to an inmate's, 8th Amendment right is sufficient to demonstrate the involvment, and the liability of that supervisor. Starr v Baca, 633 F. 3d 1191 (9th Cir. 2011).

"The Due Process Clause of the 14th Amendment provides that no State shall...deprive any person of life, liberty, or property, without due process of law." De Shaney v. Winnebago County Dep't. of Social Services, 489 U.S. 189, 194-95, 109 S.Ct. 998, 103 L.Ed. 2d 249 (1989)

"This deliberateness requirement can be satisfied by demonstrating 'an intent to place a person unreasonably at risk', which has been defined as when a state actor was aware of a known or obvious risk that was so great that it was highly probable that serious harm would follow and he or she proceeded in conscious disregard and unreasonable disregard of the consequences." Kuyper v Board of County Commissioners of Weld County, Colo., No. 09-CV-00342-PAB-MEH, 2010 U.S. Dist. LEXIS 30510, 2010 WL 1287534, *8 (D. Colo. Mar. 30, 2010).

The Second Circuit has held that prison officials have a constitutional obligation to provide substantive assistance to an inmate in marsh-aling evidence and presenting a defense. Eng v. Coughlin, 858 F.2d 889, 897-98 (2d Cir. 1988). The Second Circuit recognized in Eng that "confinement in SHU (segregation housing unit) is a factor which, like illiteracy or complexity of charges, make it nearly impossible for an inmate to formulate a defense, collect statements, interview witnesses, compile documentary evidence, and otherwise

22.

prepare for a disciplinary hearing." 858 F.2d at 897 [Like wise for the Plaintiff representing himself in two civil court action in the State and Federal courts.] Accordingly, when an inmate is "disabled either by being confined full-time to SHU or transferred from the prison in which the incidents occurred, the duty of assistance is greater because the inmate's ability to help himself is reduced." Id. at 898 (citation omitted). In short, the Second Circuit concluded, "If the inmates right to marshal evidence and present a defense to charges of breaches of prison disciplinary rules is to mean anything, then an inmate so disabled must be provided with some assistance."

Here, the Plaintiff was and has been disabled in two ways: he was transferred from the facility where the incident occurred and the witnesses still reside, and he was confined in SHU, while having to represent himself Pro Se in a State Habeas corpus action and a Federal civil rights action, with the lose of his legal papers during the transfer.

## Administrative Remedies
### Grievance AA 2023056

(61.) At controvercy, for #93; the Plaintiff asserts and objects that defendant's counsel has made false and/or misleading statements of facts regarding Grievance AA2023056. (A)① The grievance was "NOT DENIED"; but failed to be followed or enforced for the "Conclusions Made". The Plaintiff asserts the Unit Team response included: ["You were not removed from BIBR, however you were taken out of the current group and will be placed into the next group pending one on one with Gary Spillman."]; nor by the warden, whose response was: ["... it was determined that the response provided by UTM Potter was appropriate."]; nor by the S.O.C designee, whose response was: ["... Take the time to discuss your concerns with the program leads when you attend the new session; discuss what you are hoping to get out of the program ..."] This the Plaintiff asserts clearly states, that I was not removed from the BIBR program, nor implies that I should be taken from that current housing in general population. Yet, nothing was mentioned about the substantive issue of the drug and tobacco/smoker problem, nor did I ever have any one on one with Gary Spillman. The KDOC/LCF officials have freely abdicated their authority and rights to legal authority of KDOC programs to BIBR/

23.

Gary Spillman. A convicted drug manufactuor, by the KDOC/SOC. and Deputy Warden James Skidmores conclusions that: "BIBR makes the determination if you meet the requirements for their program." But, the Plaintiff had already met the requirements and had participated for almost a year. (See: Exhibit PL#20) Nor did they include or address the issue of proselytizing of religious beliefs. (see: Exhibit B page 7 of 10) (B) Further, the Plaintiff asserts it is questionably impossible for a grievance to be returned back to the KDOC, from the Plaintiff on 10-10-2022, received by the warden on 10-10-2022, and with a 10-10-2022 date of a final answer. Yet, not returned back to the Plaintiff until 10-21-2022 [and be properly investigated]per KAR 44-15-101a(f) "A procedure shall be established by the warden for investigating the allegations and establishing the facts of each grievance. An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance."] This was not properly investigate, and/or was falsified and back dated by the KDOC officials. Which may also explain why the KDOC/SOC has back dated their Response for 11-3-2022, but the Plaintiff didn't receive the grievance back until 12-8-2022. Over a month later. Also, notice on all returned grievances back to a prisoner none. has the required notification for return (legal service) completed for: "The original response on appeal and all attached documents were mailed to the inmate by way of United States mail on_____." See: Exhibit B page 1 of 10. This is also supported through Exhibit E, (Case No: 2022 CY323 filed 12-12-2022) page 6 of 28, for which the Plaintiff had prepared for filing of that habeas corpus. But, being denied completion and the return of the grievance, for which the Plaintiff had to include as an issue: "IL Count II KDOC/Secretary of Corrections/Jeff Zmuda has failed to answer and return to White, grievance appeal #AA20230056 in the required 20 working days in violation of KAR 49-15-102(c)[3] Also, see: 12(A) page 12 of 28 Exhibit E. Showing the Plaintiff didn't receive the copy until 3:00 P.M. on 12-8-2022. The date I had intended to file the habeas corpus action. [Plaintiff side Note: Pursuant to K.S.A. 60-1501, "... but such time [sic for filing] is extended during the pendency of the inmate's timely attempts to exhaust such inmate's administrative remedies."]

Legal Argument - Administrative Remedies.

The Kansas Courts themselves which has jurisdictional authority

24.

of the KDC, regarding their administrative grievance procedure have ruled in, McMillan v. McKune, 35 K.A. 2d 654, 661, 135 A.3d 1258 (2006) "Rules and regulations adopted by an administrative board to carry out the policy declared by the legislature in the statutes have the force and effect of laws, such regulations are issued for the benefit of both the agency and the public, and an agency must be held to the terms of its regulations. An agency may not violate its own rules, and where it fails to follow the rules that it has promulgated, its orders are unlawful."

In Booth v Churner, 532 U.S. 731 (2001) "The Supreme Court has held that the PLRA requires a prisoner to exhaust "such administrative remedies" as are available." "Prisoners need not exhaust state remedies prior to §1983 action alleging defendants violated inmate's due process and equal protection rights, ..." Sisk v CSO Branch, 974 F. 2d 116, 117-18 (9th Cir. 1992) The Plaintiff asserts prisoner in restrictive housing do not have the freedom to act on their own behalf, to meet time requirements, get required forms copies etc. to follow the administrative grievance procedures, that the KDOC officials do not follow themselves. Therefore are unavailable to segregation prisoners and unlawfull, and especially egregious when a prisoners life is in danger (imminent). Therefore in controversy the court must define "available", for under the Plaintiff's condition of incarceration, The defendants have made no showing that "any such administrative remedy" was ever available to the Plaintiff.

The State/Defendants had the burden of proving that the Plaintiff failed to exhaust (such administrative remedies that are available) his administrative remedies, pursuant to 42 USCS§ 1997e. Von Staich v Hamlet, 2007 U.S. App. (9th Cir. 2007). Further, The limitations of the PLRA do not apply if the prisoner is in imminent danger of serious physical injury. Abdul-Akbar v McKelvie, 223 F. 3d 307, 313 (3rd Cir 2001) also see: Deshaney v Winnebago County Dep't of Soc. Serv's. 489 U.S. 189, 199-200 (1989)(page 10 this doc) and imminent danger is assessed at time of filing complaint, not at the time incident in question occurred. Like- wise the imminent danger exception is satisfied when alleging failure to provide adequate medical care for serious conditions. Hunt v Uphoff. 199 F. 3d 1220, 1222 (10th Cir. 1999) and Ashly v Dilworth 147 F.3d 715, 717 (8th Cir)

But, the Plaintiff asserts he did exhaust all administrative process made available to him under the condition and totality

25.

of his incarceration, to also, include the above well-settled provisions and exceptions of the PLRA, and further; "A state procedural ground is not adequate, unless it is "strictly or regularly followed." Johnson v Mississippi, 486 U.S. 578, 587, (1988) quoting Hathorn v Lovorn, 457 U.S. 255, 262-63 (1982).

Further, the KDOC/SOC abdication of authority to Gary Spillman and further making any future exhaustion futile when the KDOC/SOC (see page 12 this doc.), stated: "It appears you are or have addressed this matter with the courts..." for Exhibit F-3 page 15 of 83. Clayton v Gibson, 199 F. 3d 1162, 1170 (10th Cir. 1998). *PS (see below)*

62.) The Plaintiff asserts grievance # AA 2023056 as well as all other submitted grievances and complaints must be considered for the totality of issues regarding conditions of incarceration and imminent danger, because even exposure (unwanted) to ETS (environmental tobacco/drug) smoke is an assault and threat of future harm, and for exhaustion purposes deem exhaust, as did the State Dist. Court.

*See: PS Above* See Exhibit F-2 dated May 31, 2023 abdicating their authority and grievance process (page 14 of 83) Doc. 30-6 to the ADA Marcelle Chmidling, Civil Rights Manager, Lansing Correctional Facility; Who also never responded back in answer to Plaintiffs issues.
• Timeline Submissions •

63.) The Plaintiff will give his responses, "Not" in the Random, Haphazard order the Defendant has presented, but in the dated time, that they occurred and/or attempted to be grieved. Otherwise they make no sense to the Plaintiff, nor I believe to the Court.

A.) 10-5-2022 submission of grievance No. #AA2023056 - Exhibit B (see above numbers 61 and 62) Returned 12-8-2022

B.) 12-12-2022 filed Lyco 2022 CV 323 Habeas Corpus - Exhibit E.

C.) 3-27-2023 Requested Protective custody - Exhibit #PL-3

D.) 3-28-2023 Issued DR 23-1875 and placed in segregation officials refused to provide me with Appeal forms and materials.

E.) 4-25-2023 Submitted grievance "No Serial Number assigned" (see Doc 140 of 16) #104-108 Exhibit F-3, to Unit Team CC, after no response, re-wrote and resubmitted direct to warden on 5-7-2023, by U.S. mail, not processed, nor answered by Unit Team, nor LCF Warden

26

rewrote and resubmitted to S.O.C by U.S. Mail and through legal service court filing in LYCD 2022 CV 323; returned from S.O.C on 7-28-2023. It took over 3 months with no relief, investigation or finding of facts. This grievance clearly shows deliberate indifference to prisoners and lack of proper processing and record keeping of the grievance administrative exhaustion process. Thus making exhaustion futile for state prisoners. The Plaintiff submitts (2) two form 9's dated 5-17-2023, Exhibit PL# 21-1 and 5-4-2023 Exhibit PL#21-2 of my "inmate request to staff member" to Mr. Meredith CC/Unit Team in my attempt to get my grievances properly processed and returned. (see: Exhibit F-2 at 6) page 20 of 83.)

#105 → • 64.) At controvercy #105; this grievance was indeed about the defendants Parks and Meredith failure to properly and adequately assist the Plaintiff in segregation; in the administrative grievance process. (see: Exhibit F-2 at 6) page 20 of 83).

#108 → • 65.) At controvercy #108; The Plaintiff asserts the grievance and appeal is an official grievance and appeal form and in no way be mistaken as an informal letter, because the appeal clearly begins; "Please see pages 3, 4, 5, for the reason why this grievance has been submitted to the Secretary of Corrections without a Warden or Unit Team Response ..." KAR 44-15-102[3][G] and KAR 44-15-101b. Also there is no provision or requirement that a prisoner must provide "evidence". "KAR 44-15-102[3][G] If no response is received from the Warden in the time allowed, any grievance may be sent by an inmate to the secretary of corrections with an explanation of the reason for the delay."

#86 → • 66.) At controversy #86, The Plaintiff asserts admissible evidence can be found in: Exhibit F-3 page 18 of 83 (middle para); Exhibit F-1, pages 11; 12 of 83; Exhibit F-2; Exhibit F-4, page 27 of 83; Exhibit F-5 page 31 of 83 dated 9-21-2023, on page 31 of 83. DR #1138 was issued to Plaintiff on 9-26-2023. Also see: Exhibits PL#21-3, PL#21-4 dated 5-9-2023 and 5-10-2023.

*Critically Important Issues (to show knowledge by defendant-s)*

#133 → ◉ (F.) At controversy #133, Exhibits: F-1 and F-2; "Emergency Grievance" pursuant to KAR 44-15-106 Emergency procedure; KAR 44-15-201 special kinds of problems; KAR 44-15-104 Reprisals prohibited. This was submitted to S.O.C. Jeff Zmuda on 5-5-2023, the Plaintiff desparately seeking help, relief and Protective Custody (page 13 of 83) (see 2nd and last para.) But, no relief given. Only increased harassment, torture

27.

and abuse of an elder state prisoner. The Plaintiff asserts the KDOC/SOC abdicated his authority and to the grievance process to: Civil Rights Manager Ms. Chmidling on page 8 of 83 (Exhibit F-1) and page 14 of 83 (Exhibit F-2). Further, the KDOC/SOC clearly have accepted this as a valid "Emergency Grievance" pursuant to KAR 44-15-106; because in their response to Exhibit F-1 page 8 of 83 they respond: "In compliance with KAR 44-15-102 (c)(4) ...", which states: "If a grievance report form is submitted to the secretary without a prior action by the Warden, the form may be returned to the warden. If the warden did not respond in a timely manner, the form shall be accepted by the secretary." The wardens response was Exhibit F-2. The Warden did not give his response in the required 10 working days or (14 calendar days), pursuant to KAR 44-15-102 (3)(A)(ii) an response return back to the Plaintiff. Nor did the S.O.C. accept the form as required by KAR 44-15-102 (c)(4) or give a response by either the warden, S.O.C. or Ms. Chmidling Civil Rights Manager. All the KDOC officials were deliberately indifferent to the Plaintiff's plea for help from the Defendants. Spillman, Parks and Meredith; and for their participation explained by: KAR 44-15-101a (f) "An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance." Therefore, proceeding on to the Governors Office.

*In Response and Follow-up to Exhibit F-1, F-2 above*
"Emergency Grievance" pursuant to: KAR 44-15-106 to Warden Geither and E.O. 92-154 ADA Grievance to: Ms. Chmidling Civil Rights Manager
Dated 6-9-2023

#111 → (G.) At controversy #111 and Exhibit F-4; The Plaintiff objects and asserts this as a valid "Emergency Grievance" for exhaustion purposes, whose substantive matter is regarding the A1 Unit Team, Defendant Parks and Meredith. This as stated in Exhibit F-4 page 26 of 83 (last para) "But my most important and dangerous issue is that the A1 Unit Team, Mr. Parks UTM, Ms. Hall UTS, and Mr. Meredith CC keep rotating drug and tobacco users, drug addicts and dealers, who I've requested protection from into my cell." Then also regarding Mr. Spillman on page 27 of 83 (middle page) "Now it seems Mr. Park UTM are helping him, because he is putting my life in danger, by intentionally putting these same people in the cell as I, while I'm suppose to be under protective custody from these people." This is clearly not regarding a  classification decision making process

28.

and shows deliberate indifference, with evil intent, by not providing me the safety, protection, and treatment as required by IMPP 20-105D, Protective Custody. Notice there are no finding of any facts (Investigation) nor conclusions or relief, remedy offered or provided. Other than page 250f83 "Also, work with CC Meredith to ask about a transfer. I have given a copy of this letter to classification Manager Ms. Waldock." This suggestion was ridiculous because, I had repeatedly asked for a transfer, even before the Plantiff was placed in segregation. Mr. Meredith CC was part of the problem and of no help, but in fact conspired with Mr. Parks.

✳ • (67) 7-12-2023; The Plantiff was physically assaulted and by/with strangulation, for which the Plantiff alleges was attempted murder by Inmate Jeremy Garza in his segregation cell at (LCF) Lansing Correctional Facility.

✱ Regarding EAI Incident Report and "Emergency Grievance" ✱
#136 → • 68.) At controvercy #136, and associated "Emergency Grievance"
Dated 7-14-2023

• H.) 7-14-2023 at controvercy #136 and "Emergency Grievance" 1st attempt submission. After, the Plantiff was strangled, taken to the KU Hospital, released and upon returning back to LCF. The Plantiff was told by EAI officers that they were not going to allow me to be placed in general population. But, was going to put me back in (PC) Protective Custody. In a one man cell, for my protection. So they once again put me back in the same cell, I had just been strangled in, and under the same people: Defendants Parks, Meredith and Chapman, that had almost killed. At that time I was asked to submit an Incident Statement/Report, by the EAI officers, of what occurred and caused the 7-12-2023 strangulation assault. So, I produced the incident statement, as requested, but also using the same facts. I once again, also, produced, yet another "Emergency Grievance" and had it submitted to the LCF Warden through the Unit officers and EAI. The dates cited in Doc 8, page 8 of 8 for (7-14, 8-23, 8-30, 9-30-2023; #AA 2024082 and (9-1, 10-1-2023) The Plantiff had tried to explain were the dates of repeated attempts to get the "Emergency Grievance" submitted, on 7-15-2023 to be processed, investigated and returned to the Plantiff. The Plantiff's efforts

29.

were futile, because the KDOC/S.O.C./Warden/officials have failed to return any copies of my repeated submissions and evidently never produced any record of either the EAI Incident Report, or Emergency Grievance, submitted by the Plantiff. This has all been explained to the court and to the Defendants Counsel and recorded for the evidence, through: ① Exhibit I, at 1.) page 1 of 56, C.) page 4 of 56 - 5 of 56; ② Exhibit 14, at C.) page 1 of 40, for pages 1-23 of 40, and in Plaintiff's "Motion for Summary Judgment against Defendants: Parks, Meredith, Chapman, page 11). Because of the Plantiff's transfer to LSCF from LCF. I have lost pages or they have become damaged and hard to read the hand written in pencil pages. I did submit the grievance to the S.O.C, but there are no provisions for receipts, to the S.O.C, attached to grievances. That is why I had previous made legal service from filing them to the court as Exhibits and for the showing of proof of submission for exhaustion. I didn't do legal service for this particular grievance, nor those after Exhibit F-4, because it didn't seem to matter, since every grievance comes back with the same cookie-cutter response of denied. This a prisoners attempt to exhaust administrative remedies are futile at best.

* Exhibit F-5 *

69.) Letter to Kansas Governor Laura Kelly, dated 9-21-2023
    I.) At controvercy #133, Letter represent grievance complaints of Plantiff's abuses and mistreatment. The Plantiff wasn't getting any valid help and relief from the KDOC; and could have been killed, when he was assaulted and strougled. Out of desperation, of no help from the administrative grievance process, he wrote directly to Kansas Governor Laura Kelly (As head of the KDOC). Hoping I could get a proper investigation about the drug/tobacco smoke problem at LCF. Prisoners overdosing and dying and other elder innocent prisoners dying (such as Gary Lee Raburn, 62, who died at LCF, seg. on 1-6-2023)(6 months before my similar attack) from his cell mate who strougled him. But, again, this grievance plea was simply sent back to the KDOC/S.O.C., with help "NO" investigation or relief/remedy, Just a continued run around. I pray the Federal Courts, put a stop to these elder abuses and these State sponsored acts of Terrorism, supported by the State of Kansas officials by setting an example with the Defendants and finding in favor of a total Summary Judgment in favor of the Plaintiff.

30.

70) J.) The Plaintiff was issued a (DR) Disciplinary Report Case No: 1138 on 9-26-2023 for: "White #76983 refused to take a cellmate". This was while the Plaintiff was suppose to be in Protective Custody, in a one man cell. The Plaintiff was ultimately Found "Not Guilty" by the Hearing Officer CS1 Snodgrass on 9-29-2023. No Sanctions imposed. Therefore there was no reason for a grievance. Further, it would do no good, because per: "KAR 44-15-101 (a)(d)(2) The grievance procedure shall not be used in any way as a substitute for, or as part of, the inmate disciplinary procedure, the classification decision making process, the property loss or personal injury claims procedure, or the procedure for censorship of publications specified in the secretary's internal management policy and procedure." (see: Exhibit F-4 page 25of83) But, the intent for harassment and retaliation, was still present, by Defendant Parks, because of my grievances, letter to Governor Kelly and court filings. Only by the Grace of God and the Hearing Officer's good sence and fairness was I not continued to be allowed to be harassed and retaliated against by Defendant Parks. See: Plaintiff's PL #5 for (7 pages).

Grievance #AA2024082 (9-27-2023)

71.) K.) At controversy #99-#103 - Issues include being denied library books and reading material while being in lock/down segregation. This grievance was submitted on 9-27-2023, finally getting grievance assistance from Defendant Parks, but it should have only taken two months (60days) at most for processing this grievance) upon appealing this to the LCF warden it took five months at that level. It took a total of 162 days to complete this grievance process to the point of exhaustion, because the KDOC officials do not follow their own policies or procedures including the KAR Administrative Grievance Procedure. See: Exhibit D and page 5of8.

Grievance #AA2024081 (10-1-2023) from (9-1-2023)

72. L.) At controvercy the Plaintiff asserts this grievance includes a summary of issues and which the Plaintiff objects that it also asserts the essential points of exhaustion of administrative remedies, for failure to protect and retaliation. This to include also, all the previously cited grievances, emergency grievances and letters

31.

that the Plaintiff has used to protect himself. This to include the Defendants allowing other prisoners to passive aggressively continue to harass the Plaintiff by the blasting of their radio's through the air vents, day and night, into my cell. The Plaintiff 1st attempted to submit this grievance on 9-1-2023, but it just disappeared and went unanswered by the Unit Team Defendants Parks and Meredith. So, I had to resubmit on 10-1-2023 (over a month by then, of noise torture). It took over 130 days to exhaust this grievance, which should have been done immediately, but no more than 60 days. See Exhibit C (page 2 and 4 of 6). The other relevant issues of this grievance included:

a) page 2 of 6) referencing 1st attempt on 9-1 and 2nd submission on 10-1-2023 This is the answer to: SUMF #139, #140, for which these dates are also corresponding to DOC 8, page 8 of 8 for; "...AA 2024 082 and (9-1, 10-1-2023)

b) page 3 of 6), "But, they preferred and intentionally chose to retaliate against White [Plaintiff], through their terroristic acts and extortion of my signature, for me to sign a PC waiver, to get away from the torture."

c) page 3 of 6), "White should have been housed and treated as a Protective Custody inmate..." This answers also to SUMF #138.

d.) page 3 of 6), "...blatant, illegal, man part, drug, tobacco, alcohol and (ETS) smoke problem that was going unchecked and not stopped at LCF..."

e.) page 3 of 6), "No valid penological reason, other than to intimidate, harass, and reprisal..."

f.) page 4 of 6), "Jeremy Garza was a convicted drug dealer and user, a BIBR member, who had just chocked out, his last cell mate..."

g.) page 4 of 6), "...attempted murder of White, assault and battery by Jeremy Garza, of an elder person."

h.) page 4 of 6), "...a Central Monitor for White with Mr. Parks UTM, Mr. Meredith CC and OIC Chapman."

Yet, still no proper investigation of the substantive issues, with any finding of facts on any substantive issue. This is also reflected in Plaintiff's Exhibit PL #22 by Judge Bruce Gatterman, Chief District Judge on 2024-07-30, for the Plaintiff's, habeas corpus Case No: PN-2024 CV 00009, for Leavenworth Co, Lansing, Kansas, citing on (Page 3. of 5) "The Court File from the District Court of Leavenworth County, Kansas does not reflect that any substantive hearing concerning the underlying Petition For Writ of Habeas Corpus filed by White was at any time undertaken." This habeas corpus was then just

32.

summarily dismissed as being "moot", since I was no longer being housed at LCF. But, still no proper investigation and justice served on the substantive issue. That is the reason this Federal lawsuite had to[be] Filed. For justice and enforcement of Constitutional and human rights issues violated by the defendants and the KDOC/ State of Kansas violations of the 14th Amendment For equal treatment and protection of the laws.

73.) M.) 10-23-2023, The Plaintiff was transfered to LSCF For the Plaintiff's protection. See: Exhibit C(page 1 of 6) Conclusions Made i "... This is no longer a valid grievance. The resident has been removed from the facility."

74.) N.) 2-12-2024, The Plaintiff Filed, this 42 U.S. C. §1983 civil rights lawsuite and Filed his Second Amended Complaint on 5-28-2024. See: Doc 140 page 2 of 37

75.) The Plaintiff denies and/or in controvery and have ignored Defendant's SUMF #112 #132, as not being relevant to this lawsuite for any purpose including exhaustion of administrative remedies, (Defendants Counsel have taken a shotgun approach) or to the issues of this legal action against these particular Defendant's : Spillman, Parks, Meredith and Chapman at LCF.

In Doc 4, at screening, John W. Lungstrum has ruled in Doc 4, page 6, for this particular action against these defendants at LCF, should not be mixed with other individuals at other Facilities. Citing (under Rule 8(a)). "multiple claims against a single party are fine, but claim A against Defendant 1 should not be joined with unrelated claim B against Defendant 2."

That is why the Plaintiff Amended his original petition and dropped LSCF Charles Perez, as a Defendant, and also any issue that arose when the Plaintiff was transfered to LSCF from LSF, on 10-23-2023.

Therefore the Plaintiff prays the court agrees, but, If not ; you would allow the Plaintiff in controversy, otherwise to later answer to these SUMF as needed in a jury trial, Other wise, the Plaintiff, Pro Se gives objection and denies any unanswered/unaddressed Defendants SUMF as lack of legal knowledge and understand-through personal experience. Citing: Parties have a right to a jury trial on PLRA exhaustion when that issue is interwined with merits of the claim that Falls under 7th Amendment. Perttu v Richards, 605 U.S.

33.

460, 145 S. Ct. 1793, 222 L. Ed 2d 103, 31 Fla. L. Weekly Fed. S. 94, 2025 US. Lexis 2380 (2025); this as the Plaintiff's case similiar to: "Where the exhaustion and 1st Amendment issues were intertwined because they were both depend on common factual issues, i.e. whether a prison employee did in fact destroy a prisoner's grievances and retaliated against him. Nothing in the PLRA prevented holding a jury trial in the instant case.

Ordinary, Judges resolve equitable claims and juries resolve legal claims. But, Judges may not resolve equitable claims first if doing so could prevent legal claims from getting to the jury.

- 76. Plaintiff's response To: **III** Standards –
a). Sumory Judgement:
   i) Plaintiff has shown numerous issues <u>in controvercy</u> of Defendents aleged material facts.

b.) Qualified Immunity:
   i) The Plaintiff asserts <u>controvercy</u> and objects, that the Defendants are attempting to relitigate already settled issues by court ruling used during discovery for all parties in their individual capacity. The State of Kansas, (KDOC) Kansas Dep't of Corr. not a party to this action.

   A.) The Plaintiff by this brief and many court filings has shown that the Defendants violated with deliberate indifference and with wanton disregard had a required duty, by their job responsibilities to protect the Plaintiff, while he was being held in Protective Custody, to provide the Plaintiff with medical care and give humane treatment, free of deprivation, equal protection and treatment, free from retaliation, equal to those prisoners in general population, these but not limited to others cited by the Plaintiff in his other legal filing and this brief/response. These rights easily known by a reasonable person of good-faith.

   1.) The Defendants conduct/misconduct, which the Plaintiff has shown, but not limited too; violated the Plaintiff's 8th Amendment right to be free from cruel and unusual punishment. When they intentionally put other prisoners (which were a danger to the Plaintiff), in the same cell, with the Plaintiff. This ultimately causing physical and mental injury, pain and suffering, sufficiently serious to cause the need for the Plaintiff, to be transported by ambulance to an Emergency Hospital. Plus, 8th Amendment

34.

violation for failing to call for Emergency medical care within a job duty requirement of four minutes response, when the Plaintiff had to initiate his own medical care at the Hospital over three hours after the strangulation/attempted murder. The Defendant retaliated against the Plaintiff, in violation of the 1st Amendment, because of, but not limited to; because of his protesting about the gang, drugs, tobacco smoke, alcohol problem at LCF, his invoking the grievance process and filing of legal actions in both State and Federal Courts. All this and more the Plaintiff has brought before the court, in violations of the 1st, 6th, 7th, 8th, 14th Amendments for due process, Justice and equal treatment and equal protection of the law as an elder mistreated state prisoner.

2) The Plaintiff has shown, he had those [ ] legal, human and Constitutional rights as an American and Kansas citizen being held in restrictive Protective Custody, limiting his ability to protect and act on his own behalf and which were clearly established under Kansas State and Federal law, Kansas and U.S. Constitution, to include K.S.A. 21-5416/5417 mistreatment of a state prisoner/elder person.

### • Assylum Sought •

Therefore, the Plaintiff officially seeks assylum, sanctuary and protection by the U.S. Government and Courts, as an American citizen, to be free from, the sovereignty of the State of Kansas, state sponsored acts of terrorism against its own citizens, in violation of the law, and Constitution; equivalent to and before granted to other people of (none U.S. citizens) foreign lands; to be allowed transport to leave the State of Kansas, into other areas, in the U.S. possession; for the Plaintiff's protection and safety, applicable to the U.S. Constitution and the USCS International Rights, Charter of the United Nations. International Convention on Civil and Political Rights - Article (7); Article 18(1); Article 19:(1); Article 26, Article 27, 42 USCS 2000 dd: a); b), c), d); USCS Convention Torture: Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment: Article 1; International Religious Freedom Act. 22 U.S.C.S. 86411, and International Convention on Civil and Political Rights. 54, 51 C.S. 601 § 601 (63 FR 68991) for Constitional right to life, liberty and property.

IV. Arguments: Plaintiff's response:

1) None of the [four] [sic] three defendants are entitled to a Summary

35.

Judgement for violations cited above. Plus they have not proven much less shown there is no genuine issue as to "any" material fact, they have presented. The Plaintiff has also shown he has exhausted all "available" administrative remedies that were made available to him, while being held in restrictive custody and well as the plaintiff has an acception from exhaustion available to him under the PLRA imminent danger exception while he was being held in Protective Custody when assaulted/strangled/attempted murder. Further, the retaliation claim issue has been Fully discussed in controversy in this Responsive brief. The Plaintiff asserts as such the court should rule in favor of the Plaintiff for a Summary Judgment on all issues.

a.) Response by Plaintiff: Exhaustion

1) Plaintiff has asserted the PLRA imminent danger exception above is applicable to this lawsuite, as well as cited Perrtu v Richard (on page 33 this doc.) which requires any exhaustion, as such discussed, to brought before a jury at trial.

2) "Remedy" for an "Administrative Remedy" must not only consist of a boiler plate device, but contain the substantive matter, finding of facts, with a solution (remedy). None of the Plaintiff's grievances returned by the KDOC included any finding of facts of the substantive issues; nor a remedy. Remedy by definition means: "something that corrects or counteracts; the legal means to recover a right or to prevent or obtain redress for a wrong." There is "NO" such provision for a remedy in the KAR's. Therefore, there can be "NO" such action as the "exhaustion of administrative remedies." As misused with a "malicious abuse of process" by the State of Kansas/KDOC it is merely a means devised (unconstitutionally) to procedurally deny a prisoner of his human, legal and Constitutional rights. (See: Exhibit F-3, page 20 of 83)

Like, under Jones v Carroll, 628 F. Supp. 2d 551, 2009 U.S. Dist: The Plaintiff case is like; This 42 USC §1983 alleging an 8th Amendment failure to protect claim, that Summary Judgment was inappropriate on the issue of exhaustion; where reasonable fact-finders could conclude that the Plaintiff post-surgery [for White-lower back] Note added condition rendered the Dep't of Corr. administrative remedies unavailable to the Plaintiff. If the fact-finders could so conclude; his failure to exhaust would be excused. Also as found in: DeMallory v Cullen 855 F.2d 442, 448 (7th Cir 1988) Plaintiff's case should be viewed as a right to access

36.

implicated, when security restrictions prevented the segregated inmate, from going to the library, confering with inmate paralegals, or participating in legal training and access to books by citations.

3.) As the Defendant's counsel has pointed out, the Plaintiff made many extra effort of including the protection needs issues, with many others connecting Issues. (See: Doc 140-SUMF#97) "...he added, for the first time, some allegations regarding Defendants and regarding the July 12, 2023 incident." But, in truth it wasn't the first time. (see: DOC 140 SUMF #134~#136).

4.) The Plaintiff objects as a false statement of fact that "an inmate must take four steps to complete the grievance process." KAR 44-15-106" Emergency procedure provides: "Emergency grievances shall mean those grievances for which disposition according to the regular time limits would subject the inmate to a substantial risk of personal injury, or cause other serious and irreparable harm to the inmate. In emergency situations the inmate may by pass the pre-requisite of informal resolution..." Also, KAR44.15-101a(F) "... An inmate or employee who appears to be involved in the matter shall not participate in any capacity in the resolution of the grievance." Ergo if the grievance is about the Unit Team employee, Warden or even the S.O.C, the prisoner must use the emergergence grievance procedure, because they cannot participate in the grievance process in any capacity. The Defendants counsel is aware of this and merely taking a shot gun approach hoping something will stick. (See PL#13 page 10 of 20)(last para.) regarding: "... governs emergency grievances" and where Defendants cites: (top of page 10 of 20) "While protective custody classification can not be grieved through that grievance procedure..." Therefore I read that to mean that Protective Custody is not a grievionsable issue, therefore "unavailable" as it applies to the PLRA exhaustion requirement.

5.) The Plaintiff objects and asserts the Defendants did thwart the Plaintiff's attempts to exhaust administrative remedies, by multiple attempt the Plaintiff had to make for exhaustion; refusal to provide necessary forms and to pick-up and timely return and process grievances, from a segregated, lock-down prisoner. see: examples involving missing "Emergency Grievance/ Incident Report of July 14, 2023 - failure to pick-up and deliver. (see: Exhibit F-3 page 18 of 83 at (iXc); page 19 of 83 at #3) & #5); page 20 of 83 at #6)) and, (see: Exhibit F-4 page 26 of 83 at #2); and (see: Exhibit C page 2 of 6 at 1st)

37.

i. Plaintiffs Response to: "None of Plaintiffs grievances satisfy..."

A.) Of course, the emergency grievance dated July 14, 2023 was appealed as and when it was submitted, for the issue, from lack of protection from imminent danger, which became actual danger. It was never processed at the administrative level, after multiple submissions. Therefore "No" available grievance remedy. (Addressed this doc. on page 29 at #68(H), for SUMF #134-136) Which satisfies the PLRA exhaustion requirement.

B.) SUMF 109-111, The Plaintiff has addressed this issue on page 29 of this doc. at (G.) and the issue about whether it constitutes an Emergency grievance is in controversy, for a jury to decide; Perrtu v Richards (see: pages 33-34 of this doc. at #75 and page 37 at #4).

ii. Plaintiffs Response to: "None of Plaintiffs personal-injury claims satisfy..."

A.) SUMF 127-128; SUMF 129-132 are not relevant issues for this instant civil rights action as the Plaintiff has explained on page 33 at #75 this doc. Perrtu v Richards (page 33-34 this doc.) The personal injury claims had to be made at LSCF, because the forms were denied the Plaintiff at LCF, for some, or not processed for others at LCF, but finally submitted at LSCF, But, still no grievance process made available to the Plaintiff. Therefore, this matter in controversy as the Plaintiff followed all grievance process made available to him at LCF and LSCF.

iii. Plaintiffs Response to: "Conclusion for Failure to Exhaust Administrative..."

The Defendants request for Summary Judgment should not be granted and denied. But, the Plaintiff has made his case, and his request for a Summary Judgment should be granted; because the Defendants have not shown there is no genuine issue as to any material fact. Or, this case should proceed to a jury trial under controversy.

\# (A) I. b. Plaintiff's Response to: 8th Amendment claim for failure to provide Medical Care (Parks, Meredith, and Chapman)

A.) The Objective Component for the Plaintiff's showing of deliberate indifference is: ① See: Defendants SUMF #57, #62, also; ② see Plaintiff's in this doc., #11), #34), #51, #52, #53 and #54...to (def page 18-19) include serious physical pain and suffering from aggravating factor to lower back and sciatic leg pain, from "experienced pain", neck trauma, sore throat and trouble swallowing. "and at #11) page 3 "...because the Plaintiff

38.

was having back surgery at the Salina Regional Hospital... on 9-16-2025..."
also see: ③ Exhibit D (Defendants) page 23, by Judson Bertsch M.D.
"... but was not limited to blunt force abdominal injury, contusion,
strangulation hernia. Pt does have epigastic and RUQ abdominal pain
with palpation. Treating pain with IV acetaminophen," then page 26, Clinical Notes:
by Rebecca Turner APRN-NP, "... You may have continued pain as you continue
to heal...," then page 28, Imaging, "ASSAULT VICTIM, abdominal pain, flank
pain Comment - Was chocked in his cell this AM, does not believe he lost con-
sciousness, in C-collar, neck pain.," then page 29, Clinical Indication: Assault
victim with abdominal and flank pain." This from The University of Kansas
Health System records.

B.) The Subjective Component for deliberate indifference is:
① Defendants SUMF, #29, #30, #31, #32, #33, #36, #37, #38, #44, #46, #47
#52, also then, ② see this doc. at: #41); #42)(a)-(g); #44; #45, #46;
#47, #48, #49, (This doc. page 28 at (G.); #67; #68 H); #72 (a)~(h).; also see:
③ Plaintiff's "Motion for Summary Judgment Against Defendants: Parks, Meredith,
Chapman" filed 3-23-2026: at "Causation (pages 4-5) and page 13, (i) 8th
Amendment claim for Failure to provide medical care." For pages 14-16.

**• Plaintiff Position •**

II 1) The Plaintiff has shown that he should have been protected in a cell
separate from the prisoners held under punitive disciplinary charges.
2) The Defendants: Meredith and Chapman and Parks through their job
duties and responsibilities/liability should and did reasonably knew,
that Jeremy Garza, who had previously chocked his last cell mate would
be an unreasonable risk to the Plaintiff's health and safety.
3) Both Defendants: Meredith and Chapman refused to call medical for care
for the Plaintiff's strangulation and assault injuries and chose unreason-
ably to coerce and extort the Plaintiff into signing a PC waiver, rather than
provide the necessary medical care, in a four minute response time as
required by KDOC policy and procedure. see: Plaintiffs "Exhibit PL# 7, and
IMPP 10-114D, SUMF #33,
4.) Then adding further deliberate indifference even after the forced signing
of the PC waiver under Duress, the Defendants chose to cover-up the
incident, by failing to report the incident, or even call for medical help,
but chose to detain the Plaintiff in a holding cell for over two hours.
Until Defendant Parks arrived on the unit. SUMF #33, 34
5.) Defendant Parks UTM, then also, refused to call for medical help,

39.

using extra critical time which had the potential to kill, from strangulation complications, which the Defendant Parks knew from a previous death by a similar incident involving the death of Gary Lee Raburn on 1-6-203 from strangulation at LCF. SUMF#46

6.) The LCF medical clinic recognized the death potential medical importance and transported the Plaintiff to the Emergency Hospital by ambulance. Where the Plaintiff finally received medical care and treatment, this over three hours after the strangulation assault. SUMF#62

7.) The Defendants: Parks, Meredith and Chapman were obviously deliberately indifferent to a serious medical emergency injuries, and with evil intent. Being more concerned with the acquiring and processing of a PC waiver, over a man's life, they were holding hostage to sign by force the PC waiver.

8.) The Defendants: Meredith, Parks, Chapman are not trained, licensed medical profession, and had no authority to make medical evaluations. But, are manager/supervisors trained in emergency response requirements and, knew better. The Defendants actions were not only deliberately indifferent, but also had criminal intent, to violate the Plaintiffs legal, human and Constitutional rights, in violation of the 8th, 14th Amendments, and K.S.A. 21-5416/5417 elder abuse/mistreatment - equal protection clause.

9.) The Plaintiff suffered from serious injuries requiring a doctor and Hospital care and considerable pain and the injuries aggravated pre-existing condition causing extra pain and suffering, that ultimately resulted in the need for lower back surgery from abdominal/flank injuries.

III 1.) The only legitimate penological interest the KDOC/State of Kansas or the Defendants have regarding the Plaintiff, was his right to protection while being held in restrictive housing under Protective Custody. The Defendant have given no other. (see: Plaintiff's - Exhibit PL#7) and (Exhibit PL#2)

2.) The Defendants implication that the Plaintiff would have some how, have gotten medical care sooner. Had I exited the cell quicker, is ridiculous and without truth or merit and a false assumption. It does not explain; why?, they couldn't and didn't call medical for an emergency response, while the Plaintiff was in the cell. Even, after I was finally taken from the cell, the Plaintiff was placed and held for approx. two hours, in another holding cell. Waiting on Defendant Parks

40.

to return to the Unit. So logically, I could have waited in the housing cell and it not have made any difference.

3.) The Defendants alleged narrative of: ("... was seen by a nurse at approximately 11:38 a.m.") for (SUMF 5+52), is denied by the Plaintiff #51 → ⑥ and in controversy for (SUMF 51) and discussed in this Responsive Doc. on page 8 at: (IV #28) — #33). Questioning the accuracy of the KDOC/ Centurion medical records, For which the Plaintiff has filed a HIPAA complaint for and against the Defendants/Defendants counsel having illegally obtained by Defendants counsel, acting in their individual personal capacity, without a judge signed subpoena or the Plaintiff's written consent. The Plaintiff therefore denies/objects in controversy to Defendant's pages 28 and 1st two/thirds of page 29, and relies on the narrative record presented by the Plaintiff in this Doc., and thus far presented.

4.) The Defendants are not entitled to a summary judgment, nor do they have a right to qualified immunity for acts in violation of Plaintiff's 8th, 14th Amendment and pursuant to 42 U.S.C § 1983.

Even the State Courts recognizes this basic Constitutional Right, as in Harrison v Long 241 Kan. 174; states: The Constitutional provision guaranteeing to every person a remedy by due course of law for injury done him in person or property means that for such wrongs that are recognized by law of the land the Court shall be open and afford a remedy, or that laws shall be enacted giving a certain remedy for all injuries or wrong. "Remedy by due course of law", so used means the reparation for injury ordered by a tribunal having jurisdiction in due course of precedure after a fair hearing. Neeley v. St Francis Hospital. School of Nursing, 192 Kan. 716, 719, 391 P.2d 155 (1964)

IV. "A plaintiff need not show that a prison official acted or failed to act believing that harm actually would befall an inmate," but rather that the official 'merely refused to verify underlying facts that he strongly suspected to be true, or declined to confirm inferences of risk that he strongly suspected to exist." Lucas v. Turn Key Health Clinics, LLC, 58 F. 4th 1127, 1137 (10th Cir. 2023) (quoting Farmer, 511 U.S. at 842, 843 n.8)

The Tenth Circuit recently clarified that "it is possible to have some medical care and still state a claim under the gatekeeper theory" Id. at 1139. "The inquiry under a gatekeeper theory is not whether the prison official provided

41.

some care but rather whether they fulfilled their sole obligation to refer or otherwise afford access to medical personnel capable of evaluating a patient's treatment needs when such an obligation arises." Id (citations omitted). Under the deliberate indifference analysis, "merely doing something (with no reference to the underlying condition) does not necessarily insulate one from liability." Id. "Instead, a court may need to determine whether there was the functional equivalent of a complete denial of care in light of the specific circumstances." Id. (citation omitted)

The Plaintiff has shown by the gate keeper theory claim, that all three Defendants Parks, Meredith and Chapman, failed to fulfill their sole obligation to refer or otherwise afford access to medical personnell capable of evaluating a patients treatments.

1: Plaintiff has shown that he had to personally initiate his own medical care through a different officer, more than (2) two hours after the assault. (See: SUMF 29-33, 38, 43, 44, 47-50, 52, 61, 63)

2: Plaintiff has shown that the denial of medical care by Defendants Parks, Meredith and Chapman was deliberately indifferent to his health and safety and in a conspiracy to extort Plaintiff's signature on a PC waiver, and/or KDOC policy or custom. (See: SUMF-5, 7, 14, 15, 30-33; (Plaintiff's Exhibit PL# 7, of signed signatures of Meredith and Parks - "Under Duress by the Plaintiff, and SUMF 33 comment by Chapman "... going anywhere until he signed a PC waiver), Plaintiffs exhibits PL#4 (regarding PC waivers)

3: Plaintiff has shown he had scrapes, scratches, nail gouges, bruises, and could barely speak with great pain, throat swelling and considerable / substantial throat neck and back pain and was x-rayed at the LCF clinic then rushed by ambulance to KU Hospital. (See: SUMF 31, 32, 42, 44, 47, 48, 49, 53, 54, 57, 59, 61, 62, 63, 73; and doc 11 page 13, and (Defendants Exhibit D page 3) "He is now having pain with swallowing and posterior neck. pain. Several ecchymotic areas noted to the anterior and lateral neck," and (page 6) "Assault victim with abdominal and Flank pain (1) Lower Thorax: Mild dependant atelectasis and/or scarring [Plaintiff note: "mild lung collapse" or "atelectasis"]

4: The Plaintiff has shown by the evidence, that he requested / begged all three defendants for medical help and care, and they could easily see the scrapes and bruising developing on and around the throat and the Plaintiff could barely speak, because of the swelling and pain. The delay in receiving medical care could have easily led to suffocation and death of

42.

the Plaintiff. (Also see Plaintiff's: "Motion For Summary Judgment Against Defendants: Andrew Parks, Evan Meredith, and Bruce Chapman" pages 13-16.) and (pages 2-7)[henceforth referenced as: "MFSJ" DOC. 139

* (B) I. c. Plaintiff's Response to: 1st Amendment retaliation claim based on false disciplinary report. (Parks)

1.) See: "MFSJ" pages 7-12, and pages 2-6 for "Causation" and pages 10-12, regarding requirements set out under: "Shero · V City of Grove."

2.) The Defendants do not give specificity detail for what; "adverse action" that "occurred more than three months after the constitutionally protected activity" they are referencing, Lauck v Campbell" The Plaintiff is confused as how, this case law applies to any issue of this case. As the Plaintiff alleges from a "continuing pattern of abuse" (on-going). As the Plaintiff was strangled on 7-12-2023 (failure to protect) and the retaliation was part of the failure to protect (see: "MFSJ" "Causation" page 4-5), and the false retaliatory disciplinary report was issued on 9-26-2023. (Less than three months) To use as an excuse to further prejudice the Plaintiff, as an excuse to give the Plaintiff false punitive disciplinary punishment, because Parks could not force another signed PC waiver, because of the Plaintiff's Duress. Exhibit PL#7.

3.) The Plaintiff has already addressed the Defendants claims from "#2.) above, in his; "MFSJ" page 2-7 and p. 7-10; p. 7 I (A), (B), (C), (D), (E), (i), (ii); (iii), (iV); (F); and p. 10, I (1)(A), (2)(B), (3)(1), (2), (3) for "substantially motivated factor", as well as the same for: II (1)(A), (2)(B) (3) page 11 and page 12, III (1)(A), (2)(B), (3).

4.) The relevant issue in controversy is not that Defendant Parks name is not "referenced anywhere in the disciplinary report", and "Parks did not draft or file the disciplinary report." But, that Defendant Parks named is in reference five times, during the testimonial Hearing, and is sworn to: under Oath by CO1 Preutzler, that Defendant Parks (unit Team Manager) told her to put the prisoner in the cell with the Plaintiff. Exhibit PL#5 pages #5, #6. (Thus again failure to protect)

─ Constitutional right to Living Condition, Medical Care and Disciplinary ─

II. The 8th Amendment is intended to protect and safeguard a prison inmate from an environment where degeneration is probable and self-improvement unlikely because of the conditions existing which inflict needless suffering, whether physical or mental. While an inmate does not have a federal constitutional right to rehabilitation, he is entitled to be confined, in an environment which does not result in his degeneration or which

43.

threatens his mental and physical well-being. An inmate does have a right to be reasonably protected from constant threats of violence and sexual assault from other inmates. Moreover he does not need to wait until he is actually assaulted before obtaining relief. [Note or in the Plaintiff's case re-assaulted] Ramos v Lamm, 639 F.2d 559 (10th Cir. 1980)

A defendant may be held liable as a supervisor [Defendant Parks UTM] under 42 U.S.C. §1983, if there exists (1) his or her personal involvement in the constitutional deprivation or, (2) a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation. A plaintiff must show the supervisor breached a duty to plaintiff which was the proximate cause of the injury. The law clearly allows actions against supervisors under §1983 as long as a sufficient causal connection is present and the plaintiff was deprived under color of law of a federally secured right. The requisite causal connection can be established by setting in motion a series of acts by others, or by knowingly refusing to terminate a series of acts by others, which the supervisor knew or reasonably should have known would cause others to inflict a constitutional injury. A supervisor can be liable in his individual capacity for his own culpable action or inaction in the training, supervision or control of his subordinates; for his acquiescence in the constitutional deprivation, or for conduct that showed a reckless or callous indifference to the rights of others. Starr v Boca, 633 F.3d 1191 (9th Cir. 2011).

-Living Conditions-        1st Amendment Causation Violation (Parks)
A. 1) There exists for Parks UTM his personal involvement, as the Unit Team Manager in the deprivation of the Plaintiff's 8th Amendment right to be free from cruel and unusual punishment and while by the federally protected right to actual protection conditions, while in segregationed Protective Custody hold. To be confined in an environment which does not result in the Plaintiff's degeneration and threaten his mental and physical well-being, and for which conditions are set out under IMPP 20-108D Protective Custody, under segregation away from other punitive disciplinary charged prisoners. [See: Exhibit PL#12 and PL#11 and PL#17] Parks was fully aware; by proof of knowledge, through his response to the Plaintiff's request dated 9-20-2023; Exhibit PL#4(p.7) "...you are remaining seg. status for your safety until you are transferred." Also; 2) The causal connection for Parks UTM was made when he sat in motion a series of acts [See: (B)(I)(C)(4) above] when CO1 Prentzler, Exhibit PL#5, on 9-26-2023, when she testified that Parks UTM had told her to put the "prisoner in the cell with me." [Plaintiff]. For which then Parks refused

44.

to terminate the falsely issued Disciplinary charge made against the Plaintiff, which Parks knew and/or reasonably should have known would cause others to inflict constitutional injury of further failure to protect. Defendant Parks is liable in his individual capacity for his own culpable action and inaction for supervision and control of his subordinates, for his acquiescence in the Constitutional deprivation, and conduct that shows a reckless and callous indifference to the rights of others. (Starr v Boca)

B.    Also, the 2nd Circuit has mentioned that a circumstance could give rise to a due process claim based on a false misbehavior report, that is, where like this Plaintiff has alleged the false report was filed against him in retaliation for his exercise of a constitutionally protected right. See: Franco v Kelly 854 F.2d 584, 589-90 (2d Cir. 1988)(reversing grant of a summary judgement); where a prisoner claimed that false disciplinary charges were filed against him as retaliation for his cooperation with a state investigation into alleged inmate abuse; "although those allegations do not directly implicate the [Plaintiff's] right of access to the courts or similar judicial forums, ... does implicate his broader right to petition the government for redress of grievances, as guaranteed by the 1st and 14th Amendment. Franco v Kelly 854 F.2d 584, 589-90 (2d Cir. 1988)
·Notice - See: The Plaintiff's assertion of right to invoke the grievance process, by/through Exhibit PL #5 p. 5 and 6 at DR Hearing Case No: 1138 on 9-29-2023, for ("M F S J p. 11, at, II (i)(A)" ... to petition the government or any department for the redress of grievances ...")

·The Plaintiff has clearly shown a claim of retaliation by Defendant Parks (UTM, under personal involvement and supervisor liability based on filing of ^potential grievances [see: Exhibit PL #5 page 5-6] while under protective custody (segregation) pursuit to IMPP 20-108D [Exhibits 11 & 12], and argues the false misbehavior report (for which the Plaintiff was ultimately found "Not Guilty" by the Hearing Officer) was part of Defendant Parks retaliatory campaign, to keep the Plaintiff under punitive disciplinary conditions of incarceration, rather than the rightful Protective Custody conditions, to force/coerce/harass through retaliation a signed PC waiver. Therefore the court should rule for a Summary Judgment in favor of the Plaintiff, and as a due process claim, under the theory the Plaintiff has articulated under cases: Franco v Kelly, Starr v Boca, as well as Shero v City of Grove. (See: Doc. 139 page 4-5 "MFSJ")
* This implicating the Dangerous Create Theory *(claim for punitive damages)

45.

*(C)I. d. Plaintiff's Respone to: 8th Amendment Failure-to-protect claim. (Parks, Meredith and Chapman).

• 1.) The Plaintiff has addressed this issue in his: Doc 139, "Motion For Summary Judgment Against Defendants: Andrew Parks, Evan Meredith and Bruce Chapman. See presented·Proof of Knowledge by Parks at p.9 (E)(i), Meredith (ii) and Chapman (iii) and for all at; (iv)(1),(2),(3); (F), and (p.10) I (1)(A),(2)(B), (3)(1), (2),(3); II (1)(A),(2)(B), (3) and III (1)(A), (2)(B), (3)(p.12) and p 12-13 at (4) 8th Amendment failure to protect claim and for (p 13-16)(1) 8th Amendment claim Failure to provide medical care.

• 2.) As proof of Plaintiff's previously claims stated: As cited by Dist. Judge Lung-strum on 8/19/24, Doc.11 at screening. Plaintiff submits Exhibit PL#23, "Petition For Writ of Habeas Corpus submitted/mailed 11-6-2020. For Issue IV B6 Unit Officer Gardner assaulted and battered White on 7-27-2020 at approximately 10:50 AM causing excruciating Pain, then wrongfully issued White a disciplinary report #0310, to cover-up his own violent action, which he unnecessarily initiated. Thus citing; (Ⓐ p. 14)"... there was 5 people in the cell smoking K2 and I was forced to stay in the cell..." I had been threatened many times about telling on them."(2nd para.) "... he was caught twice making al-cohol by officers..."(3rd para.) They would burn down the new prison..." (last para.) Ⓑ "I got about half way out the door and Co Gardner... pushed the cell door into me,... pinning me with the door. (page 15) "... the assault and battery by Co Gardner was intentional..." at A.(6) Why was the KDOC putting White in danger; by housing him in an unsecured cell !!! ?" (Before strangulation assault)

• 3.) The Plaintiff also submits DR Appeal #2872 as another narrative telling of the event facts (dealing with exact time of starting involvment by Defendants Parks, Meredith and Chapman) that Plaintiff could not get resolved, through the Administrative Grievance Remedy Process; This includes relevent issues of this current civil rights case for-and as proof of Defendants Knowledge of protection requests and need for protection From DR Case #2872 Hearing issued 3-28-23, Hearing held 4-24-23, Received Hearing Record and Appealed to S.O.C on 10-9-23, Appeal returned back to Plaintiff on 12-6-23. (Used almost 9 months for the Administration to process this phoney DR.) Exhibit PL#24
    The Plaintiff has established in Doc 139, that he request Protective Custody on 3-27-23 and was issued this DR on 3-28-23. Yet per Deputy Warden I was placed in "Protective" ^(Custody) when it was requested?
Ⓐ (Page 1) LCF Unit Team and Disciplinary Admin. refused Forms.; Ⓑ (P.4 at 4.)

46.

(Before 7-12-2023 assault)

(Before and during Time in Seg./P.C.)

"White requested protective custody because of the threats by Mr. Gary Spillman and drug users and dealers." at; (C) 6.) "White was then put in danger by the attempted forced move into a (4)four man cell with drug and tobacco users..."; at, 7.) Drug and tobacco and alcohol use is rampant here at LCF...doing nothing to protect non-users from being threatened, physically assaulted and prayed upon by gang members, drug users and dealers." (D) at, 8.) "... White requested a witness form...but, never received..." (E) (page 5) H/O Leichliter said that Mr. Gary Spillman had told H/O Leichliter, that he had kicked me out of BIBR, because I filed legal action against him and BIBR, in the court." (F) (P.6) at; 13) Mr. Meredith UTS was supposedly assigned to be my proxy by H/O Leich-liter...; also see the same on page 11 for this Fact. (G) (P.7) "...10-9-2023...now 195 days...with no property, clothes, shower shoes, dayroom..." (H) at, 18) I continued to be harassed and coerced into signing a PC waiver through extortion...to put violent drug users, smokers and dealers, BIBR members in the cell with me..."; This Appeal was submitted to S.O.C on 10-9-2023, and received back on 11-6-2023. (over (2) two months later, with no investigation, relief or remedy).

* *4.) * IMPORTANT PROOF OF PRIOR KNOWLEDGE - Defendants Parks, Meredith and KDOC/S.O.C. Jeff Zmuda; since and as of, by 4-19-2023.
   A.) By State court filing Case No: 2022-CV-323, for "Motion For Summary Judg-ment" filed 4-19-2023 (see: Exhibit PL#19(p.1 of 10)) [FOR PL#25 - IN THE RECORD], after being put in seg./ restrictive housing on 3-28-2023, under Defendants Parks and Meredith. The Unit Team, must approve all postage requests for legal mail status, for all AWR and legal mail credit for postage costs and go through Defendants Meredith and Parks (Unit Team). ① [Also, see: A. Parks UTM signature on Exhibit F-1 (p.1 of 83) (dated 4-30-2023); Exhibit D, (p.5 of 8) (dated 10/10/23); Exhibit C, (p.6 of) (dated 10/10/23)] ② Further, all these documents first go through Meredith UTS, assigned to the Plaintiff as daily contact Unit Team correctional counselor. [see: Exhibits PL#21-1, PL#21-2, PL#21-3, PL#21-4] ③ Further, the S.O.C. must of investigate the Plaintiffs claims as required by KAR 44-15-101a(f); 44-15-102(3)(b); 44-15-106, 44-15-203, 44-15-105 [Article 15. Grievance Procedure for Inmates and Parolees], ④ and questioned Parks and Meredith when this Motion was served on S.O.C. Jeff Zmuda; and ⑤ all were guilty of not providing protection when, Meredith and Chapman failed to provide protection when they were all more concerned with securing a PC waiver signature, rather than provide immediate emergency medical care to the Plaintiff and immediately separating the Plaintiff from Jeremy Garza on 7-12-2023, after the strangulation.

47.

*(Proof during Time in seg, before assault)    For EXHIBIT PL#25*

B.) The Plaintiff requests/prays the Court reads this State Court document in its entirety, and sees the underlined portions, as proof of prior knowledge of the request for protection by the Plaintiff before the 7-12-2023 strangulation incident. Knowledge the Defendants Parks, Meredith and Chapman did have, and should have definitely had under their job duties and responsibilities, while the Plaintiff was being held in Protective Custody status before and after the Strangulation, pursuant to the "Declaration of Nico Luis Ball (LCF Deputy Warden) Exhibit PL#2. - Filed by the Court on 4-19-2023 Exhibit PL#25 -

1.) P.1, at 1st para., "... because of the KDOC failure to protect White from the BIBR staff, retaliation, discrimination, verbal threats and actions, and drug users and dealers, tobacco and drug second hand smoke". [Note: Plaintiff asserts this constitutes imminent danger - notice.]

2.) P.2, at 5.) "... Gary Spillman, he warned me ... if I continued to complain about second hand smoke; (I) "would be taking my life in my own hands.""

3.) P.3, at 8.) "On the evening of Monday 3-27-2023 I requested to be placed in protective custody ..."

4.) P.3, at 8.) "... For LYCO 20CV 243, White was also denied protection by the KDOC, when he was assaulted and battered by Officer Gardner."

5.) P.3, at 10.) "I have ... been ... attacked and injured ... by LCF/KDOC officers and other prisoners ... second hand smoke ... in the same cell as I, their tobacco and drugs here at LCF." "I've been pucked on ... received injury from out of control drug users. I've received several unwarranted disciplinary reports written against me, to cover-up the abuses merely because I've complained ..."

6.) P.3, at 11.) "KDOC officials have no regards for an older person, dependent adult with medical needs and restrictions."

7.) P.4, at 11) "... continuing mistreatment of an elder person ... denied cleaning supplies ... still can't get a tooth brush ... only been able to shower once in the past two weeks ... only, because I was having to lay in my own waste ... throwing up with dyharea ... over 5 days without my chronic care medication, which includes my blood pressure and diabetic medication."

8.) P.4, at 1.) "... continue to suffer from the swelling (Hydro-cell) of my right testicle ..."

9.) P.4-5, at 1.) "... because of my recent lock down in segregation and must rely on the KDOC officials to provide the specific documents needed by the court to prove my case. I do not have all my property or records and no ability to get copies made."

─ Then after the assault/strangulation on 7-12-2023 ─

48.

10.) See (Exhibit PL #26-1 through PL #26-6) As can be seen by Plaintiff's medical requests; the Plaintiff suffered continuing considerable intense pain directly after the 7-12-2023 assault/strangulation by Jeremy Garza. Proof that the assault aggravated the Plaintiff's elderly medical conditions and caused other problems, which also further supports the Plaintiff's medical injury/care claim [ Page 38 this doc. at (A)(I)(b)] regarding aggravating factor causing intense considerable pain. (A). "So bad at times it was hard to stand or walk", rating pain at 8 to 9 out of 10" (see: Exhibit PL #26-1) dated 9-21-2023. (B) The same for (Exhibit PL #26-3) dated 10-1-2023. Also, see bottom of doc., where medical discussed with the Unit Team and Captains office. (C) (Exhibit PL #26-4) dated 5-9-2024; where the all over body pain then started having a greater pain effect to my neck, shoulders, arm (upper body) pain; tingling in my hands and fingers, that aren't working right. (No grip and dexterity). On going problem, since I was strangled at LCF. (D) (Exhibit PL #26-6), dated 2-27-2024. Inmate Request- requesting results of x-rays done of upper back, neck, left arm/shoulder. Asking whats causing the pain in my upper back, neck, and down left arm. (E) This ultimately required the Plaintiff to have the lower back surgery to relieve the pain, done on 9-16-2025 at the Salina Regional Hospital. These medical records were not made available to the Plaintiff during discovery. This relevant for a necessity for a Jury Trial or/and by Fed. R. Civ. Proc. 56 (d)(2)(3).

i.) Objective component. A) The Plaintiff's actual physical injures from the assault and strangulation on 7-12-2023, which caused intense considerable pain and suffering; as well as causing aggravating factors that caused the need for back surgery to relieve the pain; established through the factors, the plaintiff has set out in: * 4.)(A)(B)(10)(A)~(E) above establishes the Objective component of the Defendants deliberate indifference of knowing and intentionally ignoring the threat for the Plaintiff health and safety, request of the Plaintiff for Protection on 3-27-2023, and so therefore exempts them for a right to immunity - B.) Because of the failure to protect Plaintiff from the BIBR staff and drug user/dealers, tobacco and drug second hand smoke. (PL #25 p.1); C.) Failure to put the Plaintiff in protective custody conditions (rather than punitive) of incarceration/restrictive housing, when it was requested on 3-27-23. (PL #25 p 3) ; b.) Defend. Spillman retaliating against the Plaintiff by kicking him out of the Pod and BIBR group.

49.

because the Plaintiff filed legal action. (PL#24 (E) p.5); E.) Defendants failed to provide the Plaintiff immediate emergency medical care after being strangled on 7-12-23 (Doc. 140, SOMF 31-38, 43-44), etc.

— Additional Subjective Components to Doc. 139 ~ "Grievances" —

II. 1) Exhibit E, filed 12-12-22 p7of 28, "... regarding BIBR officials harassments and reprisal threats in violation of KAR 44-15-104 "Reprisal's prohibited". This is incomplete as submitted by the KDOC, but see: Exhibit B, Grievance AA202305 6, (p.9of10, 4th para), "... the BIBR program, as being ran is nothing other than a gang, ..." (p.4of 10), "promoting legalization of drug use and manufacturing ..."

2.) Doc. 139, (p7) see: I)(A)(B), Plaintiff requested protective custody on 3-27-23.

3.) See: this responsive brief on p.26 ,at #63.) D.) Plaintiff was issued DR and put in segregation/restrictive housing on 3-28-2023. [Note: added: Held under KDOC official/Defendants: Parks, Meredith and Chapman.]

4.) Exhibit F-3, 4-25-23 grievance (p.18 of 83), regarding on 5-5-2023, Mr. Parks knowledge of and regarding grievance I had submitted, and Mr. Meredith's knowledge during representation as proxy at the DR Hearing; and (p.19of 83); and BIBR officials and members threats and intimidations; (p. 21 of 83), and Mr. Spillman threatened to kick me out of BIBR, because I "threatened to take legal action ...", at (p.21 of 83)

5.) Exhibit F1/F2, "Emergency Grievance" dated 5-5-23, regarding Mr. Parks UTM answering my form 9's to other officials, (p.12 of 83); "Gary Spillman ... kicked me out of BIBR ... threatened to file legal action ...", (p.13 of 83), "... I had asked for PC (Protective Custody) and protection from the BIBR staff and from these drug dealers and drug and tobacco smokers ..."

* 6.) Exhibit F-4, "Emergency Grievance" dated 6-9-2023 to LCF Warden Geither, "I've submitted three grievances to this Unit Team," of (Mr. Parks UTM ... Mr. Meredith) ... which have all mysteriously disappeared and gone unanswered" (p 26 of 83); "My major complaint including the above is that I can not get any information from Mr. Parks UTM, Mr. Meredith ...", and "But, my most important and dangerous issue is that the A-1 Unit Team, Mr. Parks UTM ... Meredith CC keep rotating drug and tobacco user s, drug addicts and dealers, who I've requested protection from, into my cell," (p.26 of 83), "Mr. Parks UTM and the A1 Unit Team are intentionally torturing me and putting me in danger by their abuses and mismanagement of their duties to protect." (p 27 of 83)(and 2nd para) Mr. Spillman threatened me when I complained to him about this drug and tobacco use. He told me that if I kept complaining, I would be putting my life in my own hands, because the majority of people in this prison are drug and tobacco users and

50.

dealers." "Now it, seems Mr. Parks are helping him, because he is putting my life in danger, by intentionally putting these same people in the same cell as I, while I'm suppose to be under protective custody from these people." (p. 27 of 53)

7.) On 7-12-23 the Plaintiff was assaulted, strangled (attempted murder) by convicted drug user/dealer/BIBR member Jeremy Garza, who was in segregation on investigation/punitive disciplinary charges, for drugs and having just checked out his previous cellmate. Jeremy Garza was put in the cell with me, through Defendant Chapman, by order of Defendant Parks and Meredith, AI Unit Team. These Defendants reasonably should have known and did know that Jeremy Garza would present a physical and mental threat to the Plaintiff, but wantonly and with deliberate indifference to the health and safety of the Plaintiff, intentionally chose to ignore the danger, to attempt to coerce/force the Plaintiff to sign a PC waiver. Thus the creation of a dangerous situation - implicating the Danger Create Claim for the Plaintiff for compensory and punitive damages.

8.) Further, even after the Plaintiff was return from the hospital. He was put back under the control of these same Defendants, who continued the same practices, continuing to force the Plaintiff into signing a 2nd PC waiver, by continuing to put other punitive prisoners in the same cell as the Plaintiff. Which resulted in the retaliatory issuance of another disciplinary charge on the Plaintiff Case No.: 1138 (See Defendants Exhibit F) for which the Plaintiff was ultimately found "Not Guilty".

ii Subjective Components:

1.) The Defendants Parks, Meredith and Chapman as the totality of evidence suggests clearly had advance; prior knowledge, that the Plaintiff had requested protection, because, after the Plaintiff was assaulted/strangled, their only concern was fore the Plaintiff to sign a PC waiver. Therefore, logically the Plaintiff was being held in (PC) Protective Custody. This is also, confirmed through Defendant's Doc. 140; SUMF's 30-34 and 46. Further, the Defendant surely had this information when the Plaintiff was first placed under the control of the Defendant's on 3-28-2023 as part of the record for the Plaintiff's reason for being placed in restrictive housing, and requiring a PC waiver, for release, as part of the duties and responsibilities of the Defendants to do their jobs. Also, —

Parks 2.) See: Exhibit PL# 4 p. 4 of 7, dated 5-27-2023 to Parks w/m Requesting: "This

**51**

is all because of illegal disciplinary segregation hold status. This was all included in a prior grievance submitted on 5-1-2023, but, has never been answered or returned in violation of KAR..."

3.) Exhibit F-4, "Emergency Grievance" dated 6-9-2023 (p. 27 of 83), "I recently on 6-9-2023, had to raise a fuss, because I was threatened by one individual they did put in the cell with me. They are intentionally putting me in danger..." (4th para.) "Mr. Parks during this last incident on 6-9-2023, said he hoped I could help the drug user they moved into the cell with me."

4.) Exhibit PL#4 (p1 of 7) dated 7-20-2023 to: Mr. Parks UTM, with the responses "You have been given opportunity to return to GP, but continue to refuse. As of now you are remaining seg. status for your safety until you are transferred."
       ~ Defendants Parks / Meredith (Unit Team) ~

5.) Exhibit PL#4 (p 5 of 7) dated 7-15-2023, with response: "You will need to sign a PC waiver to have dayroom priveleges."

6.) Exhibit PL#4 (p 6 of 7) dated 7-18-2023, with response: "This would be a PC waiver. You were released to GP last week and came back to A1. I can create another waiver."
       ~ Defendant Meredith ~

7.) Exhibit PL#4 (p1 of 7), dated 5-15-2023, to Meredith: Requesting when I'd be off seg. status and could get my TV and rest of property. The Unit Officers [Note by Plaintiff - Officer was Chapman] Keep asking why I'm pink tag and I have no idea."

8.) Exhibit PL#24 of DR Hearing dated 4-24-2023, see (p1 of 13) Where Meredith was assigned as I/M Proxy to represent me at the Hearing., also see: (p6 of 13) where the Plaintiff did send a form 9 telling him my concerns.
       ~ Defendant Chapman ~

9.) Defendant Chapman was the officer who kept putting these other prisoners, (that the Plaintiff kept requesting protection from) in the cell with Plaintiff. This included Weeks and Garza as part of Chapman's job duties and responsibilities, for which the Plaintiff consistantly objected. (see: #7 above. Also, Defendant Chapman would mock me and ask me if "I was scared straight yet?"

10.) Also, Defendant Chapman clearly had prior knowledge when he and Meredith were 1st responders, after the Plaintiff's strangulation; the only issue they were concerned with was forcing me to sign a PC waiver. (PC) Protective Custody requiring a "protection" need that was being intentionally disregarded by all three defendants.

52

The Defendants Parks, Meredith and Chapman as the totality of evidence suggest, relative to the Objective and Subjective Components of deliberate indifference, clearly had advance, prior and after (the Plaintiff's assault and strangulation) on 3-28-2023 placement in restrictive housing, knowledge that the Plaintiff, had requested protective custody and protection from, BIBR members and staff, gang members, drug and tobacco users and dealers, for which they wantonly and intentionall ignored. Chosing rather to house the Plaintiff in punitive (Atypical) conditions of incarceration, harassing and retaliating against the Plaintiff. An elder state prisoner to coerce/force him through terroristic acts of intimidation, to sign a PC waiver, to extort from the Plaintiff a document to relieve them of personal individual liability. Even, after the Plaintiff was strangled by Jeremy Garza on 7-12-2023, their only concern was forcing the Plaintiff to sign a PC waiver. Therefore, the Plaintiff was under PC status. This was confirmed through Defendants Doc 140, SUMF's 30-34 and 46. Further, the Defendants had this information when the Plaintiff was first placed under the custody of the Defendants on 3-28-2023, as needed to perform their required job duties and responsibilities for the safe housing of prisoners in restrictive custody, which they all three intentionally, willfully and wantonly ignored with evil intent, which almost (But for the Grace of GOD) got the Plaintiff murdered, by strangulation, by a much younger, larger, and stronger prisoner than the 73 year old Plaintiff.

III. The Plaintiff denies/objects in controversy to Defendants narrative on DOC140, page 38-34 as Defendants SUMF's #24 and #26 are under controversy on pages 10 and 14 of this Responsive brief, and relies on the Plaintiff's personal first-hand experience of the facts.

The Plaintiff asserts his own affirmation of facts, he has presented and established and shown in this Responsive Brief. Holds just as much evidence admissibility as the Defendants SUMF, (if not more so). As the Defendant's SUMF are merely the same thing. Only as responses to leading questions, by the Defendant's counsel, put down as depositional testimony by the Defendants counsel. Or another way to put it hear - say.

Some of these Defendants SUMF, the Plaintiff has denied as being mis-quoted, incomplete, or misunderstood during questioning and in contro-vercy. The Plaintiff asserts best-evidence is set out in the Plaintiff's

53.

grievances submitted and by State and Federal Court Filings, done by the Plaintiff. As the Defendants have presented no personal answers to any questioning by deposition or other wise. Nor have they provided any affidavit of the facts, nor personally denied any facts in their individual personal capacity. A silent record is not proof nor evidence. The Defendants counsel can not testify for each individual knowledge of the facts, nor as a party, for a fair, unbias hearing or trial, for the finding of facts, nor should it be allowed or considered for a ruling of Summary Judgment in favor of the Defendants for justice to prevail).

V. Punitive Damages - Plaintiff Response.
A.) The Plaintiff asserts it was done by evil intent by the Defendants :
1.) That the Defendants kept the Plaintiff housed/held in Atypical condition, less than punitive, rather than under housing conditions set out under IMPP 20-108D (Exhibit PL #12)
2.) That the Defendants did this to extort/coerce/force the signing of the Plaintiff signature on a PC waiver.
3.) This also consisted of the terroristic acts of the rotating of punitive charged BIBR members and drug user/dealer, tobacco and drug smokers that the Plaintiff had requested from, but, placed in the cell with the Plaintiff by the Defendants.
4.) That this was done, because of failure, because of undocumented unaproved policy or practice, (by failure) to provide the required adjunct/restrictive housing to separate punitive, administrative and protective custody prisoners as required by see : Exhibits PL#11, PL#12, and PL#17. also see : (Cansion : Doc. 139 page 4-5)
              - Dangerous Creation Claim-
   Under, a Danger Creation claim, a state actor can be liable for acts of a third party when he or she created the danger that caused the harm. Briggs v Johnson, 274 Fed. Approx. 730, 2008 WL 1815721 *3 (10th Cir. 2008) (Estate of B.T.C. v Gillen, 2011 U.S. Dist. Lexis 72.718, (10th Cir. 2011)
   A danger creation claim must meet a six-part test.
1.) The state entity and individual actors created the danger or increased the plaintiffs's vulnerability to the danger.
A.) This was done when the defends kept putting prisoner that I had requested protection from in the cell with me, that ultimately caused me physical and mental injury by strangulation/attempted murder.
              54.

2.) Plaintiff was a member of a limited and specifically definable group.

B) The Plaintiff was an elder person over 70 years of age held in PC.

3.) Defendants conduct put Plaintiff at substantial risk of serious, immediate and proximate harm.

C.) The Defendant's pattern of putting the very people the Plaintiff had requested protection from in the lock down cell with the Plaintiff, did put the Plaintiff in immediate and proximate harm by physical assault and strangulation.

4.) The risk was obvious and known:

D.) Because the Plaintiff had once been already assaulted on 7-12-2023, but the defendant still kept the same disregard for the Plaintiff's health and safety, even after the Plaintiff was returned back from the hospital.

5.) Defendants acted recklessly, in conscious disregard of that risk.

E.) As stated in D.) above, the Defendants action continued their reckless actions by continuing to put punitive charged disciplinary prisoners in the cell with the Plaintiff and then issued the Plaintiff a DR even after the Plaintiff was suppose to be held in a cell by himself. One man cell, therefore the Plaintiff was found Not Guilty of DR.

6.) Such conduct, when viewed in total, shocks the conscience. When the Plaintiff was almost murdered by strangulation, taken by ambulance to the Hospital, treated for assault, strangulation, but, then returned back to the prison and then held under the same defendants who almost got him killed, who then the same pattern of mistreatment and abuse of an elder person, should definitely shock the conscience of every U.S. Citizen.

## - IN CONCLUSION -

The Due Process Clause of the 14th Amendment provides that no State shall ... deprive any person of life, liberty, or property, without due process of law" DeShaney v Winnebago County Dept. of Social Services, 489 U.S. 189, 194-95, 109 S. Ct. 998, 103 L. Ed 2d 249 (1989)

When confronted with a fully briefed motion for summary judgment, the court must ultimately determine "whether there is the need for a trial—whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." Anderson v.

55.

Liberty Lobby, Inc. 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d. 202 (19.86)

The Plaintiff has shown that the Defendant's affirmative acts created or/and increased the danger to the Plaintiff. Currier v. Doran, 242 F. 3d. 905, 919 (10th Cir. 2001). Defendant's "conduct must be viewed in total", and thus the cumulative impression of the defendant's conduct should be considered." Currier, 242 F. 3d at 920.

The Plaintiff prays the Court finds this Responsive Brief as well, as his previously submitted Doc. 139, "Motion For Summary Judgment Against Defendants; Andrew Parks, Evan Meredith, and Bruce Chapman", sufficient for a ruling in his favor for a Summary Judgment, or to allow the action to go forward to Jury trial.

The Plaintiff also, apoligizes to the Court; for this Responsive Briefs length and any repeation it may find, and excuses it and construes it liberally, as made by a lay-person, Pro Se, untrained in legal proceedings and legal pleadings.

Respectfully Submitted; by /Bobby White #2000046191
Dated 4-20-2026                              Pro Se.


Bobby White #2000046191
Larned State Correctional Facility
1318 K.S., Highway 264
Larned, Kansas 67550

56.

AFFidavit - AFFirmation

The Plaintiff, Bobby White, Pro Se, affirms under penalty of perjury, that the aforementioned; "Plaintiff's Opposition to: Memorandum in Support of Defendants' Motion for Summary Judgment; was made on personal knowledge, in good-faith, and is true and correct per my own memory, notes, records, Knowledge and ability.

Respectfully Submitted; by s/ Bobby White #2000046191

Dated: 4-20-2026                                          Pro Se

CERTIFICATE OF SERVICE.

The undersigned hereby certifies a true copy of this; "Plaintiff's Opposition to: Memorandum in Support of Defendants' Motion for Summary Judgment" and Exhibits: "PL" #11, #12, #13, #14, #15, #16, #17, #18, #19, #20, (#21-1, #21-2, #21-3, #21-4) #22, #23, #24, #25 (#26-1 thru-#26-6.) were efiled to the U.S. District Court Clerk on April 21, 2026.
and was served via, U.S. Mail, 1st Class, postage pre paid on this day of April, 2026 to:
1) Kris W. Kobach, Kansas Attorney General, C/o Matthew L. Shoger, and Scott G. Nading, Office of the Attorney General, 120 S.W. 10th Ave., 2nd Floor, Topeka, Kansas .66612-1597
and to: (Less exhibits)
2) Gary L. Spillman; P.O. Box 474, 105 Elm St., Lot #3, Overbrook, Kansas 66524.

Dated: 4-21-2026                    by s/ Bobby White #2000046191
                                                    Pro Se.

Bobby White #2000046191
Larned State Correctional Facility
1318 Ks.; Highway 264
Larned, Kansas 67550

(i)

# Health Services Request Form

Exhibit PL# 26-11 JPG Pages

| For Medical Use Only |
| Sólo para uso médico |
| Date Received: |
| Time Received: |

Print Name (Imprimir nombre): Bobby White

Date of Request: 9-21-2023

ID #: 76983     Date of Birth (Fecha de nacimiento): 8-1-1962

Housing Location (Ubicación de la vivienda): A4-116

Nature of problem or request (Naturaleza del problema o solicitud): My left leg right above my outside ankle and left hip, keeps giving me terrible pain that's getting where I can't tolerate it any more. It's getting hard to stand or walk at times (for a long time) I would rate it at most time painful 8+9 out of 10 painful and crippling. Thank You.

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to health care staff if it is not a follow-up visit or referral.

(Entiendo que mi solicitud respect de recibir servicios de salud no necesariamente inplica que estoy de acuero en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuero con el cobro de algún cargo, puedo presenter un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de ugencia, si no se trata de una visita de seguimiento o por una derivación.)

_____
Patient Signature (Paciente Firma)

**Place the slip in medical request box or designated area.**
**(Pon este articulo en la caja médica u otra área designada.)**
**Do not write below this area. (No escribe debajo de esta área.)**

(Original – Medical Record, Yellow Copy – Inmate/Patient, Pink Copy – Business Office)

(The area below is not to be used for education, counseling or documenting a clinical encounter)

Triaged by: _____     ☐ Routine  ☐ Urgent  ☐ Emergent

Date: 9/22/23     Time: 08:00

Date of Face-to-Face Visit: 9/22/23

Other: _____

Response Recommendation (to be completed by Medical Staff only)

| | | | | | |
|---|---|---|---|---|---|
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☐ $2.00 |

Comments: CC visit on 9/25 Tylenol 650mg Two daily X 3 day

_____        _____
Staff Signature                Date

Centurion: REC-013KS
07/01/2020

centurion.

# Health Services Request Form

Exhibit PL# 26-2 2of6 Pages

| For Medical Use Only |
| Sólo para uso médico |
| Date Received: |
| Time Received: |

Print Name (Imprimir nombre): _Ashley Jakih_

Date of Request: _9-29-2023_

ID #: _76995_          Date of Birth (Fecha de nacimiento): _9-1-1980_

Housing Location (Ubicación de la vivienda): _A4-116_

Nature of problem or request (Naturaleza del problema o solicitud): _I was told last week (on sick call submitted on 9-21-2023) at the sick call visit that I was due for my chronic care visit the back day, that was suppose to be on last Thursday 9-28-2023, But I was not seen or called out. What happened? When will I between by the later because I'm a huge pain and (that) were over-seeing for the pain. Father a was ___ and on the ___ visit as a fire range_

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to health care staff if it is not a follow-up visit or referral.

(Entiendo que mi solicitud respect de recibir servicios de salud no necesariamente inplica que estoy de acuero en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuero con el cobro de algún cargo, puedo presenter un reclamo ante el Álcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de ugencia, si no se trata de una visita de seguimiento o por una derivación.)

_____
Patient Signature (Paciente Firma)

**Place the slip in medical request box or designated area.**
**(Pon este articulo en la caja médica u otra área designada.)**
**Do not write below this area. (No escribe debajo de esta área.)**

(Original – Medical Record, Yellow Copy – Inmate/Patient, Pink Copy – Business Office)

---

(The area below is not to be used for education, counseling or documenting a clinical encounter)

Triaged by: _P. ashly LPN_          ☑ Routine    ☐ Urgent    ☐ Emergent

Date: _10/1/23_          Time: _0900_

Date of Face-to-Face Visit: _10/1/23_

Other: _____

Response Recommendation (to be completed by Medical Staff only)

| Initial | ☑ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☑ ARNP |

Fee Charge    ☐ $2.00    _missed provider 9/5 & 9/28_

Comments: _Tylenol 650mg twice daily_

_CQ K LPN_                                    _10/1/23_

Staff Signature                                    Date



Centurion: REC-013KS
07/01/2020



# Health Services Request Form

Exhibit PL #26-3  3 of 6 Pages

<table>
<tr><td colspan="2">For Medical Use Only<br>Sólo para uso médico</td></tr>
<tr><td>Date Received:</td><td></td></tr>
<tr><td>Time Received:</td><td></td></tr>
</table>

Print Name (Imprimir nombre): _Bobby White_

Date of Request: _10-1-2023_

ID #: _76983_          Date of Birth (Fecha de nacimiento): _8-1-1952_

Housing Location (Ubicación de la vivienda): _A4-116_

Nature of problem or request (Naturaleza del problema o solicitud): _Because of my pain in my back, left hip and ankle at times I can barely walk and even when I can its quite painful. I'm requesting for a doctors order for the Unit Team to move me to a handi-cap cell, provide me a wheel chair and require I be provided the use of the handicap shower. Thank You._

I consent to be treated by health staff for the condition described. ✓
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to health care staff if it is not a follow-up visit or referral.

(Entiendo que mi solicitud respect de recibir servicios de salud no necesariamente inplica que estoy de acuero en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuero con el cobro de algún cargo, puedo presentar un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de ugencia, si no se trata de una visita de seguimiento o por una derivación.)

_Bobby White_
Patient Signature (Paciente Firma)

**Place the slip in medical request box or designated area.**
**(Pon este articulo en la caja médica u otra área designada.)**
**Do not write below this area. (No escribe debajo de esta área.)**

(Original – Medical Record, Yellow Copy – Inmate/Patient, Pink Copy – Business Office)

---

(The area below is not to be used for education, counseling or documenting a clinical encounter)

Triaged by: _Samuel Rumo, RN_          ☒ Routine    ☐ Urgent    ☐ Emergent

Date: _10/1/23_                    Time: _0F115_

Date of Face-to-Face Visit: _10/1/23_

Other: _____

### Response Recommendation (to be completed by Medical Staff only)

Initial Appointment: ☒ Nurse    ☐ Doctor    ☐ Dentist    ☐ Eye Doctor    ☐ Mental Health    ☐ ARNP

Appointment: ☐ Nurse    ☐ Doctor    ☐ Dentist    ☐ Eye Doctor    ☐ Mental Health    ☐ ARNP

Fee Charge: ☐ $2.00

Comments: _Discuss = Unit team = captains office_

_S. Rumo RN_                    _10/1/23_
Staff Signature                    Date



Centurion: REC-013KS
07/01/2020



3

# Health Services Request Form

Exhibit PL#26-4 4 of 6 pages

| For Medical Use Only Sólo para uso médico | |
|---|---|
| Date Received: | 5/9/24 |
| Time Received: | 2300 |

Print Name (Imprimir nombre): Bobby White

Date of Request: 5-9-2024

ID #: 76983          Date of Birth (Fecha de nacimiento): 8-1-1952

Housing Location (Ubicación de la vivienda): F201 R

Nature of problem or request (Naturaleza del problema o solicitud): I need to see a specialist for my neck, shoulder, arm (upper body) pain. I'm now getting tingling in my hands and my hands and fingers and they aren't working right. (no grip and dexterity) This has been an ongoing problem since I was strangled at LCF. I've complained about this in a prior sick call and saw Dr Wray, but nothing has been done to help the problem. (on a 17 inmu body) Thank you. (It feels like my hands are asleep.)

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to health care staff if it is not a follow-up visit or referral.

(Entiendo que mi solicitud respect de recibir servicios de salud no necesariamente inplica que estoy de acuero en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuero con el cobro de algún cargo, puedo presenter un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de ugencia, si no se trata de una visita de seguimiento o por una derivación.)

_____
Patient Signature (Paciente Firma)

**Place the slip in medical request box or designated area.**
**(Pon este articulo en la caja médica u otra área designada.)**
**Do not write below this area. (No escribe debajo de esta área.)**

(Original – Medical Record, Yellow Copy – Inmate/Patient, Pink Copy – Business Office)

(The area below is not to be used for education, counseling or documenting a clinical encounter)

Triaged by: _____    ☑ Routine    ☐ Urgent    ☐ Emergent

Date: 5/9/24          Time: 2300

Date of Face-to-Face Visit: 5.10.24

Other: _____

### Response Recommendation (to be completed by Medical Staff only)

| Initial Appointment | ☑ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
|---|---|---|---|---|---|---|
| | ☑ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |

Fee Charge    ☐ $2.00 no charge

Comments: Will refer to the provider

_____          5.10.24
Staff Signature                                     Date

Centurion: REC-013KS
07/01/2020



4

# Health Services Request Form

Exhibit PL #26-5
5 of 6 Pages

| For Medical Use Only Sólo para uso médico/ | |
|---|---|
| Date Received: | 9/3/24 |
| Time Received: | 2300 |

Print Name (Imprimir nombre): Bobby White
Date of Request: 9-3-2024
ID #: 76983    Date of Birth (Fecha de nacimiento): 8-1-52
Housing Location (Ubicación de la vivienda): F201 5
Nature of problem or request (Naturaleza del problema o solicitud): ?) ver (2) two weeks ago. Is saw Dr. Wing) about my left leg pain. I still haught received any of the relief or MRI he said would occur. When can I expect some medical help ? Thankyou.

I consent to be treated by health staff for the condition described.
(Da su consentimiento para ser tratada por el personal de salud para la condición descrita.)

I understand that my requesting health services does not necessarily mean that I agree that I should be assessed a charge for healthcare services. If I disagree with any charges assessed, I understand I may file a grievance with the Warden as per KAR 44-15-101 et seq. I understand that a $2.00 fee will be assessed for any sick call visit and any non-emergency visit to health care staff if it is not a follow-up visit or referral.

(Entiendo que mi solicitud respect de recibir servicios de salud no necesariamente inplica que estoy de acuero en que se me cobren cargos por dichos servicios de salud. Comprendo que, en caso de no estar de acuero con el cobro de algún cargo, puedo presenter un reclamo ante el Alcalde, de conformidad con las reglamentaciones del KAR 44-15-101 et seq. Tengo entendido que el personal de salud cobrará un arancel de $2.00, por cualquier visita a un enfermo o visita que no sea de ugencia, si no se trata de una visita de seguimiento o por una derivación.)

_____
Patient Signature (Paciente Firma)

**Place the slip in medical request box or designated area.**
**(Pon este articulo en la caja médica u otra área designada.)**
**Do not write below this area. (No escribe debajo de esta área.)**

(Original – Medical Record, Yellow Copy – Inmate/Patient, Pink Copy – Business Office)

(The area below is not to be used for education, counseling or documenting a clinical encounter)
Triaged by: _____    ☑ Routine    ☐ Urgent    ☐ Emergent
Date: 9/3/24    Time: 2300
Date of Face-to-Face Visit: 9/4/24
Other: _____

Response Recommendation (to be completed by Medical Staff only)

| | | | | | | |
|---|---|---|---|---|---|---|
| Initial | ☐ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Appointment | ☑ Nurse | ☐ Doctor | ☐ Dentist | ☐ Eye Doctor | ☐ Mental Health | ☐ ARNP |
| Fee Charge | ☑ $2.00 | Follow-up | | | | |

Comments: PT Ste, td MRI Approved

_____        9/4/24
Staff Signature                                        Date

Centurion: REC-013KS
07/01/2020

centurion.

5

201                    F2

**Form 9**
For Cellhouse Transfer
Work Assignment
Interview Requests

Exhibit PL #26-6 6 of 6 pages

White
<u>Last Name Only</u>

**KANSAS DEPARTMENT OF CORRECTIONS**

76983
Number

**INMATE REQUEST TO STAFF MEMBER**

To: LSCF. Medical Clinic / Centurion        Date: 2-27-2024

(Name and Title of Officer or Department)

State completely but briefly the problem on which you desire assistance. (Be specific.)

Last week, I had x-rays done on my upper back, neck, left arm/shoulder. will I be getting a follow-up visit, to see whats causing the pain in my upper back, neck and down my left arm.
Thank You,

Work Assignment: None                    Living Unit Assignment: F2-201

Comment:                              Detail or C.H. Officer: COI Ruth

Disposition:

To: White 76983                        Date: 3.4.23

(Name & Number)

Disposition: You were seen 2-28-24

Thanks!

Williamson, DON
Employee's Signature                        **To be returned to inmate.**

P-0009

6

IN THE DISTRICT COURT OF LEAVENWORTH COUNTY, KANSAS

Bobby White #76983
      Plaintiff

     v.

Jeff Zmudu (soc/KDOC)
Grary Spillman (BIBR)
et. al.    Defendant

Exhibit PL#25   8 pages.

Case No: 2022-CV-323

## MOTION FOR SUMMARY JUDGEMENT

Comes Now the plaintiff, Bobby Bruce White #76983, Pro se requests the Court gives; for a humanitary and justice reason, a Summary Judgement, because of the KDOC failure to protect White, from the BIBR staff retaliation, discrimination, verbal threats and actions; and drug users, and dealers, tobacco and drug second hand smoke. This is applicable to the Kansas Constitutional Bill of Rights; R§3, R§8, R§9, R§18 (Justice without delay); U.S, Const. Amend's 1st, 4th, 5th, 8th and 14th; Rule 7.04(b); K.S.A. Supp. 21-5417(a) mistreatment of a dependent adult or an elder person, (1), (A), (3); (e)(3); KAR 44-12-903 and K.S.A. 60-256. This in White's favor; for an "Order" to the State of Kansas, Kansas Department of Corrections (KDOC) for White's immediate release from incarceration. In support of this requested Summary Judgement-Order, White gives the following FACTS and ARGUEMENTS.

## FACTS:

1.) White gave to the LCF/KDOC staff, this case for mailing out and filing with the Leavenworth County District Court on 12-8-2022. At that time, White also requested that $3.00 (partial filing fee) and $30.00 (Sheriff service fee), be deducted from my personal prisoner account and paid to the Leavenworth Court. But, the KDOC/Central Bank/LCF Business Office refused to do so; denying me the timely use of my own personal property (money). White's request was also, pursuant to court instruction for filing.

2.) On 1-9-2023, per correspondence from Alicia (Deputy Clerk of the First Judicial District) the Judge determined that White would be allowed to proceed upon payment of the $3.00 filing fee and included deficient pleading of $15.00, to be made out payable to the Shawnee County Sheriff. I did as instructed by the court, when I received the notice on 1-13-2023; submitting the proper form request and Account Withdraw Request for these charges, to be deducted from my own personal prisoner account. But, the KDOC still refused to pay as I requested and I had to make multiple attempts. The $3.00 was deducted and paid on 1-19-2023, but the $15.00 was only paid after my 4th attempt on 2-16-2023

1.

This was just barely within the 45 day time limit required by the courts. (See: "Motion For Court Order" mailed out for filing on 2-1-2023)

3.) Per the KDOC answer to White's grievance #AA2023056 on 10-6-2022, by UTM Potter, their solution to satisfy the grievance reads: "You were not removed from BIBR, however you were taken out of the current group and will be placed into the next group pending one on one with Gary Spillman..."

This was supported by James Skidmore/Deputy Warden of Operations (Warden's response to my dissatisfaction); including his (Mr. Skidmore) statement/claim that "...grievance was received (on 10-10-2022)(that's the same day I forwarded it to the Warden) and an investigation into your allegations has been completed." "Conclusions made: After a thorough review of all applicable documentation, it was determined that the response provided by UTM Potter was appropriate..."

On 12-13-2022, I received the S.O.C. response, only after numerous requests, long after the KAR required time; from Darcie Holthaus S.O.C. Designee, back dated to Nov. 3, 2022, from Ms. Latzke UTM advising me, "...a copy of the response from the S.O.C. You will be receiving the original once it arrives at the facility..." dated 12-9-2022.

Yet, the KDOC still reneged on this resolution on 3-28-2023.

4.) There were never any one on one sessions, ever held after I was denied from participation and Group 65, as represented in the KDOC response of grievance #AA2023056. Nor was I, "placed into the next group," as promised. Further, I have in fact been removed from BIBR on 3-27-2023, but not notified, until 3-28-2023. This is in direct opposition to the KDOC response, that claims; "You were not removed from BIBR," and a violation of K.S.A. Supp. 21-5417 (a) mistreatment of a dependent adult or an elder person; "knowingly committing" 1),(A) ...deception, false representation, false pretense or without adequate consideration to such dependent adult or elder person.

5.) During a past one on one with Gary Spillman, he warned me, that the majority of people in prison were drug dealers and addicts, and if I continued to complain about the second hand smoke; (I), "would be taking my life in my own hands." I took this as a personal threat to me and my life, without any help from the KDOC or BIBR.

6.) In two of my previous form 9 requests; I'd attempted to get help, and protection, from the continuing and further threats and discriminations and retaliation from the BIBR staff. When on 11-2 and 11-3, 2023, I reported Mr. C.J. Hughes; stated he would have me removed from Pod B5, when I submitted grievance #AA2023056, and knew I intended to take the issue to court. I asserted, in my requests; "...this constitutes retaliation and threats in violation of BIBR Rule 3.3 and KAR 44-15-104 Reprisals prohibited (b) and in their attempt to proselytizing their false doctrine religious belief on me in violation of KAR 44-12-325.

I requested this discrimination, harassments and threats be stopped.

2.

Ms. Latzke UTM response was only; "Allegations of staff misconduct is investigated and if corrective action is deemed necessary, it will not be discussed with you." dated 12-6-2022.

7.) Because I was not getting help or protection from the KDOC staff or officials; I've repeatedly asked numerous times to be transferred to another facility and I was being misled by the LCF/KDOC/Unit Team and Classification Administrator Ms. Waldock; that since, I only had 3 custody points, I was going to be transferred to Winfield Correctional Facility in January of 2023. But, it also never occurred.

8.) On the evening of Monday 3-27-2023, I requested to be placed in protective custody and/or a central monitor be placed between me and the discrimination and retaliating actions of the B1BR officials. But, my request was denied by both Lt. Jewel and Lt. Gomez. They told me I could not seek protection from staff. This request is documented in KDOC Report No: 01-23-1875 dated 3-28-2023 by Lt. Jewel.
   Further, as the court records show for LVCO 20 CV 243, White was also denied protection by the KDOC, when he was assaulted and battered by Officer Gardner. This still has not been specificly addressed by the court and is an issue in it's appeal COA Case No: 125650.

9.) On 3-28-23 Tuesday morning, I was ordered (indirect opposition to grievance resolution #AA 202.305G), (making good on Mr. C. J. Hughes threat, to have me removed from B1BR and Pod B5) to move to B8. Therefore absolutely removing White from B1BR, and out of the Unit, as Gary Spillman had always intended. This resulting in yet, another unwarranted disciplinary report, even though; I have done nothing wrong, but exercise my right to access to the grievance process and the court.

10.) I have previously been physically attacked and injured without provocation by both LCF/KDOC Officers and other prisoners. I have been made to suffer because of second hand smoke from prisoners smoking in the same cell as I, their tobacco and drugs here at LCF. I've been pucked on (thrown-up) and received injury from out of control drug users. I've received several unwarranted disciplinary reports written against me, to cover-up the abuses, merely because I've complained and sought help from LCF staff and officers.
   Just a couple weeks ago, in B5, another inmate (B1BR) went off and struck the female officer on unit duty. This happens often to other prisoners also, while you are locked down with them. But, you can be sure, prisoners do not, and are not going to get the same consideration and protection as the female officer.

11.) Once again, as has repeatedly happens, when they expected me to move to B8 from B5 on 3-28-2023, they could not guarantee me my required medical restriction need for a "bottom bunk only". KDOC officials

J. 3.

have no regards for an elder person, dependent adult with medical needs and restrictions. This can be seen and confirmed by their attempt to move me to segregation in this current AR Case No: 2872 dated 3-28-2023 by Lt. Jeffrey Barten to cell 206 in violation of my "no-stairs" medical restriction.

12.) These issues are part of a continuing mistreatment of an elder person, which are currently being heard by the Courts in COA appeal Case Nos: 125 650, LVCO 20 CV 243 and are still continuous and on-going.

I was placed in a filthy cell A1-117 and denied cleaning supplies until 4-7-2023, but still can't get a toothbrush. I've only been able to shower once in the past two weeks and that was only, because I was having to lay in my own waste and needed to clean myself. I ate something bad, which made me sick on 4-2-2023. I was throwing up with dyharea from both ends at once. I became weak and shaky and couldn't stand. Yet, the Unit Officer, ignored my trouble light call and kept turning the light off without personally checking at the door. It took several hours to get help. I've submitted 10 form 9 requests to staff with only two having the receipt signed and returned back to me and none of them answered and returned. I've had to go over 5 days without my chronic care medication, which includes my blood pressure and diabetic medication.

13.) It's been now over 4 months, since the 12-8-2022 date, I gave this action to the Unit Team to mail and file with the Leavenworth Court. I've heard nothing from the Court when I might be receiving a hearing, nor have I received any ruling or have mailed back my file stamped copies of the documents I've sent to the Court. In my original mailing, I included a self-addressed, pre-stamped envelope and I've requested for my copies returned for my record.

Currently: Mr. Joseph A. Desch is representing me in COA Case No: 125650 LVCO 20 CV 243, but, as far as I'm aware I am proceeding Pro Se in this continuing litigation. Case No: LVCO 22-CV-323.

## · ARGUEMENTS

1.) This is only a small example of the continuing abuses, I'm suffering, and I've done nothing wrong, to warrant this treatment and recent disciplinary report against me. At this time, I also continue to suffer from the swelling (Hydro-cell) of my right testicle, which was at issue in COA case No: 125650., LVCO 20 CV 243. It still hasn't been corrected after over 4 years of complaining, seeking medical help and corrective surgery. I pray the court gives me relief, by giving me the ability of freedom to seek my own medical help.

I also, pray the court understands my limited access to the court because of my recent lock-down in segregation and must rely on the KDOC officials

4.

to provide the specific documents needed by the court to prove my case. I do not have all my property or records and no ability to get copies made.

2.) White prays because of these conditions of encarceration, that the court, holds his Pro Se pleadings, to be liberally construed and to give effect to their content rather than adhering to any labels and forms to articulate the pro se litigants arguements. State v Kelly, 291 Kan. 563. 365-66, 244 P.3d 639 (2010)
    The petition itself should be construed in a light favoring the inmate- Shepherd v Davis, 14 Kan. App. 2d 333, 335 789 P.2d 1190 (1990)

3.) K.S.A. Supp. 21-5417 (a) mistreatment of a dependent adult or an elder person is knowingly committing one or more of the following acts.
(1) Infliction of physical injury, unreasonable confinement or unreasonable punishment upon a dependent adult or an elder person.
(A) Undue influence, coercion, harassment, duress, deception, false representation, false pretense or without adequate consideration to such dependent adult or elder person.
(3) Omission or depreviation of treatment, goods, services that are necessary to maintain physical or mental health of such dependent adult or elder person.
(e) (3) "Elder person" means a person 60 years of age or older.

    White is 70 years with physical disabilities and dependent adult upon the KDOC / State of Kansas and an elder person. He has been unduly influence and coerced by the KDOC/BIBR staff to accept the religious belief and false doctrine to accept and approve the legal use of tobacco and drugs by other prisoners, without any consideration for the ramification for their selfish desires.

    KAR 44-12-903 Tobacco Contraband (c) No inmate shall possess, hold, sell, transfer, receive, or control tobacco products, tobacco substitues, or smoking paraphanalia that is intended to be introduced or distributed upon the grounds of a correctional facility.

    As in; Helling v McKinney 509 U.S. 25, 34-35 (1993) White has an 8th Amendment claim, because he alleges prison and BIBR officials with deliberate indifference are exposing him to levels of ETS (Environmental Tobacco and drug smoke) pocing unreasonable and illegal risk of serious damage to future health (of and elder person). 509 U.S. at 33. It would be odd to deny an injunction to an inmate on the ground, that nothing yet, had happened to him. Helling, Id, at 35; The court noted that Courts must assess not only the magnitude and likihood of harm from ETS, exposure, but also society's view on the seriousness of the risk, Id. at 36. Courts must determine whether society considers risk from ETS, to be so grave that it violates contemporary standards of decency to expose anyone unwilling to such risk.

    Further, under Smith v Mensinger 293 F. 3d. 641, 650-51 (2002) The Court found prison officials also have a duty to protect inmates, from violent

5.

treatment by other guards and to restore control over a tumultuous cell block.

The deference to prison officials does not give them constitutional liscence to torture inmates, but, is limited to what's necessary for internal prison security. Williams v Benjamin. 77 F3d 756, 765 (1996)

There was no internal prison security issue, by leaving White in the cell and Pod, he had occupied these past two plus years and the KDOC/BIBR honoring their own grievance resolution plan. This is nothing other than continuing elder abuse, religious freedom discrimination; age discrimination; retaliation and reprisal because White invoked the grievance process and his Constitutional right to access the court. K.S.A. 60-1501, 1507.

4.) Under the 5th and 14th Amendment the Due Process clauses are designed to protect the individual against arbitrary government action. Wolff v McDonnell, 418 U.S. 539, 558 (1974) citing Dent v West Virginia, 129 U.S. 114, 123 (1889) The Due process protection apply when a prisoner is deprived of life, liberty, or property.

White has a created protected liberty interest that invoked the due process clause by the KDOC resolutional response of Grievance "AA2023056, the filing of action by Judge approval, and all the state statutes and violations of the U.S. Constitution and State of Kansas Amendments, White has cited.

An inherent constitutional liberty interest arise when a prisoner has acquired substantial freedom (White's 3 custody points) such that deprivation requires due process protection. aff'd 520 U.S. 143 (1997); Harper v Young 64 F.3d 563, 566 (10th Cir. 1995)

5.) Currently the Leavenworth County District Court through this action LVCO 22 CV 323 and the Kansas Court of Appeals Case No. 125650, LVCO 20 CV 243, holds the subject matter jurisdiction of these issues and they should not continue to allow the further abuse of White by their (KDOC) issuance of unwaranted Disciplinary Reports and torturous segregation hold, in their attempt to cloud the issues and cover-up their abuses; during this time of waiting for the courts rulings.

If the KDOC hearing officer - Disciplinary Officer feel they have jurisdiction they must prove it to the courts. "The burden of proving jurisdiction rests upon the party asserting it." Bindell v City of Harvey, 212 Ill. App. 3d 1042, 571 N.E. 2d 1017 (1991).

When the State takes a prisoner into it's custody and holds him against his will, the Constitution imposes upon it a corresponding duty to assume some responsibility for his safety and general well-being. The affirmative duty to protection arises ... from the limitation which it has imposes on his freedom to act on his own behalf. Deshaney v Winnebago County Dep't of Soc. Serv. 489 U.S. 189, 199-200 (1989)

Where a judicial tribunal [or prison hearing officer] has no jurisdiction and

6.

fails to recognize the courts jurisdiction of the subject matter it assumes to act, it's proceedings are absolutely void. In the fullest sense of the term. *Dillon v Dillon 187, P. 27*

A departure by a court from those recognized and established requirements of law, however close apparently adherence to mere form in method of proceedure, which has the effect of depriving one of a constitutional right is an excess of jurisdiction. *Wuest v Wuest, 127 P. 2d 934, 937.*

"Where a court fails to observe safeguards, it amounts to denial of due process of law, court is deprived of juris." *Merrit v Hunter; C.A. Kansas 170 F. 2d 739.*

6.) White prays the Court accepts the date of the filing of this petition, to be the date White, gave the paperwork to the LCF/KDOC staff on 12-8-2022 according to the "mail box rule." *Houston v Lack, 487 U.S. 266, 274 (1988).* (See; FACTS #13 page 4 and #1 page 1)

The manifest purpose of a Summary Judgement is to obviate delay where there is no real issue of fact. A court should never attempt to determine the factual issues on a motion for Summary Judgement, but, should search the record to determine whether factual issues do exist. K.S.A. 60-256 *Albright v McElroy, 207 Kan. 233, 484, P. 2d 1010 (1971)*

Under *Laubach v Roberts 32 Kan App. 2d 863, Syl tr 8, 90 P. 3d 961 (2004)* A prisoner generally complains about the condition of his confinement, the petition may properly be treated as a request for habeas corpus relief, pursuant to K.S.A. 60-1501

Under K.S.A. 60-1507 (a) A prisoner has the right to be released upon grounds in violation of the Constitution.

IN CONCLUSION:

, White prays the Court grants White's request for a Summary Judgement and with an immediate release from incarceration to stop further delay and elder abuse, of a dependent adult. K.S.A. 21-5417, K. Const, Bill of R § 18. (Justice without delay)

Respectfully Submitted; *Bobby White #76983* Pro Se.

Date: April 9, 2023 (mail box rule)

Bobby White #76983
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043

7c

## CERTIFICATE OF SERVICE

I, Bobby White #76983 certify that a true and correct copy of this "Motion For Summary Judgement" (7 pages) was given to the LCF (KDOC) staff/officer for metering cost for postage prepaid charged back to my personal prisoner money account at LCF/KDOC Central Bank, mailed through U.S. Mail; on April 9, 2023, to:

1. For Court Filing: Julie Clemens Clerk of the District Court, Leavenworth Justice Center, 601 South Third Street, Suite 305), Leavenworth, Kansas 64048-2868

2. For Legal Service - Defendant: Kansas Secretary of corrections; Jeff Zumdu, Kansas Department of Corrections, 714 S. W Jackson, Suite 300, Topeka, Kansas 64603

Date: April 9, 2023          by s/ Bobby White #76983
mail box rule                                      Pro Se.


IN THE DISTRICT COURT OF LEAVENWORTH COUNTY, KANSAS
OFFICE OF THE COURT CLERK.

Regarding: LVCO 22-CV-323      Dear Court Clerks

Please file this 7 page "Motion for Summary Judgement" on and for April 9, 2023; the day I gave this document for mailing and filing to the LCF/KDOC staff, pursuant to the "mail box rule" Houston V Lack, 487 U.S, 266, 274 (1988)

Because I am currently being held in segregation; and lacks supplies I am only able to provide the court one copy for filing. I did produce a second copy (handmade) and made legal service to the defendant. I pray this is acceptable to the Court.

Respectfully Submitted; Bobby White #76983
                                                            Pro Se.

Date: April 9, 2023
(mail box rule)
For Filing with the Court
Houston v Lack 487, U.S,

Bobby White #76983
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043

8.

Bobby White #76983
Lansing Correctional Facility
P.O. Box 2
Lansing, Kansas 66043

FILED
LEAVENWORTH CO. KS.
2023 APR 19 AM 11:
CLERK OF DIST COURT

KANSAS CITY 640
17 APR 2023 PM 6 L

US POSTAGE PITNEY BOWES
ZIP 66043
02 4W
0000390783 APR 17. 2023
$ 000.84⁰

$.80

Julie Clemens, Clerk of the District Court,
Leavenworth Justice Center,
601 South Third Street, Suite 3051
Leavenworth, Kansas
66048-2868

"Legal Mail"
"LV CO Case No: 22 CV 323"

66048-276751