**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **BOBBY BRUCE WHITE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Case No. 24-3023-DDC-RES** |
| | ) | |
| **ANDREW PARKS, *et al.*,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

**REPLY IN SUPPORT OF DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

Defendants Andrew Parks, Evan Meredith, and Bruce Chapman ("Defendants") submit this Reply in support of their Motion for Summary Judgment (Doc. 140.) Defendants assert that Plaintiff's Response (Doc. 152) fails to controvert materials facts or overcome the legal arguments in their Motion. Accordingly, Defendants' Motion (Doc. 140) should be granted in its entirety. Defendants incorporate herein, as if set forth in full, the arguments and authorities in their Motion (Doc. 140.) Defendants' Motion should be granted for the reasons previously stated.

## I. Defendants' Response to Plaintiff's Response to Defendants' Statement of Uncontroverted Material Facts ("SUMF").

As required by D. Kan. Rule 56.1(d), the Defendants served upon Plaintiff the Notice to Pro Se Litigant Who Opposes a Summary Judgment Motion, along with the required texts of D. Kan. Rule 56.1 and Fed. R. Civ. P. 56. (Doc. 142.) Yet Plaintiff fails to specifically provide a response to the facts set forth in any of the following numbered paragraphs of the Defendants' Statement of Uncontroverted Material Facts (SUMF) as required by D. Kan. Rule 56.1(b)(1) or Fed. R. Civ. P. 56: SUMF ¶¶ 1-8, 10, 13-16, 18-23, 25, 27-49, 62-71, 74-78, 80-81, 83-84, 88-89, 91-92, 94-98, 104, 106-07, 109-110, 112-132, 134-135, and 137-140. Therefore, the Defendants' SUMF should be deemed admitted. D. Kan. Rule 56.1(a) ("All material facts set forth in the statement of the movant will be deemed admitted for the purpose of summary judgment unless

specifically controverted by the statement of the opposing party."); *see Reed v. Bennett*, 312 F.3d 1190, 1194-95 (10th Cir. 2002). So Plaintiff fails to establish any genuine disputes of material fact with regard to these paragraphs and they should be treated as true for purposes of the Motion. For the other paragraphs, Plaintiff spends much of his lengthy Response citing to and discussing unsworn statements that are not able to be properly considered on summary judgment. *See Mallard v. Howard*, No. 22-4053-EFM, 2024 WL 726983, at *5 (D. Kan. Feb. 22, 2024) ("An unsworn affidavit or declaration is invalid, inadmissible, and unable to be properly considered on summary judgment."). But Defendants here address the paragraphs Plaintiff alleges are in controversy:

<u>SUMF ¶¶ 11, 72:</u> Plaintiff argues these facts should be barred "for mental health reasons as not relevant" and that the records are false based on his allegation that he does not have mental health issues and is currently litigating that classification in state court. (Doc. 152 at 5-6.) However, Defendants have never mentioned any mental health issues in their briefing, and Plaintiff fails to offer any evidence, besides his conclusory allegations, contradicting any observations made.

<u>SUMF ¶¶ 11, 12, 72[1]:</u> Plaintiff objects to these facts as hearsay and questions the accuracy and reliability of the KDOC medical records "because they are a bias record and not made under oath, by the KDOC employee's who created them." (Doc. 152 at 7.) However, courts do "not require an affidavit to authenticate every document submitted for consideration at summary judgment." *Law Co., Inc. v. Mohawk Const. and Supply Co., Inc.*, 577 F.3d 1164, 1170 (10th Cir. 2009). "[S]ubmitted exhibits might be sufficiently authenticated taking into consideration the 'appearance, contents, substance, internal patterns, or other distinctive characteristics, taken in conjunction with circumstances.'" *Id.* at 1171 (citing Fed. R. Evid. 901(b)(4)). Exhibit C contains distinctive characteristics of prison medical records, specifically: every page includes Plaintiff's

[1] Plaintiff discusses the same SUMF paragraphs in multiple places throughout his Response. Defendants address the attempted contraventions in the order Plaintiff discusses them.

name, date of birth, KDOC prison number, and encounter date; Centurion's name and logo appears on the header for every visit; each record is signed and dated by the medical professional who created it; and Plaintiff even relies upon Exhibit C to support his Motion for Summary Judgment and his Response (*see, e.g.,* Doc. 139 at 14; Doc. 152 at 42). *See Quinn v. Wexford Health Sources, Inc.*, 2020 WL 888048, at *2 (S.D. Ill. Feb. 24, 2020) (noting "this Court is familiar with [Illinois Department of Corrections] medical records" and finding based on their "distinctive characteristics" they were "sufficiently authenticated, or in the alternative that they could easily be presented in an admissible form with an accompanying affidavit"); *Hollis v. Sloan*, 2012 WL 5304756, at *4 (E.D. Cal. Oct. 25, 2012) (authenticating prison medical records under Rule 901(b)(4) because "the records are clearly medical in nature, specific to plaintiff, with dates of entry by prison medical personnel that generally coincide with plaintiff's statement of facts").[2]

Moreover, if this matter proceeds to trial, Defendants will subpoena the custodian of records and/or the medical providers to testify regarding the KDOC/Centurion medical records' compliance with Federal Rule of Evidence 803(6)(A)-(C). *See Alfonso v. SSC Pueblo Belmont Operating Co.*, LLC, 2012 WL 2863128, at *1-2 (D. Colo. July 11, 2012) (rejecting party's authentication argument where a sufficient method had been proposed by which an exhibit could be admitted at trial); *see also Shipman v. Carrasco*, 2016 WL 10100732, at *2 (D. N.M. July 19, 2016) ("Significantly, the objection contemplated by [the 2010 amendment to Fed. R. Civ. P. 56(c)(2)] is not that the material fact 'has not' be submitted in admissible form, but that it 'cannot' be."). And besides Plaintiff's speculations, he does not identify how the evidence lacks trustworthiness. Fed. R. Evid. 803(6)(E). Lastly, Plaintiff does not explain how the information

---

[2] Alternatively, if the Court does not find this to be sufficient authentication, Defendants request leave to submit a business records affidavit. *See Rippenkroeger v. Stillwater Cent. R.R., Inc.*, No. CIV-08-1148, 2009 WL 10673104, at *1 (W.D. Okla. Dec. 22, 2009) (allowing leave to submit a business records affidavit for medical records).

"cannot be presented in a form that would be admissible in evidence"; rather, Plaintiff only asserts he should have the opportunity to question "all KDOC/Centurion" employees, essentially requesting additional discovery after the close of discovery. So this Court should consider the medical record evidence. *See* Fed. R. Civ. P. 56(c)(1)(B); (Doc. 152 at 7-8.)

SUMF ¶¶ 51, 58: Plaintiff opposes both statements of fact because they are "not made under oath, by the KDOC employee who created them." (Doc. 152 at 8.) However, as explained above, Exhibit C meets the authentication requirements under Federal Rule of Evidence 901(b)(4) and can be presented in an admissible form at trial. Next, Plaintiff "questions the accuracy" of whether he was seen by APRN Mariah Kalma shortly before or after 12:04 p.m. on July 12, 2023. (Doc. 152 at 8.) But this is an immaterial difference that fails to create a genuine dispute of material fact which would defeat summary judgment. Additionally, Plaintiff relies on hearsay statements from Exhibits J and B of himself saying what medical personnel found, saying they found issues not present in the medical records. But those hearsay statements are not admissible.

SUMF ¶ 17: Plaintiff objects that this SUMF is false or misleading because he "clearly stated he could neither admit nor deny" the underlying request for admission. (Doc. 152 at 9.) But Plaintiff fails to offer any admissible evidence of explicit or implicit threats by Garza prior to the morning of July 12, 2023 (or that Defendants were aware of any such threats). Plaintiff cites Exhibit J, but Exhibit J is not sworn testimony. Further, while Exhibit J discusses a conversation with Garza upon being housed with Plaintiff, any threat from that conversation would be based on Plaintiff's speculation. (Doc. 152 at 9-10; *see also* SUMF ¶ 16.) And the alleged explicit threat Plaintiff points to was immediately before the altercation on July 12, 2023. *See* Exhibit J at 76.

SUMF ¶ 24: Plaintiff objects that this SUMF narration "make[s] no logical sense" in light of his assertion that he was under no obligation to request protection by Defendants from other

inmates. (Doc. 152 at 10.) But Plaintiff fails to provide any evidence controverting the statement. (*See generally* Doc. 152 at 10-14.) None of the evidence Plaintiff cites suggests that Plaintiff requested protection specifically from Garza before the alleged altercation on July 12, 2023. Further, many of the statements cited to are unsworn and inadmissible, such as from Exhibits F-1,[3] F-3, F-4, and I. Plaintiff claims an admission by Defendants (Doc. 152 at 11), but Defendants specifically stated in their response to that request for admission that they denied the substance of the quote in question (*see* Pl.'s Ex. 13 at 19). Plaintiff also cites job description and policy documents, none of which establish whether particular actions were taken by Plaintiff.

SUMF ¶ 26: Similarly to with SUMF ¶ 24, Plaintiff fails to provide any admissible evidence controverting this statement. (*See generally* Doc. 152 at 14-17.) Plaintiff points to Defendant Chapman's job duties to support his argument that Chapman "was required to know that the Plaintiff had requested protection." (Doc. 152 at 15.) But this is speculation on Plaintiff's part, and does not show Plaintiff ever requested the protection described in SUMF ¶ 26. Further, Plaintiff refers to a declaration (Doc. 139-2 at 1), which Defendants previously submitted (Doc. 106) in support of their Response in Opposition to Plaintiff's Motion for Determination of Place of Trial (Doc. 104), in an attempt to argue he should not have been housed with others. (Doc. 152 at 15.) However, the declaration spoke only of what protocols would be in place to ensure Plaintiff would be safely housed at LCF should a trial ensue. (*See generally* Doc. 106.) Plaintiff mentions some form 9's but does not cite with particularity to the record. (Doc. 152 at 15.) Plaintiff cites unsworn and inadmissible statements from Exhibits F-4, F-5, and J, and Plaintiff's Exhibit 4. Plaintiff's Exhibit 7 is simply a waiver form from July 12, 2023. Plaintiff fails to provide any material evidence controverting this paragraph, and the Court should deem it admitted.

[3] Many of Plaintiff's exhibit citations are to the Defendants' earlier exhibits in support of their Motion to Dismiss. (Which exhibit Plaintiff is citing to can sometimes be determined from the number of pages he states that it has.)

SUMF ¶¶ 50-61: Plaintiff cites "Opposition to: 50-61," but fails to refer with particularity to any admissible evidence that would controvert any of these paragraphs. Plaintiff later relies on many of these paragraphs, so he does not appear to actually be attempting to controvert all of them. (*See, e.g.*, Doc. 152 at 42.) Moreover, SUMF ¶ 50 is from Plaintiff's deposition, and SUMF ¶ 56 is from Plaintiff's admissions in response to requests for admission. And, as explained above, Exhibit C meets the authentication requirements under Rule 901(b)(4) and can be presented in an admissible form at trial. Plaintiff fails to create a material dispute regarding this fact.

SUMF ¶ 61: Plaintiff opposes this SUMF because he "is unsure he ever 'saw' or even spoke to Mariah Kalma; APRN, before being sent to KU Medical." (Doc. 152 at 17.) However, Plaintiff cannot create a material dispute based on mere speculations and an admitted lack of personal knowledge. *See Self v. Crum*, 439 F.3d 1227, 1236 (10th Cir. 2006) ("Inferences supported by conjecture or speculation will not defeat a motion for summary judgment."). Further, Plaintiff provides no evidence to support his interpretation that the medication histories provided in Exhibit C at 6 and 10 would not contain medications administered.

SUMF ¶ 60: Plaintiff opposes this SUMF based on personal knowledge of his alleged aggravated back condition. (Doc. 152 at 17.) However, Plaintiff does not controvert how he assessed his pain levels at the time. Instead, Plaintiff references excerpts from his deposition in an attempt to support his speculations that the incident aggravated various preexisting injuries. (Doc. 152 at 17-18.) But Plaintiff clarified that the higher pain levels came "maybe a day or two later" after he was released from the hospital because "you don't feel the full pain and suffering . . . immediately." (Exhibit B at 228.) So Defendants would not have been aware of any such eventual higher pain levels during their interactions with Plaintiff on July 12, 2023. And Plaintiff presents no medical evidence but only his own speculations regarding whether the alleged incident on July

12, 2023, aggravated any conditions. Plaintiff quotes from Exhibit D regarding diagnoses that were "considered," not actually made. Plaintiff also cites Exhibit D to show he had some level of pain that was treated or treatable with tylenol/acetaminophen or ibuprofen, which does not show extreme pain. Plaintiff states he needs "his own medical expert to testify" regarding alleged injuries suffered due to the July 12, 2023 incident. (*Id*. at 17.) However, the deadline for expert disclosures has passed. (Doc. 66 at 3.) Plaintiff fails to cite anything in the record to support his contravention.

SUMF ¶ 73: Plaintiff asserts this SUMF is in controversy based on his new characterizations of his injuries, which is now broader than it was in his interrogatory answers. (Doc. 152 at 18-19 (adding "lower back and sciatic leg pain").) However, Plaintiff should be limited to the sworn testimony he previously provided. Further, as discussed with regard to SUMF ¶ 60, Plaintiff fails to cite anything in the record to support that the alleged incident on July 12, 2023, aggravated or caused any lower back or sciatic leg pain. Additionally, Plaintiff fails to offer any evidence connecting an alleged delay in medical care to any of his claimed injuries.

SUMF ¶ 9: Plaintiff attempts to controvert this SUMF by asserting that there was a "threat of physical violence." (Doc. 152 at 19.) However, Plaintiff fails to offer any evidence of a physical altercation occurring to sufficiently controvert SUMF ¶ 9. Additionally, Plaintiff cites to unsworn and inadmissible statements in Exhibits J and F-4. The Court should deem this fact admitted.

SUMF ¶ 79: Plaintiff claims this SUMF is in controversy, but only offers his speculations and legal conclusions and fails to identify or provide any evidence in the record to support his contravention as required by the rules. (Doc. 152 at 19.)

SUMF ¶ 82: Plaintiff attempts to controvert this SUMF by referring to testimony from the disciplinary hearing on September 29, 2023. (Doc. 152 at 19.) However, Plaintiff does not cite to nor provide any evidence connecting Defendant Parks to the drafting or filing of the Report to

support his contravention as required by the rules. D. Kan. Rule 56.1(b); Fed. R. Civ. P. 56(c)(1). Instead, Plaintiff complains of other behaviors, such as Defendant Parks allegedly telling staff members to house other inmates with Plaintiff. (Doc. 152 at 19.) Additionally, former testimony by a third party from another proceeding is hearsay unless the declarant is legally unavailable, which has not been established, and the current defendants had an opportunity and similar motive to develop that testimony through examination, which is not the case here, as they were not parties to that proceeding. Fed. R. Evid. 804(b)(1). The Court should deem this fact admitted.

SUMF ¶ 85: Plaintiff labels this SUMF as being in controversy, but proceeds to affirm the underlying fact that Defendant Parks is not mentioned in the state habeas action. (Doc. 152 at 20.)

SUMF ¶ 87: Plaintiff alleges an immaterial difference, stating at least some of his complaints were from even earlier, from before he even went into BIBR. (Doc. 152 at 20.)

SUMF ¶ 90: Plaintiff appears to be explaining his statement rather than disputing that he made it. So the Court should deem this fact admitted. Plaintiff alleges that his right to access the court was violated as he was unable to stay adequately informed while representing himself in a state habeas corpus case pro se. (Doc. 152 at 20.) None of this is related to the disciplinary report that Plaintiff's retaliation claim is based on. Plaintiff has not brought an access-to-courts claim in this case. And his own exhibit shows that he was appointed counsel less than one month after he filed the motion to amend. (*See* Doc. 152-1 at 47.) Plaintiff goes on to complain about how his habeas case played out, but does not connect it to any retaliation by Defendant Parks. (*See* Doc. 152 at 21.) Indeed, just 10 days after Plaintiff's motion was filed he was transferred from LCF to his current location, Larned State Correctional Facility. (*Id.*) Again, Plaintiff fails to connect any rulings from his habeas case to any alleged retaliation by Defendant Parks.

SUMF ¶ 93: Plaintiff opposes this SUMF as a false or misleading statement based on his

assertion that the grievance was "not denied." (Doc. 152 at 23.) But Plaintiff did not receive the relief he requested. Regardless, this semantic particularity is immaterial because (1) the parties do not dispute that Plaintiff exhausted this grievance, and (2) Plaintiff does not attempt to controvert SUMF ¶ 92, which establishes that the content of the grievance did not involve Defendants.

SUMF ¶ 105: Plaintiff opposes this SUMF, arguing that this grievance was about Defendants Parks and Meredith's alleged "failure to properly and adequately assist the Plaintiff in segregation; in the administrative grievance process." (Doc. 152 at 27.) However, Plaintiff does not address or controvert SUMF ¶ 107, which establishes that Plaintiff added, for the first time, complaints regarding Defendants Parks and Meredith's handling of Form 9's and grievances in his appeal. Further, Plaintiff does not offer material evidence controverting the fact that his original grievance did not concern Defendants. (Doc. 30-6 at 17.) Moreover, Plaintiff does not offer evidence establishing that he raised the grievance through each level of the grievance process, nor does Plaintiff explain how any of his complaints in the grievance are relevant to the current claims against Defendants. For these reasons, the Court should deem this fact admitted.

SUMF ¶ 105: Plaintiff says on appeal he claimed Parks and Meredith failed to adequately help him with the grievance process. But the initial grievance did not include that, so it was not properly raised through all levels. And failure to help with the grievance process is irrelevant to the current claims. Regardless, Plaintiff has "no independent constitutional right to state administrative grievance procedures." *Boyd v. Werholtz*, 443 F. App'x 331, 332 (10th Cir. 2011).

SUMF ¶ 108: Plaintiff opposes this SUMF due to the Secretary of Corrections referring to Plaintiff's grievance as an "informal letter." (Doc. 152 at 27.) Regardless, because SUMF ¶ 105 is not effectively controverted, it is irrelevant whether a grievance unrelated to Plaintiff's claims against Defendants was exhausted. Further, while Plaintiff takes issue with the informal

designation, he offers nothing controverting the substance of the Secretary's response. And if the letter was an appeal to the Secretary, it was not timely, and was therefore invalid on that grounds.

SUMF ¶ 86: Plaintiff attempts to controvert this SUMF by referring to excerpts from various grievances and letters, most of which were not directed to the Defendants. (Doc. 152 at 27.) While Plaintiff's Exhibits #21-3[4] (Doc. 152-1 at 40) and #21-4 (Doc. 152-1 at 41) are addressed to Defendant Parks, they only mention the case number, and neither contains Parks' signature or any indication that he actually reviewed the documents or was aware of the nature of the case. None of the documents Plaintiff cites in Doc. 30-6 (Exhibit F in support of Defendants' Motion to Dismiss) supports that Defendant Parks was aware of the habeas action at the time of Disciplinary Report 1138. Plaintiff fails to cite anything in the record to support his contravention.

SUMF ¶ 133: Plaintiff opposes this SUMF by arguing that his letter to the Secretary dated May 5, 2023 was accepted as a valid emergency grievance. (Doc. 152 at 28.) However, Plaintiff's letter (Doc. 30-6 at 12) does not include the word "emergency" at the top, as required for a valid emergency grievance under K.A.R. 44-15-106. That regulation also provides for "the person at the corrective action level [to] determine[] that the grievance is not an emergency." After that determination was made, Plaintiff provides no evidence that he filed the letter/grievance through all levels. Lastly, Plaintiff does not relate his letter to the Secretary of Corrections to any present claim against Defendants. Accordingly, the Court should deem this fact admitted.

SUMF ¶ 111: Plaintiff opposes this SUMF and argues his emergency grievance was valid and "clearly not regarding a classification decision making process." (Doc. 152 at 28.) However, under K.A.R. 44-15-106, KDOC is tasked with determining whether an emergency exists. And

---

[4] Plaintiff's Exhibit #21-3 appears to have copied part of another document over the original bottom quarter of the Form 9. (Doc. 152-1 at 40.)

Plaintiff has not cited any evidence that after receiving the Secretary of Corrections' determination he proceeded to exhaust the grievance as a regular grievance. K.A.R. 44-15-106. Moreover, this grievance was not related to Plaintiff's current Count II, to Defendant Chapman, or specifically to Mr. Garza. (Doc. 30-6 at 26-29.) The Court should deem this fact admitted.

SUMF ¶ 136: Plaintiff opposes this SUMF and argues that he repeatedly submitted either his "EAI Incident Report" or emergency grievance dated July 14, 2023 "to the LCF Warden through the Unit Officers and EAI," but the "KDOC/S.O.C./Warden/Officials" all failed to respond. (Doc. 152 at 29-30.) But Plaintiff's documents tell a different story. Plaintiff cites Exhibit I, which is unsworn and inadmissible. Regardless, it does not mention sending the grievance to the Secretary. Exhibit H at 13 is one of Plaintiff's alleged copies of the emergency grievance he maintains was submitted multiple times. While not dated, the note begins "I appeal this 'Emergency Grievance' direct to LCF Warden for the second time, because the Unit Team response is not accurate, nor does it address the issues and makes false conclusions." (Exhibit H at 13.) Plaintiff proceeds to make arguments for why the unit team's response was improper. (Exhibit H at 13-14.) Next, Plaintiff provides a copy of the alleged emergency grievance that was resubmitted on August 23, 2023. (Exhibit H at 15-16.) Lastly, Plaintiff provided another note that he titles "Appeal of Grievance Originally Submitted on 8-23-2023 for Warden's Response." (Exhibit H at 17.) This indicates that pages 15-16 had also been sent to the Warden. Importantly, none of this provides evidence to support any contention that he filed the letter/grievance with the unit team on appeal through all levels, including to the Secretary. Because of this, Plaintiff fails to create a genuine dispute of material fact and the Court should deem this fact admitted.

SUMF ¶ 133: Plaintiff says this is in controversy with regard to the letter to the Governor (Doc. 152 at 30) but does not controvert that the letter did not follow the formal grievance process.

SUMF ¶¶ 99-103: Here, Plaintiff merely complains about the handling of grievances. (Doc. 152 at 31.) He does not controvert any of these paragraphs.

SUMF ¶¶ 112-32: With regard to these paragraphs, Plaintiff effectively admits that the grievances and other documents addressed in these paragraphs did not exhaust administrative remedies for his claims by calling these paragraphs irrelevant to this lawsuit. (Doc. 152 at 33.)

## II. Argument.

Plaintiff spends much of his Response discussing immaterial facts, inadmissible evidence, already-dismissed claims, and claims not brought before this Court. In several places, Plaintiff mentions due process claims and cites due process cases (including regarding "danger creation claims" and claims under the Kansas Constitution), but no due process claims are currently before this Court. Plaintiff complains about access to courts, but no access-to-courts claims are currently before this Court. Plaintiff attacks his sentence of conviction (Doc. 152 at 8), and tries to bring a new asylum claim (Doc. 152 at 35), seeking release from KDOC custody, which is not an available form relief in this action. Even if "asylum" applied, it must be filed for with USCIS under 8 U.S.C. § 1158 and 8 C.F.R. § 208.4. White mentions a HIPAA complaint, but the Court has already ruled that this is not the proper forum for that complaint. (Doc. 135 at 3.) White discusses the "imminent danger exception," an exception to the three-strikes bar on in-forma-pauperis status. See 28 U.S.C. § 1915(g). But it has nothing to do with exhaustion.

*Exhaustion.* Regarding exhaustion, Plaintiff cites *Perrtu* for the proposition that all exhaustion issues must be brought before a jury. But *Perrtu* only applies when exhaustion is intertwined with the merits of an action, which is not the case here. Plaintiff cites *Jones* to suggest that a medical condition can inhibit exhaustion, rendering remedies unavailable, but he has provided no evidence to establish that in this case. And it is a District of Delaware decision that is

not binding on this Court. Plaintiff says "for the first time" was an improper statement, but Defendants simply meant that Plaintiff had not raised that issue at the lower levels for that particular grievance. It was added for the first time on appeal. Plaintiff says he made valid emergency grievances, but under K.A.R. 44-15-106, KDOC makes the determination whether a grievance is a valid emergency grievance. Plaintiff says protective custody is not a grievable issue, but Plaintiff's current claims are not for being in protective custody or not being in protective custody. Plaintiff says he had to make multiple attempts at exhaustion, but the issue was that he failed to fully exhaust any timely grievance that was relevant to his current claims. Rather than filing multiple grievance, he should have properly exhausted any given grievance. Plaintiff has not provided any admissible evidence that the grievance process was unavailable to him. Even if KDOC officials failed to timely respond to his grievances, the grievance process accounts for that, allowing an appeal within a certain timeframe, as discussed in Defendants' Motion.

*Failure to Provide Medical Care*. Plaintiff still has not provided any evidence that delay in medical care caused any substantial injury or otherwise exacerbated his alleged injuries. Regarding the objective component, Plaintiff cites facts regarding later symptoms rather than symptoms that would have been observed by Defendants, including regarding later pain, such as back and leg pain, and back surgery. Plaintiff includes speculations about what caused his back and leg pain without any medical evidence. Plaintiff includes an inadmissible statement about medical personnel supposedly seeing a spot on an x-ray. Plaintiff quotes a statement from Exhibit D about diagnoses that were "considered" rather than made. None of this establishes the objective component with regard to what the Defendants would have observed. (Even if the x-ray comment were admissible, Defendants did not see any x-ray results.)

Regarding the subjective component, Plaintiff cites no admissible evidence showing

Defendants knew of and disregarded an excessive risk to inmate health or safety. Plaintiff cites facts showing that he requested medical but not that any symptoms showed up until after he left the Defendants. He cites paragraph 41 from his Response that says that he believes he shouldn't have had to tell the Defendants about any threat from Garza, they should just have known.

Plaintiff says he should have been housed separately from non-protective-custody inmates. As Defendants have already argued in their Motion, it was not clearly established that placing an inmate opposed to drugs in a cell together with drug dealers or users was a per se violation of the Constitution. *See Bateast*, 2024 WL 3756261, at *12 to *13. Plaintiff says that Garza had previously choked a cellmate, but no evidence indicates that Defendants knew of any particularized risk from Garza to Plaintiff. Inmates who have committed acts of violence still have to have cellmates. Plaintiff says that KDOC policy required a "four minute response time," but even if that were true (and Plaintiff has submitted no evidence of that), "a defendant's violation of a prison policy does not a constitutional violation make." *Williams v. Miller*, 696 F. App'x 862, 869 & n.14 (10th Cir. 2017) (citing *Hovater v. Robinson*, 1 F.3d 1063, 1068 n.4 (10th Cir. 1993)). Plaintiff says the delay was over two hours, but the evidence does not support a delay of any longer than 2 hours (from about 10:00 A.M. to about noon). Plaintiff says Parks did not call for medical, but it is undisputed in SUMF ¶¶ 44-46 that Parks transferred Plaintiff to general population, saying that he could make a sick call there. Plaintiff speculates that complications from the alleged strangulation could have been fatal, but no evidence supports that Plaintiff's life was in danger or, if it was, that Defendants knew that Plaintiff's life was in danger. Plaintiff says he experienced serious injuries and considerable pain, but no evidence supports that. Plaintiff speculates that pre-existing conditions were aggravated, requiring surgery, but no evidence supports that.

Plaintiff says no legitimate penological interest has been cited, but the Defendants

mentioned maintaining discipline and control in the facility, which explains why Plaintiff could not just walk to medical while in restrictive housing. Plaintiff says it is irrelevant that he refused to leave his cell, but that fact shows that Plaintiff did not see his injuries as very urgent at the time.

Plaintiff cites *Lucas* regarding strong suspicions but has not provided evidence of strong suspicions in this case. He also cites *Lucas* to say receiving some medical care does not mean a violation did not occur. But Plaintiff has not established the functional equivalent of a complete denial of care in light of the specific circumstances in this case and in light of qualified immunity.

Plaintiff mentions his interpretation of "atelectasis" but has not provided any medical opinion regarding its significance in this case. Plaintiff says without evidence that Defendants could easily see scrapes and bruising. The evidence shows the bruising became visible later.

*Retaliation*. Plaintiff's only remaining retaliation claim concerns disciplinary report 1138. Plaintiff has not successfully controverted any facts relevant to this claim. Accordingly, the Court should grant summary judgment to the Defendants on this claim. Plaintiff cites *Ramos*, but *Ramos* involved widespread violence at a facility, while only an isolated incident of violence is alleged here. Plaintiff cites *Starr* for the idea that supervisors can cause others to inflict a constitutional injury, but no evidence supports Plaintiff's speculative conspiracy theory that other KDOC employees falsified a disciplinary report at the behest of Parks. No evidence supports that Parks thought the disciplinary report was false or made in bad faith such that he should have intervened.

*Failure to protect*. In ruling on the motion to dismiss, the Court acknowledged the allegations were unclear but, interpreting the allegations in the light most favorable to the Plaintiff, "assume[d] that plaintiff has alleged that defendants were on notice (before the assault occurred) that plaintiff's cellmate might attack him." No evidence supports such a finding at this stage.

WHEREFORE, for these reasons, Defendants request their Motion (Doc. 140) be granted.

KRIS W. KOBACH
ATTORNEY GENERAL OF KANSAS

*/s/ Scott G. Nading*
Scott G. Nading, KS No. 29665
Assistant Attorney General
Matthew L. Shoger, KS No. 28151
Assistant Attorney General
Office of the Attorney General
120 SW 10th Ave.
Topeka, Kansas 66612-1597
scott.nading@ag.ks.gov
matt.shoger@ag.ks.gov
(785) 296-2215
Fax: (785) 291-3767
*Attorneys for the Defendants*

**CERTIFICATE OF SERVICE**

I hereby certify that on this 6th day of May, 2026, the foregoing document was filed with the clerk of the court by using the CM/ECF system, with a copy served by means of first-class mail, postage prepaid, addressed to each of the following:

Bobby Bruce White #2000046191
Larned State Correctional Facility
1318 KS Highway 264
Larned, KS 67550
*Plaintiff, pro se*

Gary Spillman
105 Elm St., Lot #3
Overbrook, KS 66524
*Defendant, pro se*

*/s/ Scott G. Nading*
Scott G. Nading
Assistant Attorney General